No. 12-57302

---

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

---

CINDY LEE GARCIA,

Plaintiff-Appellant

v.

GOOGLE, INC., YOUTUBE LLC, et al., Defendants-Appellees

and

NAKOULA BASSELEY NAKOULA, an individual, a.k.a. Sam Bacile, et al.,

Defendants.

---

On Appeal from the United States District Court

for the Central District of California

D.C. No. 2:12-cv-08315-MWF-VBK

---

**APPELLANT'S EXCERPTS OF RECORD**

**Volume 1 of 4**

**Pages 1-237**

---

M. Cris Armenta (State Bar No. 177403)
The Armenta Law Firm APC
11900 W. Olympic Boulevard
Suite 730 Los Angeles, CA 90064
Tel: (310) 826-2826
email: cris@crisarmenta.com

Credence Sol (State Bar 219784)
La Garenne
86200 Chauvigny, France
Tel: 06 74 90 22 08
email: credence.sol@sol-law.com

# INDEX

## APPELLANT'S EXCERTS OF RECORD

| Docket No. | Date | Description | Volume | Pages |
|---|---|---|---|---|
| 1 | 9/26/2012 | Complaint | 1 | 1-62 |
| 5 | 10/4/2012 | First Amended Complaint | 1 | 63-122 |
| 8 | 10/11/2012 | Plaintiff's *Ex Parte* Application to Exceed Page Limits Set Forth in Local Rule 11-6; Declaration of M. Cris Armenta in Support Thereof | 1 | 123-126 |
| 10 | 10/12/2012 | Declaration of M. Cris Armenta in Support of Plaintiff's Ex Parte Motion to Exceed page Limit Under Local Rule 11-6 | 1 | 127-132 |
| 11 | 10/12/2012 | Order Denying Plaintiff's *Ex Parte* Application to Exceed Page Limit Under Local Rule 11-6 | 1 | 133-134 |
| 12 | 10/17/2012 | *Ex Parte* Application For a | 1 | 135-170 |

| | | Temporary Restraining Order and an Order of Impoundment; Declarations of Garcia, Sutter, Flynn, Fadl, Levine, hardy and Armenta; Request for Judicial Notice | | |
|---|---|---|---|---|
| 13 | 10/17/2012 | Request For Judicial Notice | 1 | 171-191 |
| 14 | 10/17/2012 | Declaration of Cindy Lee Garcia, Dan Sutter, Gaylord Flynn, Dr. Khaled Abou El Fadl, All in Support of Ex Parte Application | 1&2<br><br>2 Begins at ER 238 | 192-285 |
| 14-1 | 10/17/2012 | Declaration of Zahavah Levine in Support of Ex Parte Application | 2 | 286-405 |
| 14-2 | 10/17/2012 | Declaration of David Hardy In Support of Ex Parte Application | 2 | 406-484 |
| 14-3 | 10/17/2012 | Declaration of M. Cris Armenta in Support of Ex | 3 | 485-600 |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 4 of 246

| | | Parte Application | | |
|---|---|---|---|---|
| 15 | 10/18/2012 | Order Denying Ex Parte Application | 3 | 601-602 |
| 18-1 | 10/22/2012 | [Proposed] Order on Stipulation to Continue Hearing Date on Plaintiff's Motion for Preliminary Injunction | 3 | 603-606 |
| 20 | 10/23/2012 | Order on Stipulation to Continue Hearing Date on Plaintiff's Motion for Preliminary Injunction | 3 | 607-610 |
| 22 | 10/29/2012 | Opposition of Google Inc. and YouTube, LLC to Plaintiff's Motion for Preliminary Injunction and Order of Impoundment | 3 | 611-641 |
| 22-1 | 10/29/2012 | Request for Judicial Notice in Support of Opposition of Google Inc. and YouTube, LLC to Plaintiff's Motion | 3 | 642-667 |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 5 of 246

| | | for a Preliminary Injunction and Order of Impoundment | | |
|---|---|---|---|---|
| 23 | 10/29/2012 | Opposition of Google Inc. and YouTube, LLC to Plaintiff's Request for Judicial Notice in Support of Motion for Preliminary Injunction and Order of Impoundment | 3 | 668-675 |
| 24 | 10/29/2012 | Objections By Google Inc. and YouTube, LLC to Evidence Submitted in Support of Plaintiff's Motion for Preliminary Injunction and Order of Impoundment | 3 | 676-685 |
| 27 | 11/5/2012 | (1) Reply Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction and | 3 | 686-733 |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 6 of 246

| | | Order of Impoundment; Declaration of M. Cris Armenta in Support Thereof; (2) Plaintiff's Response to Objections by Google, Inc. and YouTube LLC to Evidence Submitted in Support of Plaintiff's Motion for Preliminary Injunction and Order of Impoundment;(3) Plaintiff's Objections to Evidence Submitted by Google Inc., and YouTube LLC, in Opposition Brief to Plaintiff's Motion for Preliminary Injunction and Order of Impoundment;(4) [Proposed] Order Sustaining Plaintiff's Objections to | | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | | Evidence Submitted by Google, Inc. and YouTube LLC in Opposition Brief to Plaintiff's Motion for Preliminary Injunction and an Order of Impoundment | | |
| 28 | 11/5/2012 | Plaintiff's Objections to Evidence Submitted by Google Inc. and YouTube, LLC in Opposition Brief to Plaintiff's Motion for Preliminary Injunction and Order of Impoundment | 3 | 734-741 |
| 29 | 11/05/2012 | Plaintiff's Responses to Objections by Google Inc. and YouTube LLC to Evidence Submitted in Support of Plaintiff's Motion for Preliminary Injunction and | 4 | 742-790 |

| | | Order of Impoundment | | |
|---|---|---|---|---|
| 33 | 11/28/2012 | Declaration of Mark Basseley Youssef | 4 | 791-798 |
| 34 | 11/28/2012 | Declaration of Timothy L. Alger | 4 | 799-806 |
| 35 | 11/29/2012 | Plaintiff's Notice of Request Under Central District Local Rule 7-8 To Cross-Examine Declarants Submitted By defendants Google Inc. and YouTube, LLC | 4 | 807-809 |
| 36 | 11/30/2012 | Objections of Google Inc. and YouTube, LLC to Plaintiff's Notice of Request Under Central District Local Rule 7-8 to Cross-Examine Declarants | 4 | 810-816 |
| 37 | 11/30/2012 | Plaintiff's Objection to and Request to Strike Declarations of Time Alger and Mark Basseley | 4 | 817-890 |

| | | Youssef; Declarations of M. Cris Armenta, Galord Flynn, Cindy Lee Garcia and Jim Blanco | | |
|---|---|---|---|---|
| 38 | 11/30/2012 | Order Denying Request to Cross-Examine | 4 | 891 |
| 39 | 11/30/2012 | Order Denying Plaintiff Garcia's Motion for Preliminary Injunction | 4 | 892-894 |
| 40 | 11/30/2012 | Declaration of James A. Blanco in Support of Objection and Request to Strike Declarations of Tim Alger and Mark Basseley Youssef | 4 | 895-945 |
| 42 | 12/21/2012 | Notice of Appeal | 4 | 946-950 |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 10 of 246

1   M. Cris Armenta (SBN 177403)
    THE ARMENTA LAW FIRM APC
2   11900 W. Olympic Boulevard, Suite 730
    Los Angeles, CA 90064
3   Tel: (310) 826-2826 x 108
    Facsimile: (310) 826-5456
4   Email: cris@crisarmenta.com

5   Credence E. Sol (SBN 219784)

6

7

8   credence.sol@sol-law.com

9   Attorneys for Plaintiff
    Cindy Lee Garcia



FILED
CLERK, U.S. DISTRICT COURT

SEP 26 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   CINDY LEE GARCIA, an individual,      Case No. CV 12-8315 —MWF
                                                              (VBKx)
13                   Plaintiff,
                                            COMPLAINT FOR:
14   vs.
                                            1.   Direct Infringement of
15   NAKOULA BASSELEY NAKOULA,                   Copyright
     an individual also known as SAM        2.   Secondary Infringement of
16   BACILE; GOOGLE, INC., a Delaware            Copyright
     Corporation; YOUTUBE, LLC, a           3.   Fraud
17   California limited liability company, and   4.   Unfair Business Practices
     DOES 1 through 10 , inclusive.         5.   Libel
18                                          6.   Intentional Infliction of
                                                 Emotional Distress
19                   Defendants.
                                            [Demand For Jury Trial]
20

21

22

23

24

25

26

27

28



1

ER1

Plaintiff Cindy Lee Garcia ("Garcia"), by and through her counsel, on personal knowledge as to her own actions and information and belief as to the actions, capabilities and motivation of others, hereby alleges as follows:

## NATURE OF CASE

1. On July 2, 2012, Defendant Nakoula Basseley Nakoula ("Nakoula") uploaded a 14-minute trailer to the Internet, via YouTube.com, entitled "Innocence of Muslims," (the "Film") making it available for the entire world to see. On about September 11, 2012, the film gained worldwide recognition after it was translated into Arabic and posted on YouTube.com. On or around September 11, 2012, an Arabic translation of the film was posted on YouTube, where it became the object of attention in many countries, especially those that are predominantly Muslim.

2. In the Film, Mohammed, the founder of the Islamic religion, is painted in a light that is considered to be blasphemous by many Muslims. Specifically, the Film portrays as a child molester, sexual deviant, and barbarian. Immediately after the Film received worldwide recognition as described above, violence erupted in the Middle East. The violence included an attack on the United States Consulate in Benghazi, Libya, resulting in the deaths of four Americans, including United States Ambassador Christopher Stevens and two ex-Navy SEALS.

3. Violence has continued to erupt across the world, resulting in dramatic events that have unfolded worldwide, including in Afghanistan, Algeria, Australia, Azerbaijan, Bahrain, Bangladesh, Belgium, Canada, Denmark, Egypt, France, Greece, Hong Kong, India, Indonesia, Iran, Iraq, Israel, Japan, Jordan, Lebanon, Kuwait, Macedonia, Malaysia, the Maldives, Mauritania, Morocco, the Netherlands, Niger, Nigeria, Oman, Pakistan, the Palestinian territories, the Philippines, Qatar, Saudi Arabia, Serbia, Somalia, Sri Lanka, Sudan, Switzerland, Syria, Thailand, Tunisia, Turkey, and the United Kingdom. The Film has been attributed worldwide as directly responsible for the resulting violence. United States Secretary of State Hillary Clinton has condemned the Film, calling it "disgusting and reprehensible." President Barack Obama has asked YouTube to review taking down the Film, but has taken no court action.

4. Plaintiff is an actress who appears in the Film. In the English version of the Film, at minute 9:03, Plaintiff appears to accuse "your Mohammed" of being a "child molester." These

2

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 12 of 246

1    are words that Plaintiff *never spoke*. In fact, Plaintiff was led to believe that she was appearing in

2    a film titled *Desert Warrior*. According to the casting call to which Plaintiff responded, *Desert*

3    *Warrior* was an adventure film set in ancient times. Plaintiff was cast in the part of a mother of

4    young child who was to be married to a character named "Master George." At no time during the

5    filming of *Desert Warrior* was Plaintiff aware of *any* religious or sexual content. Indeed, while

6    on-set, most of Plaintiff's scenes involved playing with the actress who portrayed her "daughter."

7    The words, "Is Mohammed a child molester," which are attributed to Plaintiff's character, were

8    words that she *never* uttered on set or during filming. It is obvious that the words heard on the

9    Film are not consistent with the way in which Plaintiff's mouth moved – making it obvious that

10    she never uttered those words. These are words that Plaintiff finds repugnant, vile, and hostile and

11    would never say in *any* context, even during the course of a performance. Plaintiff is an ordained

12    minister and would never debase another person's religious beliefs. It is not in her character, and

13    the thought that she would blaspheme *any* religion or god is profoundly distressing to her.

14        5.      When Plaintiff was first cast in *Desert Warrior*, she received pages of the script

15    from Defendant Nakoula, who identified himself as "Sam Bacile." Defendant Nakoula held

16    himself out as the writer and producer of the Film. He managed all aspects of production, and as

17    far as Plaintiff observed, was in charge of all aspects of the production. During filming,

18    Defendant Nakoula gave Plaintiff his telephone number. The pages of *Desert Warrior* script that

19    Plaintiff kept are attached hereteo as Exhibit A.

20        6.      Plaintiff believes she signed a contract, but only one that ensured that she would

21    receive IMBD credit for her performance in "Desert Warrior," primarily because Plaintiff is a non-

22    union actor. She has been unable to locate a copy of any such contract. She is making diligent

23    efforts to obtain a copy either from Defendant Nakoula or from other actors who appeared in the

24    production. So far, she has not been able to locate a copy. She does recall that the contract did

25    *not* call for her to transfer any rights, including any copyrights, and that it was not a "work for

26    hire" agreement.

27        7.      In any event, even if Plaintiff did sign a contract (in a form unknown to her at this

28    time, if it exists), Plaintiff contends that any such release is invalid because, no matter what its

ER4

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 15 of 246

1    terms, it was procured by Defendant Nakoula's fraud, deception and misrepresentations. Further,

2    it is the *Defendants'* burden to produce such a release and submit it as evidence, *not* Plaintiff's

3    burden.

4           8.     Despite the fact that Plaintiff was led to believe that she was providing a dramatic

5    performance in an adventure film titled *Desert Warrior*, when the Film was released publicly on

6    YouTube, her depicted performance was grotesquely different than the performance that Plaintiff

7    actually had delivered. Specifically, the innocuous lines that Plaintiff delivered on set were

8    overdubbed so as to give the appearance that she was accusing the Islamic religious figure

9    Mohammed of being a child molester and a sexual deviant. In short, Defendant Nakoula used her

10   as a puppet. The words that were put into Plaintiff's mouth are so offensive, not only to Plaintiff

11   but to millions worldwide, that it sparked a riots and violence around the globe. In the Film,

12   Plaintiff is depicted to be a bigot and to hold beliefs that are not only anti-Islamic, but antithetical

13   to Plaintiff's world view.

14          9.     Plaintiff would never have, and in fact did not, agree to place her likeness, image,

15   persona, nor her dramatic performance into a hateful production or to be associated with hate

16   speech in any form or fashion.

17         10.    Aside from the fallout that occurred after Plaintiff's performance was distorted and

18   disguised, it is clear that Plaintiff has a copyright claim in the dramatic performance she delivered

19   and which was fixed in tangible form when it was filmed during the production of "Desert

20   Warrior." Because she did not assign her rights in her dramatic performance, or her copyright

21   interests, nor was the Film a "work for hire," her copyright interests in her own dramatic

22   performance remain intact.

23         11.    Plaintiff has filed an application for federal copyright registration for the rights in

24   her dramatic performance "Desert Warrior." The application is pending; Plaintiff has requested

25   that the Copyright Office expedite it. Whether or not the Copyright Office has yet acted upon

26   Plaintiff's application, federal law creates a copyright when the copyright is created, not upon

27   registration. A true and correct copy of Plaintiff's copyright application, which identifies the

28   works that are the subject of Plaintiff's copyright, is attached as Exhibit B.

4

ER6

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 16 of 246

12.     Defendant YouTube's Terms of Service include the following relevant statements: (1) YouTube accounts "must provide accurate and complete information"; (2) the user of YouTube "will comply with all applicable laws"; (3) in uploading content the user must "affirm, represent, and warrant that you own or have the necessary licenses, rights, consents, and permissions to publish Content you submit; and you license to YouTube all patent, trademark, trade secret, copyright or other proprietary rights in and to such Content for publication on the Service pursuant to these Terms of Service"; and (4) YouTube does not "permit hate speech (speech which attacks or demeans a group based on race or ethnic origin, religion, disability, gender, age, veteran status, and sexual orientation/gender identity)." Plaintiff previously requested that YouTube take down the Film because it constitutes hate speech and because the unauthorized, dubbed depiction of her violates California state laws pertaining to her right to privacy and right to control the use of her likeness, among other protected rights that continued exhibition of the Film violates. YouTube refused Plaintiff's request.

13.     Plaintiff has issued five DMCA "takedown notices" to Defendants YouTube and Google, who, by rebroadcasting the Film 24 hours a day, 7 days a week, also are infringing Plaintiff's protected rights in her performance, which fell within the scope of protection of copyright laws the instant her dramatic performance was fixed on film. YouTube and Google have thus far refused to expeditiously remove or disable the infringing content.

<u>**GENERAL ALLEGATIONS**</u>

**A.      Jurisdiction and Venue**

14.     This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, 17 U.S.C. § 101 et seq. Plaintiff also seeks damages and injunctive relief under California state law, were not preempted by Federal law.

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (jurisdiction over copyright actions), 28 U.S.C. § 1338(b) action asserting a state claim of unfair competition joined with a substantial and related

5

ER7

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 17 of 246

1  federal claim under the patent, copyright, or trademark laws), 28 U.S.C. § 1367 (supplemental

2  jurisdiction), and the doctrines of ancillary and pendent jurisdiction.

3      16.    This Court has personal jurisdiction over Defendants because all Defendants have

4  "continuous, systematic" ties to California, and/or reside in California.

5      17.    Venue in this District is proper because a substantial part of the acts and omissions

6  giving rise to the claims occurred in this district.

7      **B.**    **The Parties**

8      18.    Plaintiff Cindy Lee Garcia is an individual and at all relevant times herein was a

9  resident of Kern County, California.

10      19.    Defendant Nakoula Basseley Nakoula, also known as Sam Bacile ("Defendant

11  Nakoula" or "Bacile") is an individual and at all relevant times herein as a resident of Los Angeles

12  County, California.

13      20.    Defendant Google, Inc., is a corporation incorporated in Delaware with its principal

14  place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google

15  conducts business throughout California, the nation, and the world.

16      21.    Defendant YouTube, LLC, is a Google-owned California limited liability company.

17  YouTube conducts business throughout California, the nation, and the world.

18      22.    Plaintiff lacks knowledge of the true names and capacities of the defendants sued

19  herein as DOES 1 through 200, inclusive, and therefore sues these defendants by such fictitious

20  names.  DOES 1-150 are unidentified posters of the film, as further described below.  DOES 151-

21  200 are individuals who assisted in the production of the film, as further described below.

22  Plaintiff will amend this complaint to allege their true names and capacities when they have been

23  ascertained.

24      23.    At all relevant times, each defendant was the agent of each of the other defendants

25  and was acting within the course and scope of such agency.  Defendants are jointly and severally

26  liable to Plaintiff.

27

28

ER8

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 18 of 246

24.     Plaintiff is informed and believes that each of the defendants designated herein as a DOE is responsible in some manner for the events and happenings herein alleged, as well as for the damages alleged.

25.     Plaintiff is informed and believes that each of the defendants was the agent or employee of each of the remaining defendants and, at all relevant times herein, acted within the course and scope of such agency and/or employment.

### FACTUAL BACKGROUND

26.     Plaintiff Garcia is an ordained minister and actress.  Garcia works in film.

27.     In July of 2011, Plaintiff Garcia responded to a casting call for a film titled "Desert Warrior," which was represented to be an "historical Arabian Desert adventure film."   She was cast in the Film.  The producers of the film, including DOES 151-200, and Defendant Nakoula, intentionally concealed the purpose and content of the film.

28.     Ms. Garcia was given only specific pages of a script titled *Desert Warrior*.  There was no mention of "Mohammed" during filming or on the set.  There were no references made to religion nor was there any sexual content of which Ms. Garcia was aware.  The purported writer and producers of *Desert Warrior*, Defendant Nakoula a/k/a "Sam Bacile," represented to Plaintiff that the Film was indeed an adventure film and about ancient Egyptians.  Based on those specific representations made, her parts of the script, and the manner in which the Film was shot, Plaintiff agreed to deliver an acting performance for "Desert Warrior."

29.     On July 2, 2012, Defendant Nakoula published a video titled *The Innocence of Muslims* (the "Film") to the Internet site www.youtube.com, making the Film available publicly and globally.  The Film includes Plaintiff's acting work from *Desert Warrior* and has been changed horrifically to make it appear that Ms. Garcia voluntarily performed in a hateful anti-Islamic production.  The Film is vile and reprehensible.  Plaintiff was unaware of the vile content contained in the Film, as the content and overall purpose of the Film was concealed from her, and others who appear in the Film, at all times by Defendant Nakoula and DOES 151 through 200.  This lawsuit is not an attack on the First Amendment, nor on the right of Americans to say what they think, but does request that the offending content be removed from the Internet because not

7

ER9

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 19 of 246

1  only it is not speech protected by the First Amendment, it violates Plaintiff Garcia's copyright in

2  her performance.

3      30.    Based on information and belief, in around September of 2012, Defendant Nakoula

4  published the Film, with the voices of Plaintiffs and her cast mates dubbed into Arabic, on

5  YouTube. The availability of the Film in Arabic has set off protests and violence first in the

6  Middle East, then worldwide. That violence resulted in the assassination of four embassy officials

7  in Libya, including United States Ambassador Christopher Stevens. On information and belief,

8  Defendant YouTube has made an editorial decision to block the Film from being shown on

9  computers located in Libya, Saudi Arabia, India, Indonesia, and Egypt, but not to block it from

10  being shown in most of the other countries in the world.

11      31.    The content of the actors' words in Arabic is currently not known to Plaintiff.

12      32.    After the Film was published on YouTube, Plaintiff received death threats, which

13  have increased in numerosity and threat level, despite Plaintiff's efforts to publicly clear her name.

14      33.    After the Film was published on YouTube, Plaintiff's family, fearing for their own

15  safety, informed her that she was no longer permitted to see her grandchildren, whom she

16  previously babysat regularly.

17      34.    After the Film was published on YouTube, Plaintiff's life changed substantially as

18  a direct result of the Film, in as much as she is now considered a target and the safety of those in

19  her presence cannot be guaranteed.

20      35.    On September 19, 2012, an Egyptian Cleric issued a fatwa against Ms. Garcia: "I

21  issue a fatwa and call on the Muslim Youth in American and Europe to do this duty, which is to

22  kill the director, the producer and the actors and everyone who helped and promoted the film."

23      36.    Plaintiff requested that Google remove the Film from the YouTube Website. Her

24  request was purportedly passed on to the "YouTube team." The "YouTube team" refused to

25  remove the content, despite her privacy concerns.

26      37.    On September 24 and 25, 2012, Plaintiff issued five "takedown notices" to

27  Defendants Google and YouTube pursuant to the Digital Millenium Copyright Act. The notices

28  informed Defendants Google and YouTube that their continued broadcast of the Film on YouTube

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 20 of 246

violated Plaintiff's copyright in her performance. The takedown notices identified an aggregate of 171 URLs to be taken down. Defendants Google and YouTube have refused to expeditiously remove or disable the infringing content, despite requests that it do so. A true and correct copy of the DMCA notices is attached as Exhibit C.

38.    As a result of Defendant Nakoula's falsification of her words in the Film, and Defendants Google and YouTube's refusal to remove the video from the Internet, Plaintiff has suffered the violation of her copyright in her performance, severe emotional distress, the destruction of her career and reputation, the loss of her family and her livelihood, and other financial and non-pecuniary damage. She has been subjected to credible death threats and is in fear for her life and the life and safety of anyone associated with her.

39.    Despite the suggestions of Defendants and their lawyers that Plaintiff go into hiding, she refuses to do so, because she refuses to become a victim of terrorism and Defendant Nakoula's lies. Her courage in coming forward to clear her name and to tell the world that she does not condone the Film, its message, nor would have ever participated in such an effort is what Plaintiff believes is keeping her alive. Persons around the world, including Muslims, have reached out to her to thank her for taking a strong, public and brave stand against the Film's message, at great peril to herself.

**FIRST CAUSE OF ACTION**

**Direct Infringement of Copyright**

**Against All Defendants**

40.    Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint as though set forth in full.

41.    Plaintiff has properly applied to register, and she owns and controls, the copyright in her performance in *Desert Warrior* a/k/a *Innocence of Muslims*.

42.    Without authorization from Plaintiff, or any right under law, Defendants, via YouTube, have unlawfully distributed Plaintiff's copyrighted performance millions of times, by transmitting unauthorized copies of those works to YouTube users upon demand in violation of the Copyright Act, 17 U.S.C. § 106.

9

ER11

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 21 of 246

43.     Defendant Nakoula is directly liable for these acts of infringement under the Copyright Act. It was Defendant Nakoula who initially posted an infringing copy of Plaintiff's performance onto YouTube without authorization.

44.     Defendant YouTube is directly liable for these acts of infringement under the Copyright Act. The infringing file resides on servers controlled by Google and YouTube. Google and YouTube cause and affect the infringing act of transmitting copies of Plaintiff's performance works from their servers to the computers of their users. Moreover, YouTube does more than merely respond to user requests in a passive, content-neutral, and automated manner. As set forth above, *supra* paragraph 30, YouTube has played an active role in determining the countries in which the Film will be made available, so that the maximum number of YouTube users will access the infringing content. Thus, YouTube is actively involved in creating the supply of infringing content, making that content broadly available for distribution to the worldwide public at large, and physically transmitting and distributing that infringing content to users. It further exercises active control over the distribution process, in exercising editorial control over where it will and will not make the Film available. For these reasons, among others, YouTube engages in active conduct in unlawfully distributing Plaintiff's copyrighted performance to its users.   In order to facilitate and expedite distribution of infringing files to YouTube users, YouTube also makes additional unauthorized copies of Plaintiff's copyrighted performance on its own servers in violation of the Copyright Act, 17 U.S.C. § 106. These unauthorized copies are not made by or at the request of YouTube users, but rather through the decisions and actions of YouTube for its own business purposes.

45.     Defendant Google is jointly and severally liable for each act of YouTube's direct infringement because it directed and participated in, and benefited from, YouTube's infringing conduct as alleged herein, and its corporate policies have been the guiding spirit behind and central figure in YouTube's infringing activities. Further, Google earns advertising revenue from traffic directed to the YouTube site.

46.     Defendants DOES 1-200 are likewise liable under the Copyright Act for the acts of infringement identified above for acting in concert with Defendants to post infringing copies of

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 22 of 246

1    Plaintiff's performance without authorization, to operate YouTube and/or for infringing

2    reproductions and distributions of Plaintiff's copyrighted performance separately committed by

3    defendants DOES 1-200.

4        47.     The foregoing acts of infringement by Defendants have been willful, intentional

5    and purposeful, in disregard of and indifferent to Plaintiff's rights.

6        48.     As a direct and proximate result of Defendants' infringement of Plaintiff's

7    exclusive rights under copyright, Plaintiff is entitled to damages as well as Defendants' profits

8    pursuant to 17 U.S.C. § 504(b), including but not limited to advertising revenues resulting from

9    the placement of embedded advertisements in the Film as posted on YouTube.com.

10       49.     Alternatively, Plaintiff is entitled to the maximum statutory damages, in the amount

11    of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be

12    proper pursuant to 17 U.S.C. § 504(c).

13       50.     Plaintiff further is entitled to her attorneys' fees and full costs pursuant to 17 U.S.C.

14    § 505.

15       51.     Defendants' conduct is causing, and unless enjoined and restrained by this Court

16    will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated for

17    or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C.

18    § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further

19    infringements of her copyright and exclusive rights under copyright.

20                  **SECOND CAUSE OF ACTION**

21                 **Indirect Infringement of Copyright**

22                    **Against All Defendants**

23       52.     Plaintiff repeats and realleges paragraphs 1 through 51 of this Complaint as though

24    set forth in full.

25       53.     Users of YouTube have infringed, and continue to infringe, Plaintiff's copyright,

26    including without limitation those copyrighted works identified in Exhibit B, by reproducing and

27    distributing works owned by Plaintiff through YouTube, without authorization from Plaintiff, or

28    right under law, in violation of the Copyright Act, 17 U.S.C. § 106. Defendants are liable as

ER13

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 23 of 246

1  secondary infringers under the Copyright Act for each infringing reproduction and distribution of

2  Plaintiff's performance by YouTube users.

3       54.    Defendants YouTube and Google are liable under the Copyright Act for inducing

4  the infringing acts of YouTube users. As set forth above, Defendants YouTube and Google

5  operate YouTube and provide the YouTube website and service to their users, with the object of

6  promoting the use of YouTube to infringe Plaintiff's copyrighted performance, as shown by

7  YouTube's clear expression and other affirmative steps to foster infringement. As set forth above,

8  Defendants YouTube and Google's inducement of copyright infringement is evident from, among

9  other things: (i) the continuing infringing content available on YouTube; (ii) technical measures

10  designed to facilitate the widespread dissemination of Plaintiff's copyrighted content, even after

11  she has requested takedown of the infringing content; and (iii) Defendants' failure to use any of

12  the readily-available means to curtail infringement on the YouTube website. Defendants Google

13  and YouTube, therefore, are liable for inducing the unauthorized reproduction and distribution of

14  Plaintiff's copyrighted work in violation of the Copyright Act, 17 U.S.C. § 106.

15       55.    Defendant YouTube is separately liable under the Copyright Act for the infringing

16  acts of its users as a contributory copyright infringer. Defendant YouTube had actual and

17  constructive knowledge of massive copyright infringement of Plaintiff's copyrighted performance

18  by YouTube users, including, without limitation, by means of repeated notices by Plaintiff

19  concerning the infringing files. Indeed, YouTube has full knowledge that it is being used

20  continuously to infringe Plaintiff's rights are a copyright owner. Notwithstanding that knowledge,

21  Defendant YouTube continues to provide a material contribution to that infringement as set forth

22  above, including without limitation by (i) operating, maintaining and further developing the

23  YouTube website and service so as to facilitate YouTube users' infringement of Plaintiff's

24  copyright, (ii) storing infringing content on its servers and making reproductions of such works for

25  faster distribution, and (iii) making multiple copies of Plaintiff's copyrighted work to enable users

26  to quickly access Plaintiff's copyrighted work. Without the active contributions from defendant

27  YouTube, the infringement complained of herein could not have taken place at all, and certainly

28  not on the massive scale enabled by Defendants' actions. Defendant YouTube is, therefore,

12

ER14

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 24 of 246

1   contributorily liable for the unauthorized reproduction and distribution of Plaintiff's copyrighted

2   works, including those listed on Exhibit B hereto, in violation of the Copyright Act, 17 U.S.C. §

3   106.

4        56.    Defendant YouTube is separately liable under the Copyright Act for the infringing

5   acts of its users as a vicarious copyright infringer. Defendant YouTube had the right and ability to

6   supervise and control its users' infringing activity as set forth above, including without limitation

7   by removing Plaintiff's copyrighted performance from its website, terminating infringing users or

8   blocking their access to the YouTube website and service, by policing its computer service to

9   disable access to infringing content, and/or by implementing any number of industry standard

10  technologies or policies that would have substantially curtailed infringing uses of YouTube. In

11  addition, at all relevant times Defendant YouTube derived a financial benefit attributable to its

12  users' copyright infringement, including infringement of Plaintiff's copyright, specifically through

13  advertising revenues obtained by embedding advertisements into copies of the Film broadcast on

14  YouTube.com. Defendant YouTube is therefore vicariously liable for the unauthorized

15  reproduction and distribution of Plaintiff's copyrighted works, including those listed on Exhibit B

16  hereto, in violation of the Copyright Act, 17 U.S.C. § 106.

17       57.    Defendant Nakoula is jointly and severally liable for each act of infringement for

18  which YouTube is liable because he initially posted the infringing copy of Plaintiff's performance,

19  thus directing, participating in, and benefitting from YouTube's infringing conduct as alleged

20  herein.

21       58.    Defendants DOES 1-200 are liable under the Copyright Act for the acts of

22  infringement identified above, for acting in concert with Defendants to operate YouTube and/or

23  for unlawfully inducing, knowingly facilitating, and profiting from copyright infringement by

24  YouTube users.

25       59.    The foregoing acts of infringement by Defendants have been willful, intentional

26  and purposeful, in disregard of and indifferent to Plaintiff's rights.

27       60.    As a direct and proximate result of Defendants' infringement of Plaintiff's

28  exclusive rights under copyright, Plaintiff is entitled to damages as well as Defendants' profits

ER15

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 25 of 246

1  pursuant to 17 U.S.C. § 504(b), including but not limited to advertising revenues resulting from

2  the placement of embedded advertisements in the Film as posted on YouTube.com.

3    61.    Alternatively, Plaintiff is entitled to the maximum statutory damages, in the amount

4  of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be

5  proper pursuant to 17 U.S.C. § 504(c).

6    62.    Plaintiff further is entitled to her attorneys' fees and full costs pursuant to 17 U.S.C.

7  § 505.

8    63.    Defendants' conduct is causing, and unless enjoined and restrained by this Court

9  will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated for

10 or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

11 Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringements of

12 her copyright and exclusive rights under copyright.

13                          **THIRD CAUSE OF ACTION**

14                                   **Fraud**

15                    Against Defendant Nakoula and DOES 151-200

16   64.    The allegations set forth in paragraphs 1 through 63 are realleged and incorporated

17 herein by reference.

18   65.    Defendant Nakoula and DOE Defendants 151-200 represented to Plaintiff that the

19 Film was an "adventure" film, and that she would be depicted as a benign historical character.

20   66.    Defendant Nakoula and DOE Defendants 151-200's representations that he

21 intended to make an "adventure" film, and that Plaintiff would be depicted as a concerned mother,

22 were false. Instead, Defendant Nakoula and DOE Defendants 151-200 made an anti-Islam

23 propaganda film, in which Plaintiff is falsely made to appear to accuse the founder of the Islamic

24 religion of being a sexual deviant and child molester.

25   67.    When Defendant Nakoula and DOE Defendants 151-200 represented to Plaintiff

26 that he intended to make an "adventure" film, and that her character was merely to express

27 concern for her child, they knew that the representations were false, or they made the

28 representations with reckless disregard as to their falsity.

                                      14

ER16

68.     Defendant Nakoula and DOE Defendants 151-200 made the misrepresentations with the intent to defraud Plaintiff. In making the misrepresentations, Defendant Nakoula and DOE Defendants 151-200 intended to induce Plaintiff to rely upon the misrepresentations and to act upon them by agreeing to appear in Defendant Nakoula's "adventure" film.

69.     At the time Defendant Nakoula and DOE Defendants 151-200 made the misrepresentations, Plaintiff was unaware of the falsity of the misrepresentations. Plaintiff acted in reliance on the truth of the misrepresentations, in that the misrepresentations substantially influenced her actions, and Plaintiff was justified in relying on the misrepresentations.

70.     As a direct and proximate result of Defendant Nakoula and DOE Defendants 151-200's intentional misrepresentations, Plaintiff has incurred and will incur substantial damages, in an amount to be determined at trial, and additionally is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### Unfair Business Practices Under Cal. Bus. Prof. Code 17200

Against Defendant Nakoula and DOES 151-200

71.     The allegations set forth in paragraphs 1 through 70 are realleged and incorporated herein by reference.

72.     The aforementioned acts of Defendant Nakoula and the DOE Defendants constitute unfair, fraudulent and/or illegal business practices within the meaning of California's Unfair Competition Law ("UCL"), embodied in Section 17200, et seq. of the California Business and Professions Code.

73.     Defendant Nakoula and the DOE Defendants' actions, including fraudulently enticing Plaintiff into appearing in an anti-Islam propaganda film, manipulating the soundtrack of the Film to make it appear that Plaintiff was slandering Islam and Muslim beliefs.

74.     Defendant Nakoula and DOE Defendants 151-200's actions were fraudulent in that they deceived Plaintiff as to the true nature of the film project in which she participated, and in that they manipulated Plaintiff's image to create the false appearance of anti-Muslim bigotry by Plaintiff.

15

ER17

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 27 of 246

75. Defendant Nakoula and the DOE Defendants' actions were illegal in that they violated Section 16600 of the California Business and Professions Code in that the conduct has made it impossible to practice her trade, profession or occupation.

76. Defendant Nakoula and the DOE Defendants' actions were unfair in that, by fraudulently inducing Plaintiff to appear in *Desert Warrior* a/k/a *Innocence of Muslims*, and by rebroadcasting her dubbed and altered performance worldwide, they have made Plaintiff the target of numerous death threats, and caused her to lose her job and her family, all through no fault of her own.

77. Defendant Nakoula and the DOE Defendants' unfair, deceptive, and fraudulent practices originated from and/or occurred primarily in California. The decision to dub Plaintiff's voice to make it appear as though she was spouting inflammatory material about Islam was made in California. The decision to refuse to remove the Film from YouTube was made in California.

78. Pursuant to California Business & Professions Code Section 17203, Plaintiff seeks an order of this Court permanently enjoining Defendant Nakoula and the DOE Defendants from continuing to engage in the unlawful, unfair, and fraudulent conduct described herein. Plaintiff seeks an order requiring Defendant Nakoula and the DOE Defendants to: (1) immediately cease the unlawful, unfair, and fraudulent practices stated in this Complaint; and (2) award Plaintiff reasonable costs and attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5.

79. By reason of the alleged acts and conduct of Defendants, Plaintiff has suffered and will suffer further harm, including the loss of employment, the loss of her family, and the fear of violent retribution. Plaintiff is fully entitled to her remedies allowed under the UCL, including restitution for her lost wages and the cost of security protection for herself and her family.

## FIFTH CAUSE OF ACTION

### Against Nakoula and DOES 151-200

### Libel

80. The allegations set forth in paragraphs 1 through 79 are realleged and incorporated herein by reference.

16

ER18

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 28 of 246

81.     By making and republishing the Film, Defendant Nakoula and the DOE Defendants made a statement of and concerning Plaintiff or words that suggest that Plaintiff approved the finished product and message of the Film, and stating that Plaintiff said blasphemous words, which she did not.

82.     The statements are false as they pertain to Plaintiff. In making these statements, Defendant Nakoula and the DOE Defendants knew or should have known that Plaintiff has never called the founder of Islam a child molester.

83.     Furthermore, these statements are defamatory because they carry the meaning that Plaintiff is a religious bigot.

84.     The statements have been understood by those who saw and heard them on YouTube to mean that Plaintiff it a religious bigot.

85.     Plaintiff is informed and believes and thereon alleges that the statements that Defendant Nakoula, along with DOE Defendants 151-200, literally "put in her mouth," which Google refuses to remove from YouTube, have been seen and heard by millions of individuals throughout the world, whose names are not presently known to Plaintiff.

86.     These words were slanderous because they tend to injure Plaintiff in her profession, trade and business by imputing to her a general disqualification for working with the public, something that the occupation and duties of her profession peculiarly require, and the profitability of which is naturally lessened if she is believed to be a religious bigot.

87.     These words published by Defendant Nakoula and the DOE Defendants were stated not as a matter of opinion, but as a matter of fact, and therefore were not protected or privileged in any way.

88.     The words published by Defendant Nakoula and the DOE Defendants also were slanderous because Plaintiff never called the founder of Islam a child molester, either on the set of the Film or at any other place or time.

89.     At no relevant time did Plaintiff ratify or consent to the dissemination of the statements, on YouTube or anywhere else. In fact, Plaintiff subsequently contacted Defendant

ER19

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 29 of 246

1    Nakoula to ask him to remove the Film from YouTube and also contacted Google and YouTube to

2    request the same thing, numerous times.

3         90.    Plaintiff is informed and believes and thereon alleges that Defendant Nakoula and

4    the DOE Defendants repeated the false statements to others, including a worldwide audience on

5    YouTube.

6         91.    The words that Defendant Nakoula and the DOE Defendants put, and kept, in

7    Plaintiff's mouth carried a defamatory meaning by their very terms and were understood by those

8    who saw and heard them in a way that defamed Plaintiff.

9         92.    Defendant Nakoula and the DOE Defendants further published such statements

10   deliberately and with knowledge and intention that such words would be heard by a worldwide

11   YouTube.com audience.

12        93.    As a proximate result of Defendant Nakoula and the DOE Defendants' publication

13   of the false statements, Plaintiff has suffered loss of her reputation, shame, mortification, and hurt

14   feelings all to her general damages in a sum to be proven at trial.

15        94.    As a further result of Defendant Nakoula and the DOE Defendants' publication of

16   the false statements, Plaintiff has suffered special damages according to proof.

17        95.    As the above-described statements were published with malice and oppression and

18   fraud, an award of exemplary and punitive damages is necessary and appropriate.

19                              **SIXTH CAUSE OF ACTION**

20                    **Against Defendant Nakoula and the DOE Defendants**

21                      **Intentional Infliction of Emotional Distress**

22        96.    The allegations set forth in paragraphs 1 through 95 are realleged and incorporated

23   herein by reference.

24        97.    The conduct set forth hereinabove was extreme and outrageous and an abuse of the

25   authority and position of Defendant Nakoula and the DOE Defendants, and each of them.  Said

26   conduct was intended to cause severe emotional distress, or was done in conscious disregard of the

27   probability of causing such distress. Said conduct exceeded the inherent risks of Plaintiff's work

28   as an actress and was not the sort of conduct normally expected to occur in the production of a

                                        18

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 30 of 246

1   Film, or in the posting of a film to YouTube. Defendants, and each of them, engaged in conduct

2   intended to make Plaintiff a target of extremist violence.

3         98.    The foregoing conduct did in fact cause Plaintiff to suffer extreme emotional

4   distress. As a proximate result of said conduct, Plaintiff suffered embarrassment, anxiety,

5   humiliation and emotional distress, and will continue to suffer said emotional distress in the future

6   in an amount according to proof.

7                                   **PRAYER**

8        Plaintiff Garcia prays for judgment against Defendants as follows:

9         1.    For a preliminary and permanent injunction enjoining Defendants and their

10   respective officers, agents, servants, employees, and attorneys, and all persons in active concert or

11   participation with each or any of them, from directly committing, aiding, encouraging, enabling,

12   inducing, causing, materially contributing to, or otherwise facilitating the unauthorized

13   reproduction or distribution of copies of Plaintiff's copyrighted performance.

14         2.    For all damages to which Plaintiff may be entitled, including but not limited to

15   Defendants' profits, in such amounts as may be found. Alternatively, as Plaintiff's election, for

16   statutory damages in the maximum amount allowed by law.

17         3.    For special damages arising from the loss of business and business opportunities,

18   according to proof at trial.

19         4.    For restitution.

20         5.    For exemplary and punitive damages.

21         6.    For attorney fees and costs of suit incurred herein.

22         7.    For such other and further relief as the Court deems just and proper.

23

24                         THE ARMENTA LAW FIRM, A.P.C.

25   Dated: September _26_ 2012

26

27             By: _____

28                        M. Cris Armenta
                                 Attorneys for Plaintiff
                                 Cindy Lee Garcia

ER21

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 31 of 246

1

2    **REQUEST FOR JURY TRIAL**

3         Plaintiff hereby requests a trial for jury.

4    Dated: September 26, 2012          THE ARMENTA LAW FIRM. A.P.C.

5

6                                       By: _____

7                                              M. Cris Armenta
                                               Attorneys for Plaintiff
8                                              Cindy Lee Garcia

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

ER22

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 32 of 246

**EXHIBIT A**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 33 of 246

60     EXT. KERO'S TENT - DAY

Kero's wife, Om Roman, is sitting quietly and knitting when
Kero enters excitedly.

>                    KERO
>           Let the house of Kero be joyous.

>                    RAMON
>           What is wrong with you husband? We
>           do not have that much to be happy
>           for.

>                    KERO
>           Oh but we do. The Master has asked
>           our daughter's hand in marriage.

RAMON seems concerned.

>                    RAMON
>           And this make you happy?

>                    KERO
>           Yes, of course, it makes me very
>           happy! My daughter shall have the
>           stars!

>                    RAMON
>           Are you crazy? Is your George
>           crazy? Your daughter has not yet
>           reached her 13th year yet. George
>           must be fifty five years old by
>           now!

>                    ABI KERO
>           He is fifty-three not fifty-five.
>           He has both wealth and power. My
>           daughter shall be his bride whether
>           we say yes or no. And he has
>           promised to make the Caliph of the
>           Bossas after him.

>                    RAMON
>           Then there is nothing I can do for
>           my poor daughter Hillary. She is
>           not yet thirteen years of age and
>           he is fifty three. What a strange
>           world that we live in... what a
>           strange world.

There is a moment of silence and George enters.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 34 of 246

60    EXT. KERO'S TENT - DAY

Kero's wife, Om Roman, is sitting quietly and knitting when
Kero enters excitedly.

                    KERO
            Let the house of Kero be joyous.

                    RAMON
            What is wrong with you husband? We
            do not have that much to be happy
            for.

                    KERO
            Oh but we do. The Master has asked
            our daughter's hand in marriage.

RAMON seems concerned.

                    RAMON
            And this make you happy?

                    KERO
            Yes, of course, it makes me very
            happy! My daughter shall have the
            stars!

                    RAMON
            Are you crazy? Is your George
            crazy? Your daughter has not yet
            reached her 13th year yet. George
            must be fifty five years old by
            now!

                    ABI KERO
            He is fifty-three not fifty-five.
            He has both wealth and power. My
            daughter shall be his bride whether
            we say yes or no. And he has
            promised to make the Caliph of the
            Bossas after him.

                    RAMON
            Then there is nothing I can do for
            my poor daughter Hillary. She is
            not yet thirteen years of age and
            he is fifty three. What a strange
            world that we live in... what a
            strange world.

There is a moment of silence and George enters.



Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 35 of 246

61     EXT. HOUSE OF XERO - DAY

RAMON goes outside to fetch her daughter. Some women are
doing chores. She finds the children playing together on the
tree swings. She takes Hillary by the hand and goes inside
the house.

ADD TO DAY

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 36 of 246

62     INT. HOUSE OF KERO - DAY

                    KERO
          Thank you Master. You bless me by
          coming into my humble home.

                    GEORGE
          You are a good man and a good
          follower of me Kero. You will be a
          good father in law and you shall
          indeed have your place in God's
          paradise.

                    KERO
          Praise be to God... praise be to
          God.

     RAMON returns leading Hillary by the hand. She takes her over
     to George and puts her hand into George's hand.

                    RAMON
          Hillary this is George, Master. He
          is going to be your husband.

     George looks at her with that look that only a man can give a
     woman as he rubs the back of her hand.

                    GEORGE
          Isn't that wonderful Hillary, my
          bride? Praise be to God.

     George stands and picks Hillary up in his arms.

                    GEORGE (CONT'D)
          Come, for now you belong to me, to
          the Master.

     He walks toward the door carrying the girl. Hillary looks
     back toward her mother and reaches out a hand. She calls out,
     nearly in tears, simply because she does not understand what
     just happened.

                    HILLARY
          Mother... Mother... RAMON, I'm
          hungry.

     RAMON looks at her.

                    RAMON
          It is okay Hillary... every thing
          will be alright.

     RAMON watches them leave. It is obvious she doesn't believe
     her own words. A single tear runs down her cheek.

ER27

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 37 of 246

63    EXT. KERO'S TENT - DAY

George carries Hillary outside as the other women are
blessing them.

                    WOMEN
          May God bless you both... May God
          bless you both.

Hillary is frightened and does not know what is happening.
Once again she calls out to her mother.

                    HILLARY
          Mother... Mother... Mother I'm
          hungry.

                    GEORGE
          With me there is no need to be
          frightened, my bride.

                    HILLARY
          Where are you taking me?

                    GEORGE
          Wherever I want to go. I am the
          Master. Do you not know that my
          bride?

George says something in her ear. She slaps him on his face,
but he just laughs.

ER28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 38 of 246

GEORGE

Kero... did you announce the good
news to the bride? I would not be
surprised if she has fainted over
the good news.

RAMON

I am the only one who came close to
fainting.

GEORGE

From joy, of course, my mother in
law.

RAMON

Of course, my son in law.

GEORGE

I already knew that or I would not
be the Master. Now where is my
bride? Where is my beautiful bride,
my father in law?

RAMON

She is on the swing with other
children, my son in law.

KERO

Go and fetch her woman. Do not keep
your soon to be son in law
waiting... I mean the Master
waiting!

RAMON does as she is told and immediately gets up and heads
out the door.

ER29

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 39 of 246

**EXHIBIT B**

Copyright Office fees are subject to change.
For current fees, check the Copyright Office
website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

Privacy Act Notice: Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**Form PA**
For a Work of Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA          PAU
EFFECTIVE DATE OF REGISTRATION

Month          Day          Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼
"Desert Warrior"

PREVIOUS OR ALTERNATIVE TITLES ▼
"Innocence of Muslims"

NATURE OF THIS WORK ▼ See Instructions

Audio-visual work, pertaining to Cindy Lee Garcia's dramatic performance in "Desert Warrior" and put on film

**2**

**a**

NAME OF AUTHOR ▼
Cindy Lee Garcia

DATES OF BIRTH AND DEATH
Year Born ▼ 1957    Year Died ▼ NA

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of U.S.A.
Domiciled in _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Dramatic performance in film entitled "Desert Warriors" affixed to film

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

NAME OF AUTHOR ▼
Cindy Lee Garcia

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of U.S.A.
Domiciled in _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Dramatic performance fixed in tangible medium of expression (i.e. film)

**c**

NAME OF AUTHOR ▼
Cindy Lee Garcia

DATES OF BIRTH AND DEATH
Year Born ▼ 1957    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of U.S.A.
Domiciled in _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
2011 Year
This information must be given in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month July    Day 2    Year 2012
only partially published, U.S.A.    Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Cindy Lee Garcia c/o The Armenta Law Firm, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

See instructions before completing this space

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
[Ms. Garcia did not sign any work for hire agreement nor a release or relinquishment of her rights when she acted in "Desert Warrior."

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

MORE ON BACK ▶
• Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions.
• Sign the form at line 8

DO NOT WRITE HERE
Page 1 of _____ pages

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 40 of 246

ER31

| EXAMINED BY | | FORM PA |
|---|---|---|
| CHECKED BY | | |
| □ CORRESPONDENCE<br>Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

□ Yes  ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is No, do not check box A, B, or C.

a. □ This is the first published edition of a work previously registered in unpublished form.

b. ☑ This is the first application submitted by this author as copyright claimant.

c. □ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

**a**  Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

See instructions before completing this space

**b**  Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

Garcia gave a dramatic performance for "Desert Warrior" fixed in film in 2011. Since then, the producer of the film altered her performance, dubbing in words she did not say, and changing the film's intent and name to "Innocence of Muslims."

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**a**  Name ▼          Account Number ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip▼

**b**  M. Cris Armenta, The Armenta Law Firm APC, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

Area code and daytime telephone number  ( 310 ) 826-2826          Fax number  ( 310 ) 826-5456

Email  cris@crisarmenta.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶

☑ author

□ other copyright claimant

□ owner of exclusive right(s)

□ authorized agent of ____

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Cindy Lee Garcia          Date  September 25, 2012

Handwritten signature (X) ▼

See attached faxed signature

X ____

| Certificate will be mailed in window envelope to this address: | Name ▼ |
|---|---|
| | Number/Street/Apt ▼ |
| | City/State/Zip ▼ |

**YOU MUST**
- Complete all necessary spaces
- Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Library of Congress
Copyright Office-PA D
101 Independence Avenue SE
Washington, DC 20559-6230

**9**

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

t Office: 2010-357-993/60,085

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

TOTAL P.03

| EXAMINED BY | | FORM VA |
| CHECKED BY | | |
| ☐ CORRESPONDENCE<br>☐ Yes | | FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**5** PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is No, do not check box A, B, or C.

a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼   Year of Registration ▼

**6** DERIVATIVE WORK OR COMPILATION Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation
a  Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

b  Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed ▼
Garcia gave a dramatic performance for "Desert Warrior" fixed in film in 2011. Since then, the producer of the film altered her performance, dubbing in words she did not say, and changing the film's intent and name to "Innocence of Muslims."

**7** a  DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account
Name ▼   Account Number ▼

b  CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼
M. Cris Armenta, The Armenta Law Firm APC, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

Area code and daytime telephone number ( 310 ) 826-2826    Fax number ( 310 ) 826-5456

Email cris@crisarmenta.com

**8** CERTIFICATION* I, the undersigned, hereby certify that I am the
Check only one ▶  ☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Cindy Lee Garcia    Date September 25, 2012

Handwritten signature (X) ▼
X _Cindy Lee Garcia_

**9** Certificate will be mailed in window envelope to this address:
Name ▼
Number/Street/Apt ▼
City/State/Zip ▼

Library of Congress
Copyright Office-PAO
101 Independence Ave. S.E.
Washington, DC 20559-6000

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Sent from my iPhone

Begin forwarded message:

> **From:** Copyright Office <cop-rc@loc.gov>
> **Date:** September 25, 2012 1:42:10 PM EDT
> **To:** Cris Armenta <cris@crisarmenta.com>
> **Subject: Acknowledgement of Receipt**

Thank you for submitting your registration claim using the electronic Copyright Office (eCO) System. This email confirms that your application and payment for the work Desert Warrior were received on 09/25/2012. The following applies to registration claims only (not preregistrations):

The effective date of registration is established when the application, payment AND the material being registered have been received. If you have not yet sent the material to be registered, logon to eCO (https://eco.copyright.gov/eService_enu/) and click the blue case number associated with your claim in the Open Cases table, then do one of the following:

Upload a digital copy (if eligible): Click the "Upload Deposit" button at the top of the Case Summary screen, then browse and select the file(s) you wish to upload. Be sure to click the "Upload Complete" button on the Case Summary screen when you have finished uploading your file(s). Note: only certain categories of works are eligible to be registered with digital copies (See FAQs: http://www.copyright.gov/eco/faq.html#eCO_1.4 and http://www.copyright.gov/eco/help-file-types.html).

Mail a physical copy(ies): Click the Create Shipping Slip button at the top of the Case Summary screen, then click the Shipping Slip link that appears in the Send By Mail table. Print out and attach the shipping slip to the copy(ies) of your work. For multiple works, be sure to attach shipping slips to the corresponding copies.

A printable copy of the application will be available within 24 hours of its receipt. To access the application, click the My Applications link in the left top most navigation menu of the Home screen.

You will be issued a paper certificate by mail after the registration has been completed. You may check the status of this claim via eCO using this number 1-828151641. [THREAD ID: 1-DP2T9R]

United States Copyright Office

1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 43 of 246

**To:** David Hardy; Credence Sol; Jason Armstrong
**Cc:** Heather Rowland
**Subject:** Fwd: Acknowledgement of Receipt

**Heather Rowland**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 45 of 246

**From:** Cris Armenta
**Sent:** Tuesday, September 25, 2012 10:44 AM

ER36

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 46 of 246

## Heather Rowland

**Subject:** FW: Case# 1-828151641 Cindy Lee Garcia     Attn: Marti/212230

**From:** ctoinfo [mailto:ctoinfo@loc.gov]
**Sent:** Wednesday, September 26, 2012 11:22 AM
**To:** Heather Rowland
**Cc:** ctoinfo
**Subject:** RE: Case# 1-828151641 Cindy Lee Garcia Attn: Marti/212230

Heather Rowland,

That's fine.

**Kind Regards,**

**Contractor to LOC/Copyright Technology Office**
**Library of Congress**
**101 Independence Ave, SE**                    mw
**Washington DC 20540**
**Office # 202-707-3002**

**From:** Heather Rowland [mailto:heather@crisarmenta.com]
**Sent:** Wednesday, September 26, 2012 2:21 PM
**To:** ctoinfo
**Subject:** RE: Case# 1-828151641 Cindy Lee Garcia Attn: Marti/212230

I will mail a copy on DVD/R and it will be to your office tomorrow via FedEx. Does that work?

Thanks,

Heather Rowland
Assistant to M. Cris Armenta
The Armenta Law Firm APC
11900 Olympic Boulevard, Suite 730
Los Angeles, CA 90064
(310) 601-8715 Direct
(310) 384-3548 Cell
(310) 826-5456 Fax
www.crisarmenta.com

**From:** ctoinfo [mailto:ctoinfo@loc.gov]
**Sent:** Wednesday, September 26, 2012 11:19 AM
**To:** Heather Rowland
**Cc:** ctoinfo
**Subject:** RE: Case# 1-828151641 Cindy Lee Garcia Attn: Marti/212230

ER37

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 47 of 246

Heather Rowland,

It is not recommended that you do both, only one or the other.

**The upload feature has been enabled.**

**Multiple uploads are permitted.**

**You can either upload your work electronically or send it in by mail. You should log into your account, click on open cases, click on your case number (make sure that your pop-up blocker is off), and you should then see buttons that will give you the option to upload your work electronically or send it by mail. If you want to upload, click on the 'upload deposit' button. A screen should come up (maximize that window) that will allow you to browse for your work and submit it electronically via upload to the Copyright Office. After clicking on the "Upload Deposit" button to upload your files, wait until you have _completed uploading ALL_ of your files THEN AND ONLY THEN click on the _"Upload Complete"_ button to complete the process. If you want to send your work by mail you should click on the button to 'create a shipping slip'. It should create a link for a shipping slip that you can click on that will open up the slip. You should print it out and send in with your work.**

**If you continue to experience problems please phone for assistance.**

**Kind Regards,**

**Contractor to LOC/Copyright Technology Office**
**Library of Congress**
**101 Independence Ave, SE**        mw   2122230
**Washington DC 20540**
**Office # 202-707-3002**
--------------

2

ER38

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 48 of 246

From: (310) 826-2826
Maria Armenta
The Armenta Law Firm
11900 Olympic Boulevard
Los Angeles, CA 90064

Origin ID: CIBA



Ship Date: 26SEP12
ActWgt: 1.0 LB
CAD: 8678074/INET3300

SHIP TO: (310) 601-8715

**Copyright Office - MP**
**Library of Congress**
**101 INDEPENDENCE AVE SE**

**WASHINGTON, DC 20559**

BILL SENDER

Delivery Address Bar Code

Ref #        Garcia
Invoice #
PO #
Dept #

THU - 27 SEP  A2
**STANDARD OVERNIGHT**

TRK#   **7990 5616 8750**
0201

**XC YKNA**

20559
DC-US
**DCA**



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

1 of 1

9/26/2012 11:05 AM

ER39

**EXHIBIT C**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 50 of 246

**Cris Armenta**

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy <David.Hardy@DMCASolutions.com> |
| **Sent:** | Monday, September 24, 2012 12:56 PM |
| **To:** | debratucker@google.com; copyright@google.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request |
| **Attachments:** | YouTube-Google Takedown Notice (9-24-12).pdf |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *"The Innocence of the Muslims"* that have been posted on YouTube.

I am also faxing a copy of this Takedown Request to you at (650) 872-8513.

Sincerely,

David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

ER41

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 51 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

September 24, 2012

**Sent by Facsimile & Email**
YouTube, LLC
Attn: Debra Tucker, Designated Agent
901 Cherry Avenue
San Bruno, CA
Fax:   (650) 872-8513
Email: debratucker@google.com
Email: copyright@google.com

Re:   YouTube DMCA Takedown Request: Copyright Infringement
      Video – *The Innocence of the Muslims*

Dear Ms. Tucker:

DMCA Solutions, LLC, acting as agent on behalf of copyright holder Cindy Lee Garcia for the
purposes of filing this Takedown Request, hereby submits the following:

What is the Issue:

> Copyright Infringement: Cindy Lee Garcia, an actress, has an original copyright that
> remains vested in her in her audio-visual dramatic performance in a film in which her
> performance has been altered and adulterated without her consent and posted on
> YouTube, infringing her copyright.

Copyright Infringement: Who is Affected

> Cindy Lee Garcia, the copyright owner

Identification of the Copyrighted Work Claimed to have been Infringed:

> Cindy Lee Garcia's audio-visual dramatic performance in a film originally titled *The
> Desert Warrior* but altered without her consent and posted on YouTube under the title
> *The Innocence of the Muslims*.

Identification of the material that is claimed to be infringing

> Video posted on YouTube under the title *The Innocence of Muslims* but originally titled
> *The Desert Warrior*

URLs of the Offending Video:

> http://www.youtube.com/watch?v=1nW54iK-7Cs&feature=fvsr
>
> http://www.youtube.com/watch?v=2Q_tD0BGhy4
>
> http://www.youtube.com/watch?v=fBDTS_YAWyl

ER42

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 52 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

http://www.youtube.com/watch?v=ffVBdyU5ONQ&feature=related

http://www.youtube.com/watch?v=FteusCTGO3M

http://www.youtube.com/watch?v=HWHajR9IMME

http://www.youtube.com/watch?v=I7Smzt607oE

http://www.youtube.com/watch?v=i7Smzt607oE&feature=fvsr

http://www.youtube.com/watch?v=VnYcWmcYBrw&feature=fvsr

http://www.youtube.com/watch?v=X6s8eFkt90Q

http://www.youtube.com/watch?v=XKtTIPnZ8iU

http://www.youtube.com/watch?v=ypz3kS75bsw

Copyright Owner's Name:    Cindy Lee Garcia

Authorized Agent:          DMCA Solutions, LLC
                           31 Hastings Street
                           Mendon, MA 01756
                           USA
                           (202) 350-0200
                           David.Hardy@DMCASolutions.com

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

ER43

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 53 of 246

## Cris Armenta

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy <David.Hardy@DMCASolutions.com> |
| **Sent:** | Monday, September 24, 2012 6:47 PM |
| **To:** | debratucker@google.com; copyright@youtube.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request #2 |
| **Attachments:** | YouTube - Google Takedown Request #2 (9-24-12).docx |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *"The Innocence of the Muslims"* that have been posted on YouTube.

I am also faxing a copy of this Takedown Request to you at (650) 872-8513.

Sincerely,

David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

ER44

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 54 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

September 24, 2012

**Sent by Facsimile & Email**
YouTube, LLC
Attn: Debra Tucker, Designated Agent
901 Cherry Avenue
San Bruno, CA
Fax:    (650) 872-8513
Email: debratucker@google.com
Email: copyright@youtube.com

Re:    YouTube DMCA Takedown Request: Copyright Infringement
       Video – *The Innocence of the Muslims* – Takedown Request #2

Dear Ms. Tucker:

DMCA Solutions, LLC, acting as agent on behalf of copyright holder Cindy Lee Garcia for the purposes of filing this Takedown Request, hereby submits the following:

<u>What is the issue</u>:

> Copyright Infringement: Cindy Lee Garcia, an actress, has an original copyright that remains vested in her in her audio-visual dramatic performance in a film in which her performance has been altered and adulterated without her consent and posted on YouTube, infringing her copyright.

<u>Copyright Infringement: Who is Affected</u>

> Cindy Lee Garcia, the copyright owner

<u>Identification of the Copyrighted Work Claimed to have been Infringed</u>:

> Cindy Lee Garcia's audio-visual dramatic performance in a film originally titled *The Desert Warrior* but altered without her consent and posted on YouTube under the title *The Innocence of the Muslims*.

<u>Identification of the material that is claimed to be infringing</u>

> Video posted on YouTube under the title *The Innocence of Muslims* but originally titled *The Desert Warrior*

> <u>URLs of the Offending Video</u>:

> http://www.youtube.com/watch?v=MAiOEV0v2RM

> http://www.youtube.com/watch?v=X_wTvx6-ok4

> http://www.youtube.com/watch?v=xMZcd6UY1s4

ER45

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 55 of 246

Page 2

http://www.youtube.com/watch?v=X6s8eFkt90Q

http://www.youtube.com/watch?v=wdw-cgjH-ZU

http://www.youtube.com/watch?v=oLip6P2ksd8

http://www.youtube.com/watch?v=3dUwhPlAi_Y

http://www.youtube.com/watch?v=PbX3Caqm960

http://www.youtube.com/watch?v=qmodVun16Q4

http://www.youtube.com/watch?v=LoBwR9KEGUc&bpctr=1348536278

http://www.youtube.com/watch?v=E1ggHpWXvbs

http://www.youtube.com/watch?v=p_wRkA16SNg

http://www.youtube.com/watch?v=PbX3Caqm960

http://www.youtube.com/watch?v=qmodVun16Q4

http://www.youtube.com/watch?v=qmodVun16Q4

http://www.youtube.com/watch?v=n20IbInB2XM

http://www.youtube.com/watch?v=XlWYZA1MgAA

http://www.youtube.com/watch?v=SL8hW__ZZaY

http://www.youtube.com/watch?v=8QTtKQR0PBY

http://www.youtube.com/watch?v=jDigtAhMelY


Copyright Owner's Name:    **Cindy Lee Garcia**

Authorized Agent:          **DMCA Solutions, LLC**
                           **31 Hastings Street**
                           **Mendon, MA 01756**
                           **USA**
                           **(202) 350-0200**
                           **David.Hardy@DMCASolutions.com**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 56 of 246

Page 3

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 57 of 246

## Cris Armenta

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy <David.Hardy@DMCASolutions.com> |
| **Sent:** | Monday, September 24, 2012 7:23 PM |
| **To:** | debratucker@google.com; copyright@youtube.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request #3 (9-24-12) |
| **Attachments:** | YouTube-Google Takedown Request #3 (9-24-12).docx |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *"The Innocence of the Muslims"* that have been posted on YouTube.

Sincerely,

David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

ER48

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 58 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

September 24, 2012

**Sent by Facsimile & Email**
YouTube, LLC
Attn: Debra Tucker, Designated Agent
901 Cherry Avenue
San Bruno, CA
Fax:     (650) 872-8513
Email: debratucker@google.com
Email: copyright@youtube.com

Re:     YouTube DMCA Takedown Request: Copyright Infringement
        Video -- *The Innocence of the Muslims* -- Takedown Request #3

Dear Ms. Tucker:

DMCA Solutions, LLC, acting as agent on behalf of copyright holder Cindy Lee Garcia for the
purposes of filing this Takedown Request, hereby submits the following:

What is the Issue:

        Copyright Infringement: Cindy Lee Garcia, an actress, has an original copyright that
        remains vested in her in her audio-visual dramatic performance in a film in which her
        performance has been altered and adulterated without her consent and posted on
        YouTube, infringing her copyright.

Copyright Infringement: Who is Affected

        Cindy Lee Garcia, the copyright owner

Identification of the Copyrighted Work Claimed to have been Infringed:

        Cindy Lee Garcia's audio-visual dramatic performance in a film originally titled *The
        Desert Warrior* but altered without her consent and posted on YouTube under the title
        *The Innocence of the Muslims*.

Identification of the material that is claimed to be infringing

        Video posted on YouTube under the title *The Innocence of Muslims* but originally titled
        *The Desert Warrior*

        URLs of the Offending Video:

        http://www.youtube.com/watch?v=BJqhCKyLOvE

        http://www.youtube.com/watch?v=vElHfaiK93M

        http://www.youtube.com/watch?v=YSwi94xfNFE

ER49

Page 2

http://www.youtube.com/watch?v=jDYdIkpgStY

http://www.youtube.com/watch?v=IE5McEN4HKA&bpctr=1348538846

http://www.youtube.com/watch?v=A2aNEreHzi0

http://www.youtube.com/watch?v=YSwi94xfNFE

http://www.youtube.com/watch?v=KCD33i3kDkk

http://www.youtube.com/watch?v=J-8icjUPpNI

http://www.youtube.com/watch?v=GKRHED2RuL0

http://www.youtube.com/watch?v=zvxJtVDA5s4

http://www.youtube.com/watch?v=LrIfRLh1OJM

http://www.youtube.com/watch?v=i7Smzt607oE

http://www.youtube.com/watch?v=IutCBSBPa0U&bpctr=1348539718

http://www.youtube.com/watch?v=ezflX0bU01I

http://www.youtube.com/watch?v=CHjLxHRK3Yk

http://www.youtube.com/watch?v=-iFHMZGLp48&bpctr=1348539839

http://www.youtube.com/watch?v=i7Smzt607oE

http://www.youtube.com/watch?v=i7Smzt607oE

http://www.youtube.com/watch?v=Vh1G0nV4h-w

Copyright Owner's Name:    **Cindy Lee Garcia**

Authorized Agent:    **DMCA Solutions, LLC**
**31 Hastings Street**
**Mendon, MA  01756**
**USA**
**(202) 350-0200**
David.Hardy@DMCASolutions.com

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 59 of 246

ER50

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

Page 3

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 61 of 246

## Cris Armenta

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy <David.Hardy@DMCASolutions.com> |
| **Sent:** | Monday, September 24, 2012 10:09 PM |
| **To:** | debratucker@google.com; copyright@youtube.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request #4 |
| **Attachments:** | YouTube-Google Takedown Request #4 (9-24-12).docx |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *The Innocence of the Muslims* that have been posted on YouTube.

Sincerely,

David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

ER52

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 62 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

September 24, 2012

**Sent by Email**
YouTube, LLC
Attn: Debra Tucker, Designated Agent
901 Cherry Avenue
San Bruno, CA
Email: debratucker@google.com
Email: copyright@youtube.com

Re:    YouTube DMCA Takedown Request: Copyright Infringement
       Video – *The Innocence of the Muslims* – Takedown Request #4

Dear Ms. Tucker:

DMCA Solutions, LLC, acting as agent on behalf of copyright holder Cindy Lee Garcia for the
purposes of filing this Takedown Request, hereby submits the following:

**What is the Issue:**

    Copyright Infringement: Cindy Lee Garcia, an actress, has an original copyright that
    remains vested in her in her audio-visual dramatic performance in a film in which her
    performance has been altered and adulterated without her consent and posted on
    YouTube, infringing her copyright.

Copyright Infringement: Who is Affected

    Cindy Lee Garcia, the copyright owner

Identification of the Copyrighted Work Claimed to have been Infringed:

    Cindy Lee Garcia's audio-visual dramatic performance in a film originally titled *The
    Desert Warrior* but altered without her consent and posted on YouTube under the title
    *The Innocence of the Muslims*.

Identification of the material that is claimed to be infringing

    Video posted on YouTube under the title *The Innocence of Muslims* but originally titled
    *The Desert Warrior*

    URLs of the Offending Video:

    http://www.youtube.com/watch?v=1RagKWM8ldk

    http://www.youtube.com/watch?v=1wkyqd9_NtY

    http://www.youtube.com/watch?v=2AJ2ElzJ11w

ER53

DMCA Solutions
31 Hastings Street
Mendon, MA 01756

http://www.youtube.com/watch?v=2IC2wpYa7KE

http://www.youtube.com/watch?v=2TI9GbNk_gY

http://www.youtube.com/watch?v=6KJq-rNjLk8

http://www.youtube.com/watch?v=6ySE-yYeeIE

http://www.youtube.com/watch?v=7EmQRlbQbJk

http://www.youtube.com/watch?v=7qcFACwfiI8

http://www.youtube.com/watch?v=8jYrk--UFh0

http://www.youtube.com/watch?v=A1ezRBS5Jhs

http://www.youtube.com/watch?v=a5gABvYSbis

http://www.youtube.com/watch?v=ADdj48gHKGQ

http://www.youtube.com/watch?v=AQqqv6_RiD0

http://www.youtube.com/watch?v=Ar3ju0D81Lg

http://www.youtube.com/watch?v=B-pGehBwKFY

http://www.youtube.com/watch?v=BGYNJmIaEbk

http://www.youtube.com/watch?v=bkpIXBnFT3c

http://www.youtube.com/watch?v=BMhwVg4jmO8

http://www.youtube.com/watch?v=BPQM2nfVyz0

http://www.youtube.com/watch?v=bYaKOBkd4io

http://www.youtube.com/watch?v=C7KeGApikUs

http://www.youtube.com/watch?v=dAaDPAnlvx0

http://www.youtube.com/watch?v=DIzesXXwUiU

http://www.youtube.com/watch?v=dx3z4Iy5Exs

http://www.youtube.com/watch?v=EHby-q7KgC0

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 63 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 64 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

http://www.youtube.com/watch?v=engQ9MX4Cyc

http://www.youtube.com/watch?v=eqQ74At3Psc

http://www.youtube.com/watch?v=fAMCA7JdQYk

http://www.youtube.com/watch?v=fm3P9mEi3Xk

http://www.youtube.com/watch?v=FsC7yHse-IQ

http://www.youtube.com/watch?v=gORgR7UiXgY

http://www.youtube.com/watch?v=h2MHczJyFNQ

http://www.youtube.com/watch?v=HDeWjf877yw

http://www.youtube.com/watch?v=HkGOubHiT6I

http://www.youtube.com/watch?v=HR0Vj-8dqTM

http://www.youtube.com/watch?v=Hv4HwUQS-yY

http://www.youtube.com/watch?v=IDK2yl6U48M

http://www.youtube.com/watch?v=Jslgjg3VkrE

http://www.youtube.com/watch?v=K3lAgMuNj0A

http://www.youtube.com/watch?v=kAQ5onF0Lc4

http://www.youtube.com/watch?v=Lgx1_JVxfZE

http://www.youtube.com/watch?v=lhBoPXEPUsQ

http://www.youtube.com/watch?v=Ln3VAwuLxCE

http://www.youtube.com/watch?v=mjoa3QazVy8

http://www.youtube.com/watch?v=n8s6bYHELaw

http://www.youtube.com/watch?v=NggEJ5PTPbw

http://www.youtube.com/watch?v=NuOFer5WqYo

http://www.youtube.com/watch?v=o3ey9m4ApdY

ER55

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 65 of 246

http://www.youtube.com/watch?v=o7RQqavrd0E

http://www.youtube.com/watch?v=O8Wc5PsXmPo

http://www.youtube.com/watch?v=Oqzib6N0wE8

http://www.youtube.com/watch?v=ov9bd23F1yA

http://www.youtube.com/watch?v=q26i0VLRbQE

http://www.youtube.com/watch?v=qf-44Q3SV0Y

http://www.youtube.com/watch?v=Ql3sDuWPvos

http://www.youtube.com/watch?v=QOcQvZ_UNwU

http://www.youtube.com/watch?v=rKOa87wgPp4

http://www.youtube.com/watch?v=SIPLKwpV6NE

http://www.youtube.com/watch?v=sXKyPPgrMi4

http://www.youtube.com/watch?v=tHpacSiAl9U

http://www.youtube.com/watch?v=tRa9L5OPS0M

http://www.youtube.com/watch?v=tRBGBGDZj7o

http://www.youtube.com/watch?v=tvV6p5lHDLM

http://www.youtube.com/watch?v=UDd6bine9io

http://www.youtube.com/watch?v=v5TBXoKErus

http://www.youtube.com/watch?v=Vh5LEJNE70c

http://www.youtube.com/watch?v=vNZW4KCPURQ

http://www.youtube.com/watch?v=vYnwZeZ8p8Y

http://www.youtube.com/watch?v=W1MYYfCg2X4

http://www.youtube.com/watch?v=Wl8FoYpglNw

http://www.youtube.com/watch?v=XKtTlPnZ8iU

http://www.youtube.com/watch?v=xLxzfOPDMlo

http://www.youtube.com/watch?v=xYVfBNKbfRQ

http://www.youtube.com/watch?v=YFogvC4_zgY

http://www.youtube.com/watch?v=zx-j8lzx6dQ

http://www.youtube.com/watch?v=_WCCdyRzC2A

http://www.youtube.com/watch?v=_yGsQ0fuaXA

Copyright Owner's Name:     **Cindy Lee Garcia**

Authorized Agent:           DMCA Solutions, LLC
                            31 Hastings Street
                            Mendon, MA 01756
                            USA
                            (202) 350-0200
                            David.Hardy@DMCASolutions.com

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 66 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 67 of 246

## Cris Armenta

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy <David.Hardy@DMCASolutions.com> |
| **Sent:** | Tuesday, September 25, 2012 10:05 AM |
| **To:** | debratucker@google.com; copyright@youtube.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request #5 |
| **Attachments:** | YouTube-Google Takedown Request #5 (9-25-12).docx |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *"The Innocence of the Muslims"* that have been posted on YouTube.

Sincerely,


David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 68 of 246

http://www.youtube.com/watch?v=9dqHt6gsoxU

http://www.youtube.com/watch?v=NQ5UAralcWE

http://www.youtube.com/watch?v=XxIaQKgiRLY

http://www.youtube.com/watch?v=DdOUoGfHg-I

http://www.youtube.com/watch?v=7Ojxb_VkHAs

http://www.youtube.com/watch?v=ns0rQ-_dZC0

http://www.youtube.com/watch?v=TGB24q8K97w

http://www.youtube.com/watch?v=YPVxQ3NDMPk

http://www.youtube.com/watch?v=YBISPSxUS5E

http://www.youtube.com/watch?v=Rdh8ayz0B-Y

http://www.youtube.com/watch?v=eeO3MEj8s38

http://www.youtube.com/watch?v=DmVq_j4-0wk

http://www.youtube.com/watch?v=oMR0cUljTE8

http://www.youtube.com/watch?v=YQ1w6HA3154

http://www.youtube.com/watch?v=QnMQ8k-4VgY

http://www.youtube.com/watch?v=G16J4zFn5Vl

http://www.youtube.com/watch?v=FTH0P746SJQ

http://www.youtube.com/watch?v=sOolJyq03Wk

http://www.youtube.com/watch?v=SB28D9KITkc

http://www.youtube.com/watch?v=6Bn5Sklxb1A

http://www.youtube.com/watch?v=T2wsrTj3j4o

http://www.youtube.com/watch?v=TJyCUUfMCDI

http://www.youtube.com/watch?v=Tt_nkMCCPxk

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

http://www.youtube.com/watch?v=GKi8pna53hg

http://www.youtube.com/watch?v=AP3Yg5vJNK0

http://www.youtube.com/watch?v=obe0PmyW6Ek

http://www.youtube.com/watch?v=1KMsSiBdplQ

http://www.youtube.com/watch?v=vP2soXU7quM

http://www.youtube.com/watch?v=dXEM4EmB2sM

http://www.youtube.com/watch?v=1ryHcwXjib0

http://www.youtube.com/watch?v=G3g_R-RovR8

http://www.youtube.com/watch?v=Yyk9ghudS5w

http://www.youtube.com/watch?v=w9zatob4YxY

http://www.youtube.com/watch?v=s_AOeKOGql0

http://www.youtube.com/watch?v=yW-fXw1EKXc

http://www.youtube.com/watch?v=UEZhWm2oK9k

http://www.youtube.com/watch?v=hftuDpFP4Wl

http://www.youtube.com/watch?v=4midXCjFO-Q

Copyright Owner's Name:    **Cindy Lee Garcia**

Authorized Agent:    **DMCA Solutions, LLC**
**31 Hastings Street**
**Mendon, MA 01756**
**USA**
**(202) 350-0200**
David.Hardy@DMCASolutions.com

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 69 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 70 of 246

Page 4

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 71 of 246

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

On September 27, 2012 I served the following document(s) described as:

**SUMMONS**

**COMPLAINT**

**NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM**

**NOTICE OF CASE ASSIGNMENT**

**CIVIL CASE COVER SHEET**

**CERTIFICATION AND NOTICE OF INTERESTED PARTIES**

on the interested parties in this action by placing true copies thereof addressed as follows:

> **Timothy L. Alger**
> **Perkins Coie LLP**
> **3150 Porter Drive**
> **Palo Alto, CA 94304-1212**
> **TAlger@perkinscoie.com**

☑ BY ELECTRONIC MAIL, pursuant to the consent of the above counsel

I declare under penalty of perjury under the law of the State of California that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on September 27, 2012 in Los Angeles, California.

Heather Rowland

1

ER62

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 72 of 246

1  M. Cris Armenta (SBN 177403)
   THE ARMENTA LAW FIRM APC
2  11900 W. Olympic Boulevard, Suite 730
   Los Angeles, CA 90064
3  Tel: (310) 826-2826 x 108
   Facsimile: (310) 826-5456
4  Email: cris@crisarmenta.com

5  Credence E. Sol (SBN 219784)

6

7

8  credence.sol@sol-law.com

9  Attorneys for Plaintiff
   Cindy Lee Garcia



FILED
CLERK, U.S. DISTRICT COURT

OCT - 4 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

10              **UNITED STATES DISTRICT COURT**

11          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12  CINDY LEE GARCIA, an individual,          Case No. CV12-8315-MWF(VBKx)

13              Plaintiff,                     **FIRST AMENDED COMPLAINT
                                               FOR:**
14  vs.
                                               1.    **Direct Infringement of
15  NAKOULA BASSELEY NAKOULA,                        Copyright**
    an individual also known as SAM          2.    **Secondary Infringement of
16  BACILE, MARK BASSELEY                            Copyright**
    YOUSSEF, ABANOB BASSELEY                 3.    **Fraud**
17  NAKOULA, MATTHEW NEKOLA,                 4.    **Unfair Business Practices**
    AHMED HAMDY, AMAL NADA,                  5.    **Libel**
18  DANIEL K. CARESMAN, KRITBAG              6.    **Intentional Infliction of
    DIFRAT, SOBHI BUSHRA, ROBERT                   Emotional Distress**
19  BACILY, NICOLA BACILY, THOMAS
    J. TANAS, ERWIN SALAMEH,                 **[Demand For Jury Trial]**
20  YOUSSEFF M. BASSELEY, and/or
    MALID AHLAWI; GOOGLE, INC., a
21  Delaware Corporation; YOUTUBE,
    LLC, a California limited liability
22  company, and DOES 1 through 10,
    inclusive.
23

24              Defendants.

25

26

27

28



ER63

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 73 of 246

Plaintiff Cindy Lee Garcia ("Garcia"), by and through her counsel, on personal knowledge as to her own actions and information and belief as to the actions, capabilities and motivation of others, hereby alleges as follows:

## NATURE OF CASE

1. On July 2, 2012, Defendant Nakoula Basseley Nakoula ("Nakoula") uploaded a 14-minute trailer to the Internet, via YouTube.com, entitled "Innocence of Muslims," (the "Film") making it available for the entire world to see. On or about September 11, 2012, the film gained worldwide recognition after it was translated into Arabic and posted on YouTube.com. On or around September 11, 2012, an Arabic translation of the film was posted on YouTube, where it became the object of attention in many countries, especially those that are predominantly Muslim.

2. In the Film, Mohammed, the founder of the Islamic religion, is painted in a light that is considered to be blasphemous by many Muslims. Specifically, the Film portrays as a child molester, sexual deviant, and barbarian. Immediately after the Film received worldwide recognition as described above, violence erupted in the Middle East. The violence included an attack on the United States Consulate in Benghazi, Libya, resulting in the deaths of four Americans, including United States Ambassador Christopher Stevens and two ex-Navy SEALS.

3. Violence has continued to erupt across the world, resulting in dramatic events that have unfolded worldwide, including in Afghanistan, Algeria, Australia, Azerbaijan, Bahrain, Bangladesh, Belgium, Canada, Denmark, Egypt, France, Greece, Hong Kong, India, Indonesia, Iran, Iraq, Israel, Japan, Jordan, Lebanon, Kuwait, Macedonia, Malaysia, the Maldives, Mauritania, Morocco, the Netherlands, Niger, Nigeria, Oman, Pakistan, the Palestinian territories, the Philippines, Qatar, Saudi Arabia, Serbia, Somalia, Sri Lanka, Sudan, Switzerland, Syria, Thailand, Tunisia, Turkey, and the United Kingdom. The Film has been attributed worldwide as directly responsible for the resulting violence. United States Secretary of State Hillary Clinton has condemned the Film, calling it "disgusting and reprehensible." President Barack Obama has asked YouTube to review taking down the Film, but has taken no court action.

2

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 74 of 246

4.      Plaintiff is an actress who appears in the Film. In the English version of the Film, at minute 9:03, Plaintiff appears to accuse "your Mohammed" of being a "child molester." These are words that Plaintiff *never spoke*. In fact, Plaintiff was led to believe that she was appearing in a film titled *Desert Warrior*. According to the casting call to which Plaintiff responded, *Desert Warrior* was an adventure film set in ancient times. Plaintiff was cast in the part of a mother of young child who was to be married to a character named "Master George." At no time during the filming of *Desert Warrior* was Plaintiff aware of *any* religious or sexual content. Indeed, while on-set, most of Plaintiff's scenes involved playing with the actress who portrayed her "daughter." The words, "Is Mohammed a child molester," which are attributed to Plaintiff's character, were words that she *never* uttered on set or during filming. It is obvious that the words heard on the Film are not consistent with the way in which Plaintiff's mouth moved – making it obvious that she never uttered those words. These are words that Plaintiff finds repugnant, vile, and hostile and would never say in *any* context, even during the course of a performance. Plaintiff is an ordained minister and would never debase another person's religious beliefs. It is not in her character, and the thought that she would blaspheme *any* religion or god is profoundly distressing to her.

5.      When Plaintiff was first cast in *Desert Warrior*, she received pages of the script from Defendant Nakoula, who identified himself as "Sam Bacile." Defendant Nakoula held himself out as the writer and producer of the Film. He managed all aspects of production, and as far as Plaintiff observed, was in charge of all aspects of the production. During filming, Defendant Nakoula gave Plaintiff his telephone number. The pages of *Desert Warrior* script that Plaintiff kept are attached hereto as Exhibit A.

6.      Plaintiff believes she signed a contract, but only one that ensured that she would receive IMBD credit for her performance in "Desert Warrior," primarily because Plaintiff is a non-union actor. She has been unable to locate a copy of any such contract. She is making diligent efforts to obtain a copy either from Defendant Nakoula or from other actors who appeared in the production. So far, she has not been able to locate a copy. She does recall that the contract did

3

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 75 of 246

1    ***not*** call for her to transfer any rights, including any copyrights, and that it was not a "work for

2    hire" agreement.

3        7.       In any event, even if Plaintiff did sign a contract (in a form unknown to her at this

4    time, if it exists), Plaintiff contends that any such release is invalid because, no matter what its

5    terms, it was procured by Defendant Nakoula's fraud, deception and misrepresentations. Further,

6    it is the *Defendants'* burden to produce such a release and submit it as evidence, *not* Plaintiff's

7    burden.

8        8.       Despite the fact that Plaintiff was led to believe that she was providing a dramatic

9    performance in an adventure film titled *Desert Warrior*, when the Film was released publicly on

10   YouTube, her depicted performance was grotesquely different than the performance that Plaintiff

11   actually had delivered. Specifically, the innocuous lines that Plaintiff delivered on set were

12   overdubbed so as to give the appearance that she was accusing the Islamic religious figure

13   Mohammed of being a child molester and a sexual deviant. In short, Defendant Nakoula used her

14   as a puppet. The words that were put into Plaintiff's mouth are so offensive, not only to Plaintiff

15   but to millions worldwide, that it sparked a riots and violence around the globe. In the Film,

16   Plaintiff is depicted to be a bigot and to hold beliefs that are not only anti-Islamic, but antithetical

17   to Plaintiff's world view.

18       9.       Plaintiff would never have, and in fact did not, agree to place her likeness, image,

19   persona, nor her dramatic performance into a hateful production or to be associated with hate

20   speech in any form or fashion.

21       10.      Aside from the fallout that occurred after Plaintiff's performance was distorted and

22   disguised, it is clear that Plaintiff has a copyright claim in the dramatic performance she delivered

23   and which was fixed in tangible form when it was filmed during the production of "Desert

24   Warrior." Because she did not assign her rights in her dramatic performance, or her copyright

25   interests, nor was the Film a "work for hire," her copyright interests in her own dramatic

26   performance remain intact.

27

28

4

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 76 of 246

11.     Plaintiff has filed an application for federal copyright registration for the rights in her dramatic performance "Desert Warrior." The application is pending; Plaintiff has requested that the Copyright Office expedite it. Whether or not the Copyright Office has yet acted upon Plaintiff's application, federal law creates a copyright when the copyright is created, not upon registration. A true and correct copy of Plaintiff's copyright application, which identifies the works that are the subject of Plaintiff's copyright, is attached as Exhibit B.

12.     Defendant YouTube's Terms of Service include the following relevant statements: (1) YouTube accounts "must provide accurate and complete information"; (2) the user of YouTube "will comply with all applicable laws"; (3) in uploading content the user must "affirm, represent, and warrant that you own or have the necessary licenses, rights, consents, and permissions to publish Content you submit; and you license to YouTube all patent, trademark, trade secret, copyright or other proprietary rights in and to such Content for publication on the Service pursuant to these Terms of Service"; and (4) YouTube does not "permit hate speech (speech which attacks or demeans a group based on race or ethnic origin, religion, disability, gender, age, veteran status, and sexual orientation/gender identity)." Plaintiff previously requested that YouTube take down the Film because it constitutes hate speech and because the unauthorized, dubbed depiction of her violates California state laws pertaining to her right to privacy and right to control the use of her likeness, among other protected rights that continued exhibition of the Film violates. YouTube refused Plaintiff's request.

13.     Plaintiff has issued five DMCA "takedown notices" to Defendants YouTube and Google, who, by rebroadcasting the Film 24 hours a day, 7 days a week, also are infringing Plaintiff's protected rights in her performance, which fell within the scope of protection of copyright laws the instant her dramatic performance was fixed on film. YouTube and Google have thus far refused to expeditiously remove or disable the infringing content.

## GENERAL ALLEGATIONS

**A.     Jurisdiction and Venue**

5

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 77 of 246

14.     This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, 17 U.S.C. § 101 et seq. Plaintiff also seeks damages and injunctive relief under California state law, were not preempted by Federal law.

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (jurisdiction over copyright actions), 28 U.S.C. § 1338(b) action asserting a state claim of unfair competition joined with a substantial and related federal claim under the patent, copyright, or trademark laws), 28 U.S.C. § 1367 (supplemental jurisdiction), and the doctrines of ancillary and pendent jurisdiction.

16.     This Court has personal jurisdiction over Defendants because all Defendants have "continuous, systematic" ties to California, and/or reside in California.

17.     Venue in this District is proper because a substantial part of the acts and omissions giving rise to the claims occurred in this district.

**B.      The Parties**

18.     Plaintiff Cindy Lee Garcia is an individual and at all relevant times herein was a resident of Kern County, California.

19.     Defendant Nakoula Basseley Nakoula, also known as Sam Bacile ("Defendant Nakoula" or "Bacile") is an individual and at all relevant times herein as a resident of Los Angeles County, California.

20.     Defendant Google, Inc., is a corporation incorporated in Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google conducts business throughout California, the nation, and the world.

21.     Defendant YouTube, LLC, is a Google-owned California limited liability company. YouTube conducts business throughout California, the nation, and the world.

22.     Plaintiff lacks knowledge of the true names and capacities of the defendants sued herein as DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. These are unidentified posters of the film, as further described below and are individuals who

6

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 78 of 246

1   assisted in the production of the film, as further described below. Plaintiff will amend this

2   complaint to allege their true names and capacities when they have been ascertained.

3        23.    At all relevant times, each defendant was the agent of each of the other defendants

4   and was acting within the course and scope of such agency. Defendants are jointly and severally

5   liable to Plaintiff.

6        24.    Plaintiff is informed and believes that each of the defendants designated herein as a

7   DOE is responsible in some manner for the events and happenings herein alleged, as well as for

8   the damages alleged.

9        25.    Plaintiff is informed and believes that each of the defendants was the agent or

10  employee of each of the remaining defendants and, at all relevant times herein, acted within the

11  course and scope of such agency and/or employment.

12                              **FACTUAL BACKGROUND**

13       26.    Plaintiff Garcia is an ordained minister and actress. Garcia works in film.

14       27.    In July of 2011, Plaintiff Garcia responded to a casting call for a film titled "Desert

15  Warrior," which was represented to be an "historical Arabian Desert adventure film." She was

16  cast in the Film. The producers of the film, including DOES 151-200, and Defendant Nakoula,

17  intentionally concealed the purpose and content of the film.

18       28.    Ms. Garcia was given only specific pages of a script titled *Desert Warrior*. There

19  was no mention of "Mohammed" during filming or on the set. There were no references made to

20  religion nor was there any sexual content of which Ms. Garcia was aware. The purported writer

21  and producers of *Desert Warrior*, Defendant Nakoula a/k/a "Sam Bacile," represented to Plaintiff

22  that the Film was indeed an adventure film and about ancient Egyptians. Based on those specific

23  representations made, her parts of the script, and the manner in which the Film was shot, Plaintiff

24  agreed to deliver an acting performance for "Desert Warrior."

25       29.    On July 2, 2012, Defendant Nakoula published a video titled *The Innocence of*

26  *Muslims* (the "Film") to the Internet site www.youtube.com, making the Film available publicly

27  and globally. The Film includes Plaintiff's acting work from *Desert Warrior* and has been

28

7

ER69

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 79 of 246

1   changed horrifically to make it appear that Ms. Garcia voluntarily performed in a hateful anti-

2   Islamic production. The Film is vile and reprehensible. Plaintiff was unaware of the vile content

3   contained in the Film, as the content and overall purpose of the Film was concealed from her, and

4   others who appear in the Film, at all times by Defendant Nakoula and DOES 151 through 200.

5   This lawsuit is not an attack on the First Amendment, nor on the right of Americans to say what

6   they think, but does request that the offending content be removed from the Internet because not

7   only it is not speech protected by the First Amendment, it violates Plaintiff Garcia's copyright in

8   her performance.

9        30.     Based on information and belief, in around September of 2012, Defendant Nakoula

10  published the Film, with the voices of Plaintiffs and her cast mates dubbed into Arabic, on

11  YouTube. The availability of the Film in Arabic has set off protests and violence first in the

12  Middle East, then worldwide. That violence resulted in the assassination of four embassy officials

13  in Libya, including United States Ambassador Christopher Stevens. On information and belief,

14  Defendant YouTube has made an editorial decision to block the Film from being shown on

15  computers located in Libya, Saudi Arabia, India, Indonesia, and Egypt, but not to block it from

16  being shown in most of the other countries in the world.

17        31.     The content of the actors' words in Arabic is currently not known to Plaintiff.

18        32.     After the Film was published on YouTube, Plaintiff received death threats, which

19  have increased in numerosity and threat level, despite Plaintiff's efforts to publicly clear her name.

20        33.     After the Film was published on YouTube, Plaintiff's family, fearing for their own

21  safety, informed her that she was no longer permitted to see her grandchildren, whom she

22  previously babysat regularly.

23        34.     After the Film was published on YouTube, Plaintiff 's life changed substantially as

24  a direct result of the Film, in as much as she is now considered a target and the safety of those in

25  her presence cannot be guaranteed.

26

27

28

8

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 80 of 246

35.     On September 19, 2012, an Egyptian Cleric issued a fatwa against Ms. Garcia: "I issue a fatwa and call on the Muslim Youth in American and Europe to do this duty, which is to kill the director, the producer and the actors and everyone who helped and promoted the film."

36.     Plaintiff requested that Google remove the Film from the YouTube Website. Her request was purportedly passed on to the "YouTube team." The "YouTube team" refused to remove the content, despite her privacy concerns.

37.     On September 24 and 25, 2012, Plaintiff issued five "takedown notices" to Defendants Google and YouTube pursuant to the Digital Millenium Copyright Act. The notices informed Defendants Google and YouTube that their continued broadcast of the Film on YouTube violated Plaintiff's copyright in her performance. The takedown notices identified an aggregate of 171 URLs to be taken down. Defendants Google and YouTube have refused to expeditiously remove or disable the infringing content, despite requests that it do so. A true and correct copy of the DMCA notices is attached as Exhibit C.

38.     As a result of Defendant Nakoula's falsification of her words in the Film, and Defendants Google and YouTube's refusal to remove the video from the Internet, Plaintiff has suffered the violation of her copyright in her performance, severe emotional distress, the destruction of her career and reputation, the loss of her family and her livelihood, and other financial and non-pecuniary damage. She has been subjected to credible death threats and is in fear for her life and the life and safety of anyone associated with her.

39.     Despite the suggestions of Defendants and their lawyers that Plaintiff go into hiding, she refuses to do so, because she refuses to become a victim of terrorism and Defendant Nakoula's lies. Her courage in coming forward to clear her name and to tell the world that she does not condone the Film, its message, nor would have ever participated in such an effort is what Plaintiff believes is keeping her alive. Persons around the world, including Muslims, have reached out to her to thank her for taking a strong, public and brave stand against the Film's message, at great peril to herself.

FIRST AMENDED COMPLAINT
CV 12 8315 (VBKx)

ER71

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 81 of 246

**FIRST CAUSE OF ACTION**

**Direct Infringement of Copyright**

**Against All Defendants**

40.     Plaintiff repeats and realleges paragraphs 1 through 39 of this Complaint as though set forth in full.

41.     Plaintiff has properly applied to register, and she owns and controls, the copyright in her performance in *Desert Warrior* a/k/a *Innocence of Muslims.*

42.     Without authorization from Plaintiff, or any right under law, Defendants, via YouTube, have unlawfully distributed Plaintiff's copyrighted performance millions of times, by transmitting unauthorized copies of those works to YouTube users upon demand in violation of the Copyright Act, 17 U.S.C. § 106.

43.     Defendant Nakoula is directly liable for these acts of infringement under the Copyright Act. It was Defendant Nakoula who initially posted an infringing copy of Plaintiff's performance onto YouTube without authorization.

44.     Defendant YouTube is directly liable for these acts of infringement under the Copyright Act. The infringing file resides on servers controlled by Google and YouTube. Google and YouTube cause and affect the infringing act of transmitting copies of Plaintiff's performance works from their servers to the computers of their users. Moreover, YouTube does more than merely respond to user requests in a passive, content-neutral, and automated manner. As set forth above, *supra* paragraph 30, YouTube has played an active role in determining the countries in which the Film will be made available, so that the maximum number of YouTube users will access the infringing content. Thus, YouTube is actively involved in creating the supply of infringing content, making that content broadly available for distribution to the worldwide public at large, and physically transmitting and distributing that infringing content to users. It further exercises active control over the distribution process, in exercising editorial control over where it will and will not make the Film available. For these reasons, among others, YouTube engages in active conduct in unlawfully distributing Plaintiff's copyrighted performance to its users.  In order to

FIRST AMENDED COMPLAINT
CV 12 8315 (VBKx)

ER72

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 82 of 246

1  facilitate and expedite distribution of infringing files to YouTube users, YouTube also makes

2  additional unauthorized copies of Plaintiff's copyrighted performance on its own servers in

3  violation of the Copyright Act, 17 U.S.C. § 106. These unauthorized copies are not made by or at

4  the request of YouTube users, but rather through the decisions and actions of YouTube for its own

5  business purposes.

6      45.    Defendant Google is jointly and severally liable for each act of YouTube's direct

7  infringement because it directed and participated in, and benefited from, YouTube's infringing

8  conduct as alleged herein, and its corporate policies have been the guiding spirit behind and

9  central figure in YouTube's infringing activities.  Further, Google earns advertising revenue from

10  traffic directed to the YouTube site.

11      46.    Defendants DOES 1-200 are likewise liable under the Copyright Act for the acts of

12  infringement identified above for acting in concert with Defendants to post infringing copies of

13  Plaintiff's performance without authorization, to operate YouTube and/or for infringing

14  reproductions and distributions of Plaintiff's copyrighted performance separately committed by

15  defendants DOES 1-200.

16      47.    The foregoing acts of infringement by Defendants have been willful, intentional

17  and purposeful, in disregard of and indifferent to Plaintiff's rights.

18      48.    As a direct and proximate result of Defendants' infringement of Plaintiff's

19  exclusive rights under copyright, Plaintiff is entitled to damages as well as Defendants' profits

20  pursuant to 17 U.S.C. § 504(b), including but not limited to advertising revenues resulting from

21  the placement of embedded advertisements in the Film as posted on YouTube.com.

22      49.    Alternatively, Plaintiff is entitled to the maximum statutory damages, in the amount

23  of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be

24  proper pursuant to 17 U.S.C. § 504(c).

25      50.    Plaintiff further is entitled to her attorneys' fees and full costs pursuant to 17 U.S.C.

26  § 505.

27

28

11

ER73

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 83 of 246

51.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated for or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringements of her copyright and exclusive rights under copyright.

## SECOND CAUSE OF ACTION

### Indirect Infringement of Copyright

### Against All Defendants

52.     Plaintiff repeats and realleges paragraphs 1 through 51 of this Complaint as though set forth in full.

53.     Users of YouTube have infringed, and continue to infringe, Plaintiff's copyright, including without limitation those copyrighted works identified in Exhibit B, by reproducing and distributing works owned by Plaintiff through YouTube, without authorization from Plaintiff, or right under law, in violation of the Copyright Act, 17 U.S.C. § 106. Defendants are liable as secondary infringers under the Copyright Act for each infringing reproduction and distribution of Plaintiff's performance by YouTube users.

54.     Defendants YouTube and Google are liable under the Copyright Act for inducing the infringing acts of YouTube users. As set forth above, Defendants YouTube and Google operate YouTube and provide the YouTube website and service to their users, with the object of promoting the use of YouTube to infringe Plaintiff's copyrighted performance, as shown by YouTube's clear expression and other affirmative steps to foster infringement. As set forth above, Defendants YouTube and Google's inducement of copyright infringement is evident from, among other things: (i) the continuing infringing content available on YouTube; (ii) technical measures designed to facilitate the widespread dissemination of Plaintiff's copyrighted content, even after she has requested takedown of the infringing content; and (iii) Defendants' failure to use any of the readily-available means to curtail infringement on the YouTube website. Defendants Google

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 84 of 246

1    and YouTube, therefore, are liable for inducing the unauthorized reproduction and distribution of

2    Plaintiff's copyrighted work in violation of the Copyright Act, 17 U.S.C. § 106.

3           55.    Defendant YouTube is separately liable under the Copyright Act for the infringing

4    acts of its users as a contributory copyright infringer.  Defendant YouTube had actual and

5    constructive knowledge of massive copyright infringement of Plaintiff's copyrighted performance

6    by YouTube users, including, without limitation, by means of repeated notices by Plaintiff

7    concerning the infringing files.  Indeed, YouTube has full knowledge that it is being used

8    continuously to infringe Plaintiff's rights are a copyright owner. Notwithstanding that knowledge,

9    Defendant YouTube  continues to provide a material contribution to that infringement as set forth

10   above, including without limitation by (i) operating, maintaining and further developing the

11   YouTube website and service so as to facilitate YouTube users' infringement of Plaintiff's

12   copyright, (ii) storing infringing content on its servers and making reproductions of such works for

13   faster distribution, and (iii) making multiple copies of Plaintiff's copyrighted work to enable users

14   to quickly access Plaintiff's copyrighted work.  Without the active contributions from defendant

15   YouTube, the infringement complained of herein could not have taken place at all, and certainly

16   not on the massive scale enabled by Defendants' actions. Defendant YouTube is, therefore,

17   contributorily liable for the unauthorized reproduction and distribution of Plaintiff's copyrighted

18   works, including those listed on Exhibit B hereto, in violation of the Copyright Act, 17 U.S.C. §

19   106.

20          56.    Defendant YouTube is separately liable under the Copyright Act for the infringing

21   acts of its users as a vicarious copyright infringer. Defendant YouTube had the right and ability to

22   supervise and control its users' infringing activity as set forth above, including without limitation

23   by removing Plaintiff's copyrighted performance from its website, terminating infringing users or

24   blocking their access to the YouTube website and service, by policing its computer service to

25   disable access to infringing content, and/or by implementing any number of industry standard

26   technologies or policies that would have substantially curtailed infringing uses of YouTube. In

27   addition, at all relevant times Defendant YouTube derived a financial benefit attributable to its

28

13

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 85 of 246

1   users' copyright infringement, including infringement of Plaintiff's copyright, specifically through

2   advertising revenues obtained by embedding advertisements into copies of the Film broadcast on

3   YouTube.com. Defendant YouTube is therefore vicariously liable for the unauthorized

4   reproduction and distribution of Plaintiff's copyrighted works, including those listed on Exhibit B

5   hereto, in violation of the Copyright Act, 17 U.S.C. § 106.

6          57.    Defendant Nakoula is jointly and severally liable for each act of infringement for

7   which YouTube is liable because he initially posted the infringing copy of Plaintiff's performance,

8   thus directing, participating in, and benefitting from YouTube's infringing conduct as alleged

9   herein.

10         58.    Defendants DOES 1-10 are liable under the Copyright Act for the acts of

11  infringement identified above, for acting in concert with Defendants to operate YouTube and/or

12  for unlawfully inducing, knowingly facilitating, and profiting from copyright infringement by

13  YouTube users.

14         59.    The foregoing acts of infringement by Defendants have been willful, intentional

15  and purposeful, in disregard of and indifferent to Plaintiff's rights.

16         60.    As a direct and proximate result of Defendants' infringement of Plaintiff's

17  exclusive rights under copyright, Plaintiff is entitled to damages as well as Defendants' profits

18  pursuant to 17 U.S.C. § 504(b), including but not limited to advertising revenues resulting from

19  the placement of embedded advertisements in the Film as posted on YouTube.com.

20         61.    Alternatively, Plaintiff is entitled to the maximum statutory damages, in the amount

21  of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be

22  proper pursuant to 17 U.S.C. § 504(c).

23         62.    Plaintiff further is entitled to her attorneys' fees and full costs pursuant to 17 U.S.C.

24  § 505.

25         63.    Defendants' conduct is causing, and unless enjoined and restrained by this Court

26  will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated for

27  or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

28

FIRST AMENDED COMPLAINT
CV 12 8315 (VBKx)

ER76

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 86 of 246

1  Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringements of

2  her copyright and exclusive rights under copyright.

3                          **THIRD CAUSE OF ACTION**

4                                  **Fraud**

5                    Against Defendant Nakoula and DOES 1-10

6      64.    The allegations set forth in paragraphs 1 through 63 are realleged and incorporated

7  herein by reference.

8      65.    Defendant Nakoula and DOE Defendants 1-10 represented to Plaintiff that the Film

9  was an "adventure" film, and that she would be depicted as a benign historical character.

10     66.    Defendant Nakoula and DOE Defendants 1-10's representations that he intended to

11 make an "adventure" film, and that Plaintiff would be depicted as a concerned mother, were false.

12 Instead, Defendant Nakoula and DOE Defendants 1-10 made an anti-Islam propaganda film, in

13 which Plaintiff is falsely made to appear to accuse the founder of the Islamic religion of being a

14 sexual deviant and child molester.

15     67.    When Defendant Nakoula and DOE Defendants 1-10 represented to Plaintiff that

16 he intended to make an "adventure" film, and that her character was merely to express concern for

17 her child, they knew that the representations were false, or they made the representations with

18 reckless disregard as to their falsity.

19     68.    Defendant Nakoula and DOE Defendants 1-10 made the misrepresentations with

20 the intent to defraud Plaintiff. In making the misrepresentations, Defendant Nakoula and DOE

21 Defendants 1-10 intended to induce Plaintiff to rely upon the misrepresentations and to act upon

22 them by agreeing to appear in Defendant Nakoula's "adventure" film.

23     69.    At the time Defendant Nakoula and DOE Defendants 1-10 made the

24 misrepresentations, Plaintiff was unaware of the falsity of the misrepresentations. Plaintiff acted

25 in reliance on the truth of the misrepresentations, in that the misrepresentations substantially

26 influenced her actions, and Plaintiff was justified in relying on the misrepresentations.

27

28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 87 of 246

70.     As a direct and proximate result of Defendant Nakoula and DOE Defendants 1-10's intentional misrepresentations, Plaintiff has incurred and will incur substantial damages, in an amount to be determined at trial, and additionally is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

### Unfair Business Practices Under Cal. Bus. Prof. Code 17200

### Against Defendant Nakoula and DOES 1-10

71.     The allegations set forth in paragraphs 1 through 70 are realleged and incorporated herein by reference.

72.     The aforementioned acts of Defendant Nakoula and the DOE Defendants constitute unfair, fraudulent and/or illegal business practices within the meaning of California's Unfair Competition Law ("UCL"), embodied in Section 17200, et seq. of the California Business and Professions Code.

73.     Defendant Nakoula and the DOE Defendants' actions, including fraudulently enticing Plaintiff into appearing in an anti-Islam propaganda film, manipulating the soundtrack of the Film to make it appear that Plaintiff was slandering Islam and Muslim beliefs.

74.     Defendant Nakoula and DOE Defendants 1-10's actions were fraudulent in that they deceived Plaintiff as to the true nature of the film project in which she participated, and in that they manipulated Plaintiff's image to create the false appearance of anti-Muslim bigotry by Plaintiff.

75.     Defendant Nakoula and the DOE Defendants' actions were illegal in that they violated Section 16600 of the California Business and Professions Code in that the conduct has made it impossible to practice her trade, profession or occupation.

76.     Defendant Nakoula and the DOE Defendants' actions were unfair in that, by fraudulently inducing Plaintiff to appear in *Desert Warrior* a/k/a *Innocence of Muslims*, and by rebroadcasting her dubbed and altered performance worldwide, they have made Plaintiff the target of numerous death threats, and caused her to lose her job and her family, all through no fault of her own.

16

77.     Defendant Nakoula and the DOE Defendants' unfair, deceptive, and fraudulent practices originated from and/or occurred primarily in California. The decision to dub Plaintiff's voice to make it appear as though she was spouting inflammatory material about Islam was made in California. The decision to refuse to remove the Film from YouTube was made in California.

78.     Pursuant to California Business & Professions Code Section 17203, Plaintiff seeks an order of this Court permanently enjoining Defendant Nakoula and the DOE Defendants from continuing to engage in the unlawful, unfair, and fraudulent conduct described herein. Plaintiff seeks an order requiring Defendant Nakoula and the DOE Defendants to: (1) immediately cease the unlawful, unfair, and fraudulent practices stated in this Complaint; and (2) award Plaintiff reasonable costs and attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5.

79.     By reason of the alleged acts and conduct of Defendants, Plaintiff has suffered and will suffer further harm, including the loss of employment, the loss of her family, and the fear of violent retribution. Plaintiff is fully entitled to her remedies allowed under the UCL, including restitution for her lost wages and the cost of security protection for herself and her family.

### FIFTH CAUSE OF ACTION

### Against Nakoula and DOES 1-10

### Libel

80.     The allegations set forth in paragraphs 1 through 79 are realleged and incorporated herein by reference.

81.     By making and republishing the Film, Defendant Nakoula and the DOE Defendants made a statement of and concerning Plaintiff or words that suggest that Plaintiff approved the finished product and message of the Film, and stating that Plaintiff said blasphemous words, which she did not.

82.     The statements are false as they pertain to Plaintiff. In making these statements, Defendant Nakoula and the DOE Defendants knew or should have known that Plaintiff has never called the founder of Islam a child molester.

FIRST AMENDED COMPLAINT
CV 12 8315 (VBKx)

ER79

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 89 of 246

83. Furthermore, these statements are defamatory because they carry the meaning that Plaintiff is a religious bigot.

84. The statements have been understood by those who saw and heard them on YouTube to mean that Plaintiff it a religious bigot.

85. Plaintiff is informed and believes and thereon alleges that the statements that Defendant Nakoula, along with DOE Defendants 1-10, literally "put in her mouth," which Google refuses to remove from YouTube, have been seen and heard by millions of individuals throughout the world, whose names are not presently known to Plaintiff.

86. These words were slanderous because they tend to injure Plaintiff in her profession, trade and business by imputing to her a general disqualification for working with the public, something that the occupation and duties of her profession peculiarly require, and the profitability of which is naturally lessened if she is believed to be a religious bigot.

87. These words published by Defendant Nakoula and the DOE Defendants were stated not as a matter of opinion, but as a matter of fact, and therefore were not protected or privileged in any way.

88. The words published by Defendant Nakoula and the DOE Defendants also were slanderous because Plaintiff never called the founder of Islam a child molester, either on the set of the Film or at any other place or time.

89. At no relevant time did Plaintiff ratify or consent to the dissemination of the statements, on YouTube or anywhere else. In fact, Plaintiff subsequently contacted Defendant Nakoula to ask him to remove the Film from YouTube and also contacted Google and YouTube to request the same thing, numerous times.

90. Plaintiff is informed and believes and thereon alleges that Defendant Nakoula and the DOE Defendants repeated the false statements to others, including a worldwide audience on YouTube.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 90 of 246

91.     The words that Defendant Nakoula and the DOE Defendants put, and kept, in Plaintiff's mouth carried a defamatory meaning by their very terms and were understood by those who saw and heard them in a way that defamed Plaintiff.

92.     Defendant Nakoula and the DOE Defendants further published such statements deliberately and with knowledge and intention that such words would be heard by a worldwide YouTube.com audience.

93.     As a proximate result of Defendant Nakoula and the DOE Defendants' publication of the false statements, Plaintiff has suffered loss of her reputation, shame, mortification, and hurt feelings all to her general damages in a sum to be proven at trial.

94.     As a further result of Defendant Nakoula and the DOE Defendants' publication of the false statements, Plaintiff has suffered special damages according to proof.

95.     As the above-described statements were published with malice and oppression and fraud, an award of exemplary and punitive damages is necessary and appropriate.

### SIXTH CAUSE OF ACTION

#### Against Defendant Nakoula and the DOE Defendants

#### Intentional Infliction of Emotional Distress

96.     The allegations set forth in paragraphs 1 through 95 are realleged and incorporated herein by reference.

97.     The conduct set forth hereinabove was extreme and outrageous and an abuse of the authority and position of Defendant Nakoula and the DOE Defendants, and each of them. Said conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress. Said conduct exceeded the inherent risks of Plaintiff's work as an actress and was not the sort of conduct normally expected to occur in the production of a Film, or in the posting of a film to YouTube. Defendants, and each of them, engaged in conduct intended to make Plaintiff a target of extremist violence.

98.     The foregoing conduct did in fact cause Plaintiff to suffer extreme emotional distress. As a proximate result of said conduct, Plaintiff suffered embarrassment, anxiety,

19

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 91 of 246

1  humiliation and emotional distress, and will continue to suffer said emotional distress in the future

2  in an amount according to proof.

3  **PRAYER**

4      Plaintiff Garcia prays for judgment against Defendants as follows:

5      1.    For a preliminary and permanent injunction enjoining Defendants and their

6  respective officers, agents, servants, employees, and attorneys, and all persons in active concert or

7  participation with each or any of them, from directly committing, aiding, encouraging, enabling,

8  inducing, causing, materially contributing to, or otherwise facilitating the unauthorized

9  reproduction or distribution of copies of Plaintiff's copyrighted performance.

10      2.    For all damages to which Plaintiff may be entitled, including but not limited to

11  Defendants' profits, in such amounts as may be found. Alternatively, as Plaintiff's election, for

12  statutory damages in the maximum amount allowed by law.

13      3.    For special damages arising from the loss of business and business opportunities,

14  according to proof at trial.

15      4.    For restitution.

16      5.    For exemplary and punitive damages.

17      6.    For attorney fees and costs of suit incurred herein.

18      7.    For such other and further relief as the Court deems just and proper.

19

20          THE ARMENTA LAW FIRM, A.P.C.

21  Dated: October 4, 2012

22

23  By: _____

24             M. Cris Armenta

25             Attorneys for Plaintiff

           Cindy Lee Garcia

26

27

28

FIRST AMENDED COMPLAINT
CV 12 8315 (VBKx)

ER82

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 92 of 246

1
2    **REQUEST FOR JURY TRIAL**
3        Plaintiff hereby requests a trial for jury.
4    Dated: October 4 , 2012          THE ARMENTA LAW FIRM, A.P.C.
5
6                                  By: _____
7                                          M. Cris Armenta
                                         Attorneys for Plaintiff
8                                         Cindy Lee Garcia
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT
CV 12 8315 (VBKx)

ER83

**EXHIBIT A**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 94 of 246

60      EXT. KERO'S TENT - DAY

ME     Kero's wife, Om Roman, is sitting quietly and knitting when
       Kero enters excitedly.

                    KERO
              Let the house of Kero be joyous.

                    RAMON
              What is wrong with you husband? We
              do not have that much to be happy
              for.

                    KERO
              Oh but we do. The Master has asked
              our daughter's hand in marriage.

       RAMON seems concerned.

                    RAMON
              And this make you happy?

                    KERO
              Yes, of course, it makes me very
              happy! My daughter shall have the
              stars!

                    RAMON

              Are you crazy? Is your George
              crazy? Your daughter has not yet
              reached her 13th year yet. George
              must be fifty five years old by
              now!

                    ABI KERO
              He is fifty-three not fifty-five.
              He has both wealth and power. My
              daughter shall be his bride whether
              we say yes or no. And he has
              promised to make the Caliph of the
              Bossas after him.

                    RAMON

              Then there is nothing I can do for
              my poor daughter Hillary. She is
              not yet thirteen years of age and
              he is fifty three. What a strange
              world that we live in... what a
              strange world.

       There is a moment of silence and George enters.

ER85

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 95 of 246

60    EXT. KERO'S TENT - DAY

Kero's wife, Om Roman, is sitting quietly and knitting when
Kero enters excitedly.

> KERO
> Let the house of Kero be joyous.

> RAMON
> What is wrong with you husband? We
> do not have that much to be happy
> for.

> KERO
> Oh but we do. The Master has asked
> our daughter's hand in marriage.

RAMON seems concerned.

> RAMON
> And this make you happy?

> KERO
> Yes, of course, it makes me very
> happy! My daughter shall have the
> stars!



> RAMON
> Are you crazy? Is your George
> crazy? Your daughter has not yet
> reached her 13th year yet. George
> must be fifty five years old by
> now!

> ABI KERO
> He is fifty-three not fifty-five.
> He has both wealth and power. My
> daughter shall be his bride whether
> we say yes or no. And he has
> promised to make the Caliph of the
> Bossas after him.



> RAMON
> Then there is nothing I can do for
> my poor daughter Hillary. She is
> not yet thirteen years of age and
> he is fifty three. What a strange
> world that we live in... what a
> strange world.

There is a moment of silence and George enters.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 96 of 246

61

61     EXT. HOUSE OF XERO – DAY

RAMON goes outside to fetch her daughter. Some women are
doing chores. She finds the children playing together on the
tree swings. She takes Hillary by the hand and goes inside
the house.

ADD To DAY 1

ER87

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 97 of 246

62    INT. HOUSE OF KERO - DAY

                    KERO
          Thank you Master. You bless me by
          coming into my humble home.

                    GEORGE
          You are a good man and a good
          follower of me Kero. You will be a
          good father in law and you shall
          indeed have your place in God's
          paradise.

                    KERO
          Praise be to God... praise be to
          God.

     RAMON returns leading Hillary by the hand. She takes her over
     to George and puts her hand into George's hand.

                    RAMON
          Hillary this is George, Master. He
          is going to be your husband.

     George looks at her with that look that only a man can give a
     woman as he rubs the back of her hand.

                    GEORGE
          Isn't that wonderful Hillary, my
          bride? Praise be to God.

     George stands and picks Hillary up in his arms.

                    GEORGE (CONT'D)
          Come, for now you belong to me, to
          the Master.

     He walks toward the door carrying the girl. Hillary looks
     back toward her mother and reaches out a hand. She calls out,
     nearly in tears, simply because she does not understand what
     just happened.

                    HILLARY
          Mother... Mother... RAMON, I'm
          hungry.

     RAMON looks at her.

                    RAMON
          It is okay Hillary... every thing
          will be alright.

     RAMON watches them leave. It is obvious she doesn't believe
     her own words. A single tear runs down her cheek.

ER88

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 98 of 246

63      EXT. KERO'S TENT - DAY

George carries Hillary outside as the other women are
blessing them.

                    WOMEN
            May God bless you both... May God
            bless you both.

Hillary is frightened and does not know what is happening.
Once again she calls out to her mother.

                    HILLARY
            Mother... Mother... Mother I'm
            hungry.

                    GEORGE
            With me there is no need to be
            frightened, my bride.

                    HILLARY
            Where are you taking me?

                    GEORGE
            Wherever I want to go. I am the
            Master. Do you not know that my
            bride?

George says something in her ear. She slaps him on his face,
but he just laughs.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 99 of 246

                    GEORGE
          Kero... did you announce the good
          news to the bride? I would not be
          surprised if she has fainted over
          the good news.

                    RAMON
          I am the only one who came close to
          fainting.

                    GEORGE
          From joy, of course, my mother in
          law.

                    RAMON
          Of course, my son in law.

                    GEORGE
          I already knew that or I would not
          be the Master. Now where is my
          bride? Where is my beautiful bride,
          my father in law?

                    RAMON
          She is on the swing with other
          children, my son in law.

                    KERO
          Go and fetch her woman. Do not keep
          your soon to be son in law
          waiting... I mean the Master
          waiting!

RAMON does as she is told and immediately gets up and heads
out the door.

ER90

**EXHIBIT B**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 101 of 246

**Copyright Office fees are subject to change.**
For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

**Privacy Act Notice:** Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §706. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**Form PA**
For a Work of Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA          PAU

EFFECTIVE DATE OF REGISTRATION

Month          Day          Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**
"Desert Warrior"

**PREVIOUS OR ALTERNATIVE TITLES ▼**
"Innocence of Muslims"

**NATURE OF THIS WORK ▼** See Instructions
Audio-visual work, pertaining to Cindy Lee Garcia's dramatic performance in "Desert Warrior" and put on film

---

**2**

**NAME OF AUTHOR ▼**
a   Cindy Lee Garcia

**DATES OF BIRTH AND DEATH**
Year Born ▼ 1957     Year Died ▼ NA

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of U.S.A.
Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☑ No
Pseudonymous?   ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Dramatic performance in film entitled "Desert Warriors" affixed to film

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NAME OF AUTHOR ▼**
b   Cindy Lee Garcia

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of U.S.A.
Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☑ No
Pseudonymous?   ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Dramatic performance fixed in tangible medium of expression (i.e. film)

**NAME OF AUTHOR ▼**
c   Cindy Lee Garcia

**DATES OF BIRTH AND DEATH**
Year Born ▼ 1957     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of U.S.A.
Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☑ No
Pseudonymous?   ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
2011   Year   This information must be given in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.   Month July   Day 2   Year 2012
only partially published. U.S.A.   Nation

---

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Cindy Lee Garcia c/o The Armenta Law Firm, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼
[Ms. Garcia did not sign any work for hire agreement nor a release or relinquishment of her rights when she acted in "Desert Warrior."

See instructions before completing this space

**APPLICATION RECEIVED**
**ONE DEPOSIT RECEIVED**
**TWO DEPOSITS RECEIVED**
**FUNDS RECEIVED**
DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶** · Complete all applicable spaces (numbers 5-9) on the reverse side of this page
· See detailed instructions    · Sign the form at line 8

**DO NOT WRITE HERE**
Page 1 of _____ pages

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

ER92

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 102 of 246

| EXAMINED BY | | FORM PA |
| --- | --- | --- |
| CHECKED BY | | |
| | CORRESPONDENCE Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is No, do not check box A, B, or C.

a. ☑ This is the first published edition of a work previously registered in unpublished form.

b. ☑ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**a 6**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions before completing this space

**b**

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

Garcia gave a dramatic performance for "Desert Warrior" fixed in film in 2011. Since then, the producer of the film altered her performance, dubbing in words she did not say, and changing the film's intent and name to "Innocence of Muslims."

**a 7**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼          Account Number ▼

**b**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip▼

M. Cris Armenta, The Armenta Law Firm APC, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

Area code and daytime telephone number   ( 310 ) 826-2826          Fax number  ( 310 ) 826-5456

Email cris@crisarmenta.com

**8**

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Cindy Lee Garcia          Date September 25, 2012

Handwritten signature (X) ▼  See attached faxed signature

x

| Certificate will be mailed in window envelope to this address: | Name ▼ | YOU MUST • Complete all necessary spaces • Sign your application in space 8 |
| --- | --- | --- |
| | Number/Street/Apt ▼ | SEND ALL 3 ELEMENTS IN THE SAME PACKAGE 1. Application form 2. Nonrefundable filing fee in check or money order payable to Register of Copyrights 3. Deposit material |
| | City/State/Zip ▼ | MAIL TO: Library of Congress Copyright Office-PA Div 101 Independence Avenue, SE Washington, DC 20559-6230 |

\*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

J Office: 2010-357-805-80,085

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

ER93

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 103 of 246

TOTAL P.03

| EXAMINED BY | FORM PA |
| --- | --- |
| CHECKED BY | |
| ☐ CORRESPONDENCE Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**5** PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is No, do not check box A, B, or C.
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**6** DERIVATIVE WORK OR COMPILATION Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates ▼

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼
Garda gave a dramatic performance for "Desert Warrior" fixed in film in 2011. Since then, the producer of the film altered her performance, dubbing in words she did not say, and changing the film's intent and name to "Innocence of Muslims."

**7**
a. DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account. Name ▼          Account Number ▼

b. CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name / Address / Apt / City / State / Zip ▼
M. Cris Armenta, The Armenta Law Firm APC, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

Area code and daytime telephone number ( 310 ) 826-2826          Fax number ( 310 ) 826-5456
Email cris@crisarmenta.com

**8** CERTIFICATION* I, the undersigned, hereby certify that I am the
Check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Cindy Lee Garcia          Date September 25, 2012

Handwritten signature (X) ▼
X  _Cindy Lee Garcia_

**9**
Certificate will be mailed in window envelope to this address:
Name ▼
Number/Street/Apt ▼
City/State/Zip ▼

SEP-25-2012 13:41          P.03

ER94

Sent from my iPhone

Begin forwarded message:

From: Copyright Office <cop-rc@loc.gov>
Date: September 25, 2012 1:42:10 PM EDT
To: Cris Armenta <cris@crisarmenta.com>
Subject: Acknowledgement of Receipt

Thank you for submitting your registration claim using the electronic Copyright Office (eCO) System. This email confirms that your application and payment for the work Desert Warrior were received on 09/25/2012. The following applies to registration claims only (not preregistrations):

The effective date of registration is established when the application, payment AND the material being registered have been received. If you have not yet sent the material to be registered, logon to eCO (https://eco.copyright.gov/eService_enu/) and click the blue case number associated with your claim in the Open Cases table, then do one of the following:

Upload a digital copy (if eligible): Click the "Upload Deposit" button at the top of the Case Summary screen, then browse and select the file(s) you wish to upload. Be sure to click the "Upload Complete" button on the Case Summary screen when you have finished uploading your file(s). Note: only certain categories of works are eligible to be registered with digital copies (See FAQs: http://www.copyright.gov/eco/faq.html#eCO_1.4 and http://www.copyright.gov/eco/help-file-types.html).

Mail a physical copy(ies): Click the Create Shipping Slip button at the top of the Case Summary screen, then click the Shipping Slip link that appears in the Send By Mail table. Print out and attach the shipping slip to the copy(ies) of your work. For multiple works, be sure to attach shipping slips to the corresponding copies.

A printable copy of the application will be available within 24 hours of its receipt. To access the application, click the My Applications link in the left top most navigation menu of the Home screen.

You will be issued a paper certificate by mail after the registration has been completed. You may check the status of this claim via eCO using this number 1-828151641. [THREAD ID: 1-DP2T9R]

United States Copyright Office

1

ER95

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 105 of 246

**To:** David Hardy; Credence Sol; Jason Armstrong
**Cc:** Heather Rowland
**Subject:** Fwd: Acknowledgement of Receipt

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 106 of 246

## Heather Rowland

**From:** Cris Armenta
**Sent:** Tuesday, September 25, 2012 10:44 AM

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 107 of 246

**Heather Rowland**

**Subject:**          FW: Case# 1-828151641 Cindy Lee Garcia      Attn: Marti/212230

---

**From:** ctoinfo [mailto:ctoinfo@loc.gov]
**Sent:** Wednesday, September 26, 2012 11:22 AM
**To:** Heather Rowland
**Cc:** ctoinfo
**Subject:** RE: Case# 1-828151641 Cindy Lee Garcia Attn: Marti/212230

Heather Rowland,


That's fine.

**Kind Regards,**

**Contractor to LOC/Copyright Technology Office**
**Library of Congress**
**101 Independence Ave, SE**          **mw**
**Washington DC 20540**
**Office # 202-707-3002**


**From:** Heather Rowland [mailto:heather@crisarmenta.com]
**Sent:** Wednesday, September 26, 2012 2:21 PM
**To:** ctoinfo
**Subject:** RE: Case# 1-828151641 Cindy Lee Garcia Attn: Marti/212230

I will mail a copy on DVD/R and it will be to your office tomorrow via FedEx. Does that work?

Thanks,

Heather Rowland
Assistant to M. Cris Armenta
The Armenta Law Firm APC
11900 Olympic Boulevard, Suite 730
Los Angeles, CA 90064
(310) 601-8715 Direct
(310) 384-3548 Cell
(310) 826-5456 Fax
www.crisarmenta.com


**From:** ctoinfo [mailto:ctoinfo@loc.gov]
**Sent:** Wednesday, September 26, 2012 11:19 AM
**To:** Heather Rowland
**Cc:** ctoinfo
**Subject:** RE: Case# 1-828151641 Cindy Lee Garcia Attn: Marti/212230

ER98

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 108 of 246

Heather Rowland,

It is not recommended that you do both, only one or the other.

**The upload feature has been enabled.**

**Multiple uploads are permitted.**

You can either upload your work electronically or send it in by mail. You should log into your account, click on open cases, click on your case number (make sure that your pop-up blocker is off), and you should then see buttons that will give you the option to upload your work electronically or send it by mail. If you want to upload, click on the 'upload deposit' button. A screen should come up (maximize that window) that will allow you to browse for your work and submit it electronically via upload to the Copyright Office. After clicking on the "Upload Deposit" button to upload your files, wait until you have *completed uploading ALL* of your files *THEN AND ONLY THEN* click on the *"Upload Complete"* button to complete the process. If you want to send your work by mail you should click on the button to 'create a shipping slip'. It should create a link for a shipping slip that you can click on that will open up the slip. You should print it out and send in with your work.

**If you continue to experience problems please phone for assistance.**

**Kind Regards,**

**Contractor to LOC/Copyright Technology Office**
**Library of Congress**
**101 Independence Ave, SE**                mw  2122230
**Washington DC 20540**
**Office # 202-707-3002**
--------------

2

ER99

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 109 of 246

From: (310) 826-2826
Maria Armenta
The Armenta Law Firm
11900 Olympic Boulevard

Los Angeles, CA 90064

Origin ID: CBA



FedEx
Express

E

Ship Date: 26SEP12
ActWgt 1.0 LB
CAD: 8678074/NET3300

Delivery Address Bar Code

SHIP TO: (310) 601-6716          BILL SENDER

**Copyright Office - MP**
**Library of Congress**
**101 INDEPENDENCE AVE SE**

**WASHINGTON, DC 20559**

Ref #          Garcia
Invoice #
PO #
Dept #

THU - 27 SEP  A2
**STANDARD OVERNIGHT**

TRK#  **7990 5616 8750**
0201

**20559**
DC-US
**DCA**



**XC YKNA**

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

9/26/2012 11:05 AM

**ER100**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 110 of 246

**EXHIBIT C**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 111 of 246

## Cris Armenta

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy <David.Hardy@DMCASolutions.com> |
| **Sent:** | Monday, September 24, 2012 12:56 PM |
| **To:** | debratucker@google.com; copyright@google.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request |
| **Attachments:** | YouTube-Google Takedown Notice (9-24-12).pdf |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *"The Innocence of the Muslims"* that have been posted on YouTube.

I am also faxing a copy of this Takedown Request to you at (650) 872-8513.

Sincerely,

David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

ER102

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 112 of 246

September 24, 2012

**Sent by Facsimile & Email**
YouTube, LLC
Attn: Debra Tucker, Designated Agent
901 Cherry Avenue
San Bruno, CA
Fax:    (650) 872-8513
Email: debratucker@google.com
Email: copyright@google.com

Re:    YouTube DMCA Takedown Request: Copyright Infringement
       Video – *The Innocence of the Muslims*

Dear Ms. Tucker:

DMCA Solutions, LLC, acting as agent on behalf of copyright holder Cindy Lee Garcia for the purposes of filing this Takedown Request, hereby submits the following:

**What is the Issue:**

> Copyright Infringement: Cindy Lee Garcia, an actress, has an original copyright that remains vested in her in her audio-visual dramatic performance in a film in which her performance has been altered and adulterated without her consent and posted on YouTube, infringing her copyright.

Copyright Infringement: Who is Affected

> Cindy Lee Garcia, the copyright owner

Identification of the Copyrighted Work Claimed to have been Infringed:

> Cindy Lee Garcia's audio-visual dramatic performance in a film originally titled *The Desert Warrior* but altered without her consent and posted on YouTube under the title *The Innocence of the Muslims.*

Identification of the material that is claimed to be infringing

> Video posted on YouTube under the title *The Innocence of Muslims* but originally titled *The Desert Warrior*

URLs of the Offending Video:

> http://www.youtube.com/watch?v=1nW54iK-7Cs&feature=fvsr

> http://www.youtube.com/watch?v=2Q_tD0BGhy4

> http://www.youtube.com/watch?v=fBDTS_YAWyI

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 113 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

http://www.youtube.com/watch?v=ffVBdyU5ONQ&feature=related

http://www.youtube.com/watch?v=FteusCTGO3M

http://www.youtube.com/watch?v=HWHajR9IMME

http://www.youtube.com/watch?v=I7Smzt607oE

http://www.youtube.com/watch?v=I7Smzt607oE&feature=fvsr

http://www.youtube.com/watch?v=VnYcWmcYBrw&feature=fvsr

http://www.youtube.com/watch?v=X6s8eFkt90Q

http://www.youtube.com/watch?v=XKtTIPnZ8iU

http://www.youtube.com/watch?v=ypz3kS75bsw

Copyright Owner's Name:    Cindy Lee Garcia

Authorized Agent:    DMCA Solutions, LLC
31 Hastings Street
Mendon, MA 01756
USA
(202) 350-0200
David.Hardy@DMCASolutions.com

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

ER104

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 114 of 246

**Cris Armenta**

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy |
| | <David.Hardy@DMCASolutions.com> |
| **Sent:** | Monday, September 24, 2012 6:47 PM |
| **To:** | debratucker@google.com; copyright@youtube.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request #2 |
| **Attachments:** | YouTube - Google Takedown Request #2 (9-24-12).docx |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *"The Innocence of the Muslims"* that have been posted on YouTube.

I am also faxing a copy of this Takedown Request to you at (650) 872-8513.

Sincerely,

David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

ER105

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 115 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

September 24, 2012

<u>Sent by Facsimile & Email</u>
YouTube, LLC
Attn: Debra Tucker, Designated Agent
901 Cherry Avenue
San Bruno, CA
Fax:    (650) 872-8513
Email:  debratucker@google.com
Email:  copyright@youtube.com

Re:    YouTube DMCA Takedown Request: Copyright Infringement
       Video – *The Innocence of the Muslims* – Takedown Request #2

Dear Ms. Tucker:

DMCA Solutions, LLC, acting as agent on behalf of copyright holder Cindy Lee Garcia for the
purposes of filing this Takedown Request, hereby submits the following:

<u>What is the Issue</u>:

       Copyright Infringement: Cindy Lee Garcia, an actress, has an original copyright that
       remains vested in her in her audio-visual dramatic performance in a film in which her
       performance has been altered and adulterated without her consent and posted on
       YouTube, infringing her copyright.

<u>Copyright Infringement: Who is Affected</u>

       Cindy Lee Garcia, the copyright owner

<u>Identification of the Copyrighted Work Claimed to have been Infringed</u>:

       Cindy Lee Garcia's audio-visual dramatic performance in a film originally titled *The
       Desert Warrior* but altered without her consent and posted on YouTube under the title
       *The Innocence of the Muslims.*

<u>Identification of the material that is claimed to be infringing</u>

       Video posted on YouTube under the title *The Innocence of Muslims* but originally titled
       *The Desert Warrior*

       <u>URLs of the Offending Video</u>:

       http://www.youtube.com/watch?v=MAiOEV0v2RM

       http://www.youtube.com/watch?v=X_wTvx6-ok4

       http://www.youtube.com/watch?v=xMZcd6UY1s4

ER106

Page 2

http://www.youtube.com/watch?v=X6s8eFkt90Q

http://www.youtube.com/watch?v=wdw-cgjH-ZU

http://www.youtube.com/watch?v=oLip6P2ksd8

http://www.youtube.com/watch?v=3dUwhPlAi_Y

http://www.youtube.com/watch?v=PbX3Caqm960

http://www.youtube.com/watch?v=qmodVun16Q4

http://www.youtube.com/watch?v=LoBwR9KEGUc&bpctr=1348536278

http://www.youtube.com/watch?v=E1ggHpWXvbs

http://www.youtube.com/watch?v=p_wRkA16SNg

http://www.youtube.com/watch?v=PbX3Caqm960

http://www.youtube.com/watch?v=qmodVun16Q4

http://www.youtube.com/watch?v=qmodVun16Q4

http://www.youtube.com/watch?v=n20IbInB2XM

http://www.youtube.com/watch?v=XlWYZA1MgAA

http://www.youtube.com/watch?v=SL8hW__ZZaY

http://www.youtube.com/watch?v=8QTtKQR0PBY

http://www.youtube.com/watch?v=jDigtAhMelY

Copyright Owner's Name:     Cindy Lee Garcia

Authorized Agent:     DMCA Solutions, LLC
31 Hastings Street
Mendon, MA 01756
USA
(202) 350-0200
David.Hardy@DMCASolutions.com

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 116 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 117 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

Page 3

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 118 of 246

**Cris Armenta**

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy <David.Hardy@DMCASolutions.com> |
| **Sent:** | Monday, September 24, 2012 7:23 PM |
| **To:** | debratucker@google.com; copyright@youtube.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request #3 (9-24-12) |
| **Attachments:** | YouTube-Google Takedown Request #3 (9-24-12).docx |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *"The Innocence of the Muslims"* that have been posted on YouTube.

Sincerely,

David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

ER109

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 119 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

September 24, 2012

**Sent by Facsimile & Email**
YouTube, LLC
Attn: Debra Tucker, Designated Agent
901 Cherry Avenue
San Bruno, CA
Fax:     (650) 872-8513
Email:   debratucker@google.com
Email:   copyright@youtube.com

Re:     YouTube DMCA Takedown Request: Copyright Infringement
        Video – *The Innocence of the Muslims* – Takedown Request #3

Dear Ms. Tucker:

DMCA Solutions, LLC, acting as agent on behalf of copyright holder Cindy Lee Garcia for the
purposes of filing this Takedown Request, hereby submits the following:

**What is the Issue:**

 Copyright Infringement: Cindy Lee Garcia, an actress, has an original copyright that
 remains vested in her in her audio-visual dramatic performance in a film in which her
 performance has been altered and adulterated without her consent and posted on
 YouTube, infringing her copyright.

**Copyright Infringement: Who is Affected**

 Cindy Lee Garcia, the copyright owner

**Identification of the Copyrighted Work Claimed to have been Infringed:**

 Cindy Lee Garcia's audio-visual dramatic performance in a film originally titled *The
 Desert Warrior* but altered without her consent and posted on YouTube under the title
 *The Innocence of the Muslims.*

**Identification of the material that is claimed to be infringing**

 Video posted on YouTube under the title *The Innocence of Muslims* but originally titled
 *The Desert Warrior*

 **URLs of the Offending Video:**

 http://www.youtube.com/watch?v=BJghCKyLOvE

 http://www.youtube.com/watch?v=vEIHfaiK93M

 http://www.youtube.com/watch?v=YSwi94xfNFE

ER110

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 120 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

http://www.youtube.com/watch?v=jDYdlkpgStY

http://www.youtube.com/watch?v=IE5McEN4HKA&bpctr=1348538846

http://www.youtube.com/watch?v=A2aNEreHzi0

http://www.youtube.com/watch?v=YSwi94xfNFE

http://www.youtube.com/watch?v=KCD33i3kDkk

http://www.youtube.com/watch?v=J-8lcjUPpNI

http://www.youtube.com/watch?v=GKRHED2RuL0

http://www.youtube.com/watch?v=zvxJtVDA5s4

http://www.youtube.com/watch?v=LrlfRLh1OJM

http://www.youtube.com/watch?v=i7Smzt607oE

http://www.youtube.com/watch?v=lutCBSBPe0U&bpctr=1348539718

http://www.youtube.com/watch?v=ezflX0bU01I

http://www.youtube.com/watch?v=CHiLxHRK3Yk

http://www.youtube.com/watch?v=-iFHMZGLp4B&bpctr=1348539839

http://www.youtube.com/watch?v=i7Smzt607oE

http://www.youtube.com/watch?v=i7Smzt607oE

http://www.youtube.com/watch?v=Vh1G0nV4h-w

Copyright Owner's Name:   Cindy Lee Garcia

Authorized Agent:   DMCA Solutions, LLC
31 Hastings Street
Mendon, MA 01756
USA
(202) 350-0200
David.Hardy@DMCASolutions.com

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 121 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

Page 3

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

ER112

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 122 of 246

## Cris Armenta

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy <David.Hardy@DMCASolutions.com> |
| **Sent:** | Monday, September 24, 2012 10:09 PM |
| **To:** | debratucker@google.com; copyright@youtube.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request #4 |
| **Attachments:** | YouTube-Google Takedown Request #4 (9-24-12).docx |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *"The Innocence of the Muslims"* that have been posted on YouTube.

Sincerely,

David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

ER113

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 123 of 246

DMCA Solutions
31 Hastings Street
Mendon, MA 01756

September 24, 2012

**Sent by Email**
YouTube, LLC
Attn: Debra Tucker, Designated Agent
901 Cherry Avenue
San Bruno, CA
Email: debratucker@google.com
Email: copyright@youtube.com

Re:    YouTube DMCA Takedown Request: Copyright Infringement
        Video – *The Innocence of the Muslims* – Takedown Request #4

Dear Ms. Tucker:

DMCA Solutions, LLC, acting as agent on behalf of copyright holder Cindy Lee Garcia for the
purposes of filing this Takedown Request, hereby submits the following:

Whet is the Issue:

        Copyright Infringement: Cindy Lee Garcia, an actress, has an original copyright that
        remains vested in her in her audio-visual dramatic performance in a film in which her
        performance has been altered and adulterated without her consent and posted on
        YouTube, infringing her copyright.

Copyright Infringement: Who is Affected

        Cindy Lee Garcia, the copyright owner

Identification of the Copyrighted Work Claimed to have been Infringed:

        Cindy Lee Garcia's audio-visual dramatic performance in a film originally titled *The
        Desert Warrior* but altered without her consent and posted on YouTube under the title
        *The Innocence of the Muslims*.

Identification of the material that is claimed to be infringing

        Video posted on YouTube under the title *The Innocence of Muslims* but originally titled
        *The Desert Warrior*

        URLs of the Offending Video:

        http://www.youtube.com/watch?v=1RagKWM8ldk

        http://www.youtube.com/watch?v=1wkvgd9_NtY

        http://www.youtube.com/watch?v=2AJ2ElzJ11w

ER114

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

http://www.youtube.com/watch?v=2IC2wpYa7KE

http://www.youtube.com/watch?v=2TI9GbNk_gY

http://www.youtube.com/watch?v=6KJq-rNjLk8

http://www.youtube.com/watch?v=6ySE-yYeeIE

http://www.youtube.com/watch?v=7EmQRlbQbJk

http://www.youtube.com/watch?v=7qcFACwfjl8

http://www.youtube.com/watch?v=8jYrk--UFh0

http://www.youtube.com/watch?v=A1ezRBS5Jhs

http://www.youtube.com/watch?v=a5gABvYSbls

http://www.youtube.com/watch?v=ADdj48gHKGQ

http://www.youtube.com/watch?v=AQqqy6_RiD0

http://www.youtube.com/watch?v=Ar3ju0D81Lg

http://www.youtube.com/watch?v=B-pGehBwKFY

http://www.youtube.com/watch?v=BGYNJmIaEbk

http://www.youtube.com/watch?v=bkpIXBnFT3c

http://www.youtube.com/watch?v=BMhwVg4imO8

http://www.youtube.com/watch?v=BPQM2nfVyz0

http://www.youtube.com/watch?v=bYaKOBkd4io

http://www.youtube.com/watch?v=C7KeGApikUs

http://www.youtube.com/watch?v=dAaDPAnlvx0

http://www.youtube.com/watch?v=DIzesXXwUiU

http://www.youtube.com/watch?v=dx3z4Iy5Exs

http://www.youtube.com/watch?v=EHby-g7KgC0

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 124 of 246

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

http://www.youtube.com/watch?v=engQ9MX4Cyc

http://www.youtube.com/watch?v=eqQ74At3Psc

http://www.youtube.com/watch?v=fAMCA7JdQYk

http://www.youtube.com/watch?v=fm3P9mEi3Xk

http://www.youtube.com/watch?v=FsC7yHse-lQ

http://www.youtube.com/watch?v=gORgR7UlXgY

http://www.youtube.com/watch?v=h2MHczJvFNQ

http://www.youtube.com/watch?v=HDeWjf877yw

http://www.youtube.com/watch?v=HkGOubHlT6l

http://www.youtube.com/watch?v=HR0Vj-8dgTM

http://www.youtube.com/watch?v=Hv4HwUQS-yY

http://www.youtube.com/watch?v=IDK2vI6U48M

http://www.youtube.com/watch?v=Jslgjg3VkrE

http://www.youtube.com/watch?v=K3lAgMuNi0A

http://www.youtube.com/watch?v=kAQ5onF0Lc4

http://www.youtube.com/watch?v=Lgx1_JVxfZE

http://www.youtube.com/watch?v=lhBoPXEPUsQ

http://www.youtube.com/watch?v=Ln3VAwuLxCE

http://www.youtube.com/watch?v=mjoa3QazVv8

http://www.youtube.com/watch?v=n8s6bYHELaw

http://www.youtube.com/watch?v=NggEJ5PTPbw

http://www.youtube.com/watch?v=NuOFer5WqYo

http://www.youtube.com/watch?v=o3ey9m4ApdY

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 125 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 126 of 246

DMCA Solutions
31 Hastings Street
Mendon, MA 01756

Page 4

http://www.youtube.com/watch?v=o7RQqavrd0E

http://www.youtube.com/watch?v=O8Wc5PsXmPo

http://www.youtube.com/watch?v=Oqzlb6N0wE8

http://www.youtube.com/watch?v=ov9bd23F1yA

http://www.youtube.com/watch?v=q26I0VLRbQE

http://www.youtube.com/watch?v=qf-44Q3SV0Y

http://www.youtube.com/watch?v=Ql3sDuWPvos

http://www.youtube.com/watch?v=QOcQvZ_UNwU

http://www.youtube.com/watch?v=rKOa87wgPp4

http://www.youtube.com/watch?v=SlPLKwpV6NE

http://www.youtube.com/watch?v=sXKyPPgrMl4

http://www.youtube.com/watch?v=tHpacSiAl9U

http://www.youtube.com/watch?v=tRa9L5OPS0M

http://www.youtube.com/watch?v=tRBGBGDZj7o

http://www.youtube.com/watch?v=tvV6p5IHDLM

http://www.youtube.com/watch?v=UDd6bine9io

http://www.youtube.com/watch?v=v5TBXoKErus

http://www.youtube.com/watch?v=Vh5LEJNE70c

http://www.youtube.com/watch?v=vNZW4KCPURQ

http://www.youtube.com/watch?v=vYnwZeZ8p8Y

http://www.youtube.com/watch?v=W1MYYfCg2X4

http://www.youtube.com/watch?v=WI8FoYpgINw

http://www.youtube.com/watch?v=XKtTlPnZ8iU

ER117

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 127 of 246

http://www.youtube.com/watch?v=xLxzfOPDMIo

http://www.youtube.com/watch?v=xYVfBNKbfRQ

http://www.youtube.com/watch?v=YFogvC4_zgY

http://www.youtube.com/watch?v=zx-j8lzx6dQ

http://www.youtube.com/watch?v=_WCCdyRzC2A

http://www.youtube.com/watch?v=_yGsQ0fuaXA

Copyright Owner's Name:     **Cindy Lee Garcia**

Authorized Agent:     **DMCA Solutions, LLC**
**31 Hastings Street**
**Mendon, MA 01756**
**USA**
**(202) 350-0200**
**David.Hardy@DMCASolutions.com**

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 128 of 246

**Cris Armenta**

| | |
|---|---|
| **From:** | david@dmcasolutions.com on behalf of David Hardy <David.Hardy@DMCASolutions.com> |
| **Sent:** | Tuesday, September 25, 2012 10:05 AM |
| **To:** | debratucker@google.com; copyright@youtube.com |
| **Cc:** | Cris Armenta |
| **Subject:** | DMCA Takedown Request #5 |
| **Attachments:** | YouTube-Google Takedown Request #5 (9-25-12).docx |

Dear Ms. Tucker:

Attached please find a Takedown Request prepared and sent to you pursuant to the Digital Millennium Copyright Act, relative to videos of the film identified as *"The Innocence of the Muslims"* that have been posted on YouTube.

Sincerely,

David E. Hardy, President
DMCA Solutions, LLC
(202) 350-0200
David.Hardy@DMCASolutions.com

1

ER119

**DMCA Solutions**
31 Hastings Street
Mendon, MA 01756

Page 2

http://www.youtube.com/watch?v=9dqHt6gsoxU

http://www.youtube.com/watch?v=NQ5UAralcWE

http://www.youtube.com/watch?v=XxIaQKqiRLY

http://www.youtube.com/watch?v=DdOUoGfHg-I

http://www.youtube.com/watch?v=7Ojxb_VkHAs

http://www.youtube.com/watch?v=ns0rQ-_dZC0

http://www.youtube.com/watch?v=TGB24q8K97w

http://www.youtube.com/watch?v=YPVxQ3NDMPk

http://www.youtube.com/watch?v=YBJSPSxUS5E

http://www.youtube.com/watch?v=Rdh8ayz0B-Y

http://www.youtube.com/watch?v=eeO3MEi8s38

http://www.youtube.com/watch?v=DmVg_i4-0wk

http://www.youtube.com/watch?v=oMR0cUljTE8

http://www.youtube.com/watch?v=YQ1w6HA3154

http://www.youtube.com/watch?v=QnMQ8k-4VgY

http://www.youtube.com/watch?v=G16J4zFn5Vl

http://www.youtube.com/watch?v=FTH0P746SJQ

http://www.youtube.com/watch?v=sOolJyq03Wk

http://www.youtube.com/watch?v=SB28D9KITkc

http://www.youtube.com/watch?v=6Bn5Skixb1A

http://www.youtube.com/watch?v=T2wsrTi3j4o

http://www.youtube.com/watch?v=TJyCUUfMCDl

http://www.youtube.com/watch?v=Tt_nkMCCPxk

ER120

Page 3

http://www.youtube.com/watch?v=GKl8pna53hg

http://www.youtube.com/watch?v=AP3Yg5vJNK0

http://www.youtube.com/watch?v=obe0PmyW6Ek

http://www.youtube.com/watch?v=1KMsSiBdplQ

http://www.youtube.com/watch?v=yP2soXU7quM

http://www.youtube.com/watch?v=dXEM4EmB2sM

http://www.youtube.com/watch?v=1ryHcwXjib0.

http://www.youtube.com/watch?v=G3g_R-RovR8

http://www.youtube.com/watch?v=Yyk9ghudS5w

http://www.youtube.com/watch?v=w9zatob4YxY

http://www.youtube.com/watch?v=s_AOeKOGql0

http://www.youtube.com/watch?v=yW-fXw1EKXc

http://www.youtube.com/watch?v=UEZhWm2oK9k

http://www.youtube.com/watch?v=hftuDpFP4Wl

http://www.youtube.com/watch?v=4midXCjFO-Q

Copyright Owner's Name:   **Cindy Lee Garcia**

Authorized Agent:        **DMCA Solutions, LLC**
**31 Hastings Street**
**Mendon, MA 01756**
**USA**
**(202) 350-0200**
David.Hardy@DMCASolutions.com

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 130 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 131 of 246

Page 4

DMCA Solutions, LLC, has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

The information in this notification is accurate, and under penalty of perjury, DMCA Solutions, LLC, is authorized to act on behalf of Cindy Lee Garcia, the owner of an exclusive right that is infringed.

DMCA Solutions, LLC

By:

David Hardy, President

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 132 of 246

1  M. Cris Armenta (SBN 177403)
   THE ARMENTA LAW FIRM APC
2  11900 W. Olympic Boulevard, Suite 730
   Los Angeles, CA 90064
3  Tel: (310) 826-2826 x 108
   Facsimile: (310) 826-5456
   Email: cris@crisarmenta.com
4
5  Credence E. Sol (SBN 219784)
   La Garenne
6  86300 Chauvigny
   France
7  Telephone: 06 74 90 22 08
   credence.sol@sol-law.com
8
   Attorneys for Plaintiff
9  Cindy Lee Garcia

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12  CINDY LEE GARCIA, an individual, | Case No. CV12-8315-MWF(VBKx) |
| 13                        Plaintiff, | **(1) PLAINTIFF'S *EX PARTE* APPLICATION TO EXCEED PAGE LIMITS SET FORTH IN LOCAL RULE 11-6;** |
| 14  vs. | |
| 15  NAKOULA BASSELEY NAKOULA, an individual also known as SAM BACILE, MARK BASSELEY YOUSSEF, ABANOB BASSELEY NAKOULA, MATTHEW NEKOLA, AHMED HAMDY, AMAL NADA, DANIEL K. CARESMAN, KRITBAG DIFRAT, SOBHI BUSHRA, ROBERT BACILY, NICOLA BACILY, THOMAS J. TANAS, ERWIN SALAMEH, YOUSSEFF M. BASSELEY, and/or MALID AHLAWI; GOOGLE, INC., a Delaware Corporation; YOUTUBE, LLC, a California limited liability company, and DOES 1 through 10, inclusive. | **(2) DECLARATION OF M. CRIS ARMENTA IN SUPPORT THEREOF;** |
| |  **(3) [PROPOSED] ORDER, LODGED SEPARATELY** |
| 24                        Defendants. | |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 133 of 246

1       Plaintiff Cindy Lee Garcia respectfully requests that this Court extend the

2   page limitations set forth in Local Civil Rule 11-6 for the briefing on Plaintiff's Ex

3   Parte Application for a Temporary Restraining Order, Order to Show Cause Re

4   Issuance of a Preliminary Injunction and an Order of Impoundment ("Application").

5   In support of this request, Plaintiff states that she has been unable to comply with

6   the page limitations.  Plaintiff respectfully requests ten (10) additional pages to

7   adequately present the facts and complex legal issues necessary to consider

8   Plaintiff's Application.

9       Wherefore, Plaintiff respectfully requests that:

10     1)    Plaintiff be allowed up to thirty-five (35) pages for her Application;

11     2)    That any briefs submitted in connection with this Application be

12         permitted to be up to thirty (35) pages.[1]

13

14  Dated: October 11, 2012      THE ARMENTA LAW FIRM, A.P.C.

15

16               By: _____

17                      M. Cris Armenta

18                      Attorneys for Plaintiff

19                      Cindy Lee Garcia

20

21

22

23

24

25

26    [1]   Although counsel for Defendants YouTube and Google stated that he has no

27  position on the issue of page limits, out of fairness and to avoid multiple requests on

28  the same issue, Plaintiff hereby requests the same order on behalf of the defendants
    as well. (See Declaration of M. Cris Armenta, attached hereto.)

                                       2

**PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT**
CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 134 of 246

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

    On October 11, 2012 I served the following document(s) described as:

**(1) PLAINTIFF'S *EX PARTE* APPLICATION TO EXCEED PAGE LIMITS SET FORTH IN LOCAL RULE 11-6;**

**DECLARATION OF M. CRIS ARMENTA IN SUPPORT THEREOF;**

**[PROPOSED] ORDER, LODGED SEPARATELY**

**(2) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT UNDER LOCAL RULE 11-6**

**(3) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT UNDER LOCAL RULE 11-6**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

**Timothy L. Alger**
**Perkins Coie LLP**
**3150 Porter Drive**
**Palo Alto, CA 94304-1212**

    ***BY MAIL:*** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

    Executed on October 11, 2012 in Los Angeles, California.

_Heather Rowland_
Heather Rowland

1
**PROOF OF SERVICE**

ER125

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 135 of 246

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

On October 11, 2012 I served the following document(s) described as:

**(1) PLAINTIFF'S *EX PARTE* APPLICATION TO EXCEED PAGE LIMITS SET FORTH IN LOCAL RULE 11-6;**

**DECLARATION OF M. CRIS ARMENTA IN SUPPORT THEREOF;**

**[PROPOSED] ORDER, LODGED SEPARATELY**

**(2) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT UNDER LOCAL RULE 11-6**

**(3) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT UNDER LOCAL RULE 11-6**

on the interested parties in this action by placing true copies thereof addressed as follows:

> **Timothy L. Alger**
> **Perkins Coie LLP**
> **3150 Porter Drive**
> **Palo Alto, CA 94304-1212**
> **TAlger@perkinscoie.com**

BY ELECTRONIC MAIL, pursuant to the consent of the above counsel

I declare under penalty of perjury under the law of the State of California that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on October 11, 2012 in Los Angeles, California.

Heather Rowland

1

ER126

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 136 of 246

1    M. Cris Armenta (SBN 177403)
     THE ARMENTA LAW FIRM APC
2    11900 W. Olympic Boulevard, Suite 730
     Los Angeles, CA 90064
3    Tel: (310) 826-2826 x 108
     Facsimile: (310) 826-5456
4    Email: cris@crisarmenta.com

5    Credence E. Sol (SBN 219784)
     La Garenne
6    86300 Chauvigny
     France
7    Telephone: 06 74 90 22 08
     credence.sol@sol-law.com
8
     Attorneys for Plaintiff
9    Cindy Lee Garcia

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   CINDY LEE GARCIA, an                Case No. CV12-8315-MWF(VBKx)
     individual,
13                                       DECLARATION OF M. CRIS
                                         ARMENTA IN SUPPORT OF
14                      Plaintiff,       PLAINTIFF'S *EX PARTE*
                                         MOTION TO EXCEED PAGE
15   vs.                                 LIMIT UNDER LOCAL RULE
                                         11-6
16   NAKOULA BASSELEY
     NAKOULA, an individual also
17   known as SAM BACILE, MARK
     BASSELEY YOUSSEF,
18   ABANOB BASSELEY
     NAKOULA, MATTHEW
19   NEKOLA, AHMED HAMDY,
     AMAL NADA, DANIEL K.
20   CARESMAN, KRITBAG
     DIFRAT, SOBHI BUSHRA,
21   ROBERT BACILY, NICOLA
     BACILY, THOMAS J. TANAS,
22   ERWIN SALAMEH, YOUSSEFF
     M. BASSELEY, and/or MALID
23   AHLAWI; GOOGLE, INC., a
     Delaware Corporation;
24   YOUTUBE, LLC, a California
     limited liability company, and
25   DOES 1 through 10, inclusive.

26                      Defendants.

27

28
                                         M. CRIS ARMENTA'S DECLARATION IN SUPPORT OF
                                         PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT
                                         CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 137 of 246

## DECLARTION OF M. CRIS ARMENTA

I, M. Cris Armenta, declare:

1.      I am an attorney admitted to practice before this Court and a member in good standing with the State Bar of California. I am the principal of The Armenta Law Firm APC, lead counsel for Plaintiff Cindy Lee Garcia. I make this declaration based on my own personal knowledge. If called as a witness, I could and would testify competently as follows:

2.      Plaintiff intends to file an Ex Parte Application and an Order to Show Cause Re Issuance of Preliminary Injunction ("Application") requesting, among other things, an order that Defendants remove from YouTube a video trailer titled *The Innocence of Muslims*, on the grounds that the video trailer violates Plaintiff's copyright.

3.      Beginning on September 25, 2012 and through the present, Plaintiff Garcia has complied with the procedures required by the Digital Millennium Copyright Act ("DMCA"), requesting that YouTube remove the infringing content. After YouTube and its statutorily-identified "takedown agent" received several "takedown notices," along with Plaintiffs' legal briefs setting forth Plaintiff's legal position, YouTube finally revealed on October 4, 2012, that it would not take down the content that Plaintiff believes infringes her copyright.

4.      Immediately thereafter, Plaintiff's counsel scheduled a call to meet and confer with counsel for YouTube and Google. It was not until that conversation that opposing counsel finally revealed the basis for YouTube and Google's refusal to remove the video trailer; specifically, that they believe that those Defendants are protected by DMCA's "safe harbor" provision.

5.      In Plaintiff's view, Defendants' responses to her takedown requests were conducted in a manner that waived their "safe harbor" protections. Accordingly, Plaintiff's legal team immediately began to prepare the above-

1  referenced Application. Plaintiff's legal team is spread over four time zones and
2  two continents, and has been working around the clock to complete the brief and
3  related papers. Despite their best efforts to streamline the pertinent facts and legal
4  arguments, counsel cannot complete the brief within the 25 pages set forth in the
5  Local Rules. Plaintiff's brief is a very condensed 35 pages. Plaintiff therefore
6  requests an order of the Court to permit her to file a brief that does not exceed 35
7  pages, exclusive of exhibits, physical evidence, a request for judicial notice, and
8  sworn declarations.

9    6.    The Court should be aware that YouTube and Google's counsel have
10  taken the position that the Application is unnecessary, improper and untimely, and
11  that Plaintiff – despite being under constant death threats and a fatwa (an Islamic
12  pronouncement of death) issued on her – has no emergency. In addition, counsel for
13  YouTube has advised that he will be unavailable from Friday, October 12, 2012,
14  through Monday, October 15, 2012.

15    7.    At 10:39 a.m., on October 11, 2012, I telephoned and spoke with Tim
16  Alger, lead counsel for YouTube and Google. I informed him that prior to filing the
17  Ex Parte Application, Plaintiff would today be filing an Ex Parte Application to
18  exceed page limits on the brief. I explained to him that despite best efforts,
19  Plaintiff's counsel has been unable to complete the brief in fewer than 35 pages. I
20  asked him for his position. Mr. Alger told me that he had no comment and had no
21  position on the page-limits issue. I told him I would so inform the Court. I also
22  offered to ask the Court, on his behalf, for an order that – as a matter of fairness –
23  any responsive brief could also be up to 35 pages. His response was, "I have no
24  position on page limits. The whole thing is improper, the timing, everything." This
25  is the sum and substance of Defendant YouTube and Google's disclosed position on
26  page limits – in short, they are neither opposed nor in favor, but will clearly oppose
27  the Application for which Plaintiff seeks a page extension.

28

3

M. CRIS ARMENTA'S DECLARATION IN SUPPORT OF
PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT
CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 138 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 139 of 246

8.      This Application is being served on counsel for YouTube and Google simultaneously with its filing.  Since YouTube and Google have represented to me that they are taking "no position," I do not anticipate any responsive paperwork from those defendants.  With respect to Defendant Nakoula a/k/a Youseff, that Defendant is currently detained at the United States Bureau of Prisons Metropolitan Detention Center, and attempts to serve him are underway; if those efforts to not succeed, then Plaintiff intends to seek an order under Federal Rule of Civil Procedure 4 that service be effected through the United States Marshall Service.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 11th day of October, 2012.

M. Cris Armenta

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 140 of 246

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

    On October 11, 2012 I served the following document(s) described as:

**(1) PLAINTIFF'S *EX PARTE* APPLICATION TO EXCEED PAGE LIMITS SET FORTH IN LOCAL RULE 11-6;**

**DECLARATION OF M. CRIS ARMENTA IN SUPPORT THEREOF;**

**[PROPOSED] ORDER, LODGED SEPARATELY**

**(2) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT UNDER LOCAL RULE 11-6**

**(3) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT UNDER LOCAL RULE 11-6**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

> **Timothy L. Alger**
> **Perkins Coie LLP**
> **3150 Porter Drive**
> **Palo Alto, CA 94304-1212**

    ***BY MAIL:*** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

    Executed on October 11, 2012 in Los Angeles, California.

                         Heather Rowland

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

On October 11, 2012 I served the following document(s) described as:

**(1) PLAINTIFF'S *EX PARTE* APPLICATION TO EXCEED PAGE LIMITS SET FORTH IN LOCAL RULE 11-6;**

**DECLARATION OF M. CRIS ARMENTA IN SUPPORT THEREOF;**

**[PROPOSED] ORDER, LODGED SEPARATELY**

**(2) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT UNDER LOCAL RULE 11-6**

**(3) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO EXCEED PAGE LIMIT UNDER LOCAL RULE 11-6**

on the interested parties in this action by placing true copies thereof addressed as follows:

> **Timothy L. Alger**
> **Perkins Coie LLP**
> **3150 Porter Drive**
> **Palo Alto, CA 94304-1212**
> **TAlger@perkinscoie.com**

☑ BY ELECTRONIC MAIL, pursuant to the consent of the above counsel

I declare under penalty of perjury under the law of the State of California that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on  October 11, 2012 in Los Angeles, California.

_____
Heather Rowland

1

ER132

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 142 of 246

1  M. Cris Armenta (SBN 177403)
   THE ARMENTA LAW FIRM APC
2  11900 W. Olympic Boulevard, Suite 730
   Los Angeles, CA 90064
3  Tel: (310) 826-2826 x 108
   Facsimile: (310) 826-5456
4  Email: cris@crisarmenta.com

5  Credence E. Sol (SBN 219784)
   La Garenne
6  86300 Chauvigny
   France
7  Telephone: 06 74 90 22 08
   credence.sol@sol-law.com
8
   Attorneys for Plaintiff
9  Cindy Lee Garcia

**DENIED**

BY ORDER OF THE COURT

10              **UNITED STATES DISTRICT COURT**

11          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12  CINDY LEE GARCIA, an          Case No. CV12-8315-MWF(VBKx)
    individual,
13                                **[PROPOSED] ORDER**
                  Plaintiff,      **GRANTING PLAINTIFF'S *EX***
14                                ***PARTE* MOTION TO EXCEED**
    vs.                           **PAGE LIMIT UNDER LOCAL**
15                                **RULE 11-6**
    NAKOULA BASSELEY
16  NAKOULA, an individual also
    known as SAM BACILE, MARK
17  BASSELEY YOUSSEF,
    ABANOB BASSELEY
18  NAKOULA, MATTHEW
    NEKOLA, AHMED HAMDY,
19  AMAL NADA, DANIEL K.
    CARESMAN, KRITBAG
20  DIFRAT, SOBHI BUSHRA,
    ROBERT BACILY, NICOLA
21  BACILY, THOMAS J. TANAS,
    ERWIN SALAMEH, YOUSSEFF
22  M. BASSELEY, and/or MALID
    AHLAWI; GOOGLE, INC., a
23  Delaware Corporation;
    YOUTUBE, LLC, a California
24  limited liability company, and
    DOES 1 through 10, inclusive.
25
26                Defendants.
27
28
                                   1
                          [PROPOSED] ORDER GRANTING PLAINTIFF'S
                          *EX PARTE* MOTION TO EXCEED PAGE LIMIT
                                  CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 143 of 246

1    Having considered Plaintiff's *Ex Parte* Motion to Extend Page Limits for her

2  Ex Parte Application for a Temporary Restraining Order, Issuance of an Order to

3  Show Cause Re Preliminary Injunction, and Order of Impoundment ("Application"),

4  the Court being duly advised, and good cause shown:

5    **IT IS HEREBY ORDERED** that Plaintiff's Motion to Extend Page Limits is

6  **GRANTED.**

7    **IT IS ORDERED** that Plaintiff has thirty-five (35) pages for the Application

8  and that all briefs in connection with that Application may be up to 35 pages in

9  length.

10    **IT IS SO ORDERED.**

11  Dated: October 12, 2012

# DENIED
## BY ORDER OF THE COURT

_____

United States District Court Judge

[PROPOSED] ORDER GRANTING PLAINTIFF'S
*EX PARTE* MOTION TO EXCEED PAGE LIMIT
CV 12 8315 (VBKx)

2

ER134

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 144 of 246

1  M. Cris Armenta (SBN 177403)
   THE ARMENTA LAW FIRM APC
2  11900 W. Olympic Boulevard, Suite 730
   Los Angeles, CA 90064
3  Tel: (310) 826-2826 x 108
   Facsimile: (310) 826-5456
4  Email: cris@crisarmenta.com

5  Credence E. Sol (SBN 219784)
   La Garenne
6  86300 Chauvigny
   France
7  Telephone: 06 74 90 22 08
   Email:  credence.sol@sol-law.com
8
   Attorneys for Plaintiff
9  Cindy Lee Garcia

10             UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  CINDY LEE GARCIA, an          Case No. CV12-8315 MWF (VBKx)
    individual,
13                                (1) *EX PARTE* APPLICATION FOR A
                    Plaintiff,        TEMPORARY RESTRAINING
14                                    ORDER AND AN ORDER TO
    vs.                               SHOW CAUSE RE PRELIMINARY
15                                    INJUNCTION, AND ORDER OF
    NAKOULA BASSELEY                  IMPOUNDMENT;
16  NAKOULA, an individual also
    known as SAM BACILE, MARK     (2) DECLARATIONS OF CINDY
17  BASSELEY YOUSSEF,                 LEE GARCIA, DAN SUTTER,
    ABANOB BASSELEY                   GAYLORD FLYNN, KHALED
18  NAKOULA, MATTHEW                  ABOU EL FADL; ZACARAH
    NEKOLA, AHMED HAMDY,             LEVINE; DAVE HARDY, AND
19  AMAL NADA, DANIEL K.             M. CRIS ARMENTA;
    CARESMAN, KRITBAG
20  DIFRAT, SOBHI BUSHRA,         (3) REQUEST FOR JUDICIAL
    ROBERT BACILY, NICOLA            NOTICE;
21  BACILY, THOMAS J. TANAS,
    ERWIN SALAMEH, YOUSSEFF     (4) [PROPOSED] ORDER (lodged
22  M. BASSELEY, and/or MALID        separately)
    AHLAWI; GOOGLE, INC., a
23  Delaware Corporation;
    YOUTUBE, LLC, a California
24  limited liability company, and
    DOES 1 through 10, inclusive.
25
                    Defendants.
26

27

28
                                    EX PARTE APPLICATION  AND NOTICE
                                    CV12-8315 MWF (VBKx)

ER135

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 145 of 246

1        PLEASE TAKE NOTICE that Plaintiff Cindy Lee Garcia brings this Ex

2  Parte Application for a Temporary Restraining Order and an Order to Show Cause

3  Re Issuance of Preliminary Injunction, and an Order of Impoundment.  This

4  Application is based on the papers and pleadings in this action, the matters of which

5  this Court may take judicial notice, the declarations submitted in support.

6        This Application follows a conference pursuant to Local Rule 11-6 between

7  counsel for Plaintiff and counsel for Defendants YouTube and Google.  Although

8  Plaintiff has communicated with Defendant Nakoula's criminal defense attorney and

9  advised of this Application and its contends, that attorney does not formally

10  represent Defendant Nakoula in this civil matter.  Defendant Nakoula is currently

11  detained at the Bureau of Prisons' Los Angeles Metropolitan Detention Center and

12  these papers are being served, along with the Summons and First Amended

13  Complaint, through the procedures set forth by the Bureau of Prisons in conjunction

14  with the Los Angeles County Sheriffs Department.

15

16  Dated: October 17, 2012        THE ARMENTA LAW FIRM, A.P.C.

17

18                  By: _____

19                     M. Cris Armenta
                         Attorneys for Cindy Lee Garcia

20

21

22

23

24

25

26

27

28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 146 of 246

# TABLE OF CONTENTS

TABLE OF CONTENTS…........................................................................ .i

TABLE OF AUTHORITIES ........................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .......................... 1

I.   STATEMENT OF THE ISSUES....................................... 1

II.   PRELIMINARY STATEMENT..................................................... 1

III.   STATEMENT OF FACTS IN SUPPORT OF THE APPLICATION ......... 5

    A.   Plaintiff Agreed to Provide a Dramatic Performance But Did Not Agree to Relinquish her Copyright in that Performance...............5

    B.   Nakoula Used Plaintiff As a "Puppet" for His Racist Views, and YouTube Published a Doctored Version of Her Performance.........6

    C.   After Defendants Published an Arabic Translation of the Film, It Went Viral and Provoked a Wave of Global Violence And a *Fatwa* on Plaintiff's Head, to Which Defendants Are Completely Indifferent…………………………………………………….7

    D.   Defendant Nakoula Admitted That He Procured Plaintiff's Dramatic Performance Through Fraud and Deception………………………………………………………............8

    E.   In Addition to Becoming the Target of a *Fatwa,* Ms. Garcia Has Received Numerous Death Threats, …………………………………9

    F.   Plantiff Has Begged YouTube and Google to Save Her Life and Take Down the Film, But they Prefer to Continue to Profit From The Millions of Pageviews That the Film Attracts……………….…..11

    G.   YouTube and Google Have Specific Knowledge of the Infringing Material and Are in Receipt of Direct Financial Benefits Attributed to the Rampant Infringement……………………………..12

    H.   The Only "Defense" That Defendants Have Offered So Far is Their Deliberately Incorrect Assumption That Plaintiff Garcia's Copyrighted Performance is a "Joint Work."………………………13

IV.   STANDARD FOR ISSUANCE OF RESTRAINING ORDER AND ORDER TO SHOWCAUSE RE PRELIMINARY INJUNCTION IN COPYRIGHT CASES ................................................................. 14

V.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS ................... 14

    A.   Plaintiff Clearly Owns the Rights to Her Dramatic Performance...... 14

    B.   Plaintiff Never Assigned Her Copyright Interests ............................. 16

TABLE OF CONTENTS
CV12-8315 MWF(VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 147 of 246



C.    Defendant Nakoula and Plaintiff Garcia Never Agreed, in Writing Or Otherwise, to Create a "Joint Work of Authorship," as Google And YouTube Apparently Claim .................................................... 17

D.    YouTube has Stepped Far Outside the DMCA's Safe Harbor Harbor Provision, Subjecting it To Liability for Copyright Infringement ...................................................................................... 19

E.    Even if Defendant Nakoula Had a Joint Copyright Interest with Plaintiff Garcia, All of the Third Parties Who Have Copied and Re-Posted the Film on YouTube Have No Right to Copy and Re-Post the Film, and Are Infringing on Plaintiff Garcia's Copyright .... 20

VI.    PLAINTIFF GARCIA WILL SUFFER IRREPARABLE HARM IF THE TRO AND INJUNCTION ARE NOT GRANTED ............................ 21

VII.    THE BALANCE OF EQUITIES IN PLAINTIFF GARCIA'S FAVOR .. 22

VIII.    AN INJUNCTION IS DECIDEDLY IN THE PUBLIC INTEREST ........ 23

IX.    THE RELIEF REQUESTED ................................................................... 24

X.    CONCLUSION ........................................................................................ 25

ii

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 148 of 246

**TABLE OF AUTHORITIES**

<u>Federal Statutes</u>

17 U.S.C. § 101 ……………………………………………………………18

17 U.S.C. § 102(a)……………………………………………………………14

17 U.S.C. § 107…………………………………………………………........19

17 U.S.C. § 201 (b)…………………………………………………………16

17 U.S.C. § 204 (a)……………………………………………………………16

17 U.S.C. § 411(a)…………………………………………………………..1

17 U.S.C. § 502(a)……………………………………………………………14

17 U.S.C. § 512(c)(1)(a).……………………………………………………14

18 U.S.C. § 2………………………………………………………………24


<u>Cases</u>

<u>A&M Records v Napster, Inc.</u>,
239 F3d 1004 (9th Cir, 2001); ………………………… 19

<u>Aalmuhammed v. Lee</u>,
202 F.2d 1227, 1233-1234 (9th Cir. 2000) …………………… 18

<u>American Geophysical Union v. Texaco, Inc.</u>,
60 F.3d 913, 922 (2d Cir. 1994) ………………………… 19

<u>Beardslee v. Woodford</u>,
395 F.3d 1064, 1067 (9th Cir. 2005) ………………………… 14,23

<u>Brown v. Twentieth Century Fox Film Corp.</u>,
799 F. Supp. 166 (D.D.C. 1992) ………………………… 16

<u>Caribbean Marine Services Co., Inc. v. Baldridge</u>,
844 F.2d 668, 674 (9th Cir. 1988)…………………………… 21

<u>Childress v. Taylor</u>,
945 F.2d 500 (2nd Cir. 1991) ………………………… 19

<u>Columbia Pictures, Inc. v. Bunnell</u>,
245 F.R.D. 443 (C.D. Cal. 2007) ………………………… 23

<u>Cosmetic Ideas, Inc. v. IAC/Interactive Corp., et al</u>,
606 F.3d 612 (9th Cir. 2010) ………………………… 1

iii

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 149 of 246

1
2   Easter Seal Society v. Playboy Enters.,
    815 F. 2d 323, 329 (5th Cir. 1987) ............................................. 17
3   Effects Associates, Inc. v. Cohen, et al.,
4   908 F.2d 555 (9th Cir. 1990), ...................................................... 17
5   Ellison v. Robertson,
    357 F.3d 1072, 1076 (9th Cir. 2004). ......................................... 19
6
7   Export Establishment etc. v. Columbia Broadcasting Service,
    Inc.,
    503 F. Supp. 1137, 1147 (S.D.N.Y. 1980)................................. 19
8
9   Fleet v. CBS, Inc.,
    50 Cal. App. 4th 1911, 1919-1920 (1996) ................................. 14
10  Granny Goose Foods, Inc. v. Brotherhood of Teamsters
    & Auto Truck Drivers,
11  415 U.S. 423, 429, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). ..... 21
12  Harper & Row Publishers, Inc. v. Nation Enters.,
    471 U.S. 539, 564-65, 105 S.Ct. 2218, 85 L.Ed.2d
13  588 (1985) ........................................................................... 19,23
14  Harris v. Board of Supervisors,
    366 F.3d 754, 766 (9th Cir. 2004) .............................................. 21
15
16  Jules Jordan Video v. 144942 Canada,
    617 F.3d 1146 (9th Cir. 2010), ................................................... 15
17  Law v. Miller,
    2011 U.S. Dist. LEXIS 102527 (E.D. Cal. 2011) .................... 23
18
19  Laws v. Sony Music Entm't, Inc.,
    448 F.3d 1134, 1137 (9th Cir. 2006), ........................................ 15
20  Lenz v. Universal Music Corp.,
    572 F. Supp. 2d 1150 (N.D. Cal. 2008). ................................... 19
21
22  Los Angeles News Service v. Tullo,
    973 F. 2d 791, 798 (9th Cir. 1992) ............................................ 19
23  Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,
    571 F.3d 873, 877 (9th Cir. 2009) .............................................. 14
24
25  Muller v. Walt Disney Productions,
    871 F. Supp. 678 (S.D.N.Y. 1994) ............................................ 16
26  National Meat Ass'n v. Brown,
    599 F.3d 1093, 1097 (9th Cir. 2010)...................................... 14,23
27
28  Oddo v. Ries,
    743 F. 2d 630 (9th Cir 1984) ...................................................... 17

TABLE OF CONTENTS
CV12-8315 MWF(VBKx)

ER140

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 150 of 246

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Oster v. Lightbourne,
2011 U.S. Dist. LEXIS 138191 (N.D. Cal. 2011) ................... 22

Reinsdorf v. Skechers, U.S.A.,
2011 U.S. Dist. LEXIS 28293, at *9
(C.D. Cal. Mar. 9, 2011) ......................................................... 19

Rooney v. Columbia Pictures, Inc.,
538 F. Supp. 211 (S.D.N.Y. 1982) .......................................... 16

Schenck v. United States,
249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919) ................ 23

Siegel v. Time Warner, Inc.,
496 F. Supp. 2d 1111, 1148 (C.D. Cal. 2007). .......................... 19

Sierra Forest Legacy v. Rey,
577 F.3d 1015, 1021 (9th Cir. 2009). ....................................... 14

TMTV Corp. v Pegasus Broad. of San Juan,
490 F Supp. 2d 228 (D.C. Puerto Rico 2007) ........................... 15

Universal City Studios, Inc. v. Corley,
273 F.2d 429, 440 (2d Cir. 2001), ........................................... 19

Viacom, et al. v. YouTube, et al,
(2ᵐ Cir, Apr. 5, 2012), ............................................................ 20

Winter v. Natural Res. Def. Council, Inc.,
129 S.Ct. 365, 374, 376 (2008) ....................................... 14,21,23

World Church of God v. Philadelphia Church of God,
227 F.3d 1110, 1118 (9th Cir. 2000) ........................................ 19

Yue v. Conseco,
CV 11-9506 AHM, 2012 U.S. Dist. LEXIS 46565, 40–41
(C.D. Cal. Apr. 2, 2012) ........................................................... 21

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 151 of 246

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF THE ISSUES

Plaintiff Cindy Lee Garcia gave a dramatic performance (the "Copyrighted Performance") in a production Defendant Nakoula B. Nakoula misrepresented as a fictional "adventure" titled *Desert Warrior*.  In post-production, Defendant Nakoula dubbed Plaintiff's lines to give the false impression that she had agreed to play a role in which she accused historical religious figure Mohammed of being a child molester.  Defendant Nakoula then published the Copyrighted Performance on YouTube a 13:51 minute "trailer" ("Film") titled *Innocence of Muslims*.  Plaintiff is now the subject of a *fatwa* and has received gruesome, credible death threats.  Despite begging Defendant YouTube and its parent company, Defendant Google, to remove the Film on the grounds of copyright infringement, they refuse.

The principal issue presented by this Application is whether Defendants' actual and contributory infringement of the Copyrighted Performance,[1] which any reasonable person would know would endanger her life, warrants the issuance of a temporary restraining order and an order to show cause why a preliminary injunction should not issue requiring the Defendants to cease and desist their infringing activities and unauthorized worldwide broadcasts of the Copyrighted Performance.  A related issue is whether Ms. Garcia is entitled to an impounding order.

### II.   PRELIMINARY STATEMENT

In July of 2011, Plaintiff delivered the Copyrighted Performance for a film that Defendant Nakoula, the film's producer, told her was an "adventure" titled

---

[1]     Plaintiff has filed a federal copyright application, entitling her to bring suit.  Plaintiff Garcia filed an application to register her work with the United States Copyright Office. (Garcia Decl. ¶ 18, Ex. C.)   Plaintiff thus is entitled to bring suit. 17 U.S.C. § 411(a); see also Cosmetic Ideas, Inc. v. IAC/Interactive Corp., et al, 606 F.3d 612 (9th Cir. 2010) (application satisfies pre-suit registration requirement).

1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 152 of 246

1    *Desert Warrior*. Plaintiff Garcia *never* assigned the rights to the Copyrighted

2    Performance to *anyone*. Nor did Plaintiff Garcia sign a work-for-hire agreement.

3    She was not an employee of anyone associated with *Desert Warrior*.

4        On July 2, 2012, Nakoula and/or his agents[2] posted the Film (*i.e.*, the

5    doctored, dubbed version retitled *Innocence of Muslims*) to YouTube in English. In

6    early September, Arabic versions were released around the world and in primarily

7    Muslim countries, and went "viral" on September 11, 2012. Rather than portraying

8    an innocuous historical adventure set in the desert – the video in which Defendant

9    Nakoula told Plaintiff Garcia she was appearing – the Film was instead a crude,

10    hateful work of propaganda. The Film portrays the Muslim religious figure

11    Mohammed as a sexual deviant. Specifically, Defendant Nakoula and/or his agents

12    dubbed over Plaintiff's voice, suggesting she called Mohammed a "child molester."

13        After YouTube broadcast the Arabic-language version of the Film, ferocious

14    violence broke out around the world. The outrage has not been confined to Muslim

15    societies; even U.S. Secretary of State Hillary Rodham Clinton has condemned the

16    Film. Many believe the Film provoked the September 11, 2012, attack on the U.S.

17    Consulate in Benghazi, Libya, in which four Americans, including Ambassador

18    Christopher Stevens, were savagely murdered. Whether or not the Film provoked

19    the violence in Benghazi, it is now universally acknowledged that the Film has

20    provoked violence and unrest worldwide.

21        Following Defendants' global dissemination of the Film, Plaintiff became the

22    subject of a *fatwa* issued by an Egyptian cleric, which states in relevant part:

23       *I issue a fatwa and call on the Muslim youth in America and Europe*

24       *to do this duty, which is to kill the director, the producer and the*
         *actors and everyone who helped and promoted the film.*

25

---

26    [2]    Defendant Nakoula posted the Film under the name Sam Bacile, one of his
     many aliases. At the time he posted the Film, Nakoula was restricted from using a

27    computer or the Internet pursuant to the terms of his federal criminal probation
     following a fraud conviction, and was required to use his true name. (See RJN at ¶

28    & Ex. B.)

CV 12 8315 (VBKx)

1   (See Abou El Fadl Decl. ¶ 14.)  Even though Plaintiff Garcia immediately spoke to

2   condemn the Film's hateful message (reporters called her relentlessly and camped

3   outside her home), she continues to receive death threats.  (See Garcia Decl. Ex. B.)

4   She changed her life substantially to protect herself and her family.  What did

5   Plaintiff do to deserve this?  Nothing.  In addition to taking drastic security

6   measures, Plaintiff Garcia requested that YouTube and Google remove or disable

7   the Film pursuant to the Digital Millennium Copyright Act ("DMCA").  Plaintiff

8   has begged Defendants to assist her in her efforts to protect her safety by taking

9   down the Film.  They refuse.

10         Not once has Defendant Nakoula disputed that Plaintiff retained the rights to

11  her Copyrighted Performance.  Under the DMCA, Defendants Google and

12  YouTube's decision to arrogate to themselves the right to adjudicate Plaintiff

13  Garcia's copyright claim eviscerates their "safe harbor" protections for online

14  service providers that act "expeditiously" to "remove" or "disable" content upon

15  notice of a copyright claim, making them just as legally responsible as Defendant

16  Nakoula for violating Plaintiff Garcia's copyright interests.  The "safe harbor"

17  provisions of the DMCA provide that Defendant YouTube must notify the poster

18  that the content has been removed pursuant to a DMCA takedown notice and

19  provide the poster the opportunity to contest the takedown in writing.  If the poster

20  does so, YouTube must then notify the complaining copyright holder of that fact.  If

21  the copyright owner does not bring a lawsuit in district court within 14 days,

22  YouTube then must restore the material.

23         Rather than comply with the DMCA and protect their own economic, legal,

24  and moral interests, Defendants Google and YouTube instead refused Plaintiff's

25  takedown requests based on an incorrect assumption that Plaintiff has no copyright

26  interest.  On October 5, 2012, Google and YouTube's lawyers finally revealed their

27  legal reasoning -- according to them, Plaintiff had a meeting of the minds with

28

3

CV 12 8315 (VBKx)

ER144

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 154 of 246

1   Defendant Nakoula, at the time she agreed to act in *Desert Warrior* that the finished

2   project would be a "joint work." Defendants are wrong.  As early as September 12,

3   2012, and in any event no later than September 20, 2012, when they were served

4   with a lawsuit in California state court, Defendants have been aware that *Defendant*

5   *Nakoula himself has admitted that he tricked Plaintiff into appearing in his hate*

6   *film.*[3]  Thus, Plaintiff and Defendant Nakoula never shared any joint intent to create

7   *Innocence of Muslims* as a joint work; Plaintiff's Copyrighted Performance thus

8   remains her own.  The touchstone for establishment of a joint work is a mutual

9   intent that both creators share in the *completed* work or its derivatives.  Because

10  Defendant Nakoula always harbored a secret intent to treat the work as though he

11  was the sole owner, and to exploit the work in a manner contrary to any and all of

12  Plaintiff's intentions, much less any intentions that the two shared (which, it turns

13  out, were none), there exists no "joint work," and Plaintiff retains the rights to her

14  Copyrighted Performance.  Plaintiff thus is entitled to sue Defendants for copyright

15  infringement under the United States Copyright Act.

16       Moreover, irrespective of whether Defendant Nakoula has a joint copyright

17  with Plaintiff Garcia, there are hundreds of third parties who have copied and

18  reposted the Film on YouTube, *who have no color of a legal right* to copy and re-

19  post the Film, and who clearly are infringing on Plaintiff Garcia's copyright.

20  Defendant Nakoula's posting of the Film on YouTube is only one of the hundreds of

21  infringing webpages (URLs) illegally displaying the Film on YouTube (and

22

23  [3]    In a telling and shameful attempt to "blame the victim," YouTube and Google

24  have taken the position that the death threats and global fatwa against Plaintiff are

*her* fault. (Armenta Decl. ¶ 3.) They are wrong.  It was *the media*, not Plaintiff, that

25  originally revealed Ms. Garcia's identity to the public, and the reason that Ms.

Garcia spoke publicly was to clear her name.  Indeed, Ms. Garcia strongly believes

26  that it is her strong public stand against the Film's message of hatred that is keeping

her alive at this point, along with the outpouring of support she has received from

27  moderates in the Muslim community who have lauded not only her efforts to

remove the Film, but her courage as well.  (Abou El Fadl Decl. ¶ 23; Garcia Decl. ¶

28  14.)

4

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 155 of 246

1   representing tens of millions of views) that Plaintiff Garcia has identified in her

2   eight compliant DMCA takedown notices to Defendants YouTube and Google,

3   which Defendants YouTube and Google have refused to remove or disable, and

4   which continue to be viewed, recopied, and reposted widely.

5   **III.   STATEMENT OF FACTS IN SUPPORT OF THE APPLICATION**

6   **A.   Plaintiff Agreed to Provide a Dramatic Performance, But Did Not
7         Agree to Relinquish Her Copyright In That Performance.**

8       Plaintiff is an ordained Christian minister. (Declaration of Cindy Lee Garcia

9   ("Garcia Decl.") ¶ 3.)   She began acting to supplement her income after her

10   husband became disabled. (Id. ¶ 3.) As a minister, Ms. Garcia preaches tolerance

11   and respect for all religions. (Id. ¶ 4.) The depiction of Plaintiff Garcia as a person

12   who would participate in a hateful production that blasphemes any religion is

13   profoundly devastating to her. (Id. ¶ 4.)

14       In July of 2011, Plaintiff responded to a casting notice for a film with a

15   working title of *Desert Warrior*. (Garcia Decl. ¶ 5.) Plaintiff was cast in a

16   supporting role, in which, according to the film's producer, Defendant Nakoula, she

17   was to play the mother of a young woman who had been promised in marriage to the

18   movie's protagonist, "Master George." (Id.)   After Plaintiff was cast, Defendant

19   Nakoula gave her "call sheets" that indicated the days she was to be on set, and

20   outlined the scenes that would be filmed. (Id. ¶ 6.) Additionally, Defendant

21   Nakoula and/or his agents provided Plaintiff with "script sheets" for those scenes in

22   which her character was to appear. (Id.) None of those sheets contained content or

23   language that Plaintiff perceived to be religiously offensive. (Id.) Moreover, none

24   of the script sheets referred to a character named "Mohammed." (Id.)

25       Plaintiff never signed a release of any kind to her rights to her dramatic

26   performance, nor a work-for-hire agreement. (Garcia Decl. ¶ 8.) Additionally, she

27   was never an employee of Nakoula or any production company associated with

28

5

CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 156 of 246

1   *Desert Warrior*, nor was she an agent of Nakoula or anyone else. (Garcia Decl. ¶ 5.)

2   Plaintiff's position in this regard is entirely consistent with the recollections of other

3   actors who appeared in the production:  none of them apparently signed releases, nor

4   did they sign work-for-hire agreements. (Declaration of Dan Sutter ¶ 4; Declaration

5   of Gaylord Flynn ¶ 1 Declaration ¶ 4.)

6      Both prior to accepting the role and while on set, Plaintiff specifically asked

7   Defendant Nakoula (who was using the alias "Sam Bacile") about the film's

8   content. (Garcia Decl. ¶ 10.) Defendant Nakoula consistently responded that the

9   film was titled *Desert Warrior*, and that it was an "adventure" story set in the

10  Arabian Desert 2,000 years ago. (Id.) Significantly, *at no time during her presence*

11  *on the set did Plaintiff hear any mention of Islam.* (Id.)

12     It is apparent now that Defendant Nakoula planned all along, contrary to his

13  stated intention to Plaintiff Garcia, never to create a film called *Desert Warrior*.

14  Instead, as he later admitted to Plaintiff Garcia, his true intention from the beginning

15  was to use her (copyrighted) performance to create a hate film. (Garcia Decl. ¶ 13.)

16  **B.    Nakoula Used Plaintiff As a "Puppet" For His Racist Views, and**
17  **       YouTube Published a Doctored Version of Her Performance.**

18     In March of 2012, Defendant Nakoula requested that Plaintiff participate in a

19  post-production session. (Garcia Decl. ¶ 11.) Plaintiff only restated lines she had

20  stated previously. (Id. ) Sometime after July 2, 2012, Plaintiff telephoned Nakoula

21  to ask whether the film was ready to be screened. (Id. ¶ 12.) Defendant Nakoula

22  then revealed that he had posted a trailer on YouTube. (Id. ¶ 12.)

23     When Plaintiff accessed the trailer (*i.e.*, the "Film") on YouTube she made

24  the horrifying discovery that Defendant Nakoula had dubbed bigoted dialogue over

25  her lines, and used her Copyrighted Performance in a manner that was *entirely*

26  inconsistent with the production in which Defendant Nakoula had told Ms. Garcia

27  she was participating. (Garcia Decl. ¶ 12.) Defendant Nakoula literally turned her

28

6

CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 157 of 246

1   into a walking, talking "puppet" for his opinion that Islam founder Mohammed was

2   a "child molester." (Id. )  That was also when Plaintiff learned that the Film had

3   been retitled to *Innocence of Muslims.* (Id.)

4        The words Plaintiff Garcia actually delivered for "Desert Warrior" were:

5        ***"Is George crazy?  Our daughter is but a child?"***

6   (Garcia Decl. ¶ 12.)  In *Innocence of Muslims*, Defendant Nakoula retained her

7   visual performance but dubbed in the words:

8        ***"Is your Mohammed a child molester?"***

9   (See Garcia Decl. ¶ 12, and Ex. B to Declaration of Dave Hardy ("Hardy Decl.")

10  (YouTube video, The Innocence of Muslims, posted by "Sam Bacile").)  Plaintiff

11  Garcia has never uttered those words *ever*, let alone on the set of *Desert Warrior*.

12  (Garcia Decl. ¶ 12.)

13       **C.   After Defendants Published an Arabic Version of the Film, It**
            **Went Viral and Provoked a Wave of Global Violence and a *Fatwa***
14          **on Plaintiff's Head, to which Defendants Are Completely**
15          **Indifferent.**

16       On September 11, 2012, the U.S. Consulate in Benghazi, Libya, was

17  attacked, resulting in the deaths of four Americans, including Ambassador

18  Christopher Stevens. (Abou El Fadl Decl. ¶ 10.)  Violence has continued to erupt

19  across the world.  (Id. ¶ 11.)  Many experts in geopolitical affairs have attributed

20  this violence directly to the Film. (Id. Decl. ¶ 9-15.)  News reports indicate that

21  many people worldwide have died in the violence that the film has sparked.  (Id.

22  Ex. D.)  Whether the Film is or is not the cause of the violence, the violence in fact

23  occurred, with many at the time attributing it to the anti-Muslim sentiment in the

24  Film.  (Id. ¶ 15.)

25

26

27

28

                                        7

On September 19, 2012, Egyptian cleric Ahmad Fouad Ashoush issued a "fatwa"[4] directed at Plaintiff and every other person involved in the production of *Desert Warrior/The Innocence of Muslims*:

> *I issue a fatwa and call on the Muslim youth in America and Europe to do this duty, which is to kill the director, the producer and the actors and everyone who helped and promoted the film.*

(Abou El Fadl ¶ 14.)

Google Chairman Eric Schmidt's response to the fatwa astounds. He said: "We believe the answer to bad speech is more speech … It'll stay up." (Armenta Decl. ¶ 9 & Ex. C.)  Plaintiff, however, has no desire to become a martyr for Nakoula and Schmidt's "cause" of attacking Islam while pretending that YouTube and Google are neutral defenders of free speech.  Nor has she any interest in helping Defendants to profit from the 30 million-plus "views," and associated ad revenues, from exhibiting the Film.[5]

### D. Defendant Nakoula Admitted That He Procured Plaintiff's Dramatic Performance Through Fraud and Deception.

Immediately after seeing the news about the attacks in Libya and realizing that the grotesque manipulation of her performance was related to the violence around the world, Plaintiff Garcia asked Nakoula why he "did this?" (Garcia Decl. ¶ 13.) He replied, "You are not responsible.  Tell the world that you are innocent.  I did this… I did it because I am tired of the radical Muslims killing innocent people." (Id. ¶ 10.) In essence, Defendant Nakoula admitted that it was *always* his secret

---

[4]     Under Islamic law, a *fatwa* is a unbinding opinion, which may have significant importance to the followers of that particular Iman.  Of greater concern, however, are the undisclosed, secret intentions of others. (Abou El Fadl Decl. ¶ 17.)

[5]     As proof that YouTube relies on "views" to generate revenue and enhance its business model, behold the words of YouTube co-founder Chad Hurley: "[W]e need views [but] I'm a little concerned with the recent Supreme Court ruling on copyrighted material …we're hosting copyrighted content," which statements he made prior to Google's $1.8 billion purchase of YouTube. (Armenta Decl. ¶ 10 & Ex. C.)

8

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 158 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 159 of 246

1   intention to manipulate the footage so that Plaintiff would appear to have

2   participated in creating a hate film. (Id.)  In that conversation, Defendant Nakoula,

3   and by telling Plaintiff she was "innocent" and "not responsible," – he basically

4   affirmed that the work was not a joint one. (See Garcia ¶ 13.)

5   **E.    In Addition to Becoming the Target of a *Fatwa*, Ms. Garcia Has**

6   **Received Numerous Death Threats.**

7       Immediately after the Film "went viral" on YouTube, Plaintiff began to

8   receive calls from the media, all of whom apparently were already somehow aware

9   that she had appeared in the Film. (Garcia Decl. ¶ 14.)  Media camped outside her

10  home. (Id. ¶ 14.)  Plaintiff Garcia learned about the *fatwa* and began to receive

11  credible and gruesome threats. (Id. ¶ 14.)  In order to clear her name, ensure that the

12  world was aware that she was duped into performing in the Film, and that she never

13  uttered the words attributed to her, she spoke out publicly that she does not condone

14  the Film, its content and its message, and that her performance was grotesquely

15  mutilated. (Id. ¶ 14.)  Hoping that the justice system would show more concern for

16  her continued survival than had the Defendants, Plaintiff took legal action in state

17  court to attempt to have the Film removed from YouTube. (Id. ¶¶ 14, 15.)

18      While in Los Angeles Superior Court on September 20, 2012, for a hearing on

19  her state-law claims against Defendants,[6] Plaintiff and her counsel were directed by

20  law enforcement to park in a secure location; seven armed Los Angeles County

21  Deputy Sheriffs accompanied them in the courthouse. (Id. ¶ 15; Armenta Decl. ¶ 2.)

22  Her attorney was approached by the head of security for the Los Angeles Superior

23  Court, who expressed concern for Plaintiff, Ms. Armenta, and both of their families;

24  he advised that those threatening Plaintiff "are very patient," and that everybody

25  connected with this case was in danger. (Id.; Garcia Decl. ¶ 15.)  Both were advised

26

---

27  [6]    After recognizing that her federal copyright interests preempted some of her
state law claims and that, therefore, this Court holds exclusive jurisdiction, Plaintiff
28  dismissed her state law action without prejudice.

9

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 160 of 246

1    to take serious security measures entering and exiting the L.A. Superior Court at any

2    time in the future, and with their families and homes. (Garcia Decl. ¶ 15; Armenta

3    Decl. ¶ 2.)

4         While in New York during the last week of September 2012, Plaintiff and

5    counsel were accompanied by retired police officers and other security officers.

6    (Garcia Decl. ¶ 16.) When they departed New York, the Port Authority Police

7    would not permit Plaintiff to even enter the La Guardia International Airport

8    terminal; Plaintiff was taken directly to her airplane on the tarmac in a squad car, for

9    fear that she would become an "instant target" in the terminal. (Id.)[7]  Plaintiff moved

10   her home, and also moved the location of her church. (Id. ¶ 17.) The numerous

11   death threats have been reported to the authorities. (Id.) They include, but are not

12   limited to, the following:

13        "I am ready to die for MUHAMMAD (PBUH) and I would Like to
          Kill all Those Who contributed in the Shape of Acting or Financially
14        or any other Kind of Support in Shameless Movie."

15        "And If You Wanna to save your life and we consider your innocent
          then Just Kill Sam and Terry Jones."
16
          "Dear the end is near."
17
          "It's all a big joke. She will be Killed by someone who loves and
18        cares our Prophet Muhammad peace be upon him"

19        "She will know what she did now she is saying sorry about that"

20   (Id. ¶ 17 & Ex. B.)(Grammatical errors in original.) She also received a gruesome

21   set of threats related to raping her daughter. (Id.) According to noted international

22   expert and UCLA Professor Abou El Fadl, it is the threats that are not made that are

23   the most dangerous. (Abou El Fadl ¶ 17.) Plaintiff's life changed forever in

24   material ways by the continued posting of the Film. (Id. ¶ 16.) It is only her public

25   efforts to clear her name that may be keeping her alive and her efforts to remove or

26   _____

27   [7]   This type of heightened security is similar to that to which Salman Rushdie
     was subjected for approximately ten years following the *fatwa* that was issued
28   against him after he published *The Satanic Verses.* (Abou El Fadl Decl. ¶ 16.)

                                             10

1  disable the Film will certainly help to convince others that she is not a willing

2  puppet of a global conspiracy to harm Muslims. (Id. ¶ 21.)

3      **F.**   **Plaintiff Has Begged YouTube and Google to Save Her Life and**

           **Take Down the Film, But They Prefer to Continue to Profit From**

4             **the Millions of Pageviews That the Film Attracts.**

5      In accordance with YouTube's terms of service, Plaintiff issued the first of

6  many DMCA takedown notices on September 24, 2012, through her takedown

7  agent, DMCA Solutions. (Declaration of David Hardy ("Hardy Decl.") ¶ 5.)

8  Plaintiff and DMCA Solutions have issued eight takedown notices.   In the

9  experience of DMCA Solutions, YouTube typically responds to an initial takedown

10  notice in a manner intended to protect itself from liability for contributory copyright

11  infringement pursuant to the "safe harbor" provisions of the DMCA. (Id.  ¶ 4.)

12  First, YouTube typically sends a notice advising that the notice has been received

13  ("Acknowledgement of Takedown Notice").  Next, YouTube typically quickly

14  removes or disables the allegedly infringing content pending the original poster's

15  provision of proof that he or she has the right to post it. (Id.)

16      YouTube itself, through the Associate General Counsel of Google, Inc.

17  (YouTube's parent company) Zavanah Levine agrees that YouTube's DMCA

18  procedures are consistent with the observations of DMCA Solutions:

19        **Once YouTube receives a notification of alleged infringement that**

        **substantially complies with the DMCA requirements, we act**

20        **promptly to remove the identified material from our service or**

        **disable access to it.  Throughout my tenure at the company, we**

21        **have removed almost all of the videos identified in DMCA notices**

        **within 24 hours; indeed for the vast majority of DMCA notices**

22        **(about 85%), we remove the identified videos within a few**

        **minutes using automated tools.**

23

  (Declaration of Zavanah Levine ¶ 19.)

24

25      This time, contrary to the policy and protocols sworn to by Ms. Levine, and

26  the practices long observed by DMCA Solutions, YouTube did *not* remove or

27  disable the content within 24 hours.  Instead, it sent multiple, identical form letters

28  denying Ms. Garcia's requests. (Hardy Decl. ¶ 7 & Ex. C ("YouTube's First

11

CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 161 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 162 of 246

1   Substantive Inquiry").) In response to YouTube's First Inquiry Response, Plaintiff's

2   agent sent a detailed response explaining her copyright interests, setting forth the

3   relevant law. (Id. ¶ 8 & Ex. D ("Garcia's First Substantive Response").) Garcia's

4   First Substantive Response was sent on September 26, 2012. (Id.)  By October 2,

5   2012, YouTube still had neither responded nor disabled the content. (Id. ¶ 9.)

6   YouTube has breathed life into a work of fiction that is causing violence and death

7   the world over.

8         On October 2, 2012, counsel for Plaintiff Garcia spoke directly with counsel

9   for Defendants Google and YouTube.[8] (Armenta Decl. ¶ 4.) She was told that the

10  Film was still up, that a decision was made "at the highest levels" to keep the Film

11  up, and that ***YouTube was not obligated to respond to Garcia's First Substantive***

12  ***Response***—even though it was YouTube that had demanded "further information …

13  [in] as much detail as possible!"  (Id.)

14        Within two hours of that conversation, Plaintiff received another inquiry from

15  YouTube, requesting even more information. (Hardy Decl. ¶ 9 ("YouTube's

16  Second Inquiry").)  Plaintiff's takedown agent then issued Garcia's Second

17  Substantive Response, citing additional relevant case law and provisions of the

18  United States Copyright Act. (Hardy Decl. ¶ 10 & Ex. E.)  Finally on October 4,

19  2012, YouTube set forth its final position – consistent with Chairman Schmidt's

20  public remarks -- that the content will not be removed. (Hardy Decl. ¶ 11

21  ("YouTube's Final Response").)

22        **G.    YouTube and Google Have Specific Knowledge of the**
              **Infringing Material and Are in Receipt of Direct Financial**
23            **Benefits Attributed to the Rampant Infringement.**

24        YouTube is on specific notice of the URLs that contain the infringing content.

25  YouTube claims to have received more than 30 million "views" of the Film in the

26

27  [8]    Counsel for Plaintiff Garcia has copied counsel for Defendants Google and
       YouTube on all transmissions between their respective takedown agents. (Armenta
28  Decl. ¶ 7.)

                                          12.

                                                          CV 12 8315 (VBKx)

ER153

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 163 of 246

1   English language alone. (See generally Hardy Decl. & Exs.)  It is incontrovertible

2   that the Film is a "draw" for consumers—whose viewings provide YouTube with

3   profit from ad revenues—to visit YouTube.  YouTube and Google have the ability

4   to block access to the Film—in fact, they have already made the editorial judgment

5   to do so in Saudi Arabia, Libya, Indonesia, and Egypt, and may have done so in

6   other countries. (Armenta Decl. ¶ 9 & Ex. C.)

7   **H.   The Only "Defense" that Defendants Have Offered So Far is Their**
    **Deliberately Incorrect Assumption That Plaintiff Garcia's**
8   **Copyrighted Performance is a "Joint Work."**

9       In connection with Plaintiff Garcia's obligations to meet and confer with

10  opposing parties prior to bringing a motion, counsel for the parties met on

11  Thursday, October 4, 2012. (Armenta Decl. ¶ 6.)  Defense counsel finally revealed

12  why YouTube refuses to take down the Film, claiming the work was a "joint work"

13  and therefore Plaintiff and Nakoula may not sue each other.  (Id.)  As set forth

14  below, this position is not supported by Plaintiff's *declaration* nor  Defendant

15  Nakoula's *admissions.*[9]  Nobody from Google or YouTube has ever asked either

16  Plaintiff *or* Nakoula whether they intended to create a joint work.  Neither the

17  *Desert Warrior* footage nor the *Innocence of Muslims* trailer are joint works

18  because the parties had *completely different intentions* at the inception of the work.

19  This Ex Parte Application follows upon YouTube's apparently final decision,

20  related on October 4, 2012,[10] to keep the Film up on its site, losing its DMCA safe

21  harbor.

---

[9]     On the afternoon of Monday, October 15, 2012, Nakoula's criminal defense
attorney advised that Nakoula does not own the rights to the film. (See Armenta
Decl.)  Therefore, the work cannot be "joint" between Nakoula and Garcia under
*any* legal analysis.  Nakoula's lawyer's statement is a party admission. Fed. R.
Evid. 801(d)(2).

[10]     YouTube will likely claim the delay between the posting of the film and/or
death threats and this Application undercuts emergency relief.  But, Plaintiff was
*obliged* to work through the DMCA takedown process before initiating this
Application.  YouTube did not issue its denial until October 3, 2012.  (Hardy Decl.
¶ 11.)

13

CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 164 of 246

## IV.   STANDARD FOR RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION IN COPYRIGHT CASES

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. To be entitled to injunctive relief, Plaintiff must demonstrate:  (1) that she is likely to succeed on the merits; (2) that she is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374, 376 (2008); National Meat Ass'n v. Brown, 599 F.3d 1093, 1097 (9th Cir. 2010); see also Beardslee v. Woodford, 395 F.3d 1064, 1067 (9th Cir. 2005).

The Copyright Act provides that a court "may… grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009) (quoting Winter, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)); see, e.g., Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009).

## V.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

### A.   **Plaintiff Clearly Owns the Rights to Her Dramatic Performance.**

Once Plaintiff Garcia's performance was put in film, it became a "dramatic work" "fixed in [a] tangible medium of expression" that could be "perceived, reproduced, or otherwise communicated" through "the aid of a machine or device." 17 U.S.C. § 102(a); see Fleet v. CBS, Inc., 50 Cal. App. 4th 1911, 1919-1920 (1996) (once actor's performance was fixed in film, it "came within the subject matter of copyright law protection").  Her individual performance in the film *Desert Warrior* is copyrightable.  See id. (actors' individual performances in film are copyrightable).

14

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 165 of 246

1    Defendants may argue that an actor's copyright automatically reverts to the
2    filmmaker. Not true. First, if that were the law, filmmakers would not engage in the
3    universal practice of requiring their actors to release their copyrights as a condition
4    of appearing in films, which did not occur in this case Second, <u>Laws v. Sony Music</u>
5    <u>Entm't, Inc.</u>, 448 F.3d 1134, 1137 (9th Cir. 2006), and <u>Jules Jordan Video v. 144942</u>
6    <u>Canada</u>, 617 F.3d 1146 (9th Cir. 2010), confirms that in the Ninth Circuit, a
7    performer retains the rights in her performance unless she transfers or assigns them:
8    (1) by virtue of her status as an *employee* of the filmmaker; (2) by a *written*
9    assignment of the copyright; or (3) by executing a *written* work-for-hire agreement.
10   In fact, it is clear that the law, not only of the Ninth Circuit, but also as understood
11   by the United States Patent and Trademark Office and the Copyright Office, ***is and***
12   ***always has been*** that the copyright interest in an actor's performance resides with
13   that actor until and unless it is assigned. (<u>See</u> RJN at 3.) The United States publicly
14   affirmed this position in connection with the signing of the WIPO Audiovisual
15   Dramatic Performance Treaty ("AVP Treaty") signed in Beijing, China in July of
16   2012. (<u>See</u> RJN at 4.) The United States was instrumental in encouraging other
17   countries to sign the AVP Treaty in order to bring other countries into compliance
18   with the long-standing acknowledgement in the United States that actors, just like
19   musicians, own the rights to their performances unless assigned, unless they are
20   employees, or unless they execute a written instrument indicating their work is a
21   work-for-hire. The formal statement issued by the United States Copyright Office,
22   in connection with the AVP Treaty, states:

23       Under U.S. law, actors and musicians are considered to be "authors"
         of their performances providing them with copyright rights.
24
25       Just as the rights established in the U.S. law already provide the
         protection for musical performers mandated by the WPPT, U.S. law is
26       already generally compatible with the AVP provisions ("points of
         attachment" for parties to this treaty under U.S. law).

27   (<u>See</u> RJN at 4.)

28                                    15

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 166 of 246

1    Because U.S. law firmly establishes that actors own the copyrights in their

2  performances unless assigned or otherwise relinquished, Plaintiff Garcia retains the

3  copyright to her performance. See, e.g., TMTV Corp. v Pegasus Broad. of San

4  Juan, 490 F Supp. 2d 228 (D.C. Puerto Rico 2007) (actors' portrayals of characters

5  rendered them "authors").

6         **B.    Plaintiff Never Assigned Her Copyright Interests.**

7         Plaintiff is aware of no authority requiring *her* to bear the burden to show that

8  she did *not* transfer her rights.  Imposing such a burden on Plaintiff would be

9  entirely inconsistent with the Copyright Act's well established requirement that a

10  copyright assignment be made in writing. See 17 U.S.C. § 204(a) (exclusive

11  copyright assignment must be in writing; 17 U.S.C. § 201(b) (writing required for

12  work-for-hire).  It is undisputed that Ms. Garcia executed no such writing

13  transferring or assigning her rights. (Garcia Decl. ¶¶ 7-9.)  However, because

14  counsel for YouTube have expressed difficulty in believing that Defendant Nakoula,

15  *a convicted fraudster,* neglected to obtain a legal release, Plaintiff addresses this

16  point in an abundance of caution. (See Armenta Decl. ¶ 5.)

17         In some cases, an actor or musician relinquishes his or her copyright interests

18  to a studio or filmmaker *in writing* and loses the right to assert a copyright claim in a

19  performance. See, e.g., Brown v. Twentieth Century Fox Film Corp., 799 F. Supp.

20  166 (D.D.C. 1992) (James Brown transferred rights to song "*Please, Please,*

21  *Please,*" and could not object to use of a musical clip captured on film); Rooney v.

22  Columbia Pictures, Inc., 538 F. Supp. 211 (S.D.N.Y. 1982) (actor Mickey Rooney

23  signed contracts broad enough to transfer rights in his performances); Muller v.

24  Walt Disney Productions, 871 F. Supp. 678 (S.D.N.Y. 1994) (conductor made

25  writing in which he gave up rights to his performance). That did not happen here.

26         Plaintiff's recollection is coincides with that of other actors, who also did not

27  sign releases. (See Declarations of Does #1-#3.) Moreover, the Ninth Circuit has

28                                            16

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 167 of 246

1   resoundingly rejected the argument that moviemakers enjoy some special status

2   under the Copyright Act allowing them to avoid the writing requirement.  Effects

3   Associates, Inc. v. Cohen, et al., 908 F.2d 555 (9th Cir. 1990), is instructive.  In that

4   case, the plaintiff created special effects for use in a film, and then brought a

5   copyright infringement action against the producer.  As in this case, the parties had

6   *no written agreement* regarding transfer of the plaintiff's copyright to the producer.

7   The Ninth Circuit held that, as a matter of law, the plaintiff's rights had not

8   transferred: "Absent an express transfer of ownership, a contributor who is not an

9   employee retains ownership of his copyright."  Id. at 558 (citing Easter Seal Society

10  v. Playboy Enters., 815 F. 2d 323, 329 (5th Cir. 1987)).  The court went on to hold:

> [S]ection 101 specifically addresses the movie and book publishing
> industries, affording moviemakers a simple, straightforward way of
> obtaining ownership of the copyright in a creative contribution –
> namely a written agreement.  The Supreme Court and this circuit,
> while recognizing the custom and practice in the industry, ***have
> refused to permit moviemakers to sidestep section 204's writing
> requirement***.  Accordingly, we find unpersuasive Cohen's contention
> that section 204's writing requirement, which singles out no particular
> group, somehow doesn't apply to him. As section 204 makes no
> special allowances for the movie industry, **neither do we**.

16  Id. at 558,emphasis supplied.  See also Oddo v. Ries, 743 F. 2d 630 (9th Cir 1984)

17  (publishing distorted manuscript exceeded scope of initial contributor and publisher

18  liable for copyright infringement).  Thus, because no writing exists showing a

19  transfer of rights, nor a work-for-hire agreement, the copyright in Plaintiffs

20  performance remains intact.

21  **C.    Defendant Nakoula and Plaintiff Garcia Never Agreed, in Writing
22         or Otherwise, to Create a "Joint Work of Authorship," as Google
23         and YouTube Apparently Claim.**

24      Plaintiff anticipates YouTube to oppose, claiming Plaintiff may not sue

25  Defendant Nakoula for copyright infringement (or, by extension, Google and

26  YouTube for contributory infringement) because Plaintiff and Defendant Nakoula

27  created a "joint work of authorship."  However, Plaintiff *never* had a meeting of the

28                                              17

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 168 of 246

1   minds with Defendant Nakoula. "Joint work" defenses should be carefully

2   evaluated on a case-by-case basis to determine whether the "authors" intended to

3   create a "unitary work." Here, Defendant Nakoula's fraudulent procurement of

4   Plaintiff's performance did not created a joint agreement on anything related to

5   *Innocence of Muslims*.

6       Initially, Plaintiff notes that the burden is on Defendants, *not on her*, to show

7   that both she and Defendant Nakoula intended that the doctored propaganda film

8   *Innocence of Muslims*, which she was tricked into believing was a desert historical

9   adventure called *Desert Warrior*, would be a joint work of authorship.

> 10   Although the Second and Seventh Circuits do not base their decisions
> 11   [as to joint authorship] on the word 'authors' in the statute, the practical
> results they reach are consistent with ours. These circuits have held
> 12   that a person claiming to be an author of a joint work must prove that
> **both parties intended each other to be joint authors.**

13   Aalmuhammed v. Lee, 202 F.2d 1227, 1233-1234 (9th Cir. 2000) (emphasis added).

14   Aalmuhammad is significant: First, as noted above, it establishes that the burden is

15   on the *putative joint author*, not the person claiming a sole copyright, to prove the

16   intent to create a jointly authored work. Second, it suggests that in this case, where

17   there is no written joint authorship agreement, a contributory infringer such as

18   Google or YouTube cannot establish a joint authorship defense, because it cannot

19   prove Plaintiff or Nakoula's subjective intentions. Perhaps this second point is

20   academic, because in this case the uncontroverted evidence is that Plaintiff never

21   intended to be a "joint author" of *The Innocence of Muslims*, given that Defendant

22   Nakoula tricked her by assuring her that she was appearing in an innocuous action

23   film called *Desert Warrior*.

24       Even if the burden of proof was not an insurmountable obstacle for

25   Defendants, the law of joint authorship would be. While "joint" authors may not

26   sue each other in copyright, see 17 U.S.C. § 101, a "joint work" exists "only when

27   *both authors intended at the time the work was created, 'that their contributions be*

28                           18

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 169 of 246

1    *merged into separate or interdependent parts of a unitary whole.'"* Id.; Childress v.

2    Taylor, 945 F.2d 500 (2nd Cir. 1991)(emphasis supplied.) "Copyright law best

3    serves the interests of creativity when it carefully draws the bounds of 'joint

4    authorship' so as to protect the legitimate claims of both sole authors and co-

5    authors." Id. "Where the author never intended for his material to be part of a joint

6    work, he retains the right to that material." Siegel v. Time Warner, Inc., 496 F.

7    Supp. 2d 1111, 1148 (C.D. Cal. 2007). **Where the parties' intentions at the**

8    **beginning of the creative process are inconsistent,** that "could indicate a lack of

9    intent to form a joint work." See, e.g., Reinsdorf v. Skechers, U.S.A., 2011 U.S.

10   Dist. LEXIS 28293, at *9 (C.D. Cal. Mar. 9, 2011) (use of copyrighted photographs

11   was limited to terms of license, not entitling Skechers to use them as it "saw fit").[11]

12   **D.    YouTube Has Stepped Far Outside the DMCA's Safe Harbor**
         **Provision, Subjecting it To Liability for Copyright Infringement.**

13

14         "The DMCA was enacted in 1998 to implement the World Intellectual

15   Property Organization Copyright Treaty," Universal City Studios, Inc. v. Corley,

16   273 F.2d 429, 440 (2d Cir. 2001), and to update domestic copyright law. See

17   Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004). Title II of the DMCA,

18   titled separately the Online Copyright Infringement Liability Limitation Act

19   ("OCILLA") was designed to "clarif[y] the liability faced by service providers who

20

21   [11]    Google and YouTube have not raised the issue of "fair use," but should they
         do so, they would be wrong. 17 U.S.C. § 107. Plaintiff considered the issue of fair

22   use, pursuant to Lenz v. Universal Music Corp., 572 F. Supp. 2d 1150 (N.D. Cal.
         2008). Google and YouTube are enjoying an economic benefit by drawing 30

23   million "views" using the Film. A&M Records v Napster, Inc., 239 F3d 1004 (9th
         Cir, 2001); see also Worldwide Church of God v. Philadelphia Church of God, 227

24   F.3d 1110, 1118 (9th Cir. 2000) American Geophysical Union v. Texaco, Inc., 60
         F.3d 913, 922 (2d Cir. 1994) (finding that researchers at for-profit laboratory gained

25   indirect economic advantage by photocopying copyrighted scholarly articles);
         Export Establishment etc. v. Columbia Broadcasting Service, Inc., 503 F. Supp.

26   1137, 1147 (S.D.N.Y. 1980) (dramatic ratings boost by using copyrighted Charlie
         Chaplin clips). The use of Plaintiff's performance goes to the "heart" of the

27   message. Los Angeles News Service v. Tullo, 973 F. 2d 791, 798 (9th Cir. 1992); see
         Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 564-65, 105 S.Ct.

28   2218, 85 L.Ed.2d 588 (1985)

19

CV 12 8315 (VBKx)

**ER160**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 170 of 246

1   transmit potentially infringing material over their networks." S. Rep. 105-190 at 2

2   (1998).  Congress elected "to create a series of 'safe harbors []' for certain common

3   activities of service providers." Id. at 19.  To that end, OCILLA established a

4   serious of four "safe harbors" that allow qualifying service providers to limit their

5   liability for claims of copyright infringement.  See Viacom, et al. v. YouTube, et al,

6   (2nd Cir . April 5, 2012), Case No. 10-3270 CV (RJN at 4.)  YouTube is such a

7   provider.  See generally id.; see also RJN 6 (2nd Circuit opinion on DMCA issues

8   relative to YouTube).

9          Under 512(c)(1)(A), safe harbor protection is available only if the service

10  provider:

    (i)     Does not have actual knowledge that the material or an activity using
11

12              the material on the system or network is infringing;

13      (ii)    In the absence of such actual knowledge, is not aware of facts or

14              circumstances from which infringing activity is apparent; or

15      (iii)   upon obtaining such knowledge or awareness, acts expeditiously to

16              remove or disable access to the material.

17  In short, OCILLA creates a safe harbor for online service providers ("OSPs"), *only*

18  *if* they adhere to the mandatory safe harbor guidelines and "expeditiously" block

19  access to alleged infringing material, or remove that material from their systems

20  when they receive a notification of an infringement claim from a copyright holder or

21  the copyright holder's agent.  OCILLA also includes a counter-notification

22  provision that offers OSPs a safe harbor from liability when users claim that the

23  material in question is not, in fact, infringing.

24      E.    **Even if Defendant Nakoula Had a Joint Copyright Interest with
       Plaintiff Garcia, All of the Third Parties Who Have Copied and**
25            **Re-Posted the Film on YouTube Have No Right to Copy and Re-
       Post the Film, and Are Infringing on Plaintiff Garcia's Copyright.**

26      While YouTube and Google may raise the issue of "joint work" and joint

27  copyright as between Plaintiff Garcia and Defendant Nakoula (albeit Plaintiff

28                          20

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 171 of 246

1   absolutely contests that argument as stated above), there is no such issue with

2   respect to the hundreds of third parties who have copied the Film and re-posted it on

3   YouTube, accounting for tens of millions of views for YouTube.  These third parties

4   have no right to copy and re-post the Film, and are clearly infringing.  Defendants

5   YouTube and Google cannot argue otherwise.  The eight DMCA takedown notices

6   delivered by Plaintiff's DMCA takedown agent specifically named and identified

7   these third party YouTube URLs and requested that YouTube remove or disable

8   them.  Defendants YouTube and Google have refused.

9   **VI.   PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE TRO**
        **AND INJUNCTION ARE NOT GRANTED**
10
            A temporary restraining order preserves the status quo and prevents
11
    irreparable harm until a hearing can be held on a preliminary injunction application.
12
    See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,
13
    415 U.S. 423, 429, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).  The irreparable injury
14
    must be both likely and immediate.  Winter v. Nat. Res. Defense Council, Inc., 555
15
    U.S. 7, 129 S.Ct. 365, 374-75, 172 L.Ed.2d 249 (2008); Caribbean Marine Services
16
    Co.., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) ("a plaintiff must
17
    demonstrate immediate threatened injury as a prerequisite to preliminary injunctive
18
    relief").  Risk of death constitutes "irreparable harm."  See, e.g., Harris v. Board of
19
    Supervisors, 366 F.3d 754, 766 (9th Cir. 2004) (affirming preliminary injunction
20
    barring Los Angeles County from closing hospital and reducing public hospital beds
21
    due to risk of irreparable harm to patients including death); Yue v. Conseco, CV 11-
22
    9506 AHM, 2012 U.S. Dist. LEXIS 46565, 40-41 (C.D. Cal. Apr. 2, 2012)
23
    (preliminary injunction warranted against increased cost of life insurance because
24
    loss of "security" and "peace of mind" constitutes irreparable injury).
25
            Plaintiff more than meets her burden.  As set forth above and in the
26
    accompanying declarations, she has suffered and will continue to suffer immediate
27
    and irreparable harm if the Film is not taken down.  For instance: (1) Plaintiff has
28
                                          21

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 172 of 246

1   received credible threats of death and harm against both herself and her family (one

2   individual threatened to rape her daughter repeatedly); (2) Plaintiff has had to move

3   her personal residence due to threats and harassment; (3) Plaintiff has been advised

4   repeatedly and in the strongest terms to take the most stringent security measures

5   possible to protect herself; and (4) Every moment the Film remains on YouTube, her

6   copyright continues to be violated.

7   **VII.**   **THE BALANCE OF EQUITIES IS IN PLAINTIFF GARCIA'S FAVOR**

8       Under the circumstances of this case – not just the serious intellectual

9   property issues raised by Plaintiff's claim, but more importantly, the credible threats

10  of *death* against her, the hardship to Plaintiff if the Film is not removed is grave

11  indeed.  It is true that the law requires this Court to "balance" the relative hardships

12  to the parties when evaluating a request for a temporary restraining order.  To this

13  day, Defendants have provided Plaintiff with *no* rationale for their cruel decision to

14  continue to endanger her life by continuing to publish the video:  the only excuses

15  that Defendants have made for themselves are:  (1) Defendant Nakoula's racist

16  belief that "the Muslims" have killed unspecified "innocent" people; and (2) Google

17  Chairman Eric Schmidt's disingenuous claim that the problems experienced by

18  innocent people (such as Plaintiff) due to the Film can simply be cured with "more

19  speech."   In reality, the circumstantial evidence is far more damning, particularly to

20  Google and YouTube.  As set forth on the YouTube site, the Film has received more

21  than 30 million page "views" in English alone.  Since YouTube derives income

22  from advertising revenues and "views", it has 30 million reasons to leave the video

23  trailer where it is, and let Plaintiff simply to fend for herself.

24       The balance of hardships cannot tip to any side other than to Plaintiff.  "The

25  balance of equities strongly favors [the Plaintiff] because Defendants' only interest

26  is fiscal, whereas the [Plaintiff] faces *life or death consequences*."  See Oster v.

27  Lightbourne, 2011 U.S. Dist. LEXIS 138191 (N.D. Cal. 2011)

28

22

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 173 of 246

## VIII. AN INJUNCTION IS DECIDLY IN THE PUBLIC INTEREST

Finally, Plaintiff must show that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374, 376 (2008); National Meat Ass'n v. Brown, 599 F.3d 1093, 1097 (9th Cir. 2010); see also Beardslee v. Woodford, 395 F.3d 1064, 1067 (9th Cir. 2005). It is. Defendants' actions have not just put the life of Cindy Lee Garcia in danger. They have endangered the lives of every actor and crew member who is a subject of the *fatwa*. Media reports have already reported on numerous deaths caused by the violence. The web giant known as Google, a name derived from the number 10 with 100 zeroes, pursues mammon at the expense of the innocent.

Plaintiff anticipates that Defendants may attempt to argue that the First Amendment trumps the worldwide carnage sparked by the Film. It does not. First, Plaintiff is a private individual who is not acting in concert with the state; she therefore is not capable of violating the First Amendment. See, e.g., Law v. Miller, 2011 U.S. Dist. LEXIS 102527 (E.D. Cal. 2011) (rejecting claim that non-governmental parties violated plaintiff's First Amendment rights where defendants were not state employees and there was no nexus between the defendants and the state such that the defendants' actions might be fairly treated as those of the state). Second, the First Amendment does not protect copyright infringement. Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443 (C.D. Cal. 2007) ("To the extent that the users are engaged in copyright infringement, the First Amendment affords them no protection whatsoever.")(citing Harper & Row, 471 U.S. at 559). Third, even if the Film did not violate Plaintiff's copyright, by now it is clear that Defendants' actions can be compared to falsely shouting "Fire!" in a theater, creating a "clear and present danger" outside the protections of the First Amendment. Schenck v. United

23

ER164

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 174 of 246

1    States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470.  The public interest is protected

2    best by removing the video.[12]

3           Further, Defendant Nakoula violated the terms of his federal criminal

4    probation by posting the Film – he was prohibited from using a computer or

5    accessing the Internet.  (See RJN 5 & Ex. B.)  As the worldwide events described in

6    this brief unfolded, Defendant Nakoula was arrested on a probation violation and

7    now sits, without bail, in the Metropolitan Detention Center in Los Angeles.

8    Magistrate Judge Segal found that he may have violated the terms of his probation,

9    used aliases, and is both a flight risk and danger to the community.  (See RJN 5 &

10   Ex. B.)  The public has an interest in ensuring that criminal defendants do not

11   violate probation terms -- and that Google and YouTube not continue to aid and abet

12   him in doing so[13] – which is exactly what has here been done.

13   **IX.    THE RELIEF REQUESTED**

14          Based on the above, Plaintiff requests the Defendants be temporarily

15   restrained:

16          1.     From publishing, reproducing, disclosing, or otherwise allowing the

17   Copyrighted Performance (the original, un-dubbed script of which is identified in

18   Exhibit A to Ms. Garcia's Complaint) to be uploaded or shown on YouTube.com

19   and any other Websites operated by Defendants, or any of them, and from copying

20

21

22   [12]    YouTube's own guidelines prohibit the posting of "hate speech" -- a clearer
     case of hate speech is hard to imagine.  YouTube can hardly claim an interest in
23   keeping up globally condemned film.

24   [13]    "Whoever commits an offense against the United States or aids, abets,
     counsels, commends, induces or procures its commission, is punishable as a
25   principal."  18 U.S.C. § 2.  In this case, Defendants Google and YouTube are now
     *knowingly* aiding and abetting Defendant Nakoula's continued violation of his
26   federal probation by keeping the video posted.  Counsel for Plaintiff have provided
     counsel for YouTube and Google the Judgment and Commitment for Nakoula
27   showing that he was prohibited from using the Internet, computers or ISPs without
     the permission of the United States Probation Officer.
28
                                            24

                                                                      CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 175 of 246

1  or allowing the content to be copied into any computer database, information

2  service, storage facility, archives or other computerized network or facility:

3        2.      From disclosing or displaying, or causing to be disclosed or displayed,

4  any portion of the Copyrighted Performance;

5        3.      From destroying or concealing, or in any way disposing of any

6  reproduction, facsimile, excerpt, or derivative of any work related to the

7  Copyrighted Performance that is in Defendants' possession, custody or control.

8        Plaintiff further seeks an order to show cause as to why a preliminary

9  injunction should not be issued affording the same relief set forth above.

10       Plaintiff further seeks an impoundment order, such that Defendants turn over

11 for impoundment, to remain in the custody of Ms. Garcia's counsel during the

12 pendency of this action, all unauthorized copies of in their custody, possession or

13 control of the copyrighted works of Ms. Garcia, including but not limited to:

14       1.      All copies of the Copyrighted Performance, whether contained in the

15 Film as titled *Desert Warrior* or *Innocence of Muslims*, in the possession, custody,

16 or control of Defendants.

17       2.      Any and all media in which the Copyrighted Performance is stored

18 within the possession, custody, or control of Defendants, including but not limited to

19 computers, computer disks, cassette tapes, hard drives, CD-ROMs, DVDs, USB

20 sticks, and other media.

21 **X.    CONCLUSION**

22       Based on the foregoing, Plaintiff respectfully requests that this Court

23 GRANT the Application for the relief requested.

24

25 Dated: October 17, 2012            THE ARMENTA LAW FIRM, A.P.C.

26

27                                   By: _____
                                          M. Cris Armenta

28

                                     25

CV 12 8315 (VBKx)

ER166

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 176 of 246

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

On October 17, 2012 I served the following document(s) described as:

**(1) *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

**(2)  REQUEST FOR JUDICIAL NOTICE**

**(3) DECLARATIONS OF CINDY LEE GARCIA, DAN SUTTER, GAYLORD FLYNN, DR. KHALED ABOU EL FADL, ALL IN SUPPORT OF EX PARTE APPLICATION**

**(4) DECLARATION OF DAVID HARDY IN SUPPORT OF EX PARTE APPLICATION**

**(5) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF EX PARTE APPLICATION**

**(6) DECLARATION OF ZAHAVAH LEVINE IN SUPPORT OF EX PARTE APPLICATION**

**(7) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER, ISSUANCE OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

1

ER167

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 177 of 246

1   on the interested parties in this action by placing true copies thereof addressed as follows:

2                       **Timothy L. Alger**

                        **Sunita Bali**

3                    **Perkins Coie LLP**

                   **3150 Porter Drive**

4               **Palo Alto, CA 94304-1212**

              **TAlger@perkinscoie.com**

5               **sbali@perkinscoie.com**

6

7    ☑     BY ELECTRONIC MAIL, pursuant to the consent of the above counsel

8

  I declare under penalty of perjury under the law of the State of California that the above is true and

9   correct and that I am employed in the office of a member of the Bar of this Court at whose

10  direction the service was made.

11          Executed on  October 17, 2012 in Los Angeles, California.

12

13                                Heather Rowland

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 178 of 246

1

## PROOF OF SERVICE

2 STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4       I am employed in the County of Los Angeles, State of California.  I am over

5 the age of eighteen years and not a party to the within action.  My business address

6 is 1511 West Beverly Blvd, Los Angeles, California 90026.

7       On _____ I served the following document(s) described as:

8    **(1) *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING

9    ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY
       INJUNCTION, AND ORDER OF IMPOUNDMENT**

10    **(2)  REQUEST FOR JUDICIAL NOTICE**

11   **(3) DECLARATIONS OF CINDY LEE GARCIA, DAN SUTTER, GAYLORD

12   FLYNN, DR. KHALED ABOU EL FADL, ALL IN SUPPORT OF EX PARTE
       APPLICATION**

13

14    **(4) DECLARATION OF DAVID HARDY IN SUPPORT OF EX PARTE
       APPLICATION**

15

16    **(5) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF EX PARTE
       APPLICATION**

17

18    **(6) DECLARATION OF ZAHAVAH LEVINE IN SUPPORT OF EX PARTE

19       APPLICATION**

20    **(7) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE*

21   APPLICATION FOR A TEMPORARY RESTRAINING ORDER,
       ISSUANCE OF ORDER TO SHOW CAUSE RE PRELIMINARY

22       INJUNCTION, AND ORDER OF IMPOUNDMENT**

23

24 on the interested parties in this action by placing true copies thereof enclosed in

25 sealed envelopes addressed as follows:

26

27

28

1

ER169

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 179 of 246

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Nakoula B. Nakoula*
*c/o*
*Los Angeles County Sheriff's Department*
*Stanley Mosk Courthouse*
*110 North Grand Avenue Room 525*
*Los Angeles, 90012*

☐   PERSONAL SERVICE: On _____ I served the foregoing
documents listed above by personally handing them to

_____

*I declare under penalty of perjury under the law of the United States of America that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.*

Executed on _____ in Los Angeles, California.

_____

**PROOF OF SERVICE**

2

ER170

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 180 of 246

1  M. Cris Armenta (SBN 177403)
   THE ARMENTA LAW FIRM APC
2  11900 W. Olympic Boulevard, Suite 730
   Los Angeles, CA 90064
3  Tel: (310) 826-2826 x 108
   Facsimile: (310) 826-5456
4  Email: cris@crisarmenta.com

5  Credence E. Sol (SBN 219784)
   La Garenne
6  86300 Chauvigny
   France
7  Telephone: 06 74 90 22 08
   Email: credence.sol@sol-law.com
8
   Attorneys for Plaintiff
9  Cindy Lee Garcia

10                **UNITED STATES DISTRICT COURT**

11          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12  CINDY LEE GARCIA, an          Case No. CV12-8315 MWF (VBKx)
    individual,
13                                **REQUEST FOR JUDICIAL**
                    Plaintiff,    **NOTICE**
14
    vs.
15
    NAKOULA BASSELEY
16  NAKOULA, an individual also
    known as SAM BACILE, MARK
17  BASSELEY YOUSSEF,
    ABANOB BASSELEY
18  NAKOULA, MATTHEW
    NEKOLA, AHMED HAMDY,
19  AMAL NADA, DANIEL K.
    CARESMAN, KRITBAG
20  DIFRAT, SOBHI BUSHRA,
    ROBERT BACILY, NICOLA
21  BACILY, THOMAS J. TANAS,
    ERWIN SALAMEH, YOUSSEFF
22  M. BASSELEY, and/or MALID
    AHLAWI; GOOGLE, INC., a
23  Delaware Corporation;
    YOUTUBE, LLC, a California
24  limited liability company, and
    DOES 1 through 10, inclusive.
25
                    Defendants.
26

27

28

                            1                REQUEST FOR JUDICIAL NOTICE
                                             CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 181 of 246

## REQUEST FOR JUDICIAL NOTICE

1.   The court is requested to take judicial notice of the worldwide events that unfolded on and after September 11, 2012, which were widely and globally reported in the news and were at the time attributed to protests over the film *Innocence of Muslims* (the "Film"), and as set forth in the declaration of expert and Professor Khaled Abou El Fadl. The court may take judicial notice of information in newspaper articles. <u>Ritter v. Hughes Aircraft Co.</u>, 58 F.3d 454, 458-459 (9th Cir. 1995). Federal Evidence Section Evidence Code. 201(b) provides that judicial notice must be "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A district court's decision to take judicial notice under Rule 201 is reviewed for an abuse of discretion. <u>United States v. Chapel</u>, 41 F.3d 1338, 1342 (9th Cir. 1994), cert. denied, 131 L. Ed. 2d 1015, 1995 U.S. LEXIS 3609, 115 S. Ct. 2017 (U.S. May 22, 1995).

2.   The specific facts set forth in the news reports include the following: (a) that on September 11, 2012, the U.S. Consulate in Benghazi, Libya, was attacked, resulting in the deaths of four Americans, including Ambassador Christopher Stevens; (b) that violence has continued to erupt across the world; (c) that many experts in geopolitical affairs have attributed this violence directly to the Film; (d) that news reports indicate that many people worldwide have died in the violence that the film has sparked; (e) that whether the Film is or is not the cause of the violence, the violence in fact occurred with many at the time attributing it to the anti-Muslim sentiment in the Film; (f) that on September 19, 2012, Egyptian cleric Ahmad Fouad Ashoush issued a "fatwa" directed at Plaintiff and every other person involved in the production of *Desert Warrior/The Innocence of Muslims*:

REQUEST FOR JUDICIAL NOTICE
CV 12 8315 (VBKx)

ER172

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 182 of 246

1   *I issue a fatwa and call on the Muslim youth in America and Europe to do this duty, which is to kill the director, the producer and the actors and everyone who helped and promoted the film.*

2   (5) that the public response of Google Chairman Eric Schmidt's response to

3   questions about the Film was: "We believe the answer to bad speech is more speech

4   … It'll stay up." The material supporting the preceding items are contained in the

5   Declaration of Khaled Abou El Fadl,

6       3.      In July of 2012, the WIPO Audiovisual Dramatic Performance

7   Treaty ("AVP Treaty") was signed by the United States in Beijing, China in

8   July of 2012. The United States was instrumental in encouraging other

9   countries to sign the AVP Treaty in order to bring other countries into

10  compliance with the long-standing acknowledgement in the United States

11  that actors, just like musicians, own the rights to their performances unless

12  assigned, unless they are employees, or unless they execute a written

13  instrument indicating their work is a work-for-hire. The formal statement

14  issued by the United States Patent & Trademark Office, in connection with

15  the AVP Treaty, states:

16

17       Under U.S. law, actors and musicians are considered to be "authors"

18       of their performances providing them with copyright rights.

19

20       Just as the rights established in the U.S. law already provide the

21       protection for musical performers mandated by the WPPT, U.S. law is

22       already generally compatible with the AVP provisions ("points of

23       attachment" for parties to this treaty under U.S. law).

24

25  The official position statement of the United States and Trademark Office is

26  attached hereto as Exhibit A.

27

28

                                3                    REQUEST FOR JUDICIAL NOTICE
                                                     CV 12 8315 (VBKx)

ER173

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 183 of 246

1      4.     The court is requested of the public case file in <u>United States of</u>

2  <u>America v. Nakoula, et al</u>, United States District Court (Case No. NEED],:

3  (1) which includes the Judgment and Commitment, restricting Nakoula from

4  using a computer or accessing the Internet; (2) Nakoula was arrested on a

5  probation violation and now sits, without bail, in the Metropolitan Detention

6  Center in Los Angeles.  Magistrate Judge Segal found that he may have

7  violated the terms of his probation, used aliases, and is both a flight risk and

8  danger to the community.  The relevant documents from the Nakoula

9  criminal court case file, of which the court is requested to take judicial

10  notice, are attached hereto as Exhibit B.

11

12  Dated: October 17, 2012       THE ARMENTA LAW FIRM, A.P.C.

13

14              By: _____

15                   M. Cris Armenta
                       Attorneys for Cindy Lee Garcia

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE
CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 184 of 246

EXHIBIT A

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 185 of 246

*BACKGROUND AND SUMMARY OF*
## THE 2012 WIPO AUDIOVISUAL PERFORMANCES TREATY

*On June 26, at a Diplomatic Conference in Beijing, China, the United States joined countries from around the world in signing the WIPO Audiovisual Performances Treaty (AVP Treaty). This treaty will guarantee rights to film and television actors around the world in a form compatible with U.S. law and on a par with the rights accorded to musicians under the 1996 WIPO Performances and Phonograms Treaty (WPPT).*

### HISTORY

o   The United States was a leading force in the 1996 Diplomatic Conference (Dipcon) that produced the WIPO Copyright Treaty (WCT) and the WIPO Performances and Phonograms Treaty (WPPT). These treaties updated international copyright laws in critical ways, including rights of distribution and making available on the internet, and the safeguarding of technological protection measures.

o   Language not included in the 1996 negotiations would have addressed audiovisual performers rights in the WPPT, but agreement could not be reached on how to bridge the differences in difficult countries systems.

o   Instead, it was agreed that separate negotiations on the AVP would be conducted aimed at producing either a Protocol to the WPPT or a stand-alone agreement. Negotiations continued starting in 1997.

o   In October 1998, Congress passed the Digital Millennium Copyright Act (DMCA) implementing the WCT and WPPT. The United States Senate gave its consent to ratification of the WCT and WPPT on October 21, 1998; the United States deposited its instruments of ratification for both treaties with WIPO on September 14, 1999.

o   The United States strongly advocates these treaties and their adoption and implementation as part of bilateral and plurilateral trade and intellectual property agreements.

o   In December 2000, another Dipcon was convened to negotiate the AVP. The U.S. delegation included members from USPTO, Copyright Office, and State as well as representatives of the Screen Actors Guild-American Federation of Television and Radio Artists (SAG-AFTA) and the Motion Picture Association of American (MPAA).

o   The 2000 Dipcon completed all substantive provisions of the AVP except one relating to transfers of rights from performers to producers. The U.S., supported by India, insisted on a "transfer of rights" provision that major film producers felt was needed to ensure their ability to distribute films globally; the European Union opposed all proposals for such a provision. The Dipcon deadlocked on this issue.

o   For the next decade, the incomplete AVP languished on the agenda of WIPO's Standing Committee on Copyright and Related Rights (SCCR).

### BREAKTHROUGH IN 2011, DIPLOMATIC CONFERENCE IN 2012

o   In 2010, WIPO Member States were invited to submit proposals for the AVP transfer of rights provision in order to complete the treaty.

*United States Patent and Trademark Office (USPTO)*
*WIPO AVP Treaty - Background and Summary - June 2012 (Page 1 of 3)*

ER176

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 186 of 246

- o The United States submitted a proposal, developed with substantial input from SAG-AFTA and MPAA. Mexico and India also submitted proposals and the three countries (IN, MX, US) were tasked with finding a compromise solution.

- o The United States, Mexico, and India delegations achieved compromise language, working closely with the delegations of other major film-producing jurisdictions, particularly the EU, Brazil, and Nigeria. [Attached on page three as an Annex.]

- o Based on this agreement, in September 2011 the WIPO General Assembly decided to convene a Dipcon to complete the AVP Treaty.

- o The Chinese Government offered to host the Dipcon and this was supported by the United States as a means to strengthen China's commitment to copyright.

- o The Dipcon to complete the WIPO AVP Treaty was held in Beijing, June 20-26.

#### COMPATIBILITY WITH U.S. LAW

- o Under U.S. law, actors and musicians are considered to be "authors" of their performances providing them with copyright rights.

- o Just as the rights established in U.S. law already provide the protection for musical performers mandated by the WPPT, U.S. law is already generally compatible with the AVP provisions. (This was also the Administration's view in 2000.)

- o Nonetheless, implementation of the AVP may require some technical amendments of the Copyright Act, in particular where Title 17 refers to existing international copyright obligations ("points of attachment" for parties to this treaty under U.S. law).

- o Assuming the negotiations are successful, then subject to authorization by the Secretary of State to sign the treaty and the Administration's final determination, the AVP, like the WCT and WPPT, would be submitted for the advice and consent of the Senate.

#### IMPORTANCE TO U.S. STAKEHOLDERS

- o The AVP Treaty is important to American actors—represented by SAG/AFTRA—as a way of increasing global protection for performers by ensuring updated and consistent standards of protection for performers in audiovisual works.

- o With the now acceptable "transfer of rights" provisions, the AVP Treaty represents a win-win for labor and industry, allowing them to work even more closely in fighting global piracy.

- o Ratification by the United States and key trading partners will give U.S. stakeholders another mechanism to promote protection of the intellectual property in their films.

# # # #

*United States Patent and Trademark Office (USPTO)*
*WIPO AVP Treaty - Background and Summary - June 2012 (Page 2 of 3)*

ER177

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 187 of 246

**ANNEX – Compromise Article 12 to complete the AVP**

Article 12
Transfer of rights

A Contracting Party may provide in its national law that once a performer has consented to fixation of his or her performance in an audiovisual fixation, the exclusive rights of authorization provided for in Articles 7 to 11 of this Treaty shall be owned or exercised by or transferred to the producer of such audiovisual fixation subject to any contract to the contrary between the performer and the producer of the audiovisual fixation as determined by the national law.

A Contracting Party may require with respect to audiovisual fixations produced under its national law that such consent or contract be in writing and signed by both parties to the contract or by their duly authorized representatives.

Independent of the transfer of exclusive rights described above, national laws or individual, collective or other agreements may provide the performer with the right to receive royalties or equitable remuneration for any use of the performance, as provided for under this Treaty including as regards Articles 10 and 11.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 188 of 246

# EXHIBIT B

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 189 of 246

CLERK, U.S DISTRICT COURT

**SEP 2 7 2012**

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1
2
3
4
5
6
7
8
9    UNITED STATES DISTRICT COURT
10        CENTRAL DISTRICT OF CALIFORNIA
11
12
13
14                                    CR09-617-CAS
15   UNITED STATES OF AMERICA,        )
16        Plaintiff,                  ) ORDER OF DETENTION AFTER
                                      ) HEARING ( Fed.R.Crim.P. 32.1(a)(6)
17        v.                          ) Allegations of Violations of Probation
                                      ) Supervised Release)
18   NAKOULA BASSELEY NAKOULA         ) Conditions of Release)
19        Defendant.                  )
20   ─────────────────────────────
21        On arrest warrant issued by a United States District Court involving
22   alleged violations of conditions of probation or Supervised Release,
23        The court finds no condition or combination of conditions that will
24   reasonably assure:
25        (A)  ☒   the appearance of defendant as required; and/or
26        (B)  ☒   the safety of any person or the community.
27   //
28   //

ER180

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 190 of 246

1    The court concludes:

2  A.   (X)   Defendant poses a risk to the safety of other persons or the

3          community because defendant has not demonstrated by clear and

4          convincing evidence that:

5          he will abide by conditions of supervised

6          release. Despite his underlying conviction

7    for fraud and the condition that he, not use any

8  name other than his true name, it is alleged he

9  failed to use his true name. He may have committed
   new crimes while on release. Thus, Defendant poses a danger

10 (B)   (x)   Defendant is a flight risk because defendant has not shown by clear
                                                    to the
                                                    community.

11          and convincing evidence that:

12          he will abide by conditions of release. He appears

13   to have engaged in a pattern of deception. He lacks

14   stable employment or residence. He does not have

15   an adequate surety or bail resources. He has some

16   ties to foreign countries. He has used aliases. Thus,
          defendant poses a risk of flight.

17   IT IS ORDERED that defendant be detained.

18

19 DATED:  9/27/12

20

21

22

23                    SUZANNE H. SEGAL
24          UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                        2

ER181

**United States District Court**
**Central District of California**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA vs. | Docket No. | **CR09-617-CAS** | **ENTER** |

**Defendant**   NAKOULA BASSELEY NAKOULA

akas: Mark Basseley Youssef; Yousseff M. Basseley; Nicola Bacily; Malid Ahlawi

Social Security No. 0   7   7   4

(Last 4 digits)

**JUDGMENT AND PROBATION/COMMITMENT ORDER**

In the presence of the attorney for the government, the defendant appeared in person on this date.

| MONTH | DAY | YEAR |
|---|---|---|
| 06 | 24 | 2010 |

**COUNSEL**   [X] **WITH COUNSEL**   James Henderson, Sr., Retained
(Name of Counsel)

**PLEA**   [ ] GUILTY, and the court being satisfied that there is a factual basis for the plea. [ ] **NOLO CONTENDERE**   [ ] **NOT GUILTY**

**FINDING**   There being a finding/verdict of **GUILTY,** defendant has been convicted as charged of the offense(s) of:
Bank Fraud, Causing an Act to be Done in violation of 18 USC 1344,2(b), as charged in Count 1 of the Indictment.

**JUDGMENT AND PROB/ COMM ORDER**   The Court asked whether there was any reason why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is hereby committed on count 1 of the Indictment to the custody of the Bureau of Prisons to be imprisoned for a term of: **TWENTY-ONE (21) MONTHS.**

It is ordered that the defendant shall pay to the United States a special assessment of $100.00, which is due immediately.

It is ordered that the defendant shall pay restitution in the total amount of $794,700.57, pursuant to 18 U.S.C. § 3663A.

The amount of restitution ordered shall be paid to the victim as set forth in a separate victim list prepared by the probation office which this Court adopts and which reflects the Court's determination of the amount of restitution due to each victim. The victim list, which shall be forwarded to the fiscal section of the clerk's office, shall remain confidential to protect the privacy interests of the victim. If the defendant makes a partial payment, each payee shall receive approximately proportional payment unless another priority order or percentage payment is specified in this judgment. Restitution shall be due during the period of imprisonment, at the rate of not less than $25.00 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program. If any amount of restitution remains unpaid after release from custody, monthly installments of at least 10% of gross monthly income, but not less than $100.00 shall be made, whichever is greater, during the period of supervised release and shall begin thirty (30) days after the commencement of supervision. Pursuant to 18 U.S.C. § 3612(f)(3)(A), interest on the restitution ordered is waived because the defendant does not have the ability to pay interest. Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

All fines are waived as it is found that the defendant does not have the ability to pay a fine in addition to restitution.

The defendant shall comply with General Order No. 01-05.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five (5) years, under the following terms and conditions:

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 191 of 246

ER182

USA vs.   NAKOULA BASSELEY NAKOULA                     Docket No.:   CR09-617-CAS

1. The defendant shall comply with the rules and regulations of the U. S. Probation Office and General Order 318;

2. The defendant shall reside for a period of six (6) months in a community corrections center (community corrections component), as directed by the Probation Officer, and shall observe the rules of that facility;

3. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one (1) drug test within fifteen (15) days of release from imprisonment and at least two (2) periodic drug tests thereafter, not to exceed eight (8) tests per month, as directed by the Probation Officer;

4. During the period of community supervision, the defendant shall pay the special assessment and restitution in accordance with this judgment's orders pertaining to such payment;

5. The defendant shall not obtain or possess any driver's license, Social Security number, birth certificate, passport or any other form of identification in any name, other than the defendant's true legal name; nor shall the defendant use, for any purpose or in any manner, any name other than his/her true legal name or names without the prior written approval of the Probation Officer;

6. The defendant shall cooperate in the collection of a DNA sample from the defendant;

7. Defendant shall not possess or use a device with access to any online service at any location without the prior approval of the Probation Officer. This includes access through any Internet Service Provider ("ISP"), bulletin board system, or any public or private computer network system. Further, defendant shall not have another individual access the Internet on defendant's behalf to obtain files or information that defendant is restricted from accessing personally, or accept restricted files or information from another person;

8. Defendant shall use only those computers, computer related devices, screen/user names, passwords, e-mail accounts, and ISPs approved by the Probation Officer. Computer and computer-related devices include, but are not limited to, personal computers, personal data assistants (PDAs), Internet appliances, electronic games, and cellular telephones, as well as peripheral equipment, that can access, or can be modified to access, the Internet, electronic bulletin boards, other computers, or similar media. Defendant shall use any approved computers only within the scope of his employment. Defendant shall not access a computer for any other purpose. Defendant shall immediately report to the Probation Officer any changes in defendant's employment affecting defendant's access and/or use of computers or the Internet, including e-mail;

9. All computers, computer-related devices, computer storage media, and peripheral equipment used by defendant shall be subject to search and seizure, and subject to the installation of search and/or monitoring software and/or hardware, including unannounced seizure for the purpose of search. Defendant shall not add, remove, upgrade, update, reinstall, repair, or otherwise modify the hardware or software on any computers, computer related devices, or peripheral equipment without the prior approval of the Probation Officer, nor shall defendant hide or encrypt files or data. Further, defendant shall, as requested by the Probation Officer, provide all billing records,

ER183

USA vs.   NAKOULA BASSELEY NAKOULA                    Docket No.:   CR09-617-CAS

    including telephone, cable, Internet, satellite, and similar records; and

10.    The defendant shall apply all monies received from income tax refunds to the outstanding court-ordered financial obligation. In addition, the defendant shall apply all monies received from lottery winnings, inheritance, judgements and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation.

Defendant is informed of his right to appeal.

The Court grants the Government's request to dismiss the remaining counts of the Indictment.
The Court hereby recommends that defendant be designated to Lompoc, or as close thereto as possible.

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed. The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

June 24, 2010
Date

_Christine A. Snyde_
U. S. District Judge/Magistrate Judge

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

Clerk, U.S. District Court

June 24, 2010
Filed Date

By    /S/
Catherine M. Jeang, Deputy Clerk

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

### STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this judgment:

CR-104 (04/10)          **JUDGMENT & PROBATION/COMMITMENT ORDER**        Page 3 of 4

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 193 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 194 of 246

USA vs. ˙ NAKOULA BASSELEY NAKOULA                                    Docket No.:   CR09-617-CAS

1. The defendant shall not commit another Federal, state or local crime;
2. the defendant shall not leave the judicial district without the written permission of the court or probation officer;
3. the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4. the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5. the defendant shall support his or her dependents and meet other family responsibilities;
6. the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7. the defendant shall notify the probation officer at least 10 days prior to any change in residence or employment;
8. the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9. the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;
10. the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11. the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12. the defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
13. the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14. as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to conform the defendant's compliance with such notification requirement;
15. the defendant shall, upon release from any period of custody, report to the probation officer within 72 hours;
16. and, for felony cases only: not possess a firearm, destructive device, or any other dangerous weapon.

☐ The defendant will also comply with the following special conditions pursuant to General Order 01-05 (set forth below).

## STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS

The defendant shall pay interest on a fine or restitution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment pursuant to 18 U.S.C. §3612(f)(1). Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g). Interest and penalties pertaining to restitution , however, are not applicable for offenses completed prior to April 24, 1996.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant shall pay the balance as directed by the United States Attorney's Office. 18 U.S.C. §3613.

The defendant shall notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. §3612(b)(1)(F).

The defendant shall notify the Court through the Probation Office, and notify the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as required by 18 U.S.C. §3664(k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution-pursuant to 18 U.S.C. §3664(k). See also 18 U.S.C. §3572(d)(3) and for probation 18 U.S.C. §3563(a)(7).

Payments shall be applied in the following order:

       1. Special assessments pursuant to 18 U.S.C. §3013;
       2. Restitution, in this sequence:
            Private victims (individual and corporate),
            Providers of compensation to private victims,
            The United States as victim;
       3. Fine;
       4. Community restitution, pursuant to 18 U.S.C. §3663(c); and
       5. Other penalties and costs.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 195 of 246

USA vs.  NAKOULA BASSELEY NAKOULA                    Docket No.:  CR09-617-CAS

### SPECIAL CONDITIONS FOR PROBATION AND SUPERVISED RELEASE

As directed by the Probation Officer, the defendant shall provide to the Probation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant. In addition, the defendant shall not apply for any loan or open any line of credit without prior approval of the Probation Officer.

The defendant shall maintain one personal checking account. All of defendant's income, "monetary gains," or other pecuniary proceeds shall be deposited into this account, which shall be used for payment of all personal expenses. Records of all other bank accounts, including any business accounts, shall be disclosed to the Probation Officer upon request.

The defendant shall not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

### RETURN

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____ to _____

Defendant noted on appeal on _____

Defendant released on _____

Mandate issued on _____

Defendant's appeal determined on _____

Defendant delivered on _____ to _____

at _____

the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

By _____

_____
Date

Deputy Marshal

### CERTIFICATE

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

By _____

_____
Filed Date

Deputy Clerk

ER186

USA vs.   NAKOULA BASSELEY NAKOULA                    Docket No.:   CR09-617-CAS

---

## FOR U.S. PROBATION OFFICE USE ONLY

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____        _____
       Defendant                                        Date


_____        _____
U. S. Probation Officer/Designated Witness        Date

ER187

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 196 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 197 of 246

1
2
3
4
5

*Nakoula B. Nakoula*
*c/o*
*Los Angeles County Sheriff's Department*
*Stanley Mosk Courthouse*
*110 North Grand Avenue Room 525*
*Los Angeles, 90012*

6   ☐   PERSONAL SERVICE: On _____ I served the foregoing
7       documents listed above by personally handing them to
8       _____
9
10   *I declare under penalty of perjury under the law of the United States of*
11   *America that the above is true and correct and that I am employed in the*
12   *office of a member of the Bar of this Court at whose direction the service*
     *was made.*
13          Executed on _____ in Los Angeles, California.
14
15          _____
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

2

ER188

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 198 of 246

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

On October 17, 2012 I served the following document(s) described as:

(1) *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT

(2) REQUEST FOR JUDICIAL NOTICE

(3) DECLARATIONS OF CINDY LEE GARCIA, DAN SUTTER, GAYLORD FLYNN, DR. KHALED ABOU EL FADL, ALL IN SUPPORT OF EX PARTE APPLICATION

(4) DECLARATION OF DAVID HARDY IN SUPPORT OF EX PARTE APPLICATION

(5) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF EX PARTE APPLICATION

(6) DECLARATION OF ZAHAVAH LEVINE IN SUPPORT OF EX PARTE APPLICATION

(7) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER, ISSUANCE OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT

1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 199 of 246

on the interested parties in this action by placing true copies thereof addressed as follows:

**Timothy L. Alger**
**Sunita Bali**
**Perkins Coie LLP**
**3150 Porter Drive**
**Palo Alto, CA 94304-1212**
**TAlger@perkinscoie.com**
**sbali@perkinscoie.com**

☑    BY ELECTRONIC MAIL, pursuant to the consent of the above counsel

I declare under penalty of perjury under the law of the State of California that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on  October 17, 2012 in Los Angeles, California.

_____
Heather Rowland

2
NOTICE OF RELATED CASES

ER190

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 200 of 246

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

    I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 1511 West Beverly Blvd, Los Angeles, California 90026.

    On _____ I served the following document(s) described as:

**(1) *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

**(2)   REQUEST FOR JUDICIAL NOTICE**

**(3) DECLARATIONS OF CINDY LEE GARCIA, DAN SUTTER, GAYLORD FLYNN, DR. KHALED ABOU EL FADL, ALL IN SUPPORT OF EX PARTE APPLICATION**

**(4) DECLARATION OF DAVID HARDY IN SUPPORT OF EX PARTE APPLICATION**

**(5) DECLARATION OF M. CRIS ARMENTA IN SUPPORT OF EX PARTE APPLICATION**

**(6) DECLARATION OF ZAHAVAH LEVINE IN SUPPORT OF EX PARTE APPLICATION**

**(7) [PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER, ISSUANCE OF ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND ORDER OF IMPOUNDMENT**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

ER191

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 201 of 246

1  M. Cris Armenta (SBN 177403)
   THE ARMENTA LAW FIRM APC
2  11900 W. Olympic Boulevard, Suite 730
   Los Angeles, CA 90064
3  Tel: (310) 826-2826 x 108
   Facsimile: (310) 826-5456
4  Email: cris@crisarmenta.com

5  Credence E. Sol (SBN 219784)
   La Garenne
6  86300 Chauvigny
   France
7  Telephone: 06 74 90 22 08
   credence.sol@sol-law.com
8
   Attorneys for Plaintiff
9  Cindy Lee Garcia

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  CINDY LEE GARCIA, an individual,      Case No. CV12-8315-MWF-(VBKx)

13              Plaintiff,                **DECLARATIONS OF CINDY
                                          LEE GARCIA, DAN SUTTER,**
14  vs.                                   **GAYLORD FLYNN, DR.
                                          KHALED ABOU EL FADL,**
15  NAKOULA BASSELEY                      **ALL IN SUPPORT OF EX
    NAKOULA, an individual also           PARTE APPLICATION**
16  known as SAM BACILE, MARK
    BASSELEY YOUSSEF,
17  ABANOB BASSELEY
    NAKOULA, MATTHEW
18  NEKOLA, AHMED HAMDY,
    AMAL NADA, DANIEL K.
19  CARESMAN, KRITBAG
    DIFRAT, SOBHI BUSHRA,
20  ROBERT BACILY, NICOLA
    BACILY, THOMAS J. TANAS,
21  ERWIN SALAMEH, YOUSSEFF
    M. BASSELEY, and/or MALID
22  AHLAWI; GOOGLE, INC., a
    Delaware Corporation;
23  YOUTUBE, LLC, a California
    limited liability company, and
24  DOES 1 through 10, inclusive.

25              Defendants.

26

27

28

                                    1    DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION
                                                                    CV 12 8315 (VBKx)

                                                              ER192

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 202 of 246

## DECLARATION OF CINDY LEE GARCIA

I, Cindy Lee Garcia, declare:

1.      I am over eighteen years of age and the Plaintiff in this action.  I make this declaration based on my own personal knowledge, and if called as a witness, would testify competently as follows:

2.      I am an actor who appeared in the film originally titled *Desert Warrior* and posted to YouTube with under title *Innocence of Muslims*.  I am the Plaintiff in this action.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

3.      I am an ordained Christian minister.  After my husband suffered a debilitating head injury approximately 3.5 years ago, I began to look for work as an actress.  I have appeared in three films, including the film that is the subject of this lawsuit.

4.      Because of my life path and work as an ordained Christian minister, I have been extremely careful and cautious in selecting the types of movies in which I will act.  I preach tolerance of all religions and respect for each other's faith.  The depiction of me as a person who would participate in a hateful production that blasphemes any god or religion is profoundly devastating to me.

5.      In July of 2011, I responded to a casting notice for a film with a working title of *Desert Warrior*.  I auditioned for and was cast in a supporting role in *Desert Warrior*.  I met a man who told me his name was Sam Bacile.  A true and correct photograph of the man who told me his name was Sam Bacile is attached hereto as Exhibit A.  According to "Sam," I was to play the mother of a young woman who had been promised in marriage to the movie's protagonist, "Master George."

6.      After I was cast, "Sam" provided me with "call sheets" that indicated the days I was to be on set to render my performance, and also outlined the scenes

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 203 of 246

1    that would be filmed each day.  Additionally, "Sam" provided me with "script

2    sheets" for those scenes in which my character was to appear.  None of those script

3    sheets contained any sexual content or language that I perceived to be offensive to

4    any religion.  More specifically, none of the script sheets referred to a character

5    named "Mohammed."  I worked for approximately 3 and one-half days on the set of

6    *Desert Warrior*.  I interacted regularly with "Sam Bacile".  I was paid

7    approximately $500 for my work as an actress.  I acted and my performance was

8    recorded on film.

9         7.    I was not an employee of "Sam Bacile."  I was not an employee of the

10    production company nor was I an agent for "Sam Bacile," or anyone else associated

11    with *Desert Warrior*,

12         8.    I never signed a release of any kind of my rights to my dramatic

13    performance in the film, nor did I sign a work-for-hire agreement.  I am unaware of

14    any other actors in the film having signed any kind of a release or work-for-hire

15    agreement either.

16         9.    I did sign a document that related to my receipt of acting credit for the

17    International Movie Database ("IMDB").  This was the only document that I signed

18    in connection with *Desert Warrior* and it did not include any language pertaining to

19    me releasing any rights to my performance to anyone.

20         10.    Both prior to accepting the role and while I was on set, I specifically

21    asked "Same Bacile" about the content of the film, because I never received nor saw

22    the script as a whole.  I was only given sheets for the particular portions in which I

23    was to appear.  "Sam Bacile" told me that the film was titled *Desert Warriors*, and

24    that it was an "adventure" story set in the Arabian desert of 2,000 years ago.  I

25    believed him, because even though the production clearly was low-budget, "Sam

26    Bacile's statements to me were consistent with my on-set observations of period

27    costumes, sword fighting, and the general appearance that the film was set in ancient

28

DECLARATION OF CINDY LEE GARIA
CV 12 8315 (VBKx

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 204 of 246

1   times. *At no time during my presence on-set did I hear any mention of the Muslim*

2   *faith nor any mention of Islam.* There was nothing in the call sheets nor in the few

3   script pages that I was given that I perceived to be religiously offensive. Had I

4   observed any denigration of the Muslim faith on-set, or witnessed any sexual

5   content, I would not have appeared in the film: because of my strong faith and my

6   own moral beliefs, I would never, and in fact, did not, agree to be in a film that had

7   sexual content or blasphemed any god or religion.

8         11.    After filming of *Desert Warrior* was complete in July of 2011, "Sam

9   Bacile" contacted me in March of 2012, when he requested that I participate in a

10  post-production session where I spoke the same lines as I had on the set.

11        12.    The next time I spoke with "Sam Bacile" was sometime after July 2,

12  2012, when I telephoned him to ask whether *Desert Warrior* had been completed

13  and was ready to be screened. It was only then that "Same Bacile" told me to search

14  YouTube, under his name to locate the movie. When I accessed the trailer on

15  YouTube, I discovered that my performing was dubbed over with racist and bigoted

16  dialogue. To me, the video trailer was confusing because it did not appear to

17  accurately depict the film that I believed I had performed. "Sam Bacile" literally

18  turned me into a walking, talking "puppet" for his opinion that the Islamic religious

19  figure Mohammed was a "child molester." That was also the point at which I

20  learned that the film had been retitled, from *Desert Warrior* to *The Innocence of*

21  *Muslims.* The words that I delivered on screen for *Desert Warrior*, in the scene in

22  which my performance appears in *Innocence of Muslims*, were "Is George crazy?

23  Our daughter is but a child?" Our "daughter" was named Hilary in *Desert Warrior*,

24  and she is an adult actress over the age of eighteen. When I viewed *Innocence of*

25  *Muslims*, my words were clearly dubbed over to look as if I actually said "Is your

26  Mohammed a child molester?" I never uttered these words, let alone on the set of

27  *Desert Warrior*.

28

DECLARATION OF CINDY LEE GARIA
CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 205 of 246

1    13.   Immediately after seeing the news about the attacks in Libya and

2   realizing that my dramatic performance in *Desert Warriors/The Innocence of*

3   *Muslims* and the manner in which it was grotesquely manipulated was related to the

4   violence erupting around the world, I telephoned "Sam Bacile" on his cellular

5   telephone. I spoke to him directly. I asked him why he "did this?" He replied,

6   "You are not responsible. Tell the world that you are innocent. I did this… I did it

7   because I am tired of the radical Muslims killing innocent people." I never

8   harbored any intent, jointly with "Sam Bacile" or with anyone else, who I

9   understand is actually named Nakoula Basseley Nakoula or Mark Basseley Youseff,

10   to commit my performance to *Innocence of Muslims*. In fact, had I known of

11   Nakoula's intent, motive or plan, I would absolutely not have participated in any

12   way in the film.

13    14.   Immediately after the film trailer "went viral" on YouTube, I began to

14   receive calls from the media, all of whom were apparently already somehow aware

15   that I had appeared in *The Innocence of Muslims*. Media camped outside my

16   personal residence and sought interviews. I also learned that I had a *fatwa* on my

17   head: that an Egyptian cleric had asked Muslims worldwide, and American youth in

18   particular, to kill me. I began to receive numerous written death threats. In order to

19   clear my name, ensure that the world was aware that I was, in fact, duped into

20   performing, and that I never uttered the words attributed to me, I went public and

21   advised the world through the media that I do not condone the film and that my

22   dramatic performance was grotesquely mutilated when it was inserted into the video

23   *The Innocence of Muslims*. I then took legal action to attempt to have the video

24   removed from YouTube.

25    15.   While in Los Angeles Superior Court on September 20, 2012, for a

26   hearing on my state court lawsuit (which has since been dismissed), I was directed

27   to park in a secure location underground and was accompanied to the public hearing

28

4

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 206 of 246

1    by seven armed Los Angeles County Deputy Sheriffs.  My attorney was approached

2    by the head of security for the Los Angeles Superior Court and warned that we were

3    both in danger.  He expressed concern for me, for my lawyer and for both of our

4    families, advising that the people who were after me "are very patient." Both of us

5    were advised to take serious security measures entering and exiting the Los Angeles

6    Superior Court at any time in the future.

7         16.     While in New York during the last week of September, my attorney

8    and I were accompanied by retired New York City police officers and hotel security

9    personnel.  When we departed New York, the Port Authority Police (the law

10   enforcement agency for New York's airports) would not permit me to enter the La

11   Guardia International Airport Terminal.  Instead, I spent several hours at the airport

12   police station, and then officers took me directly to my airplane on the tarmac in a

13   squad car.  The precautions were taken because, as the officers explained to me, I

14   would become an "instant target" if permitted to be in the public areas of the airport

15   terminal.

16        17.     I have been advised by security personnel and law enforcement to

17   move my personal residence, which I have done.  I also moved my church's location

18   where I preach as a Christian ordained minister.  I have received numerous death

19   threats, all of which have been reported to the appropriate authorities.  Because of

20   security concerns, the authorities advised me not to release the details of which law

21   enforcement agencies have received those reports.  The death threats include, but

22   certainly are not limited to, the following:

23        "I am ready to die for MUHAMMAD (PBUH) and I would Like to
          Kill all Those Who contributed in the Shape of Acting or Financially
24        or any other Kind of Support in Shameless Movie."

25        "And If You Wanna to save your life and we consider your innocent
          then Just Kill Sam and Terry Jones."
26
27        "Dear the end is near."

28

5

DECLARATION OF CINDY LEE GARIA
CV 12 8315 (VBKx)

ER197

1   "It's all a big joke.  She will be Killed by some one who loves and
    cares our Prophet Muhammad peace be upon him"

2   "She will know what she did now she is saying sorry about that"

3   Copies of these threats are attached hereto as Exhibit B.

4       18.   I have filed an application to register my acting performance in *Desert*

5   *Warrior* work with the United States Copyright Office.  Attached as Exhibit C is a

6   true and correct copy of my copyright application.

7       I declare under penalty of perjury under the laws of the United States of

8   America that the foregoing is true and correct.

9       Executed on this 12th day of October, 2012, at Bakersfield, California.

10                                          ~~See attached faxed signature~~

11                                          _____

12                                          Cindy Lee Garcia

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

DECLARATION OF CINDY LEE GARIA
CV 12 8315 (VBKx

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 207 of 246

Christian ordained minister; I have received numerous death threats, all of which have been reported to the appropriate authorities. Because of security concerns, the authorities advised me not to release the details of which law enforcement agencies have received those reports. The death threats include, but certainly are not limited to, the following:

"I am ready to die for MUHAMMAD (PBUH) and I would Like to Kill all Those Who contributed in the Shape of Acting or Financially or any other Kind of Support in Shameless Movie."

"And If You Wanna to save your life and we consider your innocent then Just Kill Sam and Terry Jones."

"Dear the end is near."

"It's all a big joke. She will be Killed by some one who loves and cares our Prophet Muhammad peace be upon him"

"She will know what she did now she is saying sorry about that"

Copies of these threats are attached hereto as Exhibit B.

18. I have filed an application to register my acting performance in *Desert Warrior* work with the United States Copyright Office. Attached as Exhibit C is a true and correct copy of my copyright application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of October, 2012, at Bakersfield, California.

Cindy Lee Garcia

10-14-72

Cindy Lee Garcia

DECLARATION OF CINDY LEE GARIA
CV 12 8315 (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 208 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 209 of 246

EXHIBIT A

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 210 of 246



Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 211 of 246

# EXHIBIT B

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 212 of 246

'25'   Search for people, places and things

**Cindy Lee Garcia**

**FAVORITES**
News Feed
Messages
Other
Events                    10

**ADS**
Ads Manager

**PAGES**
Cindy Lee Garcia          14
Sugar & Spice & Company
Flame Of Fire Outreach
Like Pages

**APPS**
App Center                10
TopFace
Slotomania                4
Truth Game
Are You Interested?       11
Status Shuffle
Photo Contest             1
21 questions              6
Zoosk                     6
Truths About You          2
Photos
My Friend Secrets
Games Feed

**GROUPS**
KERN COUNTY YA...   20+
Body Of Christ      20+
Create Group...

MORE

## Sami Ullhaq

**Sami Ullhaq**
cindy lee i want to kill you... why you make the Muslims...if i reached to you than i finish you to kill uuuuuu............................

**Sami Ullhaq**
if i find u any where i will fuck u deep bitch

**Sami Ullhaq**
if i find u any where i will fuck u deep bitch

Write a reply...

Facebook © 2012 - English (US)

**Wikipedia**
On this day in 1859, American abolitionist John Brown led a raid on the Harpers ...
. John Brown's raid on Harp...

**Eric Reed** and **Kraze Rock** are now friends.

**Dan Marquardt** earned Medium Key Stone Reward on Bejeweled Blitz.

**Greg Mitchell** commented on Dave Flood's photo: "Ya Buddy!"

**Vinny's Bar** and **Jimmy Clip** are now friends.

**Michael Lewis** and **Martika Halcomb** are now friends.

**Robert Miller** likes Jonny William Campbell's status.

**Brenda Winans**
SHORT SALES – Time is ticking with the two laws in place through the end of 2012...

**Glenn Beck** added a new

**Aimee Lee Diosi**

**BJ Fuller**

**Clay Beaudette**

**Don Martin**

**Donna Perez**

**Justin Dane Chambers**

**Keasha Willingham–Bric...**

**Kristy Marie Rodriguez**

**Madeleine Shepherd Ma...**

**Mahmoud Ahmed Emara**

**Mary Miller**

**McNally's Fairview Lodge**

**Neil Agness**

**Nikki Kor**

**Nina Shaki Gomez**

ER203

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 213 of 246

**Cindy Lee Garcia**    **Assasin Junglee**

**Assasin Junglee**

**Assasin Junglee**

**Assasin Junglee**

**Assasin Junglee**

WOW I THINK YOUR A TOUGH GIRL ARENT YOU HAS YOUR GOD PISSED HIM!
YOU SEE WHATS HAPPEND WHEN YOU AND YOUR JOOMALES
SLANDER ISLAM/NATURAL CURSE FIGHT/EAR KARL SWEETS X

**Cindy Lee Garcia**

You have me all wrong, a man did this behind my back what was a
decent film he put in there sexual content I would never be a part of nor
would I speak against another belief. I am a Christian

**Assasin Junglee**

yes we all know the story?you see whats happend?my goodness such
calamity has befallen you?the world knows you?has seen your
face?natural curse from above has befallen you without the need of
middenmedia?i?also why same I guess must get/e guessed oh you
doubt wonder you go you will always be famous thats what you
wanted?thats what your got fame you have truly got it?whirl prices!
be careful what you wish for honeypie?

**Cindy Lee Garcia**

you have no idea of my heart, nor my motives, you speak very vulgar.
What God do you serve. What happened to be nor not my dhow. This
man Sam Bassil was the one who brought us in to do a decent film
called Dessert Warrior, There was never any mention of Muslims nor
Muhammad, Our country has proven that did you was dubbed over our
voices, and shoots are scenes were never done what I am present, I
would never be involved in something like that ever. Sam Bassil one
that and that behind my back. I am innocent of all sim God knows
my heart and He protects me and my family.

**Cindy Lee Garcia**

God will not let you touch anyone. I do not have a daughter who you
can rape, what kind of person are you that is so evel



Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 214 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 215 of 246





Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 216 of 246

https://www.facebook.com/flame4him1

10/4/2012

ER207

Flame Of Fire Outreach

Page 1 of 1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 217 of 246

Search for people, places and things

Flame Of Fire Outreach   Home

Flame Of Fire Outreach   Messages

Create Page

See Your Ad Here

**LionZaid Hamid**

Flame Of Fire
Outreach

Messages    Actions    Search This Conversation

LionZaid Hamid
it is my obligation that i let you about the true way .. now your
wish..search on true way..death is near to you

September 17

Reply

We are all about
reaching the lost 4
Jesus & doing the work
of the Lord

Like · Flame Of Fire
Outreach likes this

Advertise Your Page

Facebook © 2012 · English (US)

About · Create an Ad · Create a Page · Developers · Careers · Privacy · Cookies · Terms · Help

https://www.facebook.com/FlameOfFireOutreachChurch?sk=messages_inbox&action=rea...   10/4/2012

ER208

LionZaid Hamid - Messages

Page 1 of 1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 218 of 246



(13) Ahmad Masanawa - Messages

facebook

Cindy Lee Garcia

**FAVORITES**
- News Feed
- Messages
- Other
- Events
- Ads Manager

**PAGES**
- Cindy Lee Garcia
- Sugar & Spice & Company
- Flame Of Fire Outreach
- Like Pages

**APPS**
- App Center
- TopFace
- SkScandal
- Are You Interested?
- Photo Contest
- Truth Game
- 21 questions
- Zoosk
- Truths About You
- Games Feed
- SixSpot Casino

**GROUPS**
- KERN COUNTY YAR...
- Body of Christ
- Create Group...

MORE ▾

## Ahmad Masanawa

**Ahmad Masanawa**
for u have really insult our religion...why?i guess the answer is u didn't respect our faith and tryin to make others do... But Remember Islam is the only non-cristian faith that believe in jesus and is part ov ur faith 2 do so!! so far me r tryn 2 live peacefully wif other faith but u have really offended Islam and INSHA ALLAHU GOD WILL DO SOMETHING ABOUT IT !..JUST WAIT AND SEE!!!!!!!!!!!!!RESSALAM LAM 3LAH HA ILLALLAHU MUHAMMADAR RASSULULAH

**Cindy Lee Garcia**
Dear Ahmad, I did not disrespect your prophet, the man who filmed the [...] with other words. I believe in God and love [...] would not disrespect you or your faith. All that has happened I have been trying so hard to clear up. That is why I came forward when everyone else hides. Never once was I mentioned Mohammad or Muslims while we were filming on set while I was there. Nor was there any sexual content filmed while I was on set. I would not do that ever. I do love Jesus and I thank you for respect for Him. I know you do not know me as a person but I am telling you the truth, Cindy

**Ahmad Masanawa**
any way...if truth shall prove itself 1 day....Thanks and bye

**Cindy Lee Garcia**
yes it shall we have that assurance from God

Link

Facebook © 2012 · English (US)    About · Create an Ad · Create a Page · Developers · Careers · Privacy · Cookies · Terms · Help

Sponsored

Smiliz Merchant Services
unitedpaymentservices.com
Lifetime Lowest Cost Guaranteed! Free to get started! Voted Best Processor 2008-2012!

Lose 7lbs / week
Cut down 7 lbs / week by following this surprising diet tip.
Like · 16,258 people like this.

Verizon Wireless
Get the new Samsung Galaxy S III on America's Largest 4G LTE Network.

SEIU California
Stand with Governor Brown and say Yes to Prop 30 - help fix our budget mess. Like today.
Like · 7,537 people like this.

Chat (13)

https://www.facebook.com/#!/messages/?action=read&tid=id.4491762517936271[10/16/2012 9:54:20 AM]

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 220 of 246



ER211



Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 221 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 222 of 246

facebook

Cindy Lee Garcia    Messages ▾    Highlights ▾

+ Create Page

See Your Ad Here

The Innocence of Cindy Garcia

🕮 Hany Reda                              ◄ Messages    ⚙ Actions ▾        Search This Conversation

**Hany Reda**                                              September 13
Get a real job and stop insulting other religions. Bitch

👍 Like This Page

**Cindy Lee Garcia**                                       October 6
I did not insult any religion, that man dubbed over my words. Watch
the news. Thank you

Advertise Your Page

💬 Hany is typing ...

□ ↵

🔗 Link                              Link

ER213

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 223 of 246

Flame Of Fire Outreach

**facebook**

Flame Of Fire Outreach | Messages ▾ | ▾ | Highlights ▾

Flame Of Fire Outreach | Home | ▾

**LionZaid Hamid**

‹ Messages | ⚙ Actions ▾ |  | Search This Conversation

**LionZaid Hamid**
It is my obligation that I tell you about the true way...now your wish..search on true way..death is near to you

September 17

LionZaid is typing ...

☐ ↵

🔗 **Link** | **Link**

See Your Ad Here

church service was good to day, got bulletins made, and all went smoothly Love Donna

Praise the Lord we have a new building, wonderfu...

👍 Like This Page

**Advertise Your Page**

+ Create Page

Facebook © 2012 · English (US)

About · Create an Ad · Create a Page · Developers · Careers · Privacy · Cookies · Terms · Help

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 224 of 246

Mohamed Hassan Shedeed - Messages

**facebook** | Search for people, places and things | [Sear] | Cindy Lee Garcia · Home ▼

| 💬 | **Cindy Lee Garcia** | **Messages** ▼ | ▼ | **Highlights** ▼

+ Create Page

See Your Ad Here

The Innocence of Cindy

💬 **Mohamed Hassan Shedeed**        ‹ Messages | ⚙ Actions ▼ | [Search] | Search This Garcia Conversation

**Mohamed Hassan Shedeed**                    September 12
SHAME ON YOU MAKE SUCH A FILM YOUR AMBASSADOR IS KILLED
BECAUSE OF YOU AND ALL OF THE CAST

👍 Like This Page

**Promote Your Page**

**Cindy Lee Garcia**                    October 8
no it was not because of me, the man who dubbed over my words hurt
the people and brought out anger in there hearts, then they killed the
Ambassador who loved the Libyan people sir. Please do not blame the
innocent

**Mohamed Hassan Shedeed**                    October 10
No but you are also to blame because u have to be sure with whom
you are working and also monitoring your work not just take the money
and they do what they want to do with your film shots ,anyway I saw
your apologize on Dream TV and you made me respect you because of
that .

**Cindy Lee Garcia**                    October 10
I agree with you about monitoring the people and you can be sure from
now on I will be very careful what I do. I will never work with anyone
who I do not investigate first. Thank you for your advice, however I
was thinking the same thing. I felt so foolish. I have hurt in my heart
for this. And the little money I made on this film barley paid for gas and
a little left over. I live a long way from where the movie was filmed.
Also the other scenes that they filmed sexual content, they did not do
that while I was on the set. They added that in while I was finished
with my work, that was terrible to me to be involved in that film in
every aspect. Then when people were killed I prayed to God for his
help for everyone. But violence is never right, only to protect our self
from someone trying to kill us , my father taught me that. To protect
myself if someone tries to hurt me, self defence. But not just to just
people because of anger or violence. Sam Bassil was not given my
permission to do what he wanted with the movie, I read the contract, I
did not permit him to do that. So he is in jail Sincerely Cindy

**Mohamed Hassan Shedeed**                    October 10
Your father's words is totally right ,and most of us is against violence
,please don't be hurted we all took lessons in our life and insisting on
fault is the big fault not doing the fault by itself ,we are all doing

[text input field] ⬜ ↵

📷 ✕

🔗 **Link**                    **Link**
                                ✕

**ER215**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 225 of 246



Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 226 of 246

Muhamad Holil - Messages



(1) Cindy Lee Garcia



Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 227 of 246

ER218

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 228 of 246



ER219

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 229 of 246





Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 230 of 246

https://www.facebook.com/messages/?action=read&tid=id.435135099855022[10/16/2012 7:58:53 AM]

ER221

مجمع صالح الأولياء - Messages

I have been hurt over all this and lied about

Can I ask you a favor

September 20

**Cindy Lee Garcia**
yes

September 20

Do me be your friend more serious friendship

September 21

Hello

September 24

**Cindy Lee Garcia**
I am married

September 24

In order to know what the problem

September 24

**Cindy Lee Garcia**
we r taking it off theYou Tube working very hard to do that

September 24

I can be a loyal friend to you what your opinion
Do you accept my friend I want a response

September 24

Welcome my friend

September 27

**Cindy Lee Garcia**
WHAT WAS THE FAVOR U WANTED

September 27

Nothing just friendship

September 27

**Cindy Lee Garcia**
FRIENDSHIP IS GOOD

September 27

Do you consider this acceptance

September 27

**Cindy Lee Garcia**
yes

September 27

I am very happy with this friendship

September 27

Good evening

September 28

hi

October 8

**Cindy Lee Garcia**
hello

October 8

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 231 of 246

ER222

محرم حلیاء اویناغ ال - Messages



**Cindy Lee Garcia**
how r u today

October 8

I'm good

October 8

What's new in your case

October 8

**Cindy Lee Garcia**
we are working so hard
Sam is in Jail
we are trying to get this clip of the internet
I am going to write a book I am working on it right now
I am suing google and you tube what they did all of them was wrong
I believe in freedom of speech, but not to hurt others
I pray all the time for the Lord to help me do the right thing
we do have a good plan in this, I believe it will work
but we must all work together
do yu have any power with the people where you are from

October 8

Can I help you with anything

October 8

**Cindy Lee Garcia**
I need to talk to people that are very well versed in the Koran both i guess you would say radical and nor radical but still very committed to their belief, so important to a book that I am in the middel of writing, everyones voice needs to be heard
I am a Christian I love God, I would never hurt anyone like that, nor would I be in a film where there was sexual content
The book I am writing I want everyone side to come out
I have some Muslim friends, they talk to me, they are wonderful people
dedicated and committed and kind

October 8

I want to go to prayer and I'll be back after five minutes

October 8

**Cindy Lee Garcia**
I would like to talk also to some one who is radical so I can feel all that is in there heart and why they go to such extreme, I would not judge them, but my heart breaks for the hurt and anger they feel
I do not agree with violence, God has changed my heart in so many ways since I put my faith in Hi, I want to bring understanding and peace, so in the book I write I would not change a word. I would just put everyones heart and views including my own
Let me know if you can help. Also I have to come up with money to keep fighting in court, I am not wealthy, but I am doing the best I can, my lawyer is helping me

October 8

I will collect money for the cause
There is no problem in terms of money

October 8

**Cindy Lee Garcia**
Oh dear Lord thank you
is there some one who can please talk to me about the Koran from there heart

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 232 of 246

**ER223**



What is your bank account number

**Cindy Lee Garcia**
Both a radical Muslim and a Muslim who is very well versed and does not believe in violence. It is so imprtant to me writing this book, I have prayed. I believe it is Gods will, we all need understanding. Also we go back to court soon, and I am trying to get this film out of his hands so he can no longer hurt people

**Cindy Lee Garcia**
I am wanting to go into the jail and meet him face to face, I have a leagal law suit against him

but it is because i want this clip off the internet

I want to show you the Quranic verse indicates that you are innocent

After tomorrow I get section and I will send you

**Cindy Lee Garcia**
ok, that will be good, I know you do not have a photo of yourself posted may I have a photo of you so I can know who I am talking too. Sincerely Cindy

I have a picture in my personal Wear orange shirt

You put a photograph me

**Cindy Lee Garcia**
thank you

i posted on ur page

I contacted my friend and asked for a copy of the film and said I would try to get them through hacking

**Cindy Lee Garcia**
please do not post it anywhere, we want it taken down, but you can see where they put words over my words, there is one small part of me in the film

Yes, he says you must select the section that you wanted

My friend say you is sexy clip you want

**Cindy Lee Garcia**
I was not in any sexual content at all. I just had a speaking part to the man who played my husband

i have to take my boy to school b back

Good will work within a quarter of an hour

**Cindy Lee Garcia**
ok, but do not post anything on the internet, we have to get this off here

My dear friend every day increases my admiration for your

I love all the people fighting for principles

**Cindy Lee Garcia**
be with you shortly

Welcome my dearest friends

Are you busy

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 233 of 246

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 234 of 246



**Cindy Lee Garcia**
yes my friend

October 10

Good morning

I want you to answer explicit

Farewell with your friendship I want to admit that you that you have caused grievous hurt to a Muslim family

15 hours ago

**Cindy Lee Garcia**

I am so sorry for the hurt, that was never my intention, I thought you realized that the man who made the movie dubbed over our voices put words in our mouth that we did not say. All the sexual content in the film was not filmed while I was on the set. It has been proven here in the USA, I am so sorry for your pain. I would never try to hurt anyone like that.
I pray for peace for all Cindy

10 hours ago

is typing ...

You can no longer message . Learn more.

Facebook © 2012 · English (US)

About · Create an Ad · Create a Page · Developers · Careers · Privacy · Cookies · Terms · Help

Close popup and return
>

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 235 of 246



Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 236 of 246

(13) Xaadi Mian - Messages

facebook

Cindy Lee Garcia

FAVORITES
News Feed
Messages
Other
Events

ADS
Ads Manager

PAGES
Cindy Lee Garcia
Sugar & Spice & Company
Flame of Fire Outreach
Like Pages

APPS
App Center
TripTrace
Slotomania
Are You Interested?
Photo Contest
Truth Game
21 questions
Zoosk
Truths About You
Games Feed
My Personality

GROUPS
KERN COUNTY YAR...
Body Of Christ
Create Group...

MORE ~

Xaadi Mian

Messages    Actions ~

**Xaadi Mian**
bloody bitch u r fuck by me dick celtin u r unknown father

September 22

**Xaadi Mian**
I am so so sorrrrry I am msg to my x gf but in emergency it can be
sent to you again I am reliy sooo sooo sooorrrryyyy plzzz

September 22

**Cindy Lee Garcia**
forgiven I hope you can forgive her too

Xaadi is typing ...

Link

Link

Sponsored ✎    Create an Ad

Smflte Merchant Services
unitedpaymentservices.com
Lifetime Lowest Cost
Guaranteed! Free to get
started! Voted Best
Processor 2008-2012!

Lose 7lbs / week
Cut down 7 lbs / week by
following this surprising
diet tip.
👍 Like · 16,771 people like this.

Verizon Wireless
Get the new Samsung
Galaxy S III on America's
Largest 4G LTE Network.

SEIU California
YES 30
Stand with Governor
Brown and say Yes to
Prop 30 - help fix our
budget mess. Like today.
👍 Like · 7,529 people like this.

💬 Chat (12)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 237 of 246

(13) Xiaofi Mian · Messages



Debbie Brashear
Traveling Nurse at Core Medical
Group

See Friendship
27 mutual friends

Facebook © 2012 · English (US)

About · Create an Ad · Create a Page · Developers · Careers · Privacy · Cookies · Terms · Help

ER228

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 238 of 246

# EXHIBIT C

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 239 of 246

**Copyright Office fees are subject to change. For current fees, check the Copyright Office** website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

Privacy Act Notice: Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**Form PA**
For a Work of Performing Arts
UNITED STATES COPYRIGHT OFFICE
REGISTRATION NUMBER

|  | PA | PAU |
|---|---|---|

EFFECTIVE DATE OF REGISTRATION

| Month | Day | Year |
|---|---|---|

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

TITLE OF THIS WORK ▼

"Desert Warrior"

PREVIOUS OR ALTERNATIVE TITLES ▼

"Innocence of Muslims"

NATURE OF THIS WORK ▼ See instructions

Audio-visual work, pertaining to Cindy Lee Garcia's dramatic performance in "Desert Warrior" and put on film

**2**

**a** NAME OF AUTHOR ▼
Cindy Lee Garcia

DATES OF BIRTH AND DEATH
Year Born ▼ 1957   Year Died ▼ NA

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR ☐ Citizen of U.S.A.
   ☐ Domiciled in ___

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼
Dramatic performance in film entitled "Desert Warriors" affixed to film

**b** NAME OF AUTHOR ▼
Cindy Lee Garcia

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR ☐ Citizen of U.S.A.
   ☐ Domiciled in ___

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼
Dramatic performance fixed in tangible medium of expression (i.e. film)

**c** NAME OF AUTHOR ▼
Cindy Lee Garcia

DATES OF BIRTH AND DEATH
Year Born ▼ 1957   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR ☐ Citizen of U.S.A.
   ☐ Domiciled in ___

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

NOTE
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED  This information must be given  2011 ◄ Year  in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information Month July  Day 2  Year 2012
ONLY if this work has been published.  only partially published, U.S.A.  ◄ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Cindy Lee Garcia c/o The Armenta Law Firm, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

[Ms. Garcia did not sign any work for hire agreement nor a release or relinquishment of her rights when she acted in "Desert Warrior."

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

MORE ON BACK ►   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.   • See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

ER230

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 240 of 246

| EXAMINED BY | | FORM PA |
|---|---|---|
| CHECKED BY | | |
| CORRESPONDENCE ☐ Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.)▼ If your answer is No, do not check box A, B, or C.

a. ☑ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼       Year of Registration ▼

**6 a**

DERIVATIVE WORK OR COMPILATION  Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions before completing this space

**6 b**

Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

Garcia gave a dramatic performance for "Desert Warrior" fixed in film in 2011. Since then, the producer of the film altered her performance, dubbing in words she did not say, and changing the film's intent and name to "Innocence of Muslims."

**7 a**

DEPOSIT ACCOUNT  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼       Account Number ▼

**7 b**

CORRESPONDENCE  Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip▼

M. Cris Armenta, The Armenta Law Firm APC, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

Area code and daytime telephone number   ( 310  ) 826-2826       Fax number   ( 310  ) 826-5456

Email  cris@crisarmenta.com

**8**

CERTIFICATION*  I, the undersigned, hereby certify that I am the

Check only one ▶
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Cindy Lee Garcia       Date  September 25, 2012

Handwritten signature (X) ▼  See attached faxed signature

X _____

**9**

Certificate will be mailed in window envelope to this address:

Name ▼

Number/Street/Apt ▼

City/State/Zip ▼

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office-PAD
101 Independence Avenue SE
Washington, DC 20559-6225

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Office: 2010-311-393/60,085

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 241 of 246

TOTAL P.03

| EXAMINED BY | FORM PA |
| CHECKED BY | |
| CORRESPONDENCE ☐ Yes | FOR COPYRIGHT OFFICE USE ONLY |

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**5** PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is No, do not check box A, B, or C.
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼        Year of Registration ▼

**6** DERIVATIVE WORK OR COMPILATION  Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
**a** Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

**b** Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼
Garcia gave a dramatic performance for "Desert Warrior" filmed in 2011. Since then, the producer of the film altered her performance, dubbing in words she did not say, and changing the film's intent and name to "Innocence of Muslims."

**7**
**a** DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼        Account Number ▼

**b** CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼
M. Cris Armenta, The Armenta Law Firm APC, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

Area code and daytime telephone number ( 310 ) 826-2826     Fax number ( 310 ) 826-5456
Email cris@crisarmenta.com

**8** CERTIFICATION* I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Cindy Lee Garcia        Date September 25, 2012

Handwritten signature (X) ▼
X  *Cindy Lee Garcia*

**9** Certificate will be mailed in window envelope to this address:
Name ▼
Number/Street/Apt ▼
City/State/Zip ▼

SEP-25-2012 13:41        P.03

ER232

## Cris Armenta

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 242 of 246

| | |
|---|---|
| **From:** | Copyright Office <cop-rc@loc.gov> |
| **Sent:** | Tuesday, September 25, 2012 10:42 AM |
| **To:** | Cris Armenta |
| **Subject:** | Acknowledgement of Receipt |

Thank you for submitting your registration claim using the electronic Copyright Office (eCO) System. This email confirms that your application and payment for the work Desert Warrior were received on 09/25/2012. The following applies to registration claims only (not preregistrations):

The effective date of registration is established when the application, payment AND the material being registered have been received. If you have not yet sent the material to be registered, logon to eCO (https://eco.copyright.gov/eService_enu/) and click the blue case number associated with your claim in the Open Cases table, then do one of the following:

Upload a digital copy (if eligible): Click the "Upload Deposit" button at the top of the Case Summary screen, then browse and select the file(s) you wish to upload. Be sure to click the "Upload Complete" button on the Case Summary screen when you have finished uploading your file(s). Note: only certain categories of works are eligible to be registered with digital copies (See FAQs: http://www.copyright.gov/eco/faq.html#eCO_1.4 and http://www.copyright.gov/eco/help-file-types.html).

Mail a physical copy(ies): Click the Create Shipping Slip button at the top of the Case Summary screen, then click the Shipping Slip link that appears in the Send By Mail table. Print out and attach the shipping slip to the copy(ies) of your work. For multiple works, be sure to attach shipping slips to the corresponding copies.

A printable copy of the application will be available within 24 hours of its receipt. To access the application, click the My Applications link in the left top most navigation menu of the Home screen.

You will be issued a paper certificate by mail after the registration has been completed.
You may check the status of this claim via eCO using this number 1-828151641. [THREAD ID: 1-DP2T9R]

**United States Copyright Office**

ER233

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 243 of 246

## Cris Armenta

**From:** Copyright Office <cop-rc@loc.gov>
**Sent:** Tuesday, September 25, 2012 10:54 AM
**To:** Cris Armenta
**Subject:** Acknowledgement of Uploaded Deposit

THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT REPLY.

Thank you for submitting your registration claim using the Electronic Copyright Office (ECO) System.

The following files were successfully uploaded for service request 1-828151641

File Name :Form PA.pdf
File Size :272 KB
Date/Time :9/25/2012 1:46:05 PM

[THREAD ID: 1-DP30BR]

United States Copyright Office

1

ER234

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 244 of 246

**Heather Rowland**

**Subject:**  FW: Case# 1-828151641 Cindy Lee Garcia     Attn: Marti/212230

**From:** ctoinfo [mailto:ctoinfo@loc.gov]
**Sent:** Wednesday, September 26, 2012 11:22 AM
**To:** Heather Rowland
**Cc:** ctoinfo
**Subject:** RE: Case# 1-828151641 Cindy Lee Garcia Attn: Marti/212230

Heather Rowland,

That's fine.

**Kind Regards,**

**Contractor to LOC/Copyright Technology Office
Library of Congress
101 Independence Ave, SE                    mw
Washington DC 20540
Office # 202-707-3002**

**From:** Heather Rowland [mailto:heather@crisarmenta.com]
**Sent:** Wednesday, September 26, 2012 2:21 PM
**To:** ctoinfo
**Subject:** RE: Case# 1-828151641 Cindy Lee Garcia Attn: Marti/212230

I will mail a copy on DVD/R and it will be to your office tomorrow via FedEx. Does that work?

Thanks,

Heather Rowland
Assistant to M. Cris Armenta
The Armenta Law Firm APC
11900 Olympic Boulevard, Suite 730
Los Angeles, CA 90064
(310) 601-8715 Direct
(310) 384-3548 Cell
(310) 826-5456 Fax
www.crisarmenta.com

**From:** ctoinfo [mailto:ctoinfo@loc.gov]
**Sent:** Wednesday, September 26, 2012 11:19 AM
**To:** Heather Rowland
**Cc:** ctoinfo
**Subject:** RE: Case# 1-828151641 Cindy Lee Garcia Attn: Marti/212230

1

ER235

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 245 of 246

Heather Rowland,

It is not recommended that you do both, only one or the other.

**The upload feature has been enabled.**

**Multiple uploads are permitted.**

You can either upload your work electronically or send it in by mail.  You should log into your account, click on open cases, click on your case number (make sure that your pop-up blocker is off), and you should then see buttons that will give you the option to upload your work electronically or send it by mail. If you want to upload, click on the 'upload deposit' button. A screen should come up (maximize that window) that will allow you to browse for your work and submit it electronically via upload to the Copyright Office. After clicking on the "Upload Deposit" button to upload your files, wait until you have *completed uploading ALL* of your files *THEN AND ONLY THEN* click on the *"Upload Complete"* button to complete the process. If you want to send your work by mail you should click on the button to 'create a shipping slip'. It should create a link for a shipping slip that you can click on that will open up the slip. You should print it out and send in with your work.

**If you continue to experience problems please phone for assistance.**

**Kind Regards,**

**Contractor to LOC/Copyright Technology Office**
**Library of Congress**
**101 Independence Ave, SE**                          mw   2122230
**Washington DC 20540**
**Office # 202-707-3002**
---------------

ER236

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-1, Page 246 of 246

https://www.fedex.com/shipping/html/en/PrintIFrame.html



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

9/26/2012 11:05 AM

ER237