No. 12-57302

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

CINDY LEE GARCIA,

Plaintiff-Appellant

v.

GOOGLE, INC., YOUTUBE LLC, et al., Defendants-Appellees

and

NAKOULA BASSELEY NAKOULA, an individual, a.k.a. Sam Bacile, et al.,

Defendants.

---

On Appeal from the United States District Court

for the Central District of California

D.C. No. 2:12-cv-08315-MWF-VBK

---

## APPELLANT'S EXCERPTS OF RECORD
### Volume 4 of 4
### Pages 742-950

---

M. Cris Armenta (State Bar No. 177403)
The Armenta Law Firm APC
11900 W. Olympic Boulevard
Suite 730 Los Angeles, CA 90064
Tel: (310) 826-2826
email: cris@crisarmenta.com

Credence Sol (State Bar 219784)
La Garenne
86200 Chauvigny, France
Tel: 06 74 90 22 08
email: credence.sol@sol-law.com

**INDEX**

**APPELLANT'S EXCERTS OF RECORD**

| Docket No. | Date | Description | Volume | Pages |
|------------|------|-------------|--------|-------|
| 1 | 9/26/2012 | Complaint | 1 | 1-62 |
| 5 | 10/4/2012 | First Amended Complaint | 1 | 63-122 |
| 8 | 10/11/2012 | Plaintiff's *Ex Parte* Application to Exceed Page Limits Set Forth in Local Rule 11-6; Declaration of M. Cris Armenta in Support Thereof | 1 | 123-126 |
| 10 | 10/12/2012 | Declaration of M. Cris Armenta in Support of Plaintiff's Ex Parte Motion to Exceed page Limit Under Local Rule 11-6 | 1 | 127-132 |
| 11 | 10/12/2012 | Order Denying Plaintiff's *Ex Parte* Application to Exceed Page Limit Under Local Rule 11-6 | 1 | 133-134 |
| 12 | 10/17/2012 | *Ex Parte* Application For a | 1 | 135-170 |

| | | Temporary Restraining Order and an Order of Impoundment; Declarations of Garcia, Sutter, Flynn, Fadl, Levine, hardy and Armenta; Request for Judicial Notice | | |
|---|---|---|---|---|
| 13 | 10/17/2012 | Request For Judicial Notice | 1 | 171-191 |
| 14 | 10/17/2012 | Declaration of Cindy Lee Garcia, Dan Sutter, Gaylord Flynn, Dr. Khaled Abou El Fadl, All in Support of Ex Parte Application | 1&2 2 Begins at ER 238 | 192-285 |
| 14-1 | 10/17/2012 | Declaration of Zahavah Levine in Support of Ex Parte Application | 2 | 286-405 |
| 14-2 | 10/17/2012 | Declaration of David Hardy In Support of Ex Parte Application | 2 | 406-484 |
| 14-3 | 10/17/2012 | Declaration of M. Cris Armenta in Support of Ex | 3 | 485-600 |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 4 of 218

| | | Parte Application | | |
|---|---|---|---|---|
| 15 | 10/18/2012 | Order Denying Ex Parte Application | 3 | 601-602 |
| 18-1 | 10/22/2012 | [Proposed] Order on Stipulation to Continue Hearing Date on Plaintiff's Motion for Preliminary Injunction | 3 | 603-606 |
| 20 | 10/23/2012 | Order on Stipulation to Continue Hearing Date on Plaintiff's Motion for Preliminary Injunction | 3 | 607-610 |
| 22 | 10/29/2012 | Opposition of Google Inc. and YouTube, LLC to Plaintiff's Motion for Preliminary Injunction and Order of Impoundment | 3 | 611-641 |
| 22-1 | 10/29/2012 | Request for Judicial Notice in Support of Opposition of Google Inc. and YouTube, LLC to Plaintiff's Motion | 3 | 642-667 |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 5 of 218

| | | for a Preliminary Injunction and Order of Impoundment | | |
|---|---|---|---|---|
| 23 | 10/29/2012 | Opposition of Google Inc. and YouTube, LLC to Plaintiff's Request for Judicial Notice in Support of Motion for Preliminary Injunction and Order of Impoundment | 3 | 668-675 |
| 24 | 10/29/2012 | Objections By Google Inc. and YouTube, LLC to Evidence Submitted in Support of Plaintiff's Motion for Preliminary Injunction and Order of Impoundment | 3 | 676-685 |
| 27 | 11/5/2012 | (1) Reply Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction and | 3 | 686-733 |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 6 of 218

| | | Order of Impoundment; Declaration of M. Cris Armenta in Support Thereof; (2) Plaintiff's Response to Objections by Google, Inc. and YouTube LLC to Evidence Submitted in Support of Plaintiff's Motion for Preliminary Injunction and Order of Impoundment;(3) Plaintiff's Objections to Evidence Submitted by Google Inc., and YouTube LLC, in Opposition Brief to Plaintiff's Motion for Preliminary Injunction and Order of Impoundment;(4) [Proposed] Order Sustaining Plaintiff's Objections to | | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | | Evidence Submitted by Google, Inc. and YouTube LLC in Opposition Brief to Plaintiff's Motion for Preliminary Injunction and an Order of Impoundment | | |
| 28 | 11/5/2012 | Plaintiff's Objections to Evidence Submitted by Google Inc. and YouTube, LLC in Opposition Brief to Plaintiff's Motion for Preliminary Injunction and Order of Impoundment | 3 | 734-741 |
| 29 | 11/05/2012 | Plaintiff's Responses to Objections by Google Inc. and YouTube LLC to Evidence Submitted in Support of Plaintiff's Motion for Preliminary Injunction and | 4 | 742-790 |

| | | Order of Impoundment | | |
|---|---|---|---|---|
| 33 | 11/28/2012 | Declaration of Mark Basseley Youssef | 4 | 791-798 |
| 34 | 11/28/2012 | Declaration of Timothy L. Alger | 4 | 799-806 |
| 35 | 11/29/2012 | Plaintiff's Notice of Request Under Central District Local Rule 7-8 To Cross-Examine Declarants Submitted By defendants Google Inc. and YouTube, LLC | 4 | 807-809 |
| 36 | 11/30/2012 | Objections of Google Inc. and YouTube, LLC to Plaintiff's Notice of Request Under Central District Local Rule 7-8 to Cross-Examine Declarants | 4 | 810-816 |
| 37 | 11/30/2012 | Plaintiff's Objection to and Request to Strike Declarations of Time Alger and Mark Basseley | 4 | 817-890 |

| | | Youssef; Declarations of M. Cris Armenta, Galord Flynn, Cindy Lee Garcia and Jim Blanco | | |
|---|---|---|---|---|
| 38 | 11/30/2012 | Order Denying Request to Cross-Examine | 4 | 891 |
| 39 | 11/30/2012 | Order Denying Plaintiff Garcia's Motion for Preliminary Injunction | 4 | 892-894 |
| 40 | 11/30/2012 | Declaration of James A. Blanco in Support of Objection and Request to Strike Declarations of Tim Alger and Mark Basseley Youssef | 4 | 895-945 |
| 42 | 12/21/2012 | Notice of Appeal | 4 | 946-950 |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 10 of 218

1    M. Cris Armenta (SBN 177403)
     THE ARMENTA LAW FIRM APC
2    11900 W. Olympic Boulevard, Suite 730
     Los Angeles, CA 90064
3    Tel: (310) 826-2826 x 108
     Facsimile: (310) 826-5456
4    Email: cris@crisarmenta.com

5    Credence E. Sol (SBN 219784)
     La Garenne
6    86300 Chauvigny
     France
7    Telephone: 06 74 90 22 08
     Email: credence.sol@sol-law.com
8
9    Attorneys for Plaintiff
     Cindy Lee Garcia

10 **UNITED STATES DISTRICT COURT**

11 **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12   CINDY LEE GARCIA, an individual, | Case No. CV12-8315 MWF (VBKx) |
| 13 | **PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC.** |
| 14          Plaintiff, | **AND YOUTUBE, LLC TO EVIDENCE SUBMITTED IN** |
| 15   vs. | **SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY** |
| 16   NAKOULA BASSELEY NAKOULA, an individual also | **INJUNCTION AND ORDER OF IMPOUNDMENT** |
| 17   known as SAM BACILE, MARK BASSELEY YOUSSEF, | |
| 18   ABANOB BASSELEY NAKOULA, MATTHEW | |
| 19   NEKOLA, AHMED HAMDY, AMAL NADA, DANIEL K. | |
| 20   CARESMAN, KRITBAG DIFRAT, SOBHI BUSHRA, | |
| 21   ROBERT BACILY, NICOLA BACILY, THOMAS J. TANAS, | |
| 22   ERWIN SALAMEH, YOUSSEFF M. BASSELEY, and/or MALID | |
| 23   AHLAWI; GOOGLE, INC., a Delaware Corporation; | |
| 24   YOUTUBE, LLC, a California limited liability company, and | |
| 25   DOES 1 through 10, inclusive. | |
| 26          Defendants. | |

27

28

1    PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE
     INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
     CV12-8315 MWF (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 11 of 218

1  |  Plaintiff Cindy Lee Garcia ("Plaintiff") submits the following responses to
2  |  Defendants' objections to the evidence Plaintiff submitted in support of her Motion
3  |  for Preliminary Injunction.

4  **I.  Defendants' Objections to the Declaration of Zahava Levine**

5  |  Defendants have objected to the declaration of Zahava Levine, Chief Counsel
6  |  to YouTube LLC ("YouTube"), including all exhibits, on relevancy grounds,
7  |  because, they claim, Plaintiff is not seeking monetary relief pursuant to her motion
8  |  for a preliminary injunction.  Plaintiff responds that Ms. Levine's declaration is
9  |  relevant in its entirety because it shows that Google, Inc. ("Google") and YouTube
10 |  have a regular business practice of promptly responding to takedown requests, such
11 |  as the many requests that Ms. Garcia has sent, in stark contrast to the Defendants'
12 |  intransigence regarding the same.

13 |  Defendants further object to the declaration and its exhibits on hearsay
14 |  grounds.  This objection is entirely disingenuous.  Ms. Levine is the principal lawyer
15 |  for these defendants on these issues, and indeed *it was these very same defendants*
16 |  *who submitted* Ms. Levine's declaration on the subject of their usual business
17 |  practices.  Accordingly, Ms. Levine's declaration is admissible as an admission of a
18 |  party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A)-(D).

19 **II.  Defendants' Objections to the Declaration of Cindy Lee Garcia**

20

| No. | Material Objected To | Ground(s) for Objection | Plaintiff's Response |
|-----|----------------------|-------------------------|----------------------|
| 1. | Paragraph 5, fifth sentence. | Hearsay not subject to any exception. | FED. R. EVID. 801(d)(2); party-opponent admission. |
| 2. | Paragraph 7, in its entirety. | Improper legal conclusion. | Paragraph 7 merely relates Ms. Garcia's personal knowledge: neither Defendant Youssef (a/k/a Bacile a/k/a Nakoula) nor his |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 12 of 218

| | | | |
|---|---|---|---|
| | | | agents hired her as an "employee." These statements are not "legal conclusions," but merely Ms. Garcia's personal recollections and observations admissible pursuant to Federal Rule of Evidence 602. |
| 3, 4. | Paragraph 8, first and second sentences. | Improper legal conclusion, Speculation; lacks foundation. | The first sentence is not a legal conclusion; it is a statement of fact, which the Defendants have not rebutted despite ample time to attempt to do so.  As to the second sentence, Ms. Garcia is not testifying that others *signed* or that they did not sign releases or work-for-hire agreements. That would be speculation.  She is testifying that *she* is not aware of what other actors did or did not do.  That is a statement of fact.  Such a statement is similar to, "I am not aware if it was windy in Des Moines yesterday." However, in this case, other actors have declared in their own sworn statements that indeed they did not sign any such documents. |
| 5. | Paragraph 9, second sentence. | Improper legal conclusion | This sentence is not a legal conclusion.  It is a statement of fact that Defendants cannot rebut; and, Defendants have submitted no admissible evidence to rebut this statement of fact. |
| 6. | Paragraph 10, third and fourth sentences. | Hearsay not subject to any exception. | FED. R. EVID. 801(d)(2). |
| 7. | Paragraph 10, seventh sentence | Speculation. | Ms. Garcia's statement as to what she would have done had she been informed of the film's content and purpose – that is, to not participate – is not speculative in the least.  The statement reflects Ms. Garcia's moral compass and belief that thoughtless denigration of any religion is contemptible. |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE
INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

ER744

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 13 of 218

| | | | |
|---|---|---|---|
| 8. | Paragraph 12, sentence two. | Hearsay not subject to any exception. | This sentence is not hearsay for two reasons.  First, a party opponent uttered the words and second the words are not offered for the truth of the matter asserted.  Clearly, the words that Youssef (a/k/a Bacile) said to Ms. Garcia *caused* her to do something; to look for the video. |
| 9. | Paragraph 13, first sentence. | Speculation; lacks foundation; improper opinion testimony as to the impact of the film. | It is common knowledge (as contemplated by Federal Rule of Evidence 201) that the entire world was speculating about what caused the events that took place on that day.  Though it was later suggested that the film likely was not *directly* responsible for what happened in Benghazi, it was widely reported on the national news networks that the film either caused the violence or was related to it.  At the moment that Ms. Garcia is talking about, the first reports of the violence, the video was widely described as being inflammatory and part of the causation.  Ms. Garcia, now watching and hearing herself utter words accusing the prophet Mohammed of being a child molester would most certainly cause any reasonable person to assume that what they said had an impact. |
| 10. | Paragraph 13, fourth sentence. | Hearsay not subject to any exception. | FED. R. EVID. 801(2)(a), 803(3) |
| 11. | Paragraph 13, sixth sentence. | Speculation. | It is difficult for Ms. Garcia to understand to which sentence Defendants are objecting.  Suffice it to say, Ms. Garcia is not speculating when she states that the performance on the video is not what she performed nor is it speculation by Ms. Garcia for |

4    PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE
INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

ER745

| | | | her to state that had she been fully informed she would never have agreed to the performance later represented by "Bacile" – and in perpetuity by Defendants – as that which belongs to Ms. Garcia. |
|---|---|---|---|
| 12. | Paragraph 14, first sentence. | Speculation; lacks foundation; hearsay not subject to any exception. | "Went viral" is a term of art describing an event that becomes very popular very quickly usually through social media. That is exactly what happened with this video after the attacks of September 11, 2012, and is not speculation. Ms. Garcia does not say what media said to her. She states the effect of the calls on her. |
| 13. | Paragraph 14, third sentence. | Hearsay not subject to any exception. | That an Egyptian cleric issued a *fatwa* against Ms. Garcia is offered to show the effect on Ms. Garcia. The very next sentence, not objected to, underscores the effect that the *fatwa*, imagined or otherwise, had on Ms. Garcia. |
| 14. | Paragraph 15, second, third and fourth sentence. | Hearsay not subject to any exception; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Offered to show the effect on the listener, not hearsay pursuant to Federal Rules of Evidence 803(1) and 801(3). Defendants would like to argue that the prejudicial effect outweighs the probative value, just as they continue to minimalize the real world consequences of upsetting radicalized Muslim followers of persons like the Egyptian cleric who issued the *fatwa*. Ms. Garcia agrees that law enforcement's concern for her and her counsel is prejudicial; the truth is often highly prejudicial. Under the circumstances the prejudice of the evidence only underscores its probative value. It does not outweigh it. |
| 15. | Paragraph | Hearsay not | Same response as to objection |

5

ER746

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 15 of 218

| | | | |
|---|---|---|---|
| | 16, fourth sentence. | subject to any exception; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | 14; also goes to explain the effect of the statements on her – that, because of the officer's concern, she was actually placed in a secure location and restricted from entry into an international airport. |
| 16. | Paragraph 17, first, third, fourth, fifth sentence and Exhibit B. | Hearsay not subject to any exception; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | The rawness and threat level associated with death threats sent via the Internet cannot be sanitized by time.  At the moment that Ms. Garcia received the threats they were real to her and remain so.  Such statements are exceptions to the hearsay rule via Federal Rules of Evidence 803(1) and 801(3).  They also go to show the effect on the listener, Ms. Garcia. |

## III.   Defendants' Objections to the Declaration of Dan Sutter

Defendants object to the declaration in its entirety on relevance grounds. Defendants are wrong.  Mr. Sutter's Declaration is entirely relevant because, as an actor who also appeared in the Film, he is able to speak to his personal experience and observations pertaining to the making of the Film, including the facts that:  (1) Defendant Youssef/Nakoula (a/k/a Bacile) did not obtain releases from the actors; and (2) Mr. Sutter's dramatic performance, like Ms. Garcia's dramatic performance, was altered without his participation or knowledge (specifically, the meaning of Mr. Sutter's lines were changed by the addition, without Mr. Sutter's knowledge, of inflammatory lines delivered by another actor that were inserted in post-production); and (3) Mr. Sutter's dramatic performance, like Ms. Garcia's dramatic performance, was posted on YouTube without Mr. Sutter's consent, notwithstanding the fact that he *did not sign a release*.  In short, Mr. Sutter's declaration is every bit as relevant to this case as is Ms. Garcia's declaration and supports Ms. Garcia's version of events in their entirety.

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

ER747

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 16 of 218

| No. | Material Objected To | Ground(s) for Objection | Plaintiff's Response |
|---|---|---|---|
| 1. | Paragraph 2, second sentence. | Hearsay not subject to any exception. | FED. R. EVID. 801(2)(d). |
| 2. | Paragraph 4, in its entirety. | Improper legal conclusion. | This is a statement of fact, not a legal conclusion. What Mr. Sutter does or does not recall is squarely a fact within his own personal knowledge. Defendants have provided no admissible evidence to rebut this statement of fact. |
| 3. | Paragraph 5, third sentence. | Speculation; lacks foundation. | Mr. Sutter is capable of remembering what his character said and what the other character said in response. There can be no speculation when there is personal knowledge about the subject. |

## IV. Defendants' Objections to the Declaration of John Doe No. 1 (Gaylord Flynn)

While it was initially conteplated that Gaylord Flynn's declaration would be filed under seal, Mr. Flynn gave permission, after he signed the declaration for it to be publicly disclosed.  (See Supplemental Declaration of M. Cris Armenta ¶ 2.) Given the pressure of time, rather than have Mr. Flynn re-execute the declaration, counsel obtained his permission to disclose his name in the public filings. (Id.)

Defendants object to the declaration in its entirety on relevance grounds. Defendants are wrong.  Mr. Flynn's Declaration is entirely relevant because, as an actor who also appeared in the Film, he is able to speak to his personal experience and observations pertaining to the making of the Film, including the facts that:  (1) Defendant Nakoula/Youssef (a/k/a Bacile) did not obtain releases from the actors; and (2) Mr. Flynn's dramatic performance, like Ms. Garcia's dramatic performance,

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED CV12-8315 MWF (VBKx)

ER748

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 17 of 218

1   was altered without his participation or knowledge; and (3) Mr. Flynn's dramatic

2   performance, like Ms. Garcia's dramatic performance, was posted on YouTube

3   without Mr. Flynn's consent, notwithstanding the fact that he did not sign a release.

4   In short, Mr. Flynn's declaration is every bit as relevant to this case as is Ms.

5   Garcia's declaration and supports Ms. Garcia's version of events in their entirety.

6

| No. | Material Objected To | Ground(s) for Objection | Plaintiff's Response |
|---|---|---|---|
| 1. | Paragraph 2, third sentence. | Hearsay not subject to any exception. | This sentence references statements made by Mr. Youssef (a/k/a Bacile, a/k/a Bakoula) and/or his agents. Those statements are not hearsay, as they are admissions of a party opponent. FED. R. EVID. 801(2)(A)-(D). |
| 2. | Paragraph 2, sixth sentence. | Hearsay not subject to any exception; speculation; lacks foundation; improper opinion testimony as to the impact of the Film. | This sentence references statements made by the Film's production team; i.e., the agents of Defendant Nakoula/Youssef (a/k/a Bacile) and/or his agents. Those statements are not hearsay, as they are admissions of a party opponent. FED. R. EVID. 801(2)(A)-(D). <br><br> To the extent that Defendants object to the phrase "violence had broken out in the Middle East over [the Film's] content," the violence related to the Film's September 2012 posting on YouTube in the Arabic language (and/or with Arabic subtitles) is a matter of common, indeed, universal knowledge, and is therefore admissible under Federal Rules of Evidence 201(b) and 201(c)(1). |
| 3. | Paragraph | Improper legal | Paragraph 4 merely relates Mr. |

ER749

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 18 of 218

| | | | |
|---|---|---|---|
| | 4, in its entirety. | conclusion. | Flynn's personal recollection: he is familiar with actor and model releases; he did not sign such a release; he was not employed by Defendant Nakoula/Youssef (a/k/a Bacile), and he did not sign a work-for-hire agreement. These statements are not "legal conclusions," but merely Mr. Flynn's personal recollections and observations admissible pursuant to Federal Rule of Evidence 602. |
| 4. | Paragraph 5, first sentence. | Lacks foundation; hearsay not subject to any exception. | This sentence references statements made by Nakoula/Youssef (a/k/a Bacile) and/or his agents. Those statements are not hearsay, as they are admissions of a party opponent. FED. R. EVID. 801(2)(A)-(D). |
| 5. | Paragraph 6, third sentence. | Speculation; lacks foundation. | The third sentence of Paragraph 6 merely relates Mr. Flynn's personal recollection: the content of the Film, specifically, the lines *that Mr. Flynn himself spoke,* were different in the trailer than his personal observations (and performance of his line on-set) had indicated. Moreover, as an actor, Mr. Flynn certainly is aware that when his character appeared to say words in the trailer that he, in his personal knowledge, knows that he did not say, that those words would have been inserted in post-production. Accordingly, this sentence merely sets forth Mr. Flynn's personal recollections and observations admissible pursuant to Federal Rule of Evidence 602. |
| 6. | Paragraph 6, fifth sentence. | Speculation; vague; ambiguous. | The third sentence of Paragraph 6 merely relates Mr. Flynn's personal recollection: that the lines he personally viewed himself appearing to deliver in the trailer of the Film were not |

ER750

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 19 of 218

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | | | the same as the lines that he delivered on-set. To the extent that Mr. Flynn states that his recollection may not be exact, that goes to weight, not admissibility. Accordingly, this sentence merely sets forth Mr. Flynn's personal recollections and observations admissible pursuant to Federal Rule of Evidence 602. |
| 7<br>8<br>9<br>10 | 7. | Paragraph 6, sixth sentence. | Relevance; improper opinion testimony regarding the inflammatory nature of the lines. | The first portion of sentence 6 merely relates Mr. Flynn's recollection of lines that he said during post-production in which he participated. Accordingly, it is admissible pursuant to Federal Rule of Evidence 602. |
| 11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22 | | | | The second portion of sentence 6, in which Mr. Flynn indicates that he did not consider "performing a marriage" while in character to be inflammatory, is not improper opinion testimony. Rather, it simply goes to the *facts* at the heart of this case: that the actors, including Ms. Garcia and Mr. Flynn, were misled into believing that they were participating in an innocuous historical drama. Mr. Flynn's observation that he did not view the marriage ceremony as "inflammatory" merely supports his contention (and Ms. Garcia's contention) that during their involvement in the making of the Film, they observed nothing that would indicate that the Film would be released as a hateful propaganda piece. |

**V.    Defendants' Objections to the Declaration of Khaled Abou El Fadl.**

It is well noted here that Defendants do not make any objection to Professor El Fadl's declaration generally on the grounds of relevance, as it has done with most of the other declarations.  Thus, it appears that Defendants concede that Professor El

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 20 of 218

1   Fadl's declaration is relevant.  Equally important is the fact that Defendants do does

2   not object to anything in the first six paragraphs of Professor El Fadl's declaration—

3   a devastating admission by Defendants.

4         All of the first six paragraphs of Professor El Fadl's declaration pertain to his

5   bona fide qualifications and depth of knowledge.  Had Defendants objected to

6   Professor El Fadl's expert testimony in his declaration it would have objected to the

7   statements that demonstrate his training and experience, his knowledge of Islamic

8   law, and his international knowledge on subjects germane to the topics directly at

9   issue in this case.  For this reason alone – Defendants' acquiescence that Professor

10  El Fadl is the expert he shows himself to be – this Court should summarily reject all

11  of Defendants's subsequent objections.

12        Plaintiff notes that, aside from Professor El Fadl's incontrovertible

13  qualifications, Defendants parsed his virtually word by word, and for good reason.

14  Defendants assert time and again that Rule 403 silences Professor El Fadl—in other

15  words, that the "prejudicial" effect of his testimony outweighs its probative value.

16  Indeed, Defendants appear to concede that they cannot prevail unless this Court

17  discards Professor  El Fadl's testimony virtually in its entirety, because Professor El

18  Fadl's testimony establishes that Ms. Garcia is very much in harm's way.  Professor

19  El Fadl draws upon his expansive, deep, and profound training and experience to

20  inform the Court that many people associated with the Film, but *in particular* Ms.

21  Garcia, are in imminent danger.  Moreover, Professor El Fadl calls into question

22  Defendants' ability to differentiate *evocative* speech from *provocative* hate speech.

23  In particular, Google and YouTube, through their agents, have unequivocally stated

24  that the video shall remain on YouTube (unless, presumably, a court orders them to

25  take it down because, according to those Defendants, the crude propaganda film

26  evokes an important social dialogue.  Professor El Fadl's declaration is more

27  probative than prejudicial because it describes the video exactly as it is:  fighting

28

          11   PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE
                 INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
                          CV12-8315 MWF (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 21 of 218

1   words intended to incite violence.  And it is hornbook law that fighting words are
2   outside the protections of the First Amendment.  <u>See, e.g., Brandenburg v. Ohio,</u>
3   395 U.S. 444, 447 (1969) (speech directed to inciting or producing imminent
4   lawless action and likely to incite or product such action not protected by First
5   Amendment).
6        The video did not evoke dialogue; it provoked immediate violence. Professor
7   identifies the video for exactly what it is: unprotected fighting words that have
8   directly and significantly impacted Ms. Garcia, an entirely innocent person who
9   Nakoula/Youssef, a/k/a/ Bacile, treated as a virtual "puppet" for his message.
10  Defendants can deny this situation by interposing more than sixty (60) objections to
11  Professor El Fadl's Declaration.  But Defendants cannot refute the powerful
12  message contained therein.  Defendants perpetuate hate and fighting words,
13  knowingly endangering the life and safety of Ms. Garcia and those around her,
14  while hiding behind the not impenetrable cloak of the First Amendment.  Though
15  Defendants would like to think that otherwise, corporations like them are not the
16  arbiters of what is and is not "free speech":  the law, as interpreted by this Court,
17  does is that arbiter.

| No. | Material Objected To | Ground(s) for Objection | Plaintiff's Response |
|-----|----------------------|-------------------------|----------------------|
| 1.  | Paragraph 7, second sentence. | Speculation; lacks foundation; improper expert opinion as to the safety of all actors in the film; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | The second sentence of this paragraph prefaces El Fadl's conclusions below. Moreover, in light of El Fadl's extensive experience and qualifications, particularly with respect to the legal systems and culture of the Middle East, Islamic law, and terrorism, he is more than qualified to opine on the potential danger to Ms. Garcia and the other actors. FED. R. EVID. 702. |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE
INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 22 of 218

| | | | |
|---|---|---|---|
| | | | Defendants' Rule 403 objection, moreover, is spurious. The imminent danger to Ms. Garcia's life and safety is at the heart of this case. While learned testimony on that subject may be damaging to Defendants' resolve to continue to profit from the Film, that testimony can hardly be said to be "unfair." |
| 2. | Paragraph 8, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth sentence. | Speculation; lacks foundation; lacks personal knowledge; hearsay not subject to any exception; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Sentences 2 and 3: Here, Defendants apparently make a hearsay objection to El Fadl's statement that Morris Sadek distributed an Arabic translation of the Film in September. However, experts are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing Fed. R. Evid. 703. Here, El Fadl's statement related to the distribution of the film merely explains part of the basis on which his opinions rest; accordingly, it is admissible.

Sentence 4: Similarly, here, Defendants apparently make a hearsay objection to El Fadl's statement that the Film was aired on an Egyptian television station. That statement is admissible for the same reasons set forth with respect to Defendants' objection to Sentences 2 and 3.

Sentence 5: Here, Defendants' "speculation," "lack of personal knowledge," "hearsay," and "lack of foundation" objections are unmeritorious, for the same reasons set forth with respect to Defendants' objection to Sentences 2 and 3. To the extent that Defendants' objection to this sentence rests on Rule 403, it is also not well taken, as the information may be damaging to Defendants' case, but it is certainly not unfairly so in light |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 23 of 218

| | | | | |
|---|---|---|---|---|
| | | | | of the ultimate consequences to Ms. Garcia as a result of the public's reaction to the Film. |
| | | | | Sentences 6 and 7:  Defendants apparently object to Sentences 6 and 7, which relay a summary of a *Wall Street Journal* article on which El-Fadl relied, on the basis of hearsay.  This objection is unmeritorious for the same reasons set forth with respect to Defendants' objection to Sentences 2 and 3. |
| | | | | Sentences 8-12:  Plaintiffs are unclear as to the basis of Defendants' objection to Sentence 8, in which El Fadl states that he personally observed news coverage of the Film that appeared on Arabic-language channels.  These sentences are admissible pursuant to Federal Rule of Evidence 602 as the personal recollection and observations of El Fadl.  To the extent that Defendants claim they include hearsay, that objection would be unmeritorious for the same reasons set forth with respect to Defendants' objection to Sentences 2 and 3. |
| 3. | Paragraph 8, fifth sentence. | Speculation; lacks foundation; lacks personal knowledge; improper expert opinion regarding the cause of protests in Cairo, Egypt. | | Sentence 5:  Here, Defendants object to El Fadl's opinion that the Film sparked protests in Egypt.  Their "speculation," "lack of personal knowledge," "hearsay," and "lack of foundation" objections are unmeritorious; experts are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field.  *Heishman v. Ayers*, 621 F.3d 1030, 1042 (9th Cir. 2010, citing Fed. R. Evid. 703. |
| | | | | To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 24 of 218

| | | | objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. |
|---|---|---|---|
| 4. | Paragraph 9, in its entirety. | Speculation; lacks foundation; lacks personal knowledge; hearsay not subject to any exception; best evidence rule; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Plaintiffs are unclear as to the basis for Defendants' "speculation," "lack of foundation," "lack of personal knowledge," and "hearsay" objections, as paragraph 9 merely contains El Fadl's summary of media reports on which he relied in forming his opinion. Experts are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing Fed. R. Evid. 703.<br><br>Defendants' "best evidence rule" objection is equally unmeritorious, as El-Fadl is providing his opinion on his personal knowledge, facts, and data of a type reasonably relied upon by experts in his field; accordingly, "[t]he best evidence rule is inapplicable." Cal. Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp., 298 F.Supp.2d 930, 987 (E.D. Cal. 2003) (overruling "best evidence rule" objection to expert testimony).<br><br>Finally, Plaintiffs are unclear why Defendants take the position that Rule 403 bars El Fadl from relating the official statement of the American Embassy in Cairo condemning the Film. The incendiary reaction to the Film that is the subject of the |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 25 of 218

| | | | Embassy's statement may be detrimental to Defendants' case, but it is certainly not unfairly so in light of the ultimate consequences to Ms. Garcia as a result of the public reaction (particularly in the Middle East) to the Film. |
|---|---|---|---|
| 5. | Paragraph 10, in its entirety. | Lacks foundation; lacks personal knowledge; hearsay not subject to any exception; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Plaintiffs are unclear as to the basis for Defendants' "lack of foundation," "lack of personal knowledge," and "hearsay" objections, as paragraph 10 merely contains El Fadl's summary of media reports (related to the events that took place in Benghazi, Libya, on September 11, 2012) on which he relied in forming his opinion. Experts are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing Fed. R. Evid. 703.

Defendants' Rule 403 objection is also unmeritorious. The incendiary reaction to the Film that many initially blamed for the Benghazi attacks may be detrimental to Defendants' case, but it is certainly not unfairly so in light of the death threats that Ms. Garcia has received from individuals all over the world, including in the Middle East. |
| 6. | Paragraph 11, in its entirety. | Lacks foundation; hearsay not subject to any exception; lacks personal knowledge; vague and ambiguous as to the terms "violence" and "dramatic | Plaintiffs are unclear as to the basis for Defendants' "lack of foundation," "hearsay," and "lack of personal knowledge," objections, as paragraph 11 merely contains El Fadl's observation of a matter of universal knowledge (see Fed. R. Evid. 201): that protests erupted worldwide against the Film starting around September of 2012. These are facts on which |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 26 of 218

| | | | | |
|---|---|---|---|---|
| 1 | | | events"; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | he reasonably relied in forming his opinion. Experts are entitled to base their opinions on hearsay and other materials reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing Fed. R. Evid. 703.

Defendants' "vague and ambiguous" objection is not well-taken, as they fail to explain how the simple terms "violence" and "dramatic events" are susceptible to more than one determination or are otherwise vague; this essentially is a boilerplate objection and, therefore, improper. See, e.g., Nesby v. City of Oakland, 2007 U.S. Dist. LEXIS 22574, *4 (N.D. Cal. Mar. 19, 2007) (rejecting litigant's request to exclude evidence from declarations on grounds of "vagueness" where court found that the supposedly objectionable terms could be construed by looking at the dictionary); cf. Bible v. Rio Props., Inc., 246 F.R.D. 614, 619 (C.D. Cal. 2007) (in context of discovery motion, ruling that conclusory general or boilerplate objections such as "vague and ambiguous" are improper where they do not provide enough information as to allow court to ascertain objectionable nature of the material objected to).

Defendants' Rule 403 objection is also unmeritorious. The incendiary reaction to the Film that many initially blamed for the Benghazi attacks may be detrimental to Defendants' case, but it is certainly not unfairly so in light of the death threats that Ms. Garcia has received from individuals all over the world. |
| 26 | 7. | Paragraph 12, in its entirety, and Exhibit | Lacks foundation; hearsay not subject to any | Plaintiffs are unclear as to the basis for Defendants' "lack of foundation," "hearsay," and "lack of personal knowledge" |

ER758

| | | | |
|---|---|---|---|
| | B. | exception; lacks personal knowledge; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | objections, as paragraph 12 merely contains El Fadl's summary of Secretary of State Hillary Clinton's statement condemning the Film, on which he relied in forming his opinion. Experts are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).

Defendants' Rule 403 objection also is unmeritorious. The incendiary reaction to the Film that is the subject of Secretary Clinton's statement may be detrimental to Defendants' case, but it is certainly not unfairly so in light of the ultimate consequences to Ms. Garcia as a result of the public reaction (particularly in the Middle East) to the Film. |
| 8. | Paragraph 13, in its entirety, and Exhibit C. | Lacks foundation; hearsay not subject to any exception; lacks personal knowledge; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Plaintiffs are unclear as to the basis for Defendants' "lack of foundation," "hearsay," and "lack of personal knowledge" objections, as paragraph 13 merely contains El Fadl's summary of President Barack Obama's statement condemning the Film, on which he relied in forming his opinion. Experts are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).

Defendants' Rule 403 objection also is unmeritorious. The incendiary reaction to the Film that is the subject of President Obama's statement may be detrimental to Defendants' case, but it is certainly not unfairly so in light of the ultimate |

18

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 28 of 218

| | | | |
|---|---|---|---|
| 1<br>2 | | | consequences to Ms. Garcia as a result of the public reaction (particularly in the Middle East) to the Film. |
| 3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13 | 9. | Paragraph 14, in its entirety. | Speculation; lacks foundation; lacks personal knowledge; hearsay not subject to any exception; best evidence rule; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Plaintiffs are unclear as to the basis for Defendants' "speculation," "lack of foundation," "lack of personal knowledge," and hearsay objections, as paragraph 14 merely contains El Fadl's summary of Egyptian cleric Ahmad Fouad Ashoush's *fatwa* against Ms. Garcia and others involved in the making of the Film, on which he relied in forming his opinion. Experts are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703). |
| 14<br>15<br>16<br>17<br>18<br>19<br>20<br>21 | | | | Defendants' "best evidence rule" objection is equally unmeritorious, as El Fadl is providing his opinion on his personal knowledge, facts, and data of a type reasonably relied upon by experts in his field; accordingly, "[t]he best evidence rule is inapplicable." Cal. Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp., 298 F.Supp.2d 930, 987 (E.D. Cal. 2003) (overruling "best evidence rule" objection to expert testimony). |
| 22<br>23<br>24<br>25<br>26 | | | | Defendants' Rule 403 objection also is unmeritorious. The incendiary reaction to the Film exemplified by the *fatwa* devastates Defendants' argument that Ms. Garcia is not in any imminent danger. But those facts, while prejudicial to Defendants case, are entirely fair to admit into evidence. |
| 27<br>28 | 10. | Paragraph | Speculation; | Plaintiffs are unclear as to the |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

ER760

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 29 of 218

| | | | |
|---|---|---|---|
| | 15, in its entirety. | lacks foundation; lacks personal knowledge; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | basis for Defendants' "speculation," "lack of foundation," and "lack of personal knowledge" objections, as paragraph 15 merely contains El Fadl's summary of events publicized in the media worldwide following the issuance of the *fatwa*, on which he relied in forming his opinion. Experts are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).<br><br>Defendants' Rule 403 objection also is unmeritorious. The incendiary reaction to the Film exemplified by the *fatwa* devastates Defendants' argument that Ms. Garcia is not in any imminent danger. But those facts, while prejudicial to Defendants case, are entirely fair to admit into evidence. |
| 11. | Paragraph 15, third sentence and Exhibit D. | Hearsay not subject to any exception; exhibit not attached. | Defendants' "hearsay" objection to the contents of news reports about the *fatwa* lack merit. Experts such as El Fadl are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703). |
| 12. | Paragraph 15, fourth sentence. | Speculation; lacks foundation; improper expert opinion regarding whether violence occurred. | To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of Dr. El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 30 of 218

| | | | | |
|---|---|---|---|---|
| 1 | | | | person of greater qualifications than Dr. El Fadl to render expert testimony in this case.  As an expert, he is entitled to render his opinion on the Film's relationship to the worldwide violence following its Arabic-language posting on YouTube. FED. R. EVID. 702. |
| 13. | Paragraph 16, first and third sentences. | Hearsay not subject to any exception; lacks personal knowledge; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "hearsay" and "lacks personal knowledge" objections to El Fadl's statements pertaining to condemnation of the film by a Hezbollah leader and the reissuance of an Iranian fatwa against Salman Rushdie lack merit. Experts such as El Fadl are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).

Defendants' Rule 403 objection also is unmeritorious.  The incendiary reaction to the Film exemplified by the *fatwa* devastates Defendants' argument that Ms. Garcia is not in any imminent danger.  But those facts, while prejudicial to Defendants case, are entirely fair to admit into evidence. |
| 14. | Paragraph 16, second sentence. | Speculation; lacks foundation; improper expert opinion regarding the fatwa allegedly issued on the life of the actors in the film. | Defendants' "speculation" and "lacks foundation" objections to El Fadl's opinion on the similarities between the *fatwa* on Salman Rushdie and the *fatwa* on Ms. Garcia lack merit. Experts such as El Fadl are entitled to base their opinions on any material reasonably relied on by experts in that field.  Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).

To the extent that Defendants claim that El Fadl is not an |

ER762

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 31 of 218

| | | | | |
|---|---|---|---|---|
| 1–9 | | | | "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As an expert, he is entitled to render his opinion on the *fatwa* against Ms. Garcia. FED. R. EVID. 702. |
| 10–17 | 15. | Paragraph 16, third sentence. | Hearsay not subject to any exception; speculation; exhibit not attached. | Defendants' "hearsay" and "speculation" objections to ElFadl's statement pertaining to the reissuance of an Iranian fatwa against Salman Rushdie lack merit. Experts such as El Fadl are entitled to base their opinions on hearsay, provided that the hearsay is of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703). |
| 18–28 | 16. | Paragraph 16, fourth and fifth sentences. | Speculation; lacks foundation; lacks personal knowledge; improper legal conclusion; vague and ambiguous. | Defendants' "speculation," "lacks foundation," and "lacks personal knowledge" objections to El Fadl's opinion related to the fact that Ms. Garcia has been barred from entering international airports (a subject on which Ms. Garcia testified in her own declaration) and her designation as a high security risk, and her inability to travel, lack merit. Experts such as El Fadl are entitled to base their opinions on any material reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703). Defendants' "improper legal |

ER763

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 32 of 218

| | | | | |
|---|---|---|---|---|
| | | | | conclusion" objection is also not well taken. First, El-Fadl does not make a legal conclusion: he states that Ms. Garcia's right to travel is "likely" impinged. And, Ms. Garcia offers corroborating evidence of this conclusion – in that, she was not even permitted to enter the La Guardia International Airport on September of 2012. Second, El Fadl is, among other things, a lawyer, and therefore entirely qualified to opine on the law, particularly in light of the fact that Ms. Garcia's right to travel is not a matter requiring an "ultimate legal conclusion" in this case.<br><br>Defendants' "vague and ambiguous" objection also fails, as they do not explain at all how sentences 4 and 5 of paragraph 16 are either vague or ambiguous; this essentially is a boilerplate objection and, therefore, improper. See, e.g., Nesby v. City of Oakland, 2007 U.S. Dist. LEXIS 22574, *4 (N.D. Cal. Mar. 19, 2007) (rejecting litigant's request to exclude evidence from declarations on grounds of "vagueness" where court found that the supposedly objectionable terms could be construed by looking at the dictionary); cf. Bible v. Rio Props., Inc., 246 F.R.D. 614, 619 (C.D. Cal. 2007) (in context of discovery motion, ruling that conclusory general or boilerplate objections such as "vague and ambiguous" are improper where they do not provide enough information as to allow court to ascertain objectionable nature of the material objected to). |
| 17. | Paragraph 17, fourth sentence. | Speculation; lacks foundation; vague and | Defendants' "speculation" and "lacks foundation" objections to El Fadl's opinion on the meaningfulness of a *fatwa* lack |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

ER764

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 33 of 218

| | | | ambiguous. | merit. Here, El Fadl bases his opinion on his expertise in national security and terrorism issues; as an expert, he is entitled to base their opinions on any material reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703). |
|---|---|---|---|---|
| | | | | Defendants' "vague and ambiguous" objection also fails, as they do not explain at all how sentence 4 of paragraph 17 is either vague or ambiguous; this essentially is a boilerplate objection and, therefore, improper. See, e.g., Nesby v. City of Oakland, 2007 U.S. Dist. LEXIS 22574, *4 (N.D. Cal. Mar. 19, 2007) (rejecting litigant's request to exclude evidence from declarations on grounds of "vagueness" where court found that the supposedly objectionable terms could be construed by looking at the dictionary); cf. Bible v. Rio Props., Inc., 246 F.R.D. 614, 619 (C.D. Cal. 2007) (in context of discovery motion, ruling that conclusory general or boilerplate objections such as "vague and ambiguous" are improper where they do not provide enough information as to allow court to ascertain objectionable nature of the material objected to). |
| 18. | Paragraph 17, fifth sentence. | Speculation; lacks foundation; improper legal conclusion; improper expert testimony regarding the danger to Plaintiff; probative value outweighed by unfair prejudice (Fed. R. Evid. | | Defendants' "speculation" and "lacks foundation" objections to El Fadl's opinion on the grave danger that Ms. Garcia is in as the result of the *fatwa* lack merit. Here, El Fadl bases his opinion on his expertise in national security and terrorism issues; as an expert, he is entitled to base their opinions on any material reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703). |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

ER765

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 34 of 218

| | | | |
|---|---|---|---|
| 1 | | 403). | Defendants' "improper legal conclusion" objection is also not well taken. First, El Fadl does not make a legal conclusion: he states that Ms. Garcia "is in grave danger" from the *fatwa*. |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As an expert, he is entitled to render his opinion on the *fatwa* against Ms. Garcia. FED. R. EVID. 702. |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | Defendants' Rule 403 objection also is unmeritorious. The incendiary reaction to the Film exemplified by the *fatwa* devastates Defendants' argument that Ms. Garcia is not in any imminent danger. But those facts, while prejudicial to Defendants case, are entirely fair to admit into evidence. |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | 19. | Paragraph 17, sixth sentence. | Speculation; lacks foundation; improper expert testimony regarding unannounced or secretive calls by extremist or fanatic groups; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "speculation" and "lacks foundation" objections to El Fadl's opinion on the grave danger that Ms. Garcia is in as the result of other extremist or fanatic groups seeking to harm Ms. Garcia lack merit. Here, El Fadl bases his opinion on his expertise in national security and terrorism issues; as an expert, he is entitled to base their opinions on any material reasonably relied on by experts in that field. *Heishman v. Ayers*, 621 F.3d 1030, 1042 (9th Cir. 2010, citing |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 35 of 218

FED. R. EVID. 703).

To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As an expert, he is entitled to render his opinion on the danger Ms. Garcia faces from extremist and fanatic groups in the Muslim world. FED. R. EVID. 702.

Defendants' Rule 403 objection also is unmeritorious. The incendiary reaction to the Film exemplified by the *fatwa* and other documented threats against Ms. Garcia devastates Defendants' argument that Ms. Garcia is not in any imminent danger. But those facts, while prejudicial to Defendants' case, are entirely fair to admit into evidence.

| 20. | Paragraph 18, second sentence. | Speculation; lacks foundation; vague and ambiguous. | Defendants' "speculation" and "lacks foundation" objection to El Fadl's opinion on the centrality of Ms. Garcia's role in the Film lack merit. Here, El Fadl bases his statement on his personal observance of the Film and Ms. Garcia's appearance in it. As an expert, he is entitled to base his opinions on that personal observation. FED. R. EVID. 703.

Defendants' "vague and ambiguous" objection also fails, as they do not explain at all how sentence 2 of paragraph 18 is either vague or ambiguous; this essentially is a boilerplate |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 36 of 218

| | | | | |
|---|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | | | | objection and, therefore, improper. See, e.g., Nesby v. City of Oakland, 2007 U.S. Dist. LEXIS 22574, *4 (N.D. Cal. Mar. 19, 2007) (rejecting litigant's request to exclude evidence from declarations on grounds of "vagueness" where court found that the supposedly objectionable terms could be construed by looking at the dictionary); cf. Bible v. Rio Props., Inc., 246 F.R.D. 614, 619 (C.D. Cal. 2007) (in context of discovery motion, ruling that conclusory, general or boilerplate objections such as "vague and ambiguous" are improper where they do not provide enough information as to allow court to ascertain objectionable nature of the material objected to). |
| 13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | 21. | Paragraph 18, fourth sentence. | Lacks personal knowledge; speculation; lacks foundation; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "lacks personal knowledge," "speculation," and "lacks foundation" objection to El Fadl's opinion on the fact that a controversy has arisen concerning whether the Film caused worldwide violence lack merit. Here, El Fadl bases his statement on his personal observance of the controversy. As an expert, he is entitled to base his opinions on that personal observation. FED. R. EVID. 703. Moreover, the existence of the controversy is a matter of near-universal knowledge. FED. R. EVID. 201.<br><br>Defendants' Rule 403 objection also is unmeritorious. It is unclear how the existence of a controversy about the connection between violence and the Film is prejudicial in any way: it is merely a controversy. Accordingly, Rule 403 does not bar its admission. |
| 28 | | | | |

ER768

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 37 of 218

| | | | |
|---|---|---|---|
| 22. | Paragraph 19, in its entirety. | Hearsay not subject to any exception; lacks foundation; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "hearsay" and "lacks foundation" objections to El Fadl's statement that news reports indicate that people have died in the violence allegedly sparked by the Film lack merit. Experts such as El Fadl are entitled to base their opinions on hearsay, provided that the hearsay or other materials relied upon are of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).

Defendants' Rule 403 objection also is unmeritorious. The violent worldwide reaction to the Film damages Defendants' argument that Ms. Garcia is not in any imminent danger. But the fact of that violence, while damaging to Defendants case, is entirely fair to admit into evidence. |
| 23. | Paragraph 20, in its entirety. | Hearsay not subject to any exception; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "hearsay" objections to El Fadl's statement that news reports indicate that people have died in the violence allegedly sparked by the Film lack merit. Experts such as El Fadl are entitled to base their opinions on hearsay, provided that the hearsay or other materials relied upon are of the type reasonably relied on by experts in that field. Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).

Defendants' Rule 403 objection also is unmeritorious. The violent worldwide reaction to the Film damages Defendants' argument that Ms. Garcia is not in any imminent danger. But the fact of that violence, while damaging to Defendants case, is entirely fair to admit into evidence. |

ER769

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 38 of 218

| 24. | Paragraph 21, first sentence. | Speculation; lacks personal knowledge; lacks foundation; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "speculation," "lacks personal knowledge," and "lacks foundation" objection to El Fadl's statement that Ms. Garcia's life has been forever changed lack merit. Experts such as El Fadl are entitled to base their opinions on any materials reasonably relied on by experts in that field; here, he relies both on his personal observations (*see* Fed. R. Evid. 602) and the many materials cited throughout his declaration supporting his opinions. See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703). |
| | | | Defendants' Rule 403 objection also is unmeritorious. The damages Ms. Garcia has and will experience may hurt Defendants' case; they are, however, entirely fair to admit into evidence. |
| 25. | Paragraph 21, second sentence. | Speculation; lacks personal knowledge; lacks foundation; improper legal conclusion; improper expert opinion regarding Plaintiff's ability to travel; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "speculation," "lacks personal knowledge," and "lacks foundation" objection to El Fadl's statement that Ms. Garcia's inability to travel lacks merit. Experts such as El Fadl are entitled to base their opinions on any materials reasonably relied on by experts in that field; here, he relies both on his personal observations (see Fed. R. Evid. 602) and the many materials cited throughout his declaration supporting his opinions. See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703). |
| | | | Defendants' "improper legal conclusion" objection is also not well taken. First, El Fadl does not make a legal conclusion: he states that Ms. Garcia "cannot easily travel internationally." Second, El Fadl is, among other things, a lawyer, and therefore entirely qualified to opine on the |

ER770

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 39 of 218

| | | | |
|---|---|---|---|
| | | | law, particularly in light of the fact that Ms. Garcia's ease of travel is not a matter requiring an "ultimate legal conclusion" in this case.<br><br>Defendants' Rule 403 objection also is unmeritorious. The damages Ms. Garcia has and will experience may hurt Defendants' case; they are, however, entirely fair to admit into evidence. |
| 26. | Paragraph 21, third sentence. | Speculation; lacks personal knowledge; lacks foundation; improper expert opinion regarding the world's view of Plaintiff; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "speculation," "lacks personal knowledge," and "lacks foundation" objection to El Fadl's statement that Ms. Garcia's inability to travel ack merit. Experts such as El Fadl are entitled to base their opinions on any materials reasonably relied on by experts in that field; here, he relies on the many materials cited throughout his declaration supporting his opinions. See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).<br><br>To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As an expert, he is entitled to render his opinion on the danger Ms. Garcia faces from extremist and fanatic groups in the Muslim world. FED. R. EVID. 702.<br><br>Defendants' Rule 403 objection also is unmeritorious. The damages Ms. Garcia has and will experience may hurt Defendants' |

ER771

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 40 of 218

| | | | case; they are, however, entirely fair to admit into evidence. |
|---|---|---|---|
| 27. | Paragraph 21, fourth, fifth, and sixth sentences. | Speculation; lacks personal knowledge; lacks foundation; hearsay not subject to any exception; improper expert opinion regarding how the film and Plaintiff are universally; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "speculation," "lacks personal knowledge," and "lacks foundation," and "hearsay" objections to El Fadl's statements that Ms. Garcia's statements have been controversial and that the Film is seen as an attack on Islam lack merit. Experts such as El Fadl are entitled to base their opinions on any materials reasonably relied on by experts in that field, including hearsay; here, he relies on the many materials cited throughout his declaration supporting his opinions, as well as his personal observation. See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703); see also FED. R. EVID. 602.

To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As an expert, he is entitled to render his opinion on perceptions of Ms. Garcia and the Film in the Muslim world. FED. R. EVID. 702.

Defendants' Rule 403 objection also is unmeritorious. The fact that Ms. Garcia is viewed as the bringer of an attack on Islamic values and culture may hurt Defendants' case; it is, however, entirely fair to admit into |

ER772

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 41 of 218

| | | | | evidence. |
|---|---|---|---|---|
| 28. | Paragraph 21, seventh, eighth and ninth sentences. | Speculation; lacks personal knowledge; lacks foundation; improper legal conclusion; improper expert testimony regarding the danger to Plaintiff; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | | Defendants' "speculation," "lacks personal knowledge," and "lacks foundation," objections to El Fadl's statements that Ms. Garcia's public stand against the Film has protected her life and safety by giving her credibility lack merit. Experts such as El Fadl are entitled to base their opinions on any materials reasonably relied on by experts in that field, including hearsay; here, he relies on the many materials cited throughout his declaration supporting his opinions, as well as his personal knowledge of the manner in which her sincerity will be perceived among those extremist elements in the Muslim world who seek to harm her. *See Heishman v. Ayers*, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703); *see also* FED. R. EVID. 602. |

Defendants' "improper legal conclusion" objection is also not well taken. First, El Fadl does not make a legal conclusion: he states that Ms. Garcia's safety may currently be protected because she has taken a public stand against the Film. Second, El Fadl is, among other things, a lawyer, and therefore entirely qualified to opine on the law, particularly in light of the fact that the fact of Ms. Garcia's filing of this lawsuit is not a matter requiring an "ultimate legal conclusion" in this case.

To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 42 of 218

| | | | | |
|---|---|---|---|---|
| 1 | | | | the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As an expert, he is entitled to render his opinion on the current danger to Ms. Garcia from extremists in the Muslim world, and how the steps Ms. Garcia is taking may ameliorate that danger. FED. R. EVID. 702. |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | Defendants' Rule 403 objection also is unmeritorious. The fact that Ms. Garcia's safety may be somewhat protected, for now, as a result of her public stand against the Film may hurt Defendants' case; it is, however, entirely fair to admit into evidence. |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | 29. | Paragraph 22, in its entirety. | Relevance; lacks personal knowledge; speculation; improper expert testimony regarding personal opinion of film; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "relevance" objection is not well taken. Every sentence in paragraph 22 pertains to Ms. Garcia, her involuntary insertion into a dangerous international controversy due to Defendants' actions, the bigoted nature of the Film, Defendants' public claims not to support "hate speech," and worldwide reaction to the Film relates directly to the matters at issue in Plaintiff's motion for an injunction. |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | Defendants' "lacks personal knowledge" and "speculation" objections to paragraph 22 also lack merit. Experts such as El Fadl are entitled to base their opinions on any materials reasonably relied on by experts in that field, including hearsay; here, he relies on the many materials cited throughout his declaration supporting his opinions. See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |

ER774

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 43 of 218

| | | | | |
|---|---|---|---|---|
| | | | | 703). |
| | | | | To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As an expert, he is entitled to render his opinion on whether or not the Film is hate speech, as well as the likely incitement effect of the Film's treatment of "the sacred symbols and beliefs of Muslims." FED. R. EVID. 702. |
| | | | | Defendants' Rule 403 objection also is unmeritorious. The fact that YouTube has acted hypocritically in claiming not to support hate speech, while refusing to remove the Film in light of universal agreement that the Film *is* hate speech, may hurt Defendants' case; it is, however, entirely fair to admit into evidence. |
| 30. | Paragraph 22, third, fifth, seventh, eighth and ninth sentences. | Speculation; lacks foundation; improper legal conclusion; improper expert opinion regarding personal opinion of film; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | | Defendants' "speculation" and "lacks foundation" objections to sentences 3, 5, 7, 8, and 9 of paragraph 22 lack merit. Sentence 3 and 5 merely set forth El Fadl's expert opinion that the Film is hate speech. Sentences 7-9 set forth, as a matter of personal observation, the likely effect on a viewer of the Film, as well as YouTube's documented hypocrisy in refusing to remove it. Experts such as El Fadl are entitled to base opinions such as these on any materials reasonably relied on by experts in that field, |

ER775

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 44 of 218

1  | including hearsay; here, he relies on the many materials cited throughout his declaration supporting his opinions. See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).

Defendants' "improper legal conclusion" objection is also not well taken. El Fadl is, among other things, a lawyer, and therefore entirely qualified to opine on the law, particularly the fact that the Film is hate speech; at any rate, in light of the fact that this is a lawsuit arising in copyright, the hate speech issue is not a matter requiring an "ultimate legal conclusion" in this case.

To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As an expert, he is entitled to render his opinion on whether or not the Film is hate speech, as well as the likely incitement effect on viewers of the film. FED. R. EVID. 702.

Defendants' Rule 403 objection also is unmeritorious. The fact that YouTube has acted hypocritically in claiming not to support hate speech, while refusing to remove the Film in light of universal agreement that the Film *is* hate speech, may hurt Defendants' case; it is, however, entirely fair to admit into evidence.

35

ER776

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 45 of 218

| | | | |
|---|---|---|---|
| 31. | Paragraph 22, sixth sentence. | Hearsay not subject to any exception; lacks foundation; lacks personal knowledge; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "hearsay," "lacks foundation," and "lacks personal knowledge" objections to sentence 6 of paragraph 22 lack merit. Sentence 6 merely sets forth the fact that world leaders have condemned the Film and, as such, explains one of the bases for El Fadl's opinions. Experts such as El Fadl are entitled to base opinions such as these on any materials reasonably relied on by experts in that field, including hearsay; here, he relies on the many materials cited throughout his declaration supporting his opinions.  See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).<br><br>Defendants' Rule 403 objection also is unmeritorious.  The fact that YouTube has acted hypocritically in claiming not to support hate speech, while the universal condemnation of the Film may hurt Defendants' case, it is entirely fair to admit into evidence. |
| 32. | Paragraph 23, in its entirety. | Speculation; lacks foundation; vague and ambiguous; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "speculation" and "lacks foundation," objections to paragraph 23 lack merit. Paragraph 23 simply states El Fadl's opinion that a person who understood the likely consequences of appearing in the Film probably would not have done so, and that Ms. Garcia's public stand against the Film has, for now, protected her life against extremists in the Muslim world who wish to harm her. Experts such as El Fadl are entitled to base opinions such as these on any materials reasonably relied on by experts in that field, including hearsay; here, he relies on the many materials cited |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 46 of 218

| | | | |
|---|---|---|---|
| | | | throughout his declaration supporting his opinions. See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).<br><br>Defendants' "vague and ambiguous" objection also fails, as they do not explain at all how paragraph 23 is either vague or ambiguous; this essentially is a boilerplate objection and, therefore, improper. See, e.g., Nesby v. City of Oakland, 2007 U.S. Dist. LEXIS 22574, *4 (N.D. Cal. Mar. 19, 2007) (rejecting litigant's request to exclude evidence from declarations on grounds of "vagueness" where court found that the supposedly objectionable terms could be construed by looking at the dictionary); cf. Bible v. Rio Props., Inc., 246 F.R.D. 614, 619 (C.D. Cal. 2007) (in context of discovery motion, ruling that conclusory, general or boilerplate objections such as "vague and ambiguous" are improper where they do not provide enough information as to allow court to ascertain objectionable nature of the material objected to).<br><br>Defendants' Rule 403 objection also is unmeritorious. That a reasonable actor probably would not have volunteered to appear in a film that would result in a *fatwa* being put on her head may hurt Defendants' case, it is entirely fair to admit into evidence. |
| 33. | Paragraph 23, fifth sentence. | Improper legal conclusion. | Defendants' "improper legal conclusion" objection fails. In the fifth sentence of paragraph 23, El Fadl opines that the *fact* of Ms. Garcia's filing this lawsuit may have temporarily ameliorated some threats to her safety. That is not a legal conclusion. |

ER778

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 47 of 218

| | | | | |
|---|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | 34. | Paragraph 24, in its entirety. | Relevance; speculation; lacks foundation; improper expert opinion regarding how the film and Plaintiff are universally viewed; vague and ambiguous; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "relevance" objection is not well taken. Every sentence in paragraph 24 pertains to Ms. Garcia, her involuntary insertion into a dangerous international controversy due to Defendants' actions, the existence of laws in various countries that criminalize activities such as appearing in the Film, and the worldwide reaction to the Film. Each of them relates directly to the matters at issue in Plaintiff's motion for an injunction. |

Defendants' "speculation" and "lacks foundation" objections to paragraph 24 also lack merit. Experts such as El Fadl are entitled to base their opinions on any materials reasonably relied on by experts in that field, including hearsay; here, he relies on the many materials cited throughout his declaration supporting his opinions, as well as his expertise in terrorism and national security issues. See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).

To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As an expert, he is entitled to render his opinion on the likely incitement effect on viewers of the film in the Muslim world. FED. R. EVID. 702.

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

ER779

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 48 of 218

| | | | |
|---|---|---|---|
| | | | Defendants' "vague and ambiguous" objection also fails, as they do not explain at all how paragraph 24 is either vague or ambiguous; this essentially is a boilerplate objection and, therefore, improper. See, e.g., Nesby v. City of Oakland, 2007 U.S. Dist. LEXIS 22574, *4 (N.D. Cal. Mar. 19, 2007) (rejecting litigant's request to exclude evidence from declarations on grounds of "vagueness" where court found that the supposedly objectionable terms could be construed by looking at the dictionary); cf. Bible v. Rio Props., Inc., 246 F.R.D. 614, 619 (C.D. Cal. 2007) (in context of discovery motion, ruling that conclusory, general or boilerplate objections such as "vague and ambiguous" are improper where they do not provide enough information as to allow court to ascertain objectionable nature of the material objected to).

Finally, Defendants' Rule 403 objection also is unmeritorious. That Ms. Garcia was involuntarily inserted into a dangerous international controversy (one which Defendants are perpetuating by refusing to remove the Film from YouTube) may hurt Defendants' case; however, it is entirely fair to admit into evidence. |
| 35. | Paragraph 24, third and fourth sentences. | Speculation; lacks foundation; improper legal conclusion; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "speculation" and "lacks foundation" objections to the third and fourth sentences of paragraph 24 lack merit. Experts such as El Fadl are entitled to base their opinions on any materials reasonably relied on by experts in that field, including hearsay; here, he relies on the many materials cited throughout his declaration supporting his opinions, as well as his demonstrated legal expertise. |

ER780

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 49 of 218

| | | | |
|---|---|---|---|
| | | | See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).<br><br>Defendants' "improper legal conclusion" objection is also not well taken. El Fadl is, among other things, a lawyer, and therefore entirely qualified to note the existence of anti-blasphemy laws and the manner in which they may be enforced. At any rate, in light of the fact that this is a lawsuit arising in copyright, the British blasphemy issue is not a matter requiring an "ultimate legal conclusion" in this case.<br><br>Finally, Defendants' Rule 403 objection also is unmeritorious. That Ms. Garcia may face additional imminent damage (due to Defendants' refusal to remove the Film from YouTube) may hurt Defendants' case; however, it is entirely fair to admit into evidence. |
| 36. | Paragraph 25, second and third sentences. | Speculation; lacks foundation; improper expert testimony regarding the "heart" of the work and the cause of outrage in the world; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "speculation" and "lacks foundation" objections to the second and third sentences of paragraph 25 both lack merit. Experts such as El Fadl are entitled to base their opinions on any materials reasonably relied on by experts in that field; here, he relies on his personal observation of the Film (admissible under FED. R. EVID. 602), the various materials referenced throughout his declaration, and his demonstrated expertise in the culture and law of the Middle East, Islamic law, and terrorism. See Heishman v. Ayers, 621 F.3d 1030, 1042 (9th Cir. 2010, citing FED. R. EVID. 703).<br><br>To the extent that Defendants claim that El Fadl is not an "expert," Plaintiffs note that Defendants have made no |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

ER781

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 50 of 218

| | | | |
|---|---|---|---|
| | | | objection to the first six paragraphs of El Fadl's declaration, in which he sets forth his expert qualifications on the subjects of the law and culture of the Middle East, Islamic law, and terrorism at great length. Indeed, it would be hard to imagine a person of greater qualifications than El Fadl to render expert testimony in this case. As a viewer of the Film, he is well able to testify as to his personal observation of the Film's message (see FED. R. EVID. 602); as an expert, he is entitled to render his opinion on the likely incitement effect on viewers of the film in the Muslim world. FED. R. EVID. 702.<br><br>Finally, Defendants' Rule 403 objection also is unmeritorious. That Ms. Garcia may be in more danger than other actors in the Film due to the fact that she was made to appear to be the person accusing Mohammed of being a child molester may hurt Defendants' argument that she is not in imminent enough danger to deserve the protection of an injunction; however, it is entirely fair to admit into evidence. |

## VI.  Defendants' Objections to the Declaration of M. Cris Armenta

| No. | Material Objected To | Ground(s) for Objection | Plaintiff's Response |
|---|---|---|---|
| 1. | Paragraph 2, in its entirety. | Relevance; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "relevance" argument should fail. Ms. Armenta's testimony of her personal experiences at the Los Angeles Superior Court are directly relevant to the issue of whether Ms. Garcia (and those |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED CV12-8315 MWF (VBKx)

ER782

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 51 of 218

| | | | | |
|---|---|---|---|---|
| | | | | affiliated with her) is in imminent danger for her life and safety.<br><br>Defendants' Rule 403 objection also is unmeritorious. The serious danger that Ms. Garcia is in, as evaluated by law enforcement professionals, may hurt Defendants' argument that she is not in imminent enough danger to deserve the protection of an injunction; however, it is entirely fair to admit into evidence. |
| | 2. | Paragraph 2, fifth, sixth, seventh and eighth sentences. | Hearsay not subject to any exception. | Ms. Armenta's relation of her conversation with law enforcement professionals at the Los Angeles Superior Court is not hearsay because it is not offered for the truth of the matter asserted (FED. R. EVID. 801(c)(2)); rather, it is offered to show the effect on the listener. Here, the effect on Ms. Armenta (and Ms. Garcia) was to take numerous security measures and warn local law enforcement authorities of threats to her safety and to the safety of Ms. Garcia. Accordingly, it is admissible. |
| | 3. | Paragraph 3, in its entirety. | Relevance; hearsay not subject to any exception. | Defendants' "relevance" argument should fail. Ms. Armenta's testimony of defense counsel's decision to "blame the victim" rather than to take any responsibility for their own actions raises serious issues pertaining to Defendants' culpability. Moreover, defense counsel's query as to whether Ms. Garcia had signed a release related to her dramatic performance is a legal issue at the heart of Ms. Garcia's request for an injunction. Accordingly, it is relevant.<br><br>The conversations with counsel for YouTube, and Mr. Alger's and Ms. Armenta's statements, |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 52 of 218

| | | | | |
|---|---|---|---|---|
| | | | | are not hearsay under Federal Rule of Evidence 801(d), which states that prior statements of the declarant-witness or of an opposing party are not hearsay. |
| 4. | Paragraph 3, second and third sentences. | Speculation; lacks foundation. | | Defendants' "speculation" and "lacks foundation" objections fail; the second and third sentences of paragraph 3 simply relate the details of a conversation between counsel, a conversation in which Ms. Armenta personally participated. |
| 5. | Paragraph 4, in its entirety. | Relevance; hearsay not subject to any exception; misrepresents Defendants' position. | | Defendants' "relevance" argument should fail. Ms. Armenta's testimony pertaining to Ms. Garcia's multiple attempts to use YouTube's published procedures to obtain removal of the Film raises serious issues pertaining to Defendants' culpability for copyright infringement and Ms. Garcia's right to have the Film taken down. This issue is at the heart of Ms. Garcia's request for an injunction. Accordingly, it is relevant.

The October 2, 2012, conversation between Ms. Armenta and defense counsel is not hearsay under Federal Rule of Evidence 801(d), which states that prior statements of the declarant-witness or of an opposing party are not hearsay.

Defendants' objection that paragraph 4 "misrepresents" their position is a matter that goes to the weight of the evidence, not its admissibility. |
| 6. | Paragraph 5, in its entirety. | Relevance; probative value outweighed by unfair prejudice (Fed. R. Evid. 403); | | Defendants' "relevance" argument should fail. Ms. Armenta's testimony pertaining to Defendants' refusal to believe that Ms. Garcia never signed a release of the copyright to her |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 53 of 218

| | | | |
|---|---|---|---|
| | | misrepresents Defendants' position. | dramatic performance raises serious issues pertaining to Defendants' culpability for copyright infringement and Ms. Garcia's right to have the Film taken down. This issue is at the heart of Ms. Garcia's request for an injunction. Accordingly, it is relevant.

Defendants' Rule 403 objection also is unmeritorious. The facts set forth in paragraph 5 indicate that Defendants have been aware for a very long time that Ms. Garcia never signed away her rights, and therefore was entitled to have the Film taken down. While this fact may hurt Defendants' case, it is entirely fair to admit into evidence.

Defendants' objection that paragraph 5 "misrepresents" their position is a matter that goes to the weight of the evidence, not its admissibility. |
| 7. | Paragraph 6, second sentence. | Relevance; hearsay not subject to any exception; misrepresents Defendants' position | Defendants' "relevance" argument should fail. Ms. Armenta's testimony pertaining to Defendants' belated claim that the Film is a "joint work" raises serious issues pertaining to Defendants' culpability for copyright infringement and Ms. Garcia's right to have the Film taken down. This issue is at the heart of Ms. Garcia's request for an injunction. Accordingly, it is relevant.

The October 4, 2012, conversation between Ms. Armenta and defense counsel is not hearsay under Federal Rule of Evidence 801(d), which states that prior statements of the declarant-witness or of an opposing party are not hearsay.

Defendants' objection that |

ER785

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 54 of 218

| | | | |
|---|---|---|---|
| | | | paragraph 6 "misrepresents" their position is a matter that goes to the weight of the evidence, not its admissibility. |
| 8. | Paragraph 8, in its entirety, and Exhibit B. | Relevance | Defendants' "relevance" argument should fail. Defendant YouTube's stated position that it will remove hate speech from its Website, which stands in stark contrast to its refusal to remove the Film even after being informed that it was hate speech, raises serious issues pertaining to Ms. Garcia's right to have the Film taken down. This issue is at the heart of Ms. Garcia's request for an injunction. Accordingly, it is relevant. |
| 9. | Paragraph 9, in its entirety, and Exhibit C. | Hearsay not subject to any exception. | Paragraph 9 consists of a statement by Defendant Google's Chairman, Eric Schmidt, discussing the Film. His statement is admissible as an admission of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A)-(D). |
| 10. | Paragraph 10, in its entirety. | Speculation; lacks foundation; relevance; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | The purchase price between Google and YouTube is a matter that has been admitted *numerous* times by the Defendants and is even contained in the Second Circuit opinion between these Defendants and Viacom International. Plaintiff has provided the Court with a copy of this opinion. See Declaration of M. Cris Armenta, Ex. D at Page 12.<br><br>Defendants' "relevance" argument should fail. Defendant YouTube's acknowledgement, authenticated by counsel in a case before the Second Circuit, that it would lose a great deal of money if it removed copyrighted content from its site explains why Defendants refuse to remove the Film (given the tens of millions |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 55 of 218

| | | | | |
|---|---|---|---|---|
| 1 | | | | of views it has generated) even in light of Ms. Garcia's showing that she has a copyright in her dramatic performance and is entitled to have the Film taken down. This issue is at the heart of Ms. Garcia's request for an injunction.  It also shows that, at worst, any "harm" to the Defendants by removing the content is merely monetary. Accordingly, it is relevant. |
| 7 | | | | Defendants' Rule 403 objection also is unmeritorious.  The facts set forth in paragraph 10 indicate that despite the fact that Defendants have been aware for a very long time that Ms. Garcia is entitled to have the Film taken down, their refusal to do so is likely motivated by greed.  While this fact may hurt Defendants' case, it is entirely fair to admit into evidence. |
| 14 | 11. | Paragraph 10, second, third, and fourth sentences and Exhibit D. | Relevance; hearsay not subject to any exception; probative value outweighed by unfair prejudice (Fed. R. Evid. 403). | Defendants' "relevance" argument should fail.  Defendant YouTube's acknowledgement, authenticated by counsel in a case before the Second Circuit, that it would lose a great deal of money if it removed copyrighted content from its site explains why Defendants refuse to remove the Film even in light of Ms. Garcia's showing that she has a copyright in her dramatic performance and is entitled to have the Film taken down. This issue is at the heart of Ms. Garcia's request for an injunction.  Accordingly, it is relevant. |
| 23 | | | | Sentences 2-4 discuss admissions of YouTube's management team and founders in another case. Those statements are admissible as admissions of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A)-(D); they are not hearsay. |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 56 of 218

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | | | Defendants' Rule 403 objection also is unmeritorious. The facts set forth in paragraph 10 indicate that despite the fact that Defendants have been aware for a very long time that Ms. Garcia is entitled to have the Film taken down, their refusal to do so is likely motivated by greed. While this fact may hurt Defendants' case, it is entirely fair to admit into evidence. |
| 8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21 | 12. | Paragraph 11, in its entirety. | Relevance. | Defendants' "relevance" argument should fail. Defendants have argued that the rights to the Film lie with the filmmaker: in other words, Defendant Youssef (a/k/a Bacile, a/k/a Nakoula). There is no other individual or entity of which Plaintiff is aware (or apparently of which Defendants are aware, as they have not mentioned any particular candidates) who own the copyright, under Defendants' theory of the case. Paragraph 11 demonstrates that Defendant Youssef (a/k/a Bacile, a/k/a Bakoula) has actually disavowed copyright ownership. Given that Plaintiff is aware of no other individual or entity claiming a copyright interest in the Film, Defendant Youssef's statements are entirely relevant to rebut Defendants' legal argument that Ms. Garcia, as a supporting actor, has no rights in her dramatic performance. |
| 22<br>23<br>24<br>25<br>26<br>27<br>28 | 13. | Paragraph 11, third, fourth and fifth sentences. | Hearsay not subject to any exception. | Sentences 3-5 of Paragraph 11 relate a conversation between Ms. Armenta and counsel for Defendant Youssef (a/k/a Bacile, a/k/a Bakoula). The content of that conversation is not hearsay under Federal Rule of Evidence 801(d), which states that prior statements of the declarant-witness or of an opposing party are not hearsay. |

PLAINTIFF'S RESPONSES TO OBJECTIONS BY GOOGLE INC. AND YOUTUBE, LLC TO EVIDENCE SUBMITTED
CV12-8315 MWF (VBKx)

ER788

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 57 of 218

**VII.   Defendants' Objections to the Declaration of David Hardy**

Defendants object to Mr. Hardy's declaration in its entirety, including exhibits, on relevance grounds, asserting that the DMCA is an affirmative defense to monetary relief against a service provider and therefore not pertinent to this motion, which seeks an injunction.  Notably, it is the Defendants themselves who have claimed that they are entitled to a "safe harbor" defense under the DMCA.  (See Declaration of M. Cris Armenta at ¶ 2.)

Defendants further object to the declaration and exhibits, in their entirety, on hearsay grounds.  Defendants are entirely wrong.  Mr. Hardy's declaration consists almost entirely of relating his communications with various representatives of Defendant YouTube.  Those are not hearsay under Federal Rule of Evidence 801(d), which states that prior statements of the declarant-witness or of an opposing party are not hearsay.

Dated: November 5, 2012                     THE ARMENTA LAW FIRM, A.P.C.

                                            By: _____
                                                 M. Cris Armenta
                                                 Attorneys for Cindy Lee Garcia

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 58 of 218

**PROOF OF SERVICE**

1

2  **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**
      I am employed in the County of Los Angeles, State of California.  I am over

3

4  the age of eighteen years and not a party to the within action.  My business address

5  is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

        On November 5, 2012 I served the following document(s) described as:

6

7  **(1) REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
        OF MOTION FOR PRELIMINARY INJUNCTION AND ORDER OF
        IMPOUNDMENT; DECLARATION OF M. CRIS ARMENTA IN
        SUPPORT THEREOF (filed separately);**

8

9  **(2) PLAINTIFF'S RESPONSE TO  OBJECTIONS BY GOOGLE, INC. AND
        YOUTUBE LLC TO EVIDENCE SUBMITTED IN SUPPORT OF
        PLAINTIFF'S MOTION FOR PRELIMINARY INUNCTION AND
        ORDER OF IMPOUNDMENT (filed separately);**

10

11  **(3)  PLAINTIFF'S OBJECTIONS TO EVIDENCE SUBMITTED BY
        GOOGLE INC., AND YOUTUBE, LLC. IN OPPOSITION BRIEF TO
        PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
        ORDER OF IMPOUNDMENT (filed separately);**

12

13

14  **(4)  [PROPOSED] ORDER SUSTAINING PLAINTIFF'S OBECTIONS TO
        EVIDENCE SUBMITTED BY GOOGLE, INC., AND YOUTUBE LLC
        IN OPPOSITION BRIEF TO PLAINTIFF'S MOTION FOR
        PRELIMINARY INUNCTION AND AN ORDER OF IMPOUNDMENT
        (lodged separately)**

15

16

17  on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes

18  addressed as follows:

19                                  **Timothy L. Alger**
                                    **Perkins Coie LLP**
20                                  **3150 Porter Drive**
                                    **Palo Alto, CA 94304-1212**

21

        *BY MAIL:* I am "readily familiar" with the firm's practice of collection and processing
22      correspondence for mailing with the United States Postal Service.  Under that practice, it
        would be deposited with the United States Postal Service that same day in the ordinary
23      course of business.  Such envelope(s) were placed for collection and mailing with postage
        thereon fully prepaid at Los Angeles, California, on that same day following ordinary
24      business practices.  (C.C.P. § 1013 (a) and 1013a(3))

25

        Executed on November 5, 2012 in Los Angeles, California

26

27

28                                                          Heather Rowland

─────────────────────────────────────────────────
                            1
                      PROOF OF SERVICE

ER790

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 59 of 218

1    Timothy L. Alger (SBN 160303)
     TAlger@perkinscoie.com
2    PERKINS COIE LLP
     3150 Porter Drive
3    Palo Alto, CA  94304-1212
     Telephone:  650.838.4300
4    Facsimile:  650.838.4350

5    Sunita Bali (SBN 274108)
     SBali@perkinscoie.com
6    PERKINS COIE LLP
     1888 Century Park E., Suite 1700
7    Los Angeles, CA  90067-1721
     Telephone:  310.788.9900
8    Facsimile:  310.788.3399

9    Attorneys for Defendant
     Google Inc. and YouTube, LLC
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  CINDY LEE GARCIA, an individual, | Case No. CV-12-8315-MWF (VBKx) |
| 15  Plaintiff, | Assigned to the Honorable Michael W. Fitzgerald |
| 16  v. | DECLARATION OF MARK BASSELEY YOUSSEF |
| 17  NAKOULA BASSELEY NAKOULA, an individual also known as SAM | |
| 18  BACILE, MARK BASSELEY YOUSSEF, ABANOB BASSELEY | [Submitted in Opposition to Plaintiff's Motion for Preliminary Injunction] |
| 19  NAKOULA, MATTHEW NEKOLA, AHMED HAMDY, AMAL NADA, | |
| 20  DANIEL K. CARESMAN, KRITBAG DIFRAT, SOBHI BUSHRA, ROBERT | Date:        December 3, 2012 |
| 21  BACILY, NICOLA BACILY, THOMAS J. TANAS, ERWIN | Time:        10:00 a.m.<br>Courtroom:  1600 |
| 22  SALAMEH, YOUSSEFF M. BASSELEY, and/or MALID | |
| 23  AHLAWI; GOOGLE, INC., a Delaware Corporation; YOUTUBE, | |
| 24  LLC, a California limited liability company, and DOES 1 through 10, | |
| 25  inclusive, | |
| 26  Defendants. | |

27

28

-1-

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 60 of 218

1    I, Mark Basseley Youssef, hereby declare as follows:

2       1.·    I have personal knowledge of the facts stated herein and, if called

3    upon, could and would testify competently thereto under oath.

4       2.     Attached hereto as **Exhibit 1** is a true, correct, and complete copy of

5    the Personal Release and Cast Deal Memo signed by Cindy Lee Garcia in

6    connection with the film Desert Warriors. I personally provided this document to

7    Ms. Garcia on August 9, 2011 and she filled it out and signed it in my presence on

8    that day before commencing work on the film. The only writing on this document

9    that is not that of Ms. Garcia is "Matthew Metta," next to Sam Bessi, on pages 1

10   and 3 of the document. That writing is mine.

11      I declare under penalty of perjury under the laws of the United States of

12   America that the foregoing is true and correct.

13   Executed this ⟨27⟩ day of November, 2012, at Los Angeles, California.

14

15

16                                              Mark Basseley Youssef

17

18

19

20

21

22

23

24

25

26

27

28

41063-0244/LEGAL25197257.1                    -2-          DECLARATION OF MARK
                                                            BASSELEY YOUSSEF

ER792

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 61 of 218

# EXHIBIT "A"

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 62 of 218

## PERSONAL RELEASE

_Desert Warriors_

Production Company _____ & Matthew mtta._

Address _1040 Hamilton rd._
_Durarte Ca. 91010_   Date _8/9/11_

**Ladies and Gentlemen:**

I, the undersigned, hereby grant permission to _Sam Bessi (matthew mtta)_ ("Producer") to photograph me and to record my voice, performances, poses, acts, plays and appearances, and use my picture, photograph, silhouette and other reproductions of my physical likeness and sound as part of the _____ _Omo Roman_ _____ tentatively entitled _____ _____ (the "Picture") and the unlimited distribution, advertising, promotion, exhibition and exploitation of the Picture by any method or device now known or hereafter devised in which the same may be used, and/or incorporated and/or exhibited and/or exploited.

I agree that I will not assert or maintain against you, your successors, assigns and licensees, any claim, action, suit or demand of any kind or nature whatsoever, including but not limited to, those grounded upon invasion of privacy, rights of publicity or other civil rights, or for any other reason in connection with your authorized use of my physical likeness and sound in the Picture as herein provided. I hereby release you, your successors, assigns and licensees, and each of them, from and against any and all claims, liabilities, demands, actions, causes of action(s), costs and expenses whatsoever, at law or in equity, known or unknown, anticipated or unanticipated, which I ever had, now have, or may, or shall hereafter have by reason, matter, cause or thing arising out of your use as herein provided.

I affirm that neither I, nor anyone acting for me, gave or agreed to give anything of value to any of your employees or a representative of any television network, motion picture studio or production entity for arranging my appearance on the Picture.

The undersigned understands that they will not be compensated for their appearance in the recording.

I have read the foregoing and fully understand the meaning and effect thereof and, intending to be legally bound, I have signed this release.

Dated _8/9/11_   _Cindy Garcia_
Signature

If a minor, Guardian's Signature

Please Print Name

AGREED AND ACCEPTED TO

Address

By _____   REDACTED
Phone Number

Release #1

**Exhibit A**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 63 of 218

## Cast Deal Memo

This memo outlines terms of the agreement between *M.H.* ~~Miller Motorhome~~ LLC. and *Cindy Barcia* (hereinafter "Producer") related to the production of ~~Dirambacepds~~ (hereinafter "Motion Picture.")

**1. Services:**

_Cindy Garcia_ agrees to perform the services outlined in Appendix A.

**2. Compensation:**

Subject to the rest of the terms of this agreement, and upon satisfactory completion of the services outlined in Appendix A, Producer agrees to compensate _Cindy Garcia_ at the rate and time designated in Appendix B.

**3. Employment Status:** [Independent Contractor]

[Independent Contractor: The parties agree that _CG_ is an independent contractor, who is not required to work exclusively for Producer now or in the future, and who, as a professional, is expected to complete the assignment without supervision or training. No fringe benefits or overtime compensation will be provided and the contractor is solely responsible for all income, self-employment and other taxes due upon this income received in conjunction with the services rendered under this agreement. ~~The contractor is not entitled to collect unemployment compensation under this agreement.~~]

**4. Assignment of Rights**

[ _CG_ assigns to producer all rights necessary for the development, production and exploitation of the Motion Picture, whether denominated copyrights, performance rights, or publicity rights, including the right to reasonable use of his/her name and likeness in conjunction with the development, production and exploitation of the Motion Picture, and waives any right to sue Producer over such use.]

[ _CG_ warrants to Producer that all

**Exhibit A**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 64 of 218

writing submitted for the Motion Picture is his own original work. The parties agree the script and all revisions of the script of the film are "works made for hire" as defined under article 101 of Title 17 of the U.S. Code.  If for any reason the script should be determined to not be a "work made for hire," _____ *C G* _____ assigns all rights he may have to the work under U.S. and International copyright law to Producer.

5. *Credits*:

Producer agrees to provide the following credits:

Sam Bessi (matthew motta)

8|9|11
Date

Social Security Number
REDACTED

Address
_____

Producer _____    Date _____

Appendix A:

[Describe the services to be performed in plain English including dates and times required to be available and any equipment to be provided.]

[Examples:  actor playing (role); dates; times (or "as needed"); related responsibilities. Writer; responsibilities including revisions/turn around times between dates; Stunts/ effects...]

Appendix B:
Describe Compensation Rate

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 65 of 218

## PROOF OF SERVICE

I, Pamela Villeral, declare,

    I am employed in the City of Los Angeles, County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 1888 Century Park East, Suite 1700, Los Angeles, California 90067-1721.  On the date signed below, I served the documents named below on the parties in this action as follows:

**DECLARATION OF MARK BASSELEY YOUSSEF**

Upon the parties named below as follows:  (See attached service list.)

☒ **(BY MAIL)** I caused the above referenced document(s) to be placed in an envelope, with postage thereon fully prepaid, and placed in the United States mail at Los Angeles, California.  I am readily familiar with the practice of the firm for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ (FEDERAL) I declare under penalty of perjury under the laws of the United States of America the above it true and correct.

Executed on **November 28, 2012**, at Los Angeles, California.

*Pamela Villeral*
_____
Pamela Villeral

PROOF OF SERVICE
Case No. CV-12-8315-MWF (VBKx)

ER797

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 66 of 218

1

## SERVICE LIST

2

3 **Defendant**

4 Nakoula B. Nakoula aka Mark Basseley Youssef
Metropolitan Detention Center.

5 Inmate # 56329-112.
180 N. Los Angeles St.

6 Los Angeles, CA 90012

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
Case No. CV-12-8315-MWF (VBKx)

ER798

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 67 of 218

1   Timothy L. Alger (SBN 160303)
    TAlger@perkinscoie.com
2   PERKINS COIE LLP
    3150 Porter Drive
3   Palo Alto, CA  94304-1212
    Telephone:  650.838.4300
4   Facsimile:  650.838.4350

5   Sunita Bali (SBN 274108)
    SBali@perkinscoie.com
6   PERKINS COIE LLP
    1888 Century Park E., Suite 1700
7   Los Angeles, CA  90067-1721
    Telephone:  310.788.9900
8   Facsimile:  310.788.3399

9   Attorneys for Defendants
    Google Inc. and YouTube, LLC
10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  CINDY LEE GARCIA, an individual, | Case No. CV-12-8315-MWF (VBKx) |
| 15              Plaintiff, | Assigned to the Honorable Michael W. Fitzgerald |
| 16        v. | DECLARATION OF TIMOTHY L. ALGER |
| 17  NAKOULA BASSELEY NAKOULA, an individual also known as SAM | |
| 18  BACILE, MARK BASSELEY YOUSSEF, ABANOB BASSELEY | [Submitted in Opposition to Plaintiff's Motion for Preliminary Injunction] |
| 19  NAKOULA, MATTHEW NEKOLA, AHMED HAMDY, AMAL NADA, | |
| 20  DANIEL K. CARESMAN, KRITBAG DIFRAT, SOBHI BUSHRA, ROBERT | Date:        December 3, 2012 Time:        10:00 a.m. |
| 21  BACILY, NICOLA BACILY, THOMAS J. TANAS, ERWIN | Courtroom: 1600 |
| 22  SALAMEH, YOUSSEFF M. BASSELEY, and/or MALID | |
| 23  AHLAWI; GOOGLE, INC., a Delaware Corporation; YOUTUBE, | |
| 24  LLC, a California limited liability company, and DOES 1 through 10, | |
| 25  inclusive, | |
| 26              Defendants. | |

27

28

ER799

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 68 of 218

## DECLARATION OF TIMOTHY L. ALGER

I, Timothy L. Alger, hereby declare as follows:

1.     I am an attorney licensed to practice law before the courts of the State of California and this Court. I am a partner at Perkins Coie LLP, and lead counsel in this action for defendants Google Inc. and YouTube, LLC (collectively, the "YouTube Defendants"). I have personal knowledge of the facts stated herein and, if called upon, could and would testify competently thereto under oath.

2.     Submitted concurrently with this declaration is the Declaration of Mark Basseley Youssef, with a copy of the Personal Release and Cast Deal Memo ("Release") completed and signed by Plaintiff Cindy Lee Garcia in connection with the film Desert Warriors attached as Exhibit 1. The Release has been redacted by my office so the public court file will not contain Ms. Garcia's telephone number and Social Security number.

3.     The original Release is in my possession, with the permission of Mr. Youssef.

4.     This declaration is intended to provide the Court with additional, potentially dispositive, evidence relating to Plaintiff's Motion for Preliminary Injunction, and an explanation as to why this evidence is being submitted at this time.

5.     On November 16, 2012, at my request, Mr. Youssef's criminal attorney, Steven Seiden, obtained from Mr. Youssef's family a copy of the Release, and he immediately provided it to me. I then did two things: First, I confirmed that the telephone number on the Release was that of Ms. Garcia, which was easily accomplished because Ms. Garcia includes her phone number in her public Facebook profile. Second, I asked an investigator to check public records to determine the name of the holder of the Social Security number on the release. He informed me that the holder of that number is Cindy Lee Garcia.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 69 of 218

6.     After receiving this information, I sent a copy of the Release by email on November 18, 2012 to Cris Armenta, Ms. Garcia's attorney, and suggested that her client voluntarily dismiss this action. After not hearing anything from Ms. Armenta for several days, I called and left a phone message for her making the same suggestion on November 21, 2012.

7.     Ms. Armenta responded to my communications by email on Monday, November 26, 2012. On that day, and in several subsequent emails, Ms. Armenta has expressed doubt that the Release is genuine.

8.     In light of the communications from Ms. Armenta, I made arrangements to visit Mr. Youssef, and I did so with Mr. Seiden on Tuesday afternoon, November 27, 2012 at the Metropolitan Detention Center ("MDC") in downtown Los Angeles. Mr. Youssef is in the Special Housing Unit at MDC, segregated from the main population and unable to visit with family or friends. During our visit, Mr. Youssef reviewed the Release (in an unredacted form) attached as Exhibit 1, and executed the Declaration.

9.     The Release is dated August 9, 2011. The document: (1) grants to "Sam Bessi," a name Mr. Youssef has used in the past, and a production entity called "Matthew Metta," the right to photograph and record Ms. Garcia; (2) releases all claims for invasion of privacy, right of publicity; and (3) assigns to "M.M." "all rights necessary for the development, production and exploitation of the Motion Picture, whether denominated copyrights, performance rights, or publicity rights . . . ." (See Youssef Decl., Exh. 1.)

10.     During our visit, Mr. Youssef provided to me additional information that is relevant to the pending Motion. Given the restrictions in the Special Housing Unit at MDC, we were unable to prepare a new declaration during our visit, but Mr. Youssef said he would testify to the following: That Ms. Garcia worked for two hours on a single day, filming her brief appearances in the movie,

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 70 of 218

and was paid $75.00.  Later, he said, Ms. Garcia was called back and worked about one additional hour, re-recording her lines because the quality of the sound captured during the filming was poor, and she was paid an additional $100.00.

11.    Mr. Youssef said that while other people assisted with the direction and production of the film, it was his creation, and he retains control over the film. He told me that his son uploaded both the English language and Arabic versions of the trailer for the film, now entitled Innocence of Muslims, to YouTube at his request.  Mr. Youssef said he believes in the message contained in the film and he does not want the trailer to be removed from YouTube.

12.    On the night of Tuesday, November 27, 2012, after my visit at MDC with Mr. Youssef, I met with Mr. Youssef's son in southern Los Angeles County. He brought with him a binder, about four inches thick, containing contracts relating to the film, including releases by other actors identical in form to that which was signed by Ms. Garcia.  He provided me with the original Release executed by Ms. Garcia, which I promised to return following the conclusion of these proceedings.

13.    I would also like to take this opportunity to correct factual inaccuracies in declarations filed by Plaintiff.  First, in the Declaration of M. Cris Armenta [Dkt. No. 14-3], paragraph 6, Plaintiff's counsel asserts that she was told during a meet-and-confer on October 4, 2012 that the YouTube defendants considered the Innocence of Muslims film to be a "joint work" under the Copyright Act.  Ms. Armenta repeats this assertion (with a date of October 5, 2012) in a supplemental declaration filed in conjunction with Plaintiff's Reply Brief [Dkt. No. 27], at paragraph 8.  These statements are incorrect.  I informed Ms. Armenta that it was YouTube's position that Ms. Garcia had no copyright interest in the film at all, and even if Ms. Garcia asserted that she was a joint author, her claims against the YouTube Defendants failed because the film was posted on YouTube by Mr. Youssef, who had the right under Copyright Act to do so, without seeking Ms.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 71 of 218

1    Garcia's consent.

2        14.  At various points in Plaintiff's briefing, in the Armenta Declaration [Dkt.
3    No. 14-3 at ¶ 7], and throughout the David Hardy Declaration [Dkt. No. 14-2],
4    Plaintiff suggests that there was ambiguity, uncertainty, or "discussions" between
5    the YouTube Defendants and Plaintiff's counsel or representatives regarding the
6    possibility that the film would be removed from the YouTube service.  This is also
7    incorrect.  I made clear to Ms. Armenta, starting with our first telephone
8    communications immediately after I was retained on September 18, 2012, when she
9    informed me of Plaintiff's plan to file an ex parte application in Superior Court for
10   a temporary restraining order, that the YouTube Defendants would not remove the
11   film at Plaintiff's demand.

12       15.  Finally, Ms. Armenta suggests in paragraphs 8 and 9 of her supplemental
13   declaration that she delayed filing an application for temporary restraining order
14   because I would not be available between October 11 and 16, 2012.  This is also
15   incorrect.  Ms. Armenta first informed me that she intended to seek a temporary
16   restraining order ex parte when this action was filed in federal court on September
17   26, 2012.  I made sure during the following two weeks to be available for any
18   briefing and/or court appearances relating to such an application.  We met-and-
19   conferred about Plaintiff's application on October 4, 2012, on short notice.  As time
20   passed, without any filing by Plaintiff, I ultimately inquired of Ms. Armenta about
21   her timing, and suggested by email on October 10, 2012 that Plaintiff file a noticed
22   motion, which would seem to be more appropriate given that the film had been
23   publicly available at Youtube.com since July.  I also informed her that I had a
24   commitment outside the country October 12 (Friday) to October 15 (Monday), and,
25   if necessary, I would seek an extension from the Court for any response if Plaintiff
26   filed an ex parte application during my absence.  There is no basis for any

27

28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 72 of 218

1    contention by Plaintiff that she delayed seeking preliminary relief to accommodate
2    the YouTube Defendants.
3        I declare under penalty of perjury under the laws of the United States that the
4    foregoing is true and correct.
5        Executed this 28th day of November, 2012, at Palo Alto, California.
6
7
8                            /s/ Timothy L. Alger
                             Timothy L. Alger
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ER804

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 73 of 218

**PROOF OF SERVICE**

I, Pamela Villeral, declare,

    I am employed in the City of Los Angeles, County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is 1888 Century Park East, Suite 1700, Los Angeles, California 90067-1721.  On the date signed below, I served the documents named below on the parties in this action as follows:

**DECLARATION OF TIMOTHY L. ALGER**

Upon the parties named below as follows:  (See attached service list.)

☒ **(BY MAIL)** I caused the above referenced document(s) to be placed in an envelope, with postage thereon fully prepaid, and placed in the United States mail at Los Angeles, California.  I am readily familiar with the practice of the firm for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ (FEDERAL) I declare under penalty of perjury under the laws of the United States of America the above it true and correct.

Executed on **November 28, 2012**, at Los Angeles, California.

Pamela Villeral

PROOF OF SERVICE
Case No. CV-12-8315-MWF (VBKx)

ER805

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 74 of 218

1

## SERVICE LIST

2

3

**Defendant**

4

Nakoula B. Nakoula aka Mark Basseley Youssef

5

Metropolitan Detention Center.
Inmate # 56329-112.

6

180 N. Los Angeles St.
Los Angeles, CA 90012

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-

PROOF OF SERVICE
Case No. CV-12-8315-MWF (VBKx)

ER806

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 75 of 218

1  M. Cris Armenta (SBN 177403)
   THE ARMENTA LAW FIRM APC
2  11900 W. Olympic Boulevard, Suite 730
   Los Angeles, CA 90064
3  Tel: (310) 826-2826 x 108
   Facsimile: (310) 826-5456
4  Email: cris@crisarmenta.com

5  Credence E. Sol (SBN 219784)
   La Garenne
6  86300 Chauvigny
   France
7  Telephone: 06 74 90 22 08
   credence.sol@sol-law.com
8
   Attorneys for Plaintiff
9  Cindy Lee Garcia

10             UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  CINDY LEE GARCIA, an              Case No. CV12-8315-
    individual,                       MWF(VBKx)
13
                                      **PLAINTIFF'S NOTICE OF**
14              Plaintiff,            **REQUEST UNDER CENTRAL**
                                      **DISTRICT LOCAL RULE 7-8**
15  vs.                              **TO CROSS-EXAMINE**
                                      **DECLARANTS SUBMITTED**
16  NAKOULA BASSELEY                 **BY DEFENDANTS GOOGLE**
    NAKOULA, an individual also      **INC. AND YOUTUBE LLC**
17  known as SAM BACILE, MARK
    BASSELEY YOUSSEF,
18  ABANOB BASSELEY
    NAKOULA, MATTHEW
19  NEKOLA, AHMED HAMDY,
    AMAL NADA, DANIEL K.
20  CARESMAN, KRITBAG
    DIFRAT, SOBHI BUSHRA,
21  ROBERT BACILY, NICOLA
    BACILY, THOMAS J. TANAS,
22  ERWIN SALAMEH, YOUSSEFF
    M. BASSELEY, and/or MALID
23  AHLAWI; GOOGLE, INC., a
    Delaware Corporation;
24  YOUTUBE, LLC, a California
    limited liability company, and
25  DOES 1 through 10, inclusive.
26              Defendants.
27
28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 76 of 218

1    Pursuant to Local Rule 7-8 of the Central District of California, Plaintiff Cindy Lee Garcia

2  hereby requests that she be permitted to cross-examine Mark Basseley Youssef and Tim Alger.

3  Their declarations were submitted to the Court on November 28, 2012 at 6:24 p.m. PST, five days

4  before the scheduled hearing on December 3, 2012.   Despite the lack of fairness to Plaintiff due to

5  the delay of the Defendants, Plaintiff is willing to cross-examine both of these declarants on

6  Monday, December 3, 2012.   Since Mr. Alger will be present in Court, he will clearly be with the

7  subpoena power of the Court.  Since Mr. Youssef is residing four blocks away from the

8  courthouse at the Metropolitan Detention Center and is in the custody of the Bureau of Prisons, he

9  is also within the Court's grasp.

10    Plaintiff does not seek any further delay of this hearing and objects to any delay

11  occasioned by the untimely filing of Defendants.

12    Pursuant to Local Rule 7-8, Plaintiff requests that the Court enter the order described

13  therein. Since both declarants are within the Court's subpoena power, the Defendants may not

14  object to the Court's order under this Rule.

Dated: November 29, 2012          THE ARMENTA LAW FIRM, A.P.C.

By: _____

M. Cris Armenta
Attorneys for Plaintiff
Cindy Lee Garcia

2

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 77 of 218

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**
    I am employed in the County of Los Angeles, State of California.  I am over

the age of eighteen years and not a party to the within action.  My business address

is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

    On November 29, 2012 I served the following document(s) described as:

**PLAINTIFF'S NOTICE OF REQUEST UNDER CENTRAL DISTRICT
LOCAL RULE 7-8 TO CROSS-EXAMINE DECLARANTS SUBMITTED BY
DEFENDANTS GOOGLE INC. AND YOUTUBE LLC**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes
addressed as follows:

**Timothy L. Alger**
**Perkins Coie LLP**
**3150 Porter Drive**
**Palo Alto, CA 94304-1212**
**(by mail and courtesy email)**

**Nakoula B. Nakoula aka**
**Mark Basseley Youssef**
**Metropolitan Detention Center**
**Inmate #56329-112**
**180 N. Los Angeles St.**
**Los Angeles, CA 90012**
**(by mail only)**

    *BY MAIL:* I am "readily familiar" with the firm's practice of collection and processing
correspondence for mailing with the United States Postal Service.  Under that practice, it
would be deposited with the United States Postal Service that same day in the ordinary
course of business.  Such envelope(s) were placed for collection and mailing with postage
thereon fully prepaid at Los Angeles, California, on that same day following ordinary
business practices.  (C.C.P. § 1013 (a) and 1013a(3))

    Executed on November 29, 2012 in Los Angeles, California.

_____
Heather Rowland

1
**PROOF OF SERVICE**

ER809

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 78 of 218

1   Timothy L. Alger (SBN 160303)
    TAlger@perkinscoie.com
2   PERKINS COIE LLP
    3150 Porter Drive
3   Palo Alto, CA 94304-1212
    Telephone: 650.838.4300
4   Facsimile: 650.838.4350

5   Sunita Bali (SBN 274108)
    SBali@perkinscoie.com
6   PERKINS COIE LLP
    1888 Century Park E., Suite 1700
7   Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
8   Facsimile: 310.788.3399

9   Attorneys for Defendant
    Google Inc. and YouTube, LLC
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

14  CINDY LEE GARCIA, an individual,   | Case No. CV-12-8315-MWF (VBKx)

15              Plaintiff,             | Assigned to the Honorable Michael W.
                                       | Fitzgerald
16      v.
                                       | OBJECTIONS OF GOOGLE INC.
17  NAKOULA BASSELEY NAKOULA,          | AND YOUTUBE, LLC TO
    an individual also known as SAM    | PLAINTIFF'S NOTICE OF REQUEST
18  BACILE, MARK BASSELEY              | UNDER CENTRAL DISTRICT
    YOUSSEF, ABANOB BASSELEY           | LOCAL RULE 7-8 TO CROSS-
19  NAKOULA, MATTHEW NEKOLA,           | EXAMINE DECLARANTS
    AHMED HAMDY, AMAL NADA,
20  DANIEL K. CARESMAN, KRITBAG        | Date:      December 3, 2012
    DIFRAT, SOBHI BUSHRA, ROBERT       | Time:      10:00 a.m.
21  BACILY, NICOLA BACILY,             | Courtroom: 1600
    THOMAS J. TANAS, ERWIN
22  SALAMEH, YOUSSEFF M.
    BASSELEY, and/or MALID
23  AHLAWI; GOOGLE, INC., a
    Delaware Corporation; YOUTUBE,
24  LLC, a California limited liability
    company, and DOES 1 through 10,
25  inclusive,

26              Defendants.

27

28

41063-0244/LEGAL25262524.2

OBJECTIONS TO PLAINTIFF'S REQUEST
FOR CROSS-EXAMINATION
Case No. CV-12-8315-MWF (VBKx)

ER810

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 79 of 218

Defendants Google Inc. and YouTube, LLC (collectively the "YouTube Defendants") hereby object to Plaintiff Cindy Lee Garcia's Notice of Request Under Central District Local Rule 7-8 to Cross-Examine Declarants Submitted by Defendants Google Inc. and YouTube, LLC. [Dkt. No. 35.]

## I.   ARGUMENT

### A.   Timothy L. Alger

There is no justification for cross-examination of Timothy L. Alger, the YouTube Defendants' lead attorney in this matter. Examining opposing counsel in connection with pending litigation is disfavored. "The practice of forcing trial counsel to testify as a witness . . . has long been discouraged, and recognized as disrupting the adversarial nature of our judicial system." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (internal citations omitted) (quoting *Hickman v. Taylor*, 329 U.S. 495, 513 (1947) (stating that such examinations cause "the standards of the profession [to] suffer")). Because of the potential for abuse, the examination of an opponent's attorney is permitted in rare circumstances, and only after it is shown by the requesting party to be both proper and necessary. *American Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995). "Courts have reached this conclusion even where it is clear that the attorney is a witness to relevant, nonprivileged events and/or conversations." *Id.*

The Eighth Circuit articulated a test that has been used by courts throughout the nation, including by courts within this Circuit, limiting depositions of opposing counsel to those rare situations where: (1) no other means exist to obtain the information, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. *Shelton*, 805 F.2d at 1327; *see also Doubleday v. Ruh*, 149 F.R.D. 601, 613 (E.D. Cal. 1993) (noting the frequency with which this test is applied).

OBJECTIONS TO PLAINTIFF'S REQUEST
FOR CROSS-EXAMINATION
Case No. CV-12-8315-MWF (VBKx)

ER811

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 80 of 218

1    Plaintiff cannot meet these standards, and she does not even attempt to do so
2 in her Notice.
3    First, there are alternative ways to obtain the information in Mr. Alger's
4 declaration. Plaintiff does not identify what information she is seeking to obtain by
5 cross-examining Mr. Alger, but her counsel has stated, both in communications
6 with Mr. Alger and to various public media outlets, that Plaintiff challenges the
7 authenticity of the Personal Release and Cast Deal Memo ("Release") signed by
8 Plaintiff, in which she assigns "all rights necessary for the development, production
9 and exploitation of the Motion Picture, whether denominated copyrights,
10 performance rights, or publicity rights . . ." (Declaration of Timothy L. Alger [Dkt.
11 No. 34] ¶ 7.)
12    Any examination regarding the authenticity of the Release, however, is best
13 directed to Plaintiff herself, who appears to have signed the Release and included in
14 it her personal phone number and Social Security number, and to Defendant
15 Youssef or others who worked on the film and witnessed Plaintiff's signing of the
16 Release. Mr. Alger has no personal knowledge about the authenticity of the
17 Release. The primary purpose behind Mr. Alger's declaration was to explain why
18 the release was submitted to the Court at this time, and how it came into Mr.
19 Alger's possession. (Alger Decl. ¶ 4.)
20    Second, Plaintiff's failure to identify any information she hopes to obtain by
21 cross-examining Mr. Alger makes it impossible for the Court to make a finding that
22 it is "relevant and nonprivileged." Whenever opposing counsel in litigation is
23 subject to examination, there is a substantial risk that the questioning will cross into
24 privileged territory, imposing substantial burden on the litigants and the Court. As
25 the *Shelton* court observed:
26
27        Taking the deposition of opposing counsel not only
         disrupts the adversarial system and lowers the standards
28        of the profession, but it also adds to the already
         burdensome time and costs of litigation. It is not hard to

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 81 of 218

1  imagine additional pretrial delays to resolve work-product
2  and attorney-client objections, as well as delays to resolve
   collateral issues raised by the attorney's testimony.
3  Finally, the practice of deposing opposing counsel
   detracts from the quality of client representation. Counsel
4  should be free to devote his or her time and efforts to
   preparing the client's case without the fear of being
5  interrogated by his or her opponent. Moreover, the
   'chilling effect' that such practice will have on the
6  truthful communications from the client to the attorney is
   obvious.

7  *Shelton*, 805 F.3d at 1327.

8      Any questioning of Mr. Alger beyond the facts already stated under oath in

9  his declaration will undoubtedly delve into subject matter protected by the work

10  product doctrine and/or attorney client privilege, which are not the proper subject of

11  cross-examination.

12      Third, Plaintiff has failed to establish that *any* information contained in Mr.

13  Alger's declaration is crucial to the preparation of the case. Obtaining further detail

14  through cross-examination about the timing of the submission to the Court, which

15  was the primary purpose of Mr. Alger's declaration, is by no means crucial to

16  Plaintiff's preparation of her case. Witness examination regarding the authenticity

17  of the Release, which might, indeed, go to the heart of Plaintiff's case, should

18  involve those who worked on the film, including Plaintiff, Mr. Youssef, and

19  others—not the YouTube Defendants' counsel.

20      **B.    Mark Basseley Youssef**

21      The YouTube Defendants take no position regarding Plaintiff's request to

22  cross-examine Mark Basseley Youssef. However, as explained in Mr. Alger's

23  declaration, Mr. Youssef is currently detained at the Metropolitan Detention

24  Facility ("MDC") in downtown Los Angeles. He is in the Special Housing Unit at

25  MDC and is segregated from the main population. Due to Mr. Youssef's detention,

26  he is not "reasonably available" to the YouTube Defendants, though he may be

27  otherwise available to the Court. *See* L.R. 7-8. Notwithstanding Mr. Youssef's

28  availability, the Court should consider his declaration and the Release attached as

41063-0244/LEGAL25262524.2          -3-          OBJECTIONS TO PLAINTIFF'S REQUEST
                                                 FOR CROSS-EXAMINATION
                                                 Case No. CV-12-8315-MWF (VBKx)

ER813

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 82 of 218

1  Exhibit 1, as it is material to the Court's consideration of Plaintiff's Motion for

2  Preliminary Injunction.

3                          **II.    CONCLUSION**

4          For the foregoing reasons, Plaintiff's request for cross-examination should be

5  denied.

6

7  DATED:  November 30, 2012                    PERKINS COIE LLP

8

9                                               By:  /s/ Timothy L. Alger
                                                      Timothy L. Alger
10
                                                Attorneys for Defendants
11                                              Google Inc. and YouTube, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 83 of 218

1

## PROOF OF SERVICE

2

3 I, Pamela Villeral, declare,

4      I am employed in the City of Los Angeles, County of Los Angeles, State of

5 California. I am over the age of 18 years and not a party to the within action. My

6 business address is 1888 Century Park East, Suite 1700, Los Angeles, California

7 90067-1721. On the date signed below, I served the documents named below on

8 the parties in this action as follows:

9
10 **OBJECTIONS OF GOOGLE INC. AND YOUTUBE, LLC TO PLAINTIFF'S NOTICE OF REQUEST UNDER CENTRAL DISTRICT LOCAL RULE 7-8 TO CROSS-EXAMINE DECLARANTS**
11

12 Upon the parties named below as follows: (See attached service list.)

13

14 ☒ **(BY MAIL)** I caused the above referenced document(s) to be placed in an
15      envelope, with postage thereon fully prepaid, and placed in the United States
16      mail at Los Angeles, California. I am readily familiar with the practice of
         the firm for collection and processing of correspondence for mailing, said
17      practice being that in the ordinary course of business, mail is deposited in
18      the United States Postal Service the same day as it is placed for collection. I
         am aware that on motion of the party served, service is presumed invalid if
19      postal cancellation date or postage meter date is more than one day after date
         of deposit for mailing in affidavit.
20

21 ☒ (FEDERAL) I declare under penalty of perjury under the laws of the United
22      States of America the above it true and correct.

23 Executed on **November 30, 2012**, at Los Angeles, California.

24

25

26      _____
                Pamela Villeral
27

28

91004-0006/LEGAL24935853.1                            5                        PROOF OF SERVICE

Case No. CV-12-8315-MWF (VBKx)

ER815

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 84 of 218

1

## SERVICE LIST

2

3

**Defendant**

4

Nakoula B. Nakoula aka Mark Basseley Youssef

5

Metropolitan Detention Center.
Inmate # 56329-112.

6

180 N. Los Angeles St.
Los Angeles, CA 90012.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 85 of 218

1   M. Cris Armenta (SBN 177403)
    THE ARMENTA LAW FIRM APC
2   11900 W. Olympic Boulevard, Suite 730
    Los Angeles, CA 90064
3   Tel: (310) 826-2826 x 108
    Facsimile: (310) 826-5456
4   Email: cris@crisarmenta.com

5   Credence E. Sol (SBN 219784)
    La Garenne
6   86300 Chauvigny
    France
7   Tel: 06 74 90 22 08
    Email: credence.sol@sol-law.com
8
    Attorneys for Plaintiff
9   Cindy Lee Garcia

10            UNITED STATES DISTRICT COURT

11        FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   CINDY LEE GARCIA, an              Case No. CV12-8315-MWF(VBKx)
     individual,
13                                     **PLAINTIFF'S OBJECTION TO
                                       AND REQUEST TO STRIKE
14              Plaintiff,             DECLARATIONS OF TIM
                                       ALGER AND MARK BASSELEY
15   vs.                              YOUSSEF; DECLARATIONS OF
                                       M. CRIS ARMENTA, GAYLORD
16   NAKOULA BASSELEY                  FLYNN, CINDY LEE GARCIA
     NAKOULA, an individual also       AND JIM BLANCO**
17   known as SAM BACILE, MARK
     BASSELEY YOUSSEF,
18   ABANOB BASSELEY
     NAKOULA, MATTHEW
19   NEKOLA, AHMED HAMDY,
     AMAL NADA, DANIEL K.
20   CARESMAN, KRITBAG
     DIFRAT, SOBHI BUSHRA,
21   ROBERT BACILY, NICOLA
     BACILY, THOMAS J. TANAS,
22   ERWIN SALAMEH, YOUSSEFF
     M. BASSELEY, and/or MALID
23   AHLAWI; GOOGLE, INC., a
     Delaware Corporation;
24   YOUTUBE, LLC, a California
     limited liability company, and
25   DOES 1 through 10, inclusive.

26              Defendants.

27

28
                                    1
                    PLAINTIFF'S OBJECTION TO DECLARATIONS OF TIM ALGER AND MARK BASSELEY NAKOULA
                                                                          CV 12 8315 (VBKx)

ER817

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 86 of 218

1    Plaintiff Cindy Lee Garcia hereby objects to and requests the Court to strike

2    the Declarations of Tim Alger and Mark Basseley Youssef filed on November 28,

3    2012, only *three business days* prior to the hearing on the Motion for Preliminary

4    Injunction set for December 3, 2012, and which rely entirely on documents which,

5    were they genuine (which Plaintiff can prove are *not*), have been available since

6    2011.[1]  The documents are a forgery, according to a credible forensic document

7    examiner.  See ¶ 8, below. The grounds for the objection are as follows:

8        1.    Defendants Have Neither Sought Nor Been Granted Leave to File Late

9    Evidence, Which Could Have Been Filed Timely, In Violation of F.R.C.P. 6(b),

10    Local Rule 7-9 and this Court's Order Dated October 18, 2012.  Defendants

11    YouTube, LLC, and Google, Inc., neither sought nor obtained leave from this Court

12    to file new "evidence" (specifically, a copyright release that all Defendants now

13    claim that Plaintiff signed in *2011*) three business days before the scheduled

14    hearing.  Federal Rule of Civil Procedure 6(b) requires that "[w]hen an act may or

15    must be done within a specified time," a party must file a "motion … after the time

16    has expired if the party failed to act because of excusable neglect."  The court may

17    properly exclude untimely evidence when a party fails to submit that evidence

18    pursuant to a motion, as Rule 6(b) expressly requires. Lujan v. Nat'l Wildlife Fed'n,

19    497 U.S. 871, 895-98, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ("Perhaps it is true

20    that the District Court could have overcome all the obstacles we have described—

21    apparent lack of a motion, of a showing, and of excusable neglect—to admit the

22    affidavits at issue here. But the proposition that it was compelled to receive them—

23    that it was an abuse of discretion to reject them—cannot be accepted"); see also

24    Fleischer Studios, Inc. v. A.V.E.L.A., Inc. 654 F.3d 958, 966 (9th Cir. 2011)

25    (upholding district court's exclusion of evidence filed late, without any leave from

26

27    [1]   Although this Court initially set the hearing for November 19, 2012, it was
delayed for two weeks at the request of Defendants YouTube, LLC, and Google,
28    Inc., because lead defense counsel indicated that he was not available on that date.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 87 of 218

1    the court).  Pursuant to the Court's Minute Order dated October 18, 2012,

2    Defendants' opposition and any supporting evidence was due on October 29, 2012.

3    Local Rule 7-9 requires that the opposing party submit all evidence within the time

4    prescribed by the rules of the Court.  Defendants, fully aware of the issues involved

5    in this case ever since Plaintiff filed her original case in California state court on

6    September 19, 2012, have had four weeks to assemble their evidence, and clearly

7    have ample resources to employ counsel and investigators to do so.  Lead trial

8    counsel Tim Alger admits that on November 16, 2012, he requested a copy of the

9    documents that Google and YouTube now submit.  Oddly, however, between

10   November 16, 2012, and November 28, 2012, neither Google nor YouTube (nor

11   their new ally, Defendant Youssef[2]) ever filed an *ex parte* application or even

12   requested that Plaintiff's counsel stipulate to Defendants filing evidence late,

13   obtaining a continuance, or conducting briefing on their "new" evidence, despite

14   having had ample time and opportunity to do any of these things.  This late filing

15   shows Defendants' blatant disregard for the rules of this Court, and nothing short of

16   sandbagging Plaintiff, whom Defendants know is a woman of extremely modest

17   means and has virtually no resources to redress Defendants' misconduct.

18        2.    Plaintiff Has No Opportunity to Cross-Examine the Declarants: Under

19

20   ─────────────────────

[2]   It is unclear why Defendant Youssef has suddenly decided to "work with"
21   Google and YouTube and join forces, to the point that Google and YouTube's
     lawyer apparently is drafting Mr. Youssef's declarations.  One possible explanation
22   is that Mr. Youssef was sentenced to death just days ago by an Egyptian court for
     his actions in making the film at issue in this case.  *See* Declaration of M. Cris
23   Armenta ("Armenta Decl."), ¶ 6, and Ex. D thereto ("Innocence of Muslims
     Participants Sentenced to Death in Egypt," *The Guardian*, Nov. 28, 2012, *available*
24   *at* http://www.guardian.co.uk/world/2012/nov/28/innocence-of-muslims-death-
     sentence).  This media report is not hearsay, as it is offered merely to show Mr.
25   Youssef's state of mind, *see* FED. R. EVID. 803(3); even if it is hearsay not fitting
     within an exception to the hearsay rule, this Court is entitled to consider it on a
26   motion for preliminary injunction. See Flynt Distrib. Co., 734 F.2d at 1394 (9th Cir.
     1984); <u>see also</u> <u>V.L. v. Wagner</u>, 669 F.Supp.2d 1106, 1115 n.8 (N.D. Cal. 2009)
27   ("[O]n a motion for a preliminary injunction, the Court may consider inadmissible
     evidence, giving such evidence appropriate weight depending on the competence,
28   personal knowledge, and credibility of the declarants.").

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 88 of 218

1   Local Rule 7-8, Plaintiff is entitled to request, 14 days before the hearing, the right

2   to cross-examine a declarant.  Having learned only three business days before the

3   hearing that Google and YouTube have now joined forces with Mr. Youssef and that

4   Defendants are relying on forged documents,[3] Plaintiff has little opportunity to

5   request the opportunity to cross-examine Defendant Youssef and Mr. Alger.[4]   As a

6   matter of fairness, and because the late-filed evidence may render Local Rule 7-8 a

7   dead letter, Plaintiff respectfully requests that this Court disregard Defendants' late-

8   filed declarations and exhibits in their entirety.  In the alternative, Plaintiff requests

9   that this Court permit Plaintiff's counsel to cross-examine Defendant Youssef and

10   Mr. Alger as requested in her separately submitted Notice of Request.

11       3.     Objections to Mr. Alger's Declaration:

| Paragraph 2, first sentence. | Hearsay (FED. R. EVID. 802), lack of personal knowledge (FED. R. EVID. 602). Mr. Alger is not competent to testify as to what was "completed and signed" by Plaintiff.  Moreover, because it was Defendant Youssef, an individual convicted of felony fraud, who provided Mr. Alger's purported "knowledge" of whether or not Plaintiff executed the exhibit, this Court should reject all of Mr. Alger's |
| --- | --- |

---

[3]    *See* Declarations of M. Cris Armenta, Cindy Lee Garcia and Jim Blanco.

[4]    Plaintiff filed a request under the local rules to cross-examine Mark Basseley Youssef.  Mr. Youssef is still housed at the Los Angeles Metropolitan Detention Center.  The objection to the Notice of Request filed today does not properly assert the bases permissible in the Rule 7-8.

4
PLAINTIFF'S OBJECTION TO DECLARATIONS OF TIM ALGER AND MARK BASSELEY NAKOULA
CV 12 8315(VBKx)

ER820

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 89 of 218

| | |
|---|---|
| | statements that are grounded on Defendant Youssef's statements and representations as not credible. *See* FED. R. EVID. 609(2) (witness's character for truthfulness by evidence of a criminal conviction is appropriately attacked where crime of conviction involved a dishonest act or false statement); QBAS Co. v. C. Walters Intercoastal Corp., 2010 U.S. DIST. LEXIS 143945, *28 (C.D. Cal., Dec. 16, 2010), quoting New England Braiding v. A.W. Chesterton Co., 970 F.2d 878, 884 (Fed. App. 1992) ("A credibility determination is well within the court's province when ruling on a preliminary injunction motion."). |
| Paragraph 3. | Lack of personal knowledge (FED. R. EVID. 602); Mr. Alger is not competent to testify as to what is the "original release" because he lacks personal knowledge. Moreover, because it was Defendant Youssef, an individual convicted of felony fraud, who provided Mr. Alger's purported "knowledge" of the contents of the |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 90 of 218

| | |
|---|---|
| | "original release," this Court should reject all of Mr. Alger's statements that are grounded on Defendant Youssef's statements and representations as not credible. *See* FED. R. EVID. 609(2) (witness's character for truthfulness by evidence of a criminal conviction is appropriately attacked where crime of conviction involved a dishonest act or false statement); QBAS Co. v. C. Walters Intercoastal Corp., 2010 U.S. DIST. LEXIS 143945, *28 (C.D. Cal., Dec. 16, 2010), quoting New England Braiding v. A.W. Chesterton Co., 970 F.2d 878, 884 (Fed. App. 1992) ("A credibility determination is well within the court's province when ruling on a preliminary injunction motion."). |
| Paragraph 5, first sentence. | Lack of personal knowledge (FED. R. EVID. 602); Mr. Alger is not competent to testify as to what Mr. Seiden did or did not do.  Notably, there is no declaration from Mr. Seiden, nor any declaration from any member of Mr. Youssef's "family." |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 91 of 218

| | |
|---|---|
| | Moreover, because it was Defendant Youssef, an individual convicted of felony fraud, who provided Mr. Alger's purported "knowledge" of the activities of Mr. Seiden and/or Mr. Youssef's "family," this Court should reject all of Mr. Alger's statements that are grounded on Defendant Youssef's statements and representations as not credible. *See* FED. R. EVID. 609(2) (witness's character for truthfulness by evidence of a criminal conviction is appropriately attacked where crime of conviction involved a dishonest act or false statement); QBAS Co. v. C. Walters Intercoastal Corp., 2010 U.S. DIST. LEXIS 143945, *28 (C.D. Cal., Dec. 16, 2010), quoting New England Braiding v. A.W. Chesterton Co., 970 F.2d 878, 884 (Fed. App. 1992) ("A credibility determination is well within the court's province when ruling on a preliminary injunction motion."). |
| Paragraph 5, second sentence. | Irrelevant (FED. R. EVID. 401).  Ms. |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 92 of 218

| | |
|---|---|
| | Garcia's current telephone number has no bearing on what her telephone number is in 2011, or more specifically, on August 9, 2011, the date on which Defendants claim that Plaintiff signed the "release." |
| Paragraph 5, third and fourth sentences. | What an investigator purportedly told Mr. Alger is hearsay. FED. R. EVID. 802; X17, Inc. v. Lavandeira, 2007 U.S. Dist. LEXIS 17279, at *8 (C.D. Cal. 2007) (rejecting hearsay evidence and unauthenticated documents at preliminary injunction hearing). |
| Paragraph 9, in its entirety. | Best evidence rule (FED. R. EVID. 1002), improper argument. Mr. Alger's recitation of the release is inadmissible. |
| Paragraph 10. | Hearsay (FED. R. EVID. 802), speculation. Mr. Alger's testimony as to what Mr. Youssef would say, if called as a witness, is hearsay and speculation. See X17, Inc. v. Lavandeira, 2007 U.S. Dist. LEXIS 17279, at *8 (C.D. Cal. 2007) (rejecting hearsay evidence and unauthenticated documents at |

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 93 of 218

| | | |
|---|---|---|
| 1 | | preliminary injunction hearing). |
| 2 | Paragraph 11. | Hearsay (FED. R. EVID. 802), speculation. Mr. Alger's testimony as to what Mr. Youssef would say, if called as a witness, is hearsay and speculation. See X17, Inc. v. Lavandeira, 2007 U.S. Dist. LEXIS 17279, at *8 (C.D. Cal. 2007) (rejecting hearsay evidence and unauthenticated documents at preliminary injunction hearing). |
| 12 | Paragraphs 13-15. | Untimely. Mr. Alger had an opportunity already to rebut Plaintiff's evidence, or to seek leave to do so, and failed to do either. The untimely attack on Plaintiff's declarations is improper, and also materially false, as shown by the Declarations of attorneys M. Cris Armenta, Credence Sol, David Hardy, and Jason Armstrong. FED. R. CIV. PROC. 6(b), C.D. Cal. Local Rule 7-9. |

    4.    Refusal to Permit Inspection of Original. As demonstrated by the
emails exchanged by counsel. Plaintiff's lead counsel asked Mr. Alger *twice* for an
opportunity to inspect the purported "release" documents, including both the
original (which would be preferred by any competent handwriting analysis expert)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 94 of 218

1   and the purported exhibits to the "release," none of which Plaintiff's counsel has yet

2   seen. *See* Armenta Decl. ¶¶ 2-3, and Exhibits A and B thereto. Mr. Alger refused to

3   accede to those requests. Now, it appears that Mr. Alger has the original in his

4   possession. Yet, Plaintiff has still not inspected the original. *See* Armenta Decl.

5   ¶¶ 2-3, and Exhibits A and B thereto.

6        5.   <u>The Documents Are So Incomplete As To Be Entirely Unreliable:</u>

7        a.   The copy of the "Cast Deal Memo" has the party to the purported

8             agreement crossed out before the acronym "LLC" on the second line.

9             Therefore, it is impossible to discern the identity of the party to that

10            portion of the agreement. Declaration of Mark Basseley Youssef

11            ("Youssef Decl."), Ex. 1.

12       b.   The "Cast Deal Memo" also is unsigned in the space on page 2

13            allocated for "Producer." Youssef Decl., Ex. 1. This omission strongly

14            suggests that the purported "Cast Deal Memo," assuming that it was

15            not fabricated for the purposes of litigation, in reality is merely an

16            unexecuted draft. The "Cast Deal Memo" contains other significant

17            omissions, including: (i) the lack of a signature even purporting to be

18            that of Cindy Lee Garcia on this document (the only document

19            purporting to create a "work for hire" relationship, as the Copyright Act

20            mandates in order for Ms. Garcia to have effectively assigned her

21            copyright interest); (2) the lack of a signature line for Ms. Garcia's

22            signature; (3) the lack of language in the "Cast Deal Memo"

23            incorporating it by reference into the "Personal Release" (the only

24            document of the two purporting to exhibit Ms. Garcia's signature); or

25            (4) the lack of any other reference to the "Personal Release." Youssef

26            Decl., Ex. 1.

27       c.   With respect to the document titled "Personal Release," the name of the

28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 95 of 218

1    production company is redacted or concealed, rendering it impossible
2    to discern the identity of the production company. Youssef Decl., Ex.
3    1.
4    d. In the first full paragraph of the document titled "Personal Release,"
5    there is no title inserted for the "Picture," and therefore, it is impossible
6    to discern to what "Picture" this document refers. Youssef Decl., Ex. 1.
7    e. Finally, on the bottom space below the words "AGREED AND
8    ACCEPTED TO" in the document titled "Personal Release," there is no
9    signature, again suggesting that this document, like the "Cast Deal
10   Memo," is nothing more than an unexecuted draft, assuming that it was
11   not fabricated for the purposes of litigation. Youssef Decl., Ex. 1.
12   6.   Other Indicia of Unreliability: The documents bear other indicia of
13   unreliability. In the "Personal Release," the top handwritten line refers to the title of
14   the project as "Desert Warriors." Youssef Decl., Ex. 1. Notably, at the time Cindy
15   Lee Garcia and the rest of her duped castmates appeared in the film, its working title
16   was "Desert Warrior," *not* "Desert Warriors." Declaration of Gaylord Flynn
17   ("Flynn Decl."), ¶ 2. However, after this case became the subject of a media
18   maelstrom, some media misreported the name of the film as "Desert Warriors,"
19   instead of its actual name, "Desert Warrior." It is hard to imagine that at the time
20   the film was actually made, those involved in the legal paperwork and production of
21   the film would get the name of the film wrong. It seems more reasonable to
22   conclude that someone, *after* the media storm began, created these documents, and
23   made the same mistake as the media. This conclusion is bolstered by the fact that
24   both of the documents that Defendants have submitted apparently purport to refer to
25   Mr. Youssef as "Sam Bessi (matthew mtta)." Youssef Decl., Ex. 1. However, Mr.
26   Youssef has never used the alias "Sam Bessi" (*see* Armenta Decl., ¶ 4, Ex. C, at 6:6-
27   16, 7:13-22 (listing the aliases that Mr. Youssef has used as including "Nakoula

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 96 of 218

1    Basseley Nakoula," "Mark Basseley Youssef," "Sam Bassil, "Sam Bassiel," and

2    "Sam Bacile")), nor do Defendants provide any other explanation as to whom either

3    "Sam Bessi" nor "matthew mtta" are.  Accordingly, because the documents

4    apparently purport to transfer Ms. Garcia's copyright to a non-existent person, it is

5    void.  See Cal. Civ. Code § 1558 ("It is essential to the validity of a contract, not

6    only that the parties should exist, but that it should be possible to identify them");

7    see Westlye v. Look Sports, Inc. 17 Cal. App. 4th 1715, 1778 (1993 (refusing to

8    extend release to parties not identified in the ski liability release); Cisco v. Van Lew,

9    60 Cal. App. 2d 575 (1943 (court refusing contract because party not identified).

10        7.    Ms. Garcia's Castmate Also Has Disavowed the Authenticity of the

11   Purported Documents: Garcia's fellow cast members have sworn that they did not

12   sign papers like the ones Defendants have submitted.[5]  For example, actor Gaylord

13   Flynn, whose role was more substantial than that of Plaintiff, has submitted a sworn

14   declaration testifying that he reviewed both the purported "Personal Release" and

15   "Cast Deal Memo," that he was not presented with any such documents to sign, and

16   that if he had been presented with such documents, he would remember it.  Flynn

17   Decl. ¶ 2; see also Declaration of Dan Sutter, submitted in support of Plaintiff's Ex

18   Parte Application for Temporary Restraining Order, at ¶ 4.

19        8.    The Writing is a Forgery:  A credible forensic handwriting has

20   unequivocally that the handwriting is not that of Cindy Lee Garcia.  See

21   Declaration of James Blanco.[6]

22

23   _____

24   [5]    Of course, had Mr. Youssef and his agents required the cast to sign a
     "Personal Release" and/or "Cast Deal Memo," they would have required all cast
25   members (not just Plaintiff, whose role in the production and all Defendants have
     now minimized and belittled) to sign such agreements.

26   [6]    Mr. Blanco delivered his oral report to Plaintiff's counsel this morning,
     Friday, November 30, 2012, at 10:15 a.m.  As soon as counsel receives his written
27   report, it will be made immediately available to Defendants and the Court.

28

ER828

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 97 of 218

9.     This Court Should Disregard in Its Entirety the Declaration of Mr. Youssef. Mr. Youssef, who was convicted of bank fraud in 2010, is currently serving time for violating the conditions of his parole, for, significantly, *lying*. *See* Armenta Decl. ¶ 4, and Ex. C thereto, at 18:2-12. Mr. Alger, the lawyer for Mr. Youssef's allies Google and YouTube, apparently prepared Mr. Youssef's declaration, which he signed at the federal Metropolitan Detention Center. However, because Mr. Youssef is a convicted felon who committed a crime of dishonesty, Plaintiff respectfully requests that this Court reject his declaration in its entirety as not credible. *See* FED. R. EVID. 609(2) (witness's character for truthfulness by evidence of a criminal conviction is appropriately attacked where crime of conviction involved a dishonest act or false statement); QBAS Co. v. C. Walters Intercoastal Corp., 2010 U.S. DIST. LEXIS 143945, *28 (C.D. Cal., Dec. 16, 2010), quoting New England Braiding v. A.W. Chesterton Co., 970 F.2d 878, 884 (Fed. App. 1992) ("A credibility determination is well within the court's province when ruling on a preliminary injunction motion."). Indeed, if this Court were to adjudge Mr. Youssef not credible, it will be the second Court in this district to do so this month. *See* Armenta Decl. ¶ 4, and Ex. C thereto, at 18:2-12. In other words, this Court should completely disbelieve Mr. Youssef's declaration and averment that, notwithstanding his many previous lies, he now suddenly is telling the truth. His declaration should be stricken in its entirety.

10.     Even if the Documents Are Genuine, Which Plaintiff Can Prove They Are Not, They Are Void, Because It is Undisputed That They Were Procured by Fraud: Based on the evidence before the Court, "Personal Release" and "Cast Deal Memo," even if genuine, were procured by fraud, as already established by the Declaration of Cindy Lee Garcia.[7] Mr. Youssef used a false name and tricked the

---

[7]     Plaintiff expects that, if this Court grants her request to cross-examine Mr. Youssef, he will admit, as recently reported by the *New York Times*, that he and his agents (including his son, who apparently is one of the individuals who has posted

PLAINTIFF'S OBJECTION TO DECLARATIONS OF TIM ALGER AND MARK BASSELEY NAKOULA
CV 12 8315 (VBKx

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 98 of 218

1  cast and crew into believing they were participating in an innocuous historical
2  adventure when, in fact, at all times he intended to use the footage to create a piece
3  of anti-religious hate speech.  It is established law in the Ninth Circuit that even if a
4  copyright holder (in this case, an actor) impliedly grants a license to a producer to
5  use her copyrighted content (in this case, Ms. Garcia's performance in "Desert
6  Warrior"), if the scope of that license is exceeded, then the use is unauthorized, the
7  license is invalidated and the original copyright holder's copyright claim against the
8  producer is restored.  Oddo v. Ries, 743 F.2d 630, 633 (9th Cir. 1984); see also
9  Gilliam v. American Broadcasting Cos., 538 F.2d 14, 19-21 (2d Cir. 1976) (license
10 to use underlying work in a particular derivative work does not permit licensee to
11 use underlying work in any other derivative work).

12
13 Dated: November 30, 2012                    THE ARMENTA LAW FIRM, A.P.C.
14
15                                            By: _____
16                                                    M. Cris Armenta
                                                     **Attorneys for Plaintiff**
17                                                   **Cindy Lee Garcia**
18
19
20
21
22
23
24
25 the trailer on YouTube) knew that the film would put the actors at substantial risk,
   and therefore misled them as to the nature of the project. *See* Armenta Decl., ¶ 7,
26 Ex. E ("From the Man Who Insulted Mohammed, No Regret," *New York Times*,
   Nov. 25, 2012).  This media report is not hearsay, as it embodies an admission of a
27 party opponent or his agent, *see* FED. R. EVID. 801(2); even if it is hearsay not fitting
   within an exception to the hearsay rule, this Court is entitled to consider it on a
28 motion for preliminary injunction.  See Flynt Distrib. Co., 734 F.2d at 1394; see also
   V.L., 669 F.Supp.2d at 1115 n.8.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 99 of 218

# DECLARATION

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 100 of 218

## DECLARATION OF M. CRIS ARMENTA

I, M. Cris Armenta, declare:

1.      I am an attorney licensed in the State of California and principal of the Armenta Law Firm, counsel of record for Plaintiff Cindy Lee Garcia in this action. I am a member in good standing before the State Bar of California, and admitted to practice before this Court. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      On Sunday, November 18, 2012, I received an email from Tim Alger in which he represented that Plaintiff signed a release, consisting of two documents, of her rights for the film that is the subject of this litigation. At the time, I was on vacation in Nevada with my two children for Thanksgiving week and not in the office nor at my home office. Attached as Exhibit A is a true and correct copy of Mr. Alger's email, including both attachments.

3.      The proffered documents were produced to me in .pdf form only. I immediately contacted my client, because the existence of these documents is inconsistent with her sworn declarations in this Court and inconsistent with the sworn statements of other actors that worked on the film. Based on my investigation on that Sunday of the Thanksgiving weekend, I advised Mr. Alger early on Monday morning, November 26, 2012, that my legal team had "serious doubts" as to the authenticity of the document. I asked: (1) that Mr. Alger inform us of the provenance or source of the proffered document; (2) that Mr. Alger provide the missing portions of the document that were either redacted or missing attachments; and (3) to inspect the original of the document. Mr. Alger informed me that he obtained the document from the criminal attorney representing Defendant Mark Youssef (a/k/a Nakoula Basseley Nakoula, Sam Bacile). Mr. Alger refused my other requests – to inspect the original and for the missing data or information,

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 101 of 218

1   and instead threatened to bring Rule 11 sanctions against my client and me.  I

2   informed Mr. Alger that my team was moving very expeditiously to examine the

3   document and that I would be in touch very soon once we were able to complete a

4   responsible analysis of the proffered document(s).  I immediately placed a telephone

5   call to Mr. Seiden, Defendant Youssef's criminal lawyer, to confirm Mr. Alger's

6   representations and to obtain any information possible about the provenance of the

7   document(s).  My email exchanges with Mr. Alger following November 19, 2012, a

8   are attached hereto as Exhibit B.

9        4.     The documents filed by Defendants contain certain indicia of

10   unreliability, which are set forth at length in Plaintiff's objection.  With respect to

11   one of those indicium, the discrepancy between references to "Sam Bessi (matthew

12   mtta)" and the aliases that Judge Christina Snyder of this Court has found Mr.

13   Youssef has used, I attach the transcript of Mr. Youssef's parole violation hearing

14   before Judge Snyder, dated November 7, 2012, as Exhibit C.

15        5.     On Wednesday, November 28, 2012, Plaintiff was able to gather the

16   financial resources to retain a handwriting expert, Jim Blanco.  Mr. Blanco delivered

17   his oral report to me this morning, at 10:15 a.m., on Friday, November 30, 2012 – to

18   the effect that none of the handwriting on the questioned documents belongs to

19   Cindy Lee Garcia.  As soon as I receive his written report, I will make it

20   immediately available to the Court and to the Defendants.

21        6.     According to media reports, this week an Egyptian court sentenced Mr.

22   Youssef, among others, to a sentence of death as a result of the film.  Attached as

23   Exhibit D is a true and correct copy of an article titled "Innocence of Muslims

24   Participants Sentenced to Death in Egypt," *The Guardian*, Nov. 28, 2012, *available*

25   *at* http://www.guardian.co.uk/world/2012/nov/28

26   /innocence-of-muslims-death-sentence).

27

28

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 102 of 218

7.  *The New York Times* recently reported that Mr. Youssef and his agents (including his son, who apparently is one of the individuals who has posted the trailer on YouTube) knew that the film would put the actors at substantial risk, and therefore misled them as to the nature of the project.  Attached as Exhibit E is an article titled, "From the Man Who Insulted Mohammed, No Regret," *The New York Times*, Nov. 25, 2012).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 30th day of November, 2012 at Bozeman, Montana.

M. Cris Armenta

ER834

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 103 of 218

# EXHIBIT A

## Cris Armenta

| | |
|---|---|
| **From:** | Alger, Timothy L. (Perkins Coie) <TAlger@perkinscoie.com> |
| **Sent:** | Sunday, November 18, 2012 2:39 PM |
| **To:** | Cris Armenta |
| **Subject:** | Garcia v. Nakoula et al |
| **Attachments:** | Garcia Cindy Lee-Releases (2) copy.pdf |

Hi Cris --

Your client executed a release of all claims and assignment of any rights under the Copyright Act on August 9, 2011.  A copy is attached.  We believe you should dismiss the action promptly, and I'll work with you to accomplish that.  I am traveling this evening and Monday but can be reached by cell phone at 650 223 3791.

Tim

**Timothy L. Alger | Perkins Coie LLP**
PARTNER
3150 Porter Drive  •  Palo Alto, California  94304
Four Embarcadero Center, Suite 2400  •  San Francisco, California  94111
PHONE: 650.838.4334  •  MOBILE: 650.223.3791  •  FAX: 650.838.4534
E-MAIL: TAlger@perkinscoie.com

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 104 of 218

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 105 of 218

## PERSONAL RELEASE

Production Company   __Desert Warriors__ r matthew mtta.

Address   __1040 Hamilton rd.__
__Durarte Ca. 91010__   Date __8/9/11__

Ladies and Gentlemen:

I, the undersigned, hereby grant permission to __Sam Bessi (matthew mtta)__
("Producer") to photograph me and to record my voice, performances, poses, acts, plays and appearances, and use
my picture, photograph, silhouette and other reproductions of my physical likeness and sound as part of the _____
__Oma Ronan__ tentatively entitled _____
_____ (the "Picture") and the unlimited distribution, advertising,
promotion, exhibition and exploitation of the Picture by any method or device now known or hereafter devised in which
the same may be used, and/or incorporated and/or exhibited and/or exploited.

I agree that I will not assert or maintain against you, your successors, assigns and licensees, any claim, action, suit or
demand of any kind or nature whatsoever, including but not limited to, those grounded upon invasion of privacy, rights
of publicity or other civil rights, or for any other reason in connection with your authorized use of my physical likeness
and sound in the Picture as herein provided. I hereby release you, your successors, assigns and licensees, and each
of them, from and against any and all claims, liabilities, demands, actions, causes of action(s), costs and expenses
whatsoever, at law or in equity, known or unknown, anticipated or unanticipated, which I ever had, now have, or may,
or shall hereafter have by reason, matter, cause or thing arising out of your use as herein provided.

I affirm that neither I, nor anyone acting for me, gave or agreed to give anything of value to any of your employees or
a representative of any television network, motion picture studio or production entity for arranging my appearance
on the Picture.

The undersigned understands that they will not be compensated for their appearance in the recording.

I have read the foregoing and fully understand the meaning and effect thereof and, intending to be legally bound, I
have signed this release.

Dated __8/9/11__                                    __Cindy Garcia__
                                                   Signature

                                                   _____
                                                   If a minor, Guardian's Signature

                                                   _____
                                                   Please Print Name

AGREED AND ACCEPTED TO                             _____
                                                   Address
                                                   _____

By_____                         __(661)817-3347__
                                                   Phone Number

Release #1

ER837

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 106 of 218

## Cast Deal Memo

This memo outlines terms of the agreement between *M.M.*
~~Mixed Productions~~ LLC. and *Cindy Garcia*
(hereinafter "Producer") related to the production of
~~Desert seeds~~ (hereinafter "Motion Picture.")

1. *Services:*

*Cindy Garcia* agrees to perform the services
outlined in Appendix A.

2. *Compensation:*

Subject to the rest of the terms of this agreement, and upon
satisfactory completion of the services outlined in Appendix
A, Producer agrees to compensate *Cindy Garcia*
at the rate and time designated in Appendix B.

3. *Employment Status:*  [Independent Contractor]

[Independent Contractor:  The parties agree that
*CG* is an independent contractor, who
is not required to work exclusively for Producer now or in
the future, and who, as a professional, is expected to
complete the assignment without supervision or training.  No
fringe benefits or overtime compensation will be provided and
the contractor is solely responsible for all income, self-
employment and other taxes due upon this income received in
conjunction with the services rendered under this agreement.
**The contractor is not entitled to collect unemployment
compensation under this agreement.**]

4. *Assignment of Rights*

[ *CG* assigns to producer all rights
necessary for the development, production and exploitation of
the Motion Picture, whether denominated copyrights,
performance rights, or publicity rights, including the right
to reasonable use of his/her name and likeness in conjunction
with the development, production and exploitation of the
Motion Picture, and waives any right to sue Producer over
such use.]

[ *CC* warrants to Producer that all

ER838

writing submitted for the Motion Picture is his own original
work.  The parties agree the script and all revisions of the
script of the film are "works made for hire" as defined under
article 101 of Title 17 of the U.S. Code.  If for any reason
the script should be determined to not be a "work made for
hire," _____ C G _____ assigns all rights he may have
to the work under U.S. and International copyright law to
Producer.

5. *Credits*:

Producer agrees to provide the following credits:
Sam    Bessi    (matthew matter)

_____    8/9/11
                                    Date

Social Security Number

563 - 15 - 2710
Address

Producer                           Date

Appendix A:

[Describe the services to be performed in plain English
including dates and times required to be available and any
equipment to be provided.]

[Examples:  actor playing (role); dates; times (or "as
needed"); related responsibilities. Writer; responsibilities
including revisions/turn around times between dates; Stunts/
effects...]

Appendix B:
Describe Compensation Rate

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 107 of 218

ER839

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 108 of 218

# EXHIBIT B

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 109 of 218

## Cris Armenta

| | |
|---|---|
| **From:** | Cris Armenta |
| **Sent:** | Monday, November 26, 2012 10:02 AM |
| **To:** | 'Alger, Timothy L. (Perkins Coie)' |
| **Cc:** | Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Sol, Credence (credence.sol@sol-law.com); Heather Rowland; sbali@perkinscoie.com |
| **Subject:** | RE: Garcia v. Nakoula et al |

Dear Tim:

Based on what we have learned from our own client and from others who worked on this film, we have serious doubts as to the authenticity of the document(s) you sent.  What do you offer as the provenance, or ability to authenticate, this document?  We can better analyze its authenticity if we know where and from whom Google obtained it.  We are examining the issue now and once you provide us with the purported origin of the document, will get back to you very soon.

Cris

**From:** Alger, Timothy L. (Perkins Coie) [mailto:TAlger@perkinscoie.com]
**Sent:** Sunday, November 18, 2012 2:39 PM
**To:** Cris Armenta
**Subject:** Garcia v. Nakoula et al

Hi Cris --

Your client executed a release of all claims and assignment of any rights under the Copyright Act on August 9, 2011. A copy is attached. We believe you should dismiss the action promptly, and I'll work with you to accomplish that.  I am traveling this evening and Monday but can be reached by cell phone at 650 223 3791.

Tim

**Timothy L. Alger | Perkins Coie LLP**
PARTNER
3150 Porter Drive  ·  Palo Alto, California  94304
Four Embarcadero Center, Suite 2400  ·  San Francisco, California  94111
PHONE: 650.838.4334  ·  MOBILE: 650.223.3791  ·  FAX: 650.838.4534
E-MAIL: TAlger@perkinscoie.com

---

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

1

**Cris Armenta**

| | |
|---|---|
| **From:** | Cris Armenta |
| **Sent:** | Monday, November 26, 2012 10:13 AM |
| **To:** | 'Alger, Timothy L. (Perkins Coie)' |
| **Cc:** | Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Sol, Credence (credence.sol@sol-law.com); Heather Rowland; sbali@perkinscoie.com |
| **Subject:** | RE: Garcia v. Nakoula et al |

In addition: (1) the second document you transmitted references attachments which we did not receive. Do you have those? And: (2) Do you have an original of these documents? If so, we would like to inspect them immediately.

Cris

---

**From:** Cris Armenta
**Sent:** Monday, November 26, 2012 10:02 AM
**To:** 'Alger, Timothy L. (Perkins Coie)'
**Cc:** Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Sol, Credence (credence.sol@sol-law.com); Heather Rowland; sbali@perkinscoie.com
**Subject:** RE: Garcia v. Nakoula et al

Dear Tim:

Based on what we have learned from our own client and from others who worked on this film, we have serious doubts as to the authenticity of the document(s) you sent. What do you offer as the provenance, or ability to authenticate, this document? We can better analyze its authenticity if we know where and from whom Google obtained it. We are examining the issue now and once you provide us with the purported origin of the document, will get back to you very soon.

Cris

---

**From:** Alger, Timothy L. (Perkins Coie) [mailto:TAlger@perkinscoie.com]
**Sent:** Sunday, November 18, 2012 2:39 PM
**To:** Cris Armenta
**Subject:** Garcia v. Nakoula et al

Hi Cris --

Your client executed a release of all claims and assignment of any rights under the Copyright Act on August 9, 2011. A copy is attached. We believe you should dismiss the action promptly, and I'll work with you to accomplish that. I am traveling this evening and Monday but can be reached by cell phone at 650 223 3791.

Tim

**Timothy L. Alger | Perkins Coie LLP**
PARTNER
3150 Porter Drive • Palo Alto, California 94304
Four Embarcadero Center, Suite 2400 • San Francisco, California 94111
PHONE: 650.838.4334 • MOBILE: 650.223.3791 • FAX: 650.838.4534
E-MAIL: TAlger@perkinscoie.com

1

ER842

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 111 of 218

ER843

**Cris Armenta**

| | |
|---|---|
| **From:** | Cris Armenta |
| **Sent:** | Monday, November 26, 2012 10:26 AM |
| **To:** | 'Alger, Timothy L. (Perkins Coie)' |
| **Cc:** | Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Sol, Credence (credence.sol@sol-law.com); Heather Rowland; Bali, Sunita  (Perkins Coie) |
| **Subject:** | RE: Garcia v. Nakoula et al |

Thank you for advising us on the first query.  Our client CANNOT confirm its authenticity.  We are not inclined or disinclined at this point.  We have had the document for 3 business days, one of which was the day before Thanksgiving, and I was on vacation all last week.  We will get back to you as soon as we can.

Thanks.

**From:** Alger, Timothy L. (Perkins Coie) [mailto:TAlger@perkinscoie.com]
**Sent:** Monday, November 26, 2012 10:08 AM
**To:** Cris Armenta
**Cc:** Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Sol, Credence (credence.sol@sol-law.com); Heather Rowland; Bali, Sunita (Perkins Coie)
**Subject:** Re: Garcia v. Nakoula et al

We obtained it from Mr. Nakoula's criminal counsel.  I would think your client would be able to confirm or deny its authenticity.  If you are not inclined to dismiss the matter, let me know this morning and I will file it with the court with appropriate authentication. It's been a full week since I provided this document to you.

**From:** Cris Armenta <cris@crisarmenta.com>
**Date:** Mon, 26 Nov 2012 10:01:59 -0800
**To:** TIMOTHY ALGER <talger@perkinscoie.com>
**Cc:** "Jason Armstrong (armstronglaw@me.com)" <armstronglaw@me.com>, "David Hardy (David.Hardy@DMCASolutions.com)" <David.Hardy@DMCASolutions.com>, "Sol, Credence (credence.sol@sol-law.com)" <credence.sol@sol-law.com>, Heather Rowland <heather@crisarmenta.com>, "Bali, Sunita (Perkins Coie)" <SBali@perkinscoie.com>
**Subject:** RE: Garcia v. Nakoula et al

Dear Tim:

    Based on what we have learned from our own client and from others who worked on this film, we have serious doubts as to the authenticity of the document(s) you sent.  What do you offer as the provenance, or ability to authenticate, this document?  We can better analyze its authenticity if we know where and from whom Google obtained it.  We are examining the issue now and once you provide us with the purported origin of the document, will get back to you very soon.

Cris

**From:** Alger, Timothy L. (Perkins Coie) [mailto:TAlger@perkinscoie.com]
**Sent:** Sunday, November 18, 2012 2:39 PM

1

ER844

**To:** Cris Armenta
**Subject:** Garcia v. Nakoula et al

Hi Cris --

Your client executed a release of all claims and assignment of any rights under the Copyright Act on August 9, 2011.  A copy is attached.  We believe you should dismiss the action promptly, and I'll work with you to accomplish that.  I am traveling this evening and Monday but can be reached by cell phone at 650 223 3791.

Tim

**Timothy L. Alger | Perkins Coie LLP**
PARTNER
3150 Porter Drive  •  Palo Alto, California  94304
Four Embarcadero Center, Suite 2400  •  San Francisco, California  94111
PHONE: 650.838.4334  •  MOBILE: 650 223.3791  •  FAX: 650.838.4534
E-MAIL: TAlger@perkinscoie.com

---

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 113 of 218

ER845

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 114 of 218

## Cris Armenta

| From: | Cris Armenta |
|---|---|
| Sent: | Monday, November 26, 2012 10:54 AM |
| To: | 'Alger, Timothy L. (Perkins Coie)' |
| Cc: | Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Sol, Credence (credence.sol@sol-law.com); Heather Rowland; Bali, Sunita (Perkins Coie) |
| Subject: | RE: Garcia v. Nakoula et al |

Dear Tim:

   We received the document(s) on the Sunday before Thanksgiving during a time when you informed us that you would not be available due to other commitments in Austin and I was out of state on vacation. I am sure you are cognizant that it is our duty and obligation to investigate the authenticity of the proffered document, especially in light of the fact that it is inconsistent with: (1) our client's recollection; (2) the recollections of other actors on the film; and (3) Mr. Seiden's previous direct representation to me.  Obviously, there are also major issues of fraud also involved. We cannot simply dismiss based on YOUR representation that this is Ms. Garcia's release.  You would do no different, I am sure.  We have asked for the original of the document and to inspect the original.  I am sure you are also aware that any competent examiner would want to examine the original.  Please furnish us with the original, and as soon as our investigation is complete, we will advise you of our decision.  Obviously, we are moving very quickly in order to have a decision before the hearing next week, so that the positions are clear and we can make a responsible recommendation to our client prior to the hearing.

   If you have any other information or can tell us how you intend to authenticate these document(s) or the missing portions of the documents (s) (both those that are redacted or crossed out or the missing attachments), that would likewise be helpful to an expedient analysis.

Cris

**From:** Alger, Timothy L. (Perkins Coie) [mailto:TAlger@perkinscoie.com]
**Sent:** Monday, November 26, 2012 10:28 AM
**To:** Cris Armenta
**Cc:** Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Sol, Credence (credence.sol@sol-law.com); Heather Rowland; Bali, Sunita (Perkins Coie)
**Subject:** Re: Garcia v. Nakoula et al

I think you're going to have to decide right now whether you want to challenge the authenticity of this document at the risk of Rule 11 sanctions and a damages claim under 17 USC 512(f), both of which my clients are prepared to pursue.  We've waited a full week to hear from you and are prepared to move forward in court now.

From: Cris Armenta <cris@crisarmenta.com>
Date: Mon, 26 Nov 2012 10:01:59 -0800
To: TIMOTHY ALGER <talger@perkinscoie.com>
Cc: "Jason Armstrong (armstronglaw@me.com)" <armstronglaw@me.com>, "David Hardy (David.Hardy@DMCASolutions.com)" <David.Hardy@DMCASolutions.com>, "Sol, Credence (credence.sol@sol-law.com)" <credence.sol@sol-law.com>, Heather Rowland <heather@crisarmenta.com>, "Bali, Sunita (Perkins Coie)" <SBali@perkinscoie.com>
Subject: RE: Garcia v. Nakoula et al

1

ER846

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 115 of 218

Dear Tim:

Based on what we have learned from our own client and from others who worked on this film, we have serious doubts as to the authenticity of the document(s) you sent.  What do you offer as the provenance, or ability to authenticate, this document? We can better analyze its authenticity if we know where and from whom Google obtained it.  We are examining the issue now and once you provide us with the purported origin of the document, will get back to you very soon.

Cris

**From:** Alger, Timothy L. (Perkins Coie) [mailto:TAlger@perkinscole.com]
**Sent:** Sunday, November 18, 2012 2:39 PM
**To:** Cris Armenta
**Subject:** Garcia v. Nakoula et al

Hi Cris --

Your client executed a release of all claims and assignment of any rights under the Copyright Act on August 9, 2011.  A copy is attached.  We believe you should dismiss the action promptly, and I'll work with you to accomplish that.  I am traveling this evening and Monday but can be reached by cell phone at 650 223 3791.

Tim

**Timothy L. Alger | Perkins Coie LLP**
PARTNER
3150 Porter Drive  ·  Palo Alto, California  94304
Four Embarcadero Center, Suite 2400  ·  San Francisco, California  94111
PHONE: 650.838.4334  ·  MOBILE: 650.223.3791  ·  FAX: 650.838.4534
E-MAIL: TAlger@perkinscole.com

---

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

2

ER847

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 116 of 218

## Cris Armenta

| | |
|---|---|
| **From:** | Alger, Timothy L. (Perkins Coie) <TAlger@perkinscoie.com> |
| **Sent:** | Monday, November 26, 2012 11:05 AM |
| **To:** | Cris Armenta |
| **Cc:** | Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Sol, Credence (credence.sol@sol-law.com); Heather Rowland; Bali, Sunita (Perkins Coie) |
| **Subject:** | Re: Garcia v. Nakoula et al |

I'll assume you are unwilling to voluntarily dismiss the action and will proceed accordingly.

**From:** Cris Armenta <cris@crisarmenta.com>
**Date:** Mon, 26 Nov 2012 10:53:43 -0800
**To:** TIMOTHY ALGER <talger@perkinscoie.com>
**Cc:** "Jason Armstrong (armstronglaw@me.com)" <armstronglaw@me.com>, "David Hardy (David.Hardy@DMCASolutions.com)" <David.Hardy@DMCASolutions.com>, "Sol, Credence (credence.sol@sol-law.com)" <credence.sol@sol-law.com>, Heather Rowland <heather@crisarmenta.com>, "Bali, Sunita (Perkins Coie)" <SBali@perkinscoie.com>
**Subject:** RE: Garcia v. Nakoula et al

Dear Tim:

    We received the document(s) on the Sunday before Thanksgiving during a time when you informed us that you would not be available due to other commitments in Austin and I was out of state on vacation. I am sure you are cognizant that it is our duty and obligation to investigate the authenticity of the proffered document, especially in light of the fact that it is inconsistent with: (1) our client's recollection; (2) the recollections of other actors on the film; and (3) Mr. Selden's previous direct representation to me. Obviously, there are also major issues of fraud also involved. We cannot simply dismiss based on YOUR representation that this is Ms. Garcia's release. You would do no different, I am sure. We have asked for the original of the document and to inspect the original. I am sure you are also aware that any competent examiner would want to examine the original. Please furnish us with the original, and as soon as our investigation is complete, we will advise you of our decision. Obviously, we are moving very quickly in order to have a decision before the hearing next week, so that the positions are clear and we can make a responsible recommendation to our client prior to the hearing.

    If you have any other information or can tell us how you intend to authenticate these document(s) or the missing portions of the documents (s) (both those that are redacted or crossed out or the missing attachments), that would likewise be helpful to an expedient analysis.

Cris

**From:** Alger, Timothy L. (Perkins Coie) [mailto:TAlger@perkinscoie.com]
**Sent:** Monday, November 26, 2012 10:28 AM
**To:** Cris Armenta
**Cc:** Jason Armstrong (armstronglaw@me.com); David Hardy (David.Hardy@DMCASolutions.com); Sol, Credence (credence.sol@sol-law.com); Heather Rowland; Bali, Sunita (Perkins Coie)
**Subject:** Re: Garcia v. Nakoula et al

1

ER848

I think you're going to have to decide right now whether you want to challenge the authenticity of this document at the risk of Rule 11 sanctions and a damages claim under 17 USC 512(f), both of which my clients are prepared to pursue. We've waited a full week to hear from you and are prepared to move forward in court now.

**From:** Cris Armenta <cris@crisarmenta.com>
**Date:** Mon, 26 Nov 2012 10:01:59 -0800
**To:** TIMOTHY ALGER <talger@perkinscoie.com>
**Cc:** "Jason Armstrong (armstronglaw@me.com)" <armstronglaw@me.com>, "David Hardy (David.Hardy@DMCASolutions.com)" <David.Hardy@DMCASolutions.com>, "Sol, Credence (credence.sol@sol-law.com)" <credence.sol@sol-law.com>, Heather Rowland <heather@crisarmenta.com>, "Bali, Sunita (Perkins Coie)" <SBali@perkinscoie.com>
**Subject:** RE: Garcia v. Nakoula et al

Dear Tim:

Based on what we have learned from our own client and from others who worked on this film, we have serious doubts as to the authenticity of the document(s) you sent. What do you offer as the provenance, or ability to authenticate, this document? We can better analyze its authenticity if we know where and from whom Google obtained it. We are examining the issue now and once you provide us with the purported origin of the document, will get back to you very soon.

Cris

**From:** Alger, Timothy L. (Perkins Coie) [mailto:TAlger@perkinscoie.com]
**Sent:** Sunday, November 18, 2012 2:39 PM
**To:** Cris Armenta
**Subject:** Garcia v. Nakoula et al

Hi Cris --

Your client executed a release of all claims and assignment of any rights under the Copyright Act on August 9, 2011. A copy is attached. We believe you should dismiss the action promptly, and I'll work with you to accomplish that. I am traveling this evening and Monday but can be reached by cell phone at 650 223 3791.

Tim

**Timothy L. Alger | Perkins Coie LLP**
PARTNER
3150 Porter Drive • Palo Alto, California 94304
Four Embarcadero Center, Suite 2400 • San Francisco, California 94111
PHONE: 650 838.4334 • MOBILE: 650.223.3791 • FAX: 650 838.4534
E-MAIL: TAlger@perkinscoie.com

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error,

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 117 of 218

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 118 of 218

please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

3

ER850

## Cris Armenta

| | |
|---|---|
| **From:** | Cris Armenta |
| **Sent:** | Wednesday, November 28, 2012 10:49 AM |
| **To:** | talger@perkinscoie.com |
| **Cc:** | Jason Armstrong (armstronglaw@me.com); Sol, Credence (credence.sol@sol-law.com); David Hardy (David.Hardy@DMCASolutions.com); Heather Rowland |
| **Subject:** | Garcia |
| **Attachments:** | 3527_001.pdf |

Dear Tim:

Enclosed is the declaration of Gaylord Flynn, whom we believe was the most experienced of the actors on the set. He disavows having ever been presented with the documents you claim were signed by Ms. Garcia. He also states that had he been presented with such documents, he would recall such an event.

Our investigation continues, but to date, we have no evidence or information to suggest that the documents you have provided us are authentic. In fact, our investigation so far, as well as the sworn testimony of our client, reveals the exact opposite. Nevertheless, we continue to investigate the claims out of a need to be as thorough as possible.

Cris

**From:** scanner@crisarmenta.com [mailto:scanner@crisarmenta.com]
**Sent:** Tuesday, November 27, 2012 2:29 PM
**To:** Heather Rowland; Cris Armenta
**Subject:** Attached Image

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 119 of 218

ER851

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 120 of 218

# EXHIBIT C

1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 121 of 218



1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3     HONORABLE CHRISTINA A. SNYDER, JUDGE PRESIDING

4   UNITED STATES OF AMERICA,        )
                                     )
5                                    )
                                     )
6                      Plaintiff,    )
                                     )
7                                    )
                                     )
8            Vs.                     )   No. CR 09-617 CAS
                                     )
9                                    )
                                     )
10  MARK BASSELEY YOUSSEF,           )
                                     )
11                                   )
                                     )
12                     Defendant.    )
                                     )
13  _____)

14

15

16          REPORTER'S TRANSCRIPT OF

17    FINAL REVOCATION OF SUPERVISED RELEASE

18          LOS ANGELES, CALIFORNIA

19   WEDNESDAY, NOVEMBER 7, 2012; 1:32 P.M.

20

21

22       LEANDRA AMBER, CSR 12070, RPR
      OFFICIAL U.S. DISTRICT COURT REPORTER
23       312 NORTH SPRING STREET, # 408
         LOS ANGELES, CALIFORNIA 90012
24          www.leandraamber.com
               (213) 894-6603

25

          UNITED STATES DISTRICT COURT

ER853

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 122 of 218

2

| | |
|---|---|
| 1 | A P P E A R A N C E S |
| 2 | |
| 3 | IN BEHALF OF THE PLAINTIFF, |
| | UNITED STATES OF AMERICA: |
| 4 | U.S. DEPARTMENT OF JUSTICE |
| | U.S. ATTORNEY'S OFFICE |
| 5 | BY:  ROBERT DUGDALE, AUSA |
| | 312 NORTH SPRING STREET |
| 6 | 12TH FLOOR |
| | LOS ANGELES, CA 90012 |
| 7 | (213) 894-4685 |
| | robert.dugdale@usdoj.gov |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | IN BEHALF OF THE DEFENDANT, |
| | MARK BASSELEY YOUSSEF:        LAW OFFICE OF STEVEN A. SEIDEN |
| 13 | BY:   STEVEN A. SEIDEN, ESQ. |
| | 3800 EL SEGUNDO BOULEVARD |
| 14 | SUITE 201 |
| | HAWTHORNE, CA 90250 |
| 15 | (310) 644-5003 |
| 16 | |
| 17 | |
| 18 | ALSO APPEARING: |
| 19 | HISHAM A. MALEK, ARABIC INTERPRETER |
| | CURTIS SAMSON, U.S.P.O. |
| 20 | GRACIELA GUDINO, U.S.P.O. |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

UNITED STATES DISTRICT COURT

ER854

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 123 of 218

3

1                              **I N D E X**

2                                                              **PAGE**

3

4      **HEARING:**     FINAL REVOCATION OF SUPERVISED RELEASE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    UNITED STATES DISTRICT COURT

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 124 of 218

```
 1              LOS ANGELES, CALIFORNIA; WEDNESDAY, NOVEMBER 7, 2012
 2                            1:32 P.M.
 3                             -oOo-
 4
 5
 6              THE CLERK:  Calling calendar item two, case number
 7    CR 09-617, United States of America versus Mark Basseley
 8    Youssef.
 9              Counsel, please state your appearances.
10              MR. DUGDALE:  Good afternoon, your Honor.
11              Robert Dugdale on behalf of the United States of
12    America, and I'm present at counsel table with Graciela
13    Gudino and Curtis Samson of the United States Probation
14    Office.
15              THE COURT:  Good afternoon.
16              MR. SEIDEN:  Good afternoon, your Honor.
17              Steven Seiden on behalf of Mr. Youssef.  He is
18    present with counsel.
19              THE COURT:  All right.  Good afternoon.
20              MR. SEIDEN:  Thank you.
21              THE COURT:  Okay.  A few preliminary matters --
22              Mr. Youssef, first of all, we have a stand by
23    Arabic interpreter.  Do you wish to proceed with the
24    assistance of the interpreter?
25              THE DEFENDANT:  Yes.
```

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 125 of 218

5

```
 1              THE COURT:  Okay.

 2              THE DEFENDANT:  Thank you.

 3              THE COURT:  Secondly, as a housekeeping matter,

 4    before we proceed, Mr. Youssef, you submitted to me a letter

 5    in Arabic, and I have not had an opportunity to read your

 6    letter because we have been attempting to find the

 7    appropriate procedure to fund, and now we have found the

 8    procedure to fund a -- an interpreter translating it to me.

 9              I don't know that your counsel has necessarily had

10    an opportunity to go over it, and my question to you is,

11    before we proceed today, do you want us either at sidebar or

12    in camera to read -- have that translated?

13              THE DEFENDANT:  No.

14              THE COURT:  Okay.  Do you wish to tell us in

15    summary form anything that was contained in that

16    communication?

17              THE DEFENDANT:  No.

18              THE COURT:  All right.  Then why don't we place

19    Mr. Youssef under oath, and I will proceed to ask him

20    regarding certain allegations.

21              THE CLERK:  Please raise your right hand to the

22    best that you can.

23              Do you solemnly swear that you will answer

24    truthfully the questions that the Court will ask you so help

25    you God?
```

UNITED STATES DISTRICT COURT

ER857

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 126 of 218

6

```
 1              THE DEFENDANT:  Yes.

 2              THE CLERK:  Thank you.

 3              THE COURT:  All right.  Mr. Youssef, I'm going to

 4     be asking you about allegations and again whether you admit

 5     or deny those allegations.

 6              First of all, having been ordered by the Court not

 7     to use for any purpose or in any manner any name other than

 8     his true legal name or names without the prior written

 9     approval of the Probation Officer, from December 26, 2010, to

10     the present, Nakoula Basseley Nakoula, you used the name

11     Nakoula Basseley Nakoula on all documentation provided to the

12     Court and the Probation Officer.  Whereas on or about

13     October 1, 2002, in the Superior Court of California, County

14     of Orange, decree changing name, case number A 21-5011, upon

15     his own motion, the Superior Court ordered his name changed

16     from Nakoula Basseley Nakoula to Mark Basseley Youssef.

17              Do you admit or deny that?

18              THE DEFENDANT:  (Through interpreter) admit.

19              (In English) admit.

20              THE COURT:  Second, having been ordered by the

21     Court not to use for any purpose or in any manner any name

22     other than his true local name or names without the prior

23     written approval of the Probation Officer, from December 26,

24     2010, to the present, Nakoula Basseley Nakoula has possessed

25     a California driver's license under the name Nakoula Basseley
```

UNITED STATES DISTRICT COURT

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 127 of 218

1    Nakoula without prior written approval of the Probation

2    Officer.

3             Do you admit or deny that?

4             THE DEFENDANT:  Admit.

5             THE COURT:  Okay.  Third, having been ordered by

6    the Court pursuant to general order 318 to not commit another

7    federal, state, or local crime, from December 26, 2010, to

8    the present, Nakoula Basseley Nakoula possessed a

9    fraudulently obtained California driver's license in

10    violation of California Vehicle Code section 14610.

11             Do you admit or deny that?

12             THE DEFENDANT:  Admit.

13             THE COURT:  Okay.  And then my understanding is

14    that I am to go to allegation number five.

15             Having been ordered by the Court pursuant to

16    General Order 318 to answer truthfully all inquiries by the

17    Probation Officer on September 15, 2012, Nakoula Basseley

18    Nakoula falsely stated to the Probation Officer that he had

19    not used the name Sam Bassil and/or the variations of Sam

20    Bassiel and Sam Bacile.

21             Do you admit or deny that, sir?

22             THE DEFENDANT:  Admit.

23             THE COURT:  All right.  It's my understanding that

24    pursuant to the agreement between Government and the defense,

25    those are the only allegations that remain active; is that

ER859

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 128 of 218

8

1    correct, Mr. Dugdale?

2         MR. DUGDALE:  Yes, your Honor.

3         Basically as a result of the defendant's admissions

4    to Allegations One, Two, Three, and Five, the Government will

5    agree to dismiss Allegations Four, Six, Seven, and Eight.

6         THE COURT:  All right.

7         MR. DUGDALE:  And in addition there are several

8    other provisions that we have agreed to or agreements that

9    we've reached as a result of this disposition.

10        The Government has agreed not to charge the

11   defendant with a violation of Title 18 United States Code

12   Section 1001, which is false statements based upon the

13   Allegations Seven and Eight.

14        The parties have agreed to stipulate that the

15   appropriate sentence in this case following the necessary

16   revocation of the defendant's supervised release is 12 months

17   imprisonment to be followed by an additional four-year period

18   of supervised release.

19        And also the parties have agreed that the defendant

20   will participate in a proffer with the United States

21   Probation Office and the United States Attorney's Office

22   pursuant to the terms of the Government's standard proffer

23   agreement to truthfully answer all questions concerning his

24   finances, his assets, his employment, and his income.

25        And provided he truthfully answers questions along

UNITED STATES DISTRICT COURT

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 129 of 218

9

1    those subject lines, the Government has agreed it won't

2    pursue further violations of the conditions of the

3    defendant's supervised release based upon those subjects and

4    those answers.

5              THE COURT:  Thank you.

6              Mr. Seiden, do you agree?

7              MR. SEIDEN:  We do agree, your Honor.  We're going

8    to be requesting of the Court to at sentencing for home

9    confinement per the judge -- the Court's consideration.

10             Also, if the Court does not agree to that, we're

11   asking that you make a recommendation that he be housed in

12   the Southern California area.

13             THE COURT:  All right.

14             MR. SEIDEN:  Thank you.

15             THE COURT:  First of all, let me state that given

16   the fact that Mr. Youssef has admitted Allegations One, Two,

17   Three, and Five, the Court finds him to be in violation of

18   the terms and conditions of his supervised release.

19             Let me hear from Mr. Dugdale regarding the request

20   for home confinement.

21             MR. DUGDALE:  Yes, your Honor.

22             That wasn't exactly our agreement, but the

23   Government stands here relatively confident that the

24   appropriate sentence is one of imprisonment regardless of

25   what that request would be.

ER861

1    So I would briefly talk about the four things that

2    illustrate that this was a serious breach of the Court's

3    trust through these violations that's deserving of the

4    one-year sentence that the Government is recommending here

5    through imprisonment to be followed by the four years of

6    supervised release.

7    First of all, these were serious violations.  They

8    were violations that basically fall into two categories,

9    either the defendant's persistent use of names other than his

10   own true legal name or dishonesty with the Probation Office.

11   And obviously both of these things are important to the

12   ability of the Government and the Probation Office to

13   supervise the defendant.

14   Paramount is that he is honest with them.  So when

15   asked questions about names he has used, employment that he's

16   had, things of that nature -- it's essential that people on

17   supervised release are truthful with Probation to allow them

18   to do their jobs.  And this defendant was not truthful as he

19   admitted when he admitted violation number five.

20   And the alias issue was also a serious issue here

21   as well.  And it's a serious issue because of the history and

22   characteristics of this particular defendant.  As the Court

23   will remember back in 2009, 2010, in the underlying case,

24   this is a defendant who participated in a massive fraudulent

25   scheme involving the use of a whole host of fraudulent

UNITED STATES DISTRICT COURT

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 130 of 218

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 131 of 218

1    identities.

2         Well over 640 -- 641 credit and debit cards in

3    names other than his own were found in his possession that he

4    used to open no less than 60 different bank accounts to

5    defraud the victim banks in this case of approximately

6    $800,000.

7         In this particular case, as the Court now knows, he

8    changed his name from Nakoula Basseley Nakoula to Mark

9    Basseley Youssef back in troubling.  Despite that fact, even

10   including the litigation before this Court, he was using a

11   different name, his old name, Nakoula Basseley Nakoula.  And

12   he has persisted in using that name throughout the term of

13   his supervised release even though he knows he knows as

14   well -- well knows that that is not his true legal name.

15        And perhaps most troubling he has carried

16   identification in these two different names during the period

17   of his supervised release.  He has a passport in the name of

18   Mark Basseley Youssef.  He has a driver's license in the name

19   of Nakoula -- Nakoula Basseley Youssef.

20        And as this Court should appreciate, as a result of

21   his criminal past including the use of aliases and multiple

22   forms of identification other than his true legal name, this

23   is not a defendant that we want out there using a name other

24   than his true name.  This is not a defendant the Court should

25   want out in the streets using multiple forms of

UNITED STATES DISTRICT COURT

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 132 of 218

12

 1   identification and having multiple forms of identification in

 2   names other than his own.

 3           And then of course there's the use of the name Sam

 4   Bacile, which relates to Allegation Number Five to which the

 5   defendant admitted, which is an entirely new identity that he

 6   put forward to other people for fraudulent purposes as I'll

 7   explain in a minute.

 8           So because of that, these are serious allegations.

 9   Because of his history and characteristics particularly

10   serious as it relates to this defendant.

11           Second, as the Probation Office noted in its

12   lengthy letter to the Court, this is a defendant who has

13   engaged in a long running pattern of deception really dating

14   back to when he first appeared in front of this Court and

15   misrepresented what his true name is all the way through up

16   to his arrest back in September in this case.

17           So his dishonesty goes back years.  It's a

18   defendant with a criminal history which includes not only the

19   fraudulent conduct that resulted in victimization of the

20   banks to the tune of almost $800,000 but also a prior

21   conviction related to methamphetamine manufacturing, even

22   selling nonconforming gas.

23           So his own businesses he has not operated on the up

24   and up.  He's been dishonest with this Court.  He's been

25   dishonest with the Probation Office.  He's been dishonest

UNITED STATES DISTRICT COURT

ER864

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 133 of 218

13

```
 1     with the officials in California who issued him that driver's
 2     license that's not in his true name.  He's been dishonest
 3     with the people that he has done business with including the
 4     people who appeared in the film that I'll talk about in a
 5     second.
 6          A third reason why a period of incarceration of
 7     12 months is appropriate is because he was given a break
 8     before by this Court and appropriately so at the time,
 9     probably fully with the expectation of this Court that we
10     wouldn't be seeing him back here so quickly.
11          The United States Sentencing Guidelines provide in
12     section 7B1.4, application note three, that when an original
13     sentence was a result of a downward departure, as it was in
14     this case, that is something the Court should consider in
15     revocation conduct and perhaps grant an upward departure.
16          When -- because you got the break before did not
17     take advantage of that break and find yourself so soon in
18     front of the Court again as a result of engaging in violation
19     conduct in the legal conduct, that is something the Court
20     should take into account when sentencing him now.
21          As the Court will probably recall, he received a
22     21-month sentence when he was looking at a guideline range at
23     that time obviously purely advisory a 41 to 51 months.
24          THE COURT:  Right.  And I believe it was a 5K1.1
25     motion --
```

UNITED STATES DISTRICT COURT

ER865

14

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 134 of 218

1        MR. DUGDALE:  There was.

2        THE COURT:  -- that triggered the downward

3  departure by this Court, but nonetheless you are correct.

4        MR. DUGDALE:  That is correct.  And the application

5  note that I cite specifically talks about getting a downward

6  departure as a reward for substantial assistance.

7        And how, if you come back after something like

8  that, because you've engaged in violation conduct, that

9  should be taken into account and is an aggravating factor,

10  and the Government is citing it as so in this case.

11        And the last point as to why this was a serious

12  offense worthy of the punishment that frankly I thought the

13  parties had agreed to before a minute ago, is the fact that

14  his deception actually caused real harm to people.

15        I'm not going to say much about the movie.  He's

16  not here because of the content of this movie --

17        THE COURT:  Agreed.

18        MR. DUGDALE:  -- but the way that he went about

19  making this movie is the problem because he did defraud

20  people.  He portrayed to people that he was Sam Bill, not

21  Nakoula Basseley Nakoula, not even that person, not even Mark

22  Youssef -- not Basseley Youssef, but this other identity.

23        So the people who got involved with this -- the

24  actors and actresses who answered the casting call that he

25  made -- they had no idea that he was a recently released

UNITED STATES DISTRICT COURT

ER866

15

1    federal felon with a history as extensive as I mentioned

2    before who had defrauded banks out of close to $800,000.

3         And had these people known that, had they been

4    given this true name and known his background, they might

5    have had some second thoughts before they joined in on that

6    project.  But they didn't have that opportunity because the

7    defendant defrauded them by betraying something as

8    fundamental as his identity to them.

9         And second, as far as how he went about making the

10   movie -- and this is mentioned in the Probation Officer's

11   lengthy letter -- is then he committed a second deception

12   with these people.  After they had filmed their scenes, he

13   went back and dubbed in language which made the film the film

14   that people have considered offensive.

15        And this is not a choice that these actors or

16   actresses had to made.  It's the choices he made for them.

17   So if the defendant wanted to be a lightning rod for

18   controversy or attach himself to a project like this, as

19   amateurish as it was, and as offensive as people might view

20   it, that was his choice.

21        But he made this choice for other people who were

22   not on board with that decision and had no idea he was doing

23   so.  And that's a substantial fraud.  And as a result, these

24   people have come forward to the Probation Office and reported

25   that they have experienced death threats, they're afraid for

UNITED STATES DISTRICT COURT

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 135 of 218

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 136 of 218

1    their lives, they feel like they're careers have been

2    ruined -- all as a result of what this man did to defraud

3    them.  So again it fits within the pattern of deceit that the

4    Probation Office has -- has cited to the Court.

5         As you know, the Probation Office actually in its

6    letter remitted two years.  I will tell that you we've had

7    discussions with the Probation Office.  They are on board

8    with the one-year recommendation in light of the defendant's

9    acceptance of responsibility in this case, which should of

10   course be considered as a mitigator by this Court.

11        But all in all as a result of the factors that I've

12   laid out here, your Honor, the United States does submit that

13   a one-year period of incarceration is an appropriate sentence

14   in light of the seriousness of the offenses and the damage

15   that he has done to other people as a result of this

16   longstanding pattern of fraudulent behavior that this

17   defendant has engaged in.

18        So unless the Court has any additional questions, I

19   will submit, your Honor.  Thank you.

20             THE COURT:  All right.  Anything further?

21             MR. SEIDEN:  Thank you, your Honor.

22        I'm not sure why the Government had to go into a

23   lengthy recitation of what we had already discussed

24   previously.  We have an agreement.  We worked very hard

25   towards a disposition in this matter.  We've reached it.  My

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 137 of 218

1    client's made his admissions to the Court.

2            And as far as the movie goes, which I'm not sure

3    why that was brought up, but like any movies, people who are

4    involved in the making of the movies have the right to change

5    dialogue, change titles, change everything.  These actors and

6    actresses whom nobody ever knew before signed releases.  I

7    don't know why that's any part of any discussion today.

8            But my client has admitted that.  We have agreed on

9    the disposition of the one-year confinement.  We're just

10   asking the Court to consider home detention.  He has not been

11   able to see any members of his family for the last five weeks

12   but for glances in court proceedings.  He's had a very

13   difficult time getting his son and daughter in to see him at

14   the detention center.  That will be corrected in the future.

15           And we're asking this Court to give him some

16   consideration.  He has avoided a lengthy hearing probably by

17   allowing me to engage in discussions with the Government to

18   resolve this matter which we've done in a timely fashion I

19   believe.  And we ask the Court to consider the home detention

20   that we're requesting.

21           Thank you.

22           THE COURT:  Well, I am strongly of the opinion that

23   the one year in custody is appropriate for the reasons

24   indicated by the Government.  The -- as far as I'm concerned,

25   Mr. Youssef has struck a deal far more favorable than he

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 138 of 218

1    might have otherwise suffered had he proceeded to try this

2    case.  I appreciate his acceptance of responsibility, but I

3    am also mindful of the fact that he has engaged in continuing

4    deception.

5         I might even add to the laundry list of Mr. Dugdale

6    that, as I recall, we placed Mr. Youssef under oath; and for

7    purposes of his guilty plea he presented himself as

8    Mr. Nakoula, which obviously was incorrect and a fraud on

9    this Court.

10        That's not why we're here either today.  We're here

11   because of his continuing conduct in this regard and the fact

12   that he has not dealt honestly with Probation.

13        So I do think that one year in custody is

14   appropriate followed by four years of supervised release, and

15   that is what my sentence is going to be.

16        MR. SEIDEN:  Your Honor, I appreciate that.  Could

17   I just -- I neglected to mention one thing.

18        In the 2009 Presentence Report given to this Court,

19   the very first name under aliases was the name Mark Basseley

20   Youssef, and Probation never did anything further to confirm

21   at that time that that was in fact his legal name under the

22   name change that occurred in 2002.

23        And I wish they had.  I wish his counsel at that

24   time had done that.  We wouldn't be here today.

25        THE COURT:  Well, you were not counsel at that

UNITED STATES DISTRICT COURT

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 139 of 218

19

```
 1    time, but obviously all of us were led to believe that he had

 2    a different name than his true name.

 3                 MR. SEIDEN:  Well, that's true.  I'm just saying

 4    they must have known because they put it in the Presentence

 5    Report.

 6                 THE COURT:  I understand your point.

 7                 MR. SEIDEN:  Thank you.  And with that I submit.

 8    Thank you very much.

 9                 THE COURT:  And so that is going to be my sentence

10    in this case.  I'm going to revoke supervised release and

11    sentence Mr. Youssef to 12 months in custody followed by four

12    years of supervised release.

13                 Mr. Youssef shall make the proffer that was

14    discussed by Mr. Dugdale and to which Mr. Seiden agreed.  And

15    I believe you asked for a recommendation that Mr. Youssef be

16    placed at a Southern California facility.  And to the extent

17    possible, I will make that recommendation.

18                 MR. SEIDEN:  Thank you very much, your Honor.

19                 MR. DUGDALE:  Thank you, your Honor.

20                 Just one quick thing.  There were some additional

21    conditions of supervised release that the Probation Office

22    had requested in its letter.

23                 THE COURT:  Yes.

24                 MR. DUGDALE:  Rather than put the Court on the spot

25    with this, perhaps we will just submit a proposed order along
```

UNITED STATES DISTRICT COURT

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 140 of 218

1   those lines.  And Mr. Seiden, if he has issues with those,

2   can object to those.  But I'll deal with it however the Court

3   would like.

4          THE COURT:  Well, I'll do either way.  I'm sure I

5   have the letter here, and I'm sure I can deal with it now if

6   we want to wrap it up now.  But if you would prefer to deal

7   with it and discuss it with one another, I'm happy to let you

8   do that.

9          MR. DUGDALE:  I think that might be best just to

10  make sure that we have it all correct.

11         THE COURT:  That sounds fine.

12         MR. DUGDALE:  So we will submit that to the Court,

13  your Honor.

14         And the only other housekeeping matter is to -- the

15  Government will move to dismiss the remaining allegations

16  which are Allegations Four, Six, Seven, and Eight in the

17  interest of justice.

18         THE COURT:  All right.  That motion will be

19  granted.

20         And I think we should probably, in light of

21  Mr. Youssef's earlier comments, return to him the submission

22  that arrived yesterday.

23         MR. SEIDEN:  Very good, your Honor.

24         THE COURT:  Anything further, Counsel?

25         MR. SEIDEN:  Thank you for accommodating us and

UNITED STATES DISTRICT COURT

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 141 of 218

21

1    allowing us to be heard today.  Thank you.  Your Honor, we

2    appreciate it.

3              MR. DUGDALE:  Yes, thank you, your Honor.

4              THE COURT:  Thank you.

5              THE CLERK:  This Court is adjourned.

6              (Whereupon, at 1:53 p.m. , the proceeding

7              concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

ER873

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 142 of 218

22

```
 1                      CERTIFICATE OF REPORTER

 2

 3     COUNTY OF LOS ANGELES )
                            ) ss.
 4     STATE OF CALIFORNIA   )

 5

 6     I, LEANDRA AMBER, OFFICIAL FEDERAL COURT REPORTER, REGISTERED

 7     PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

 8     COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

 9     CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES

10     CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

11     STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

12     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS

13     IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL

14     CONFERENCE OF THE UNITED STATES.

15

16

17     DATE:    _____

18

19

20       ____/s/_____

21     LEANDRA AMBER, CSR 12070, RPR

22     FEDERAL OFFICIAL COURT REPORTER

23

24

25
```

UNITED STATES DISTRICT COURT

ER874

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 143 of 218

# EXHIBIT D

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 144 of 218

**the guardian**

Printing sponsored by:

**Kodak**
All-In-One Printers

# Innocence of Muslims participants sentenced to death in Egypt

## Seven Egyptian Christians were tried in absentia for taking part in anti-Islam video produced in US that sparked violent protests

Reuters in Cairo
guardian.co.uk, Wednesday 28 November 2012 07.20 EST



An anti-US protest in Jammu, India, in September over the Innocence of Muslims video. Photograph: AFP/Getty Images

A court in Cairo has sentenced to death seven Egyptian Christians who were tried in absentia for participating in an anti-Islam video that prompted violent protests in many Muslim countries.

"The seven accused persons were convicted of insulting the Islamic religion through participating in producing and offering a movie that insults Islam and its prophet," said the judge, Saif al-Nasr Soliman.

The crude, low-budget video, Innocence of Muslims, produced privately in California, denigrated the prophet Muhammad, and its circulation online triggered anti-US protests and attacks on western embassies in September.

## More from the Guardian     What's this?

Qatari poet jailed for life after writing verse inspired by Arab spring 29 Nov 2012

Why the British elite insist on more austerity (it's not that they're stupid) 27 Nov 2012

'White witch coven' took part ritualistic sex abuse of young girls, court told 28 Nov 2012

## More from around the web     What's this?

Filipino Catholics celebrate saint's canonization (Inquirer.net)

Bristol Palin Wears Mini-Dress to 'DWTS' After-Party & Shows Everyone What a Hot Mom She Is (PHOTO) (CafeMom)

Sheen Gives Lohan $100,000 to Put Towards Taxes ⬚ (Bloomberg)

ER876

What Rachida Dati's paternity case tells us about sexism in France 26 Nov 2012

They Cracked This 250-Year-Old Code, and Found a Secret Society Inside (Wired)

Well done, Jenny Johnson, for standing up to Chris Brown 26 Nov 2012

How German Traditions Work (HowStuffWorks)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 145 of 218

Egyptian city of Damanhour clash on Sunday, after a 15-year-old boy is killed in an attack on the headquarters of the Muslim Brotherhood

© 2012 Guardian News and Media Limited or its affiliated companies. All rights reserved.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 146 of 218

11/30/2012 11:27 AM

ER878

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 147 of 218

# EXHIBIT E

From Man Who Insulted Muhammad, No Regret - NYTimes.com    http://www.nytimes.com/2012/11/26/.../from-man-who-insulted-i...

**The New York Times**

November 25, 2012

# From Man Who Insulted Muhammad, No Regret

**By SERGE F. KOVALESKI and BROOKS BARNES**

LOS ANGELES — Fuming for two months in a jail cell here, Nakoula Basseley Nakoula has had plenty of time to reconsider the wisdom of making "Innocence of Muslims," his crude YouTube movie trailer depicting the Prophet Muhammad as a bloodthirsty, philandering thug.

Does Mr. Nakoula now regret the footage? After all, it fueled deadly protests across the Islamic world and led the unlikely filmmaker to his own arrest for violating his supervised release on a fraud conviction.

Not at all. In his first public comments since his incarceration soon after the video gained international attention in September, Mr. Nakoula told The New York Times that he would go to great lengths to convey what he called "the actual truth" about Muhammad. "I thought, before I wrote this script," he said, "that I should burn myself in a public square to let the American people and the people of the world know this message that I believe in."

In explaining his reasons for the film, Mr. Nakoula, 55, a Coptic Christian born in Egypt, cited the 2009 massacre at Fort Hood, Tex., as a prime example of the violence committed "under the sign of Allah." His anger seemed so intense over the years that even from a federal prison in 2010, he followed the protests against the building of an Islamic center and mosque near ground zero in New York as he continued to work on his movie script.

Until now, only the barest details were known about the making of the film that inspired international outrage. Initial reports made it seem as if the film had been thrown together in about a year.

But a longer, more intricate and somewhat surreal story emerges from interviews with Mr. Nakoula, church and law enforcement officials and more than a dozen people who worked on the movie — those who knew its real subject and those who were tricked into believing it was to be a sword-and-sandal epic called "Desert Warriors." Together, they paint a picture of a financially desperate man with a penchant for fiction who was looking to give meaning and means to a life in shambles.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 148 of 218

ER880

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 149 of 218

There is a dispute about how important the video was in provoking the terrorist assault on the American diplomatic mission in Benghazi, Libya, that killed the United States ambassador and three other Americans. Militants interviewed at the scene said they were unaware of the video until a protest in Cairo called it to their attention. But the video without question led to protests across the globe, beginning in Cairo and spreading rapidly in September to Yemen, Morocco, Iran, Tunisia, Sudan, Iraq, Pakistan, Lebanon, Indonesia and Malaysia.

The making of the film is a bizarre tale of fake personas and wholesale deception. And as with almost everything touched over the years by Mr. Nakoula — a former gas station manager, bong salesman, methamphetamine ingredient supplier and convicted con man — it is almost impossible to separate fact from fabrication.

A few years ago, Mr. Nakoula told some of the crew members he had gathered, supposedly to make "Desert Warriors," that the project would have to be put off. He had cancer. Treatment was needed, far away, and they would not be able to reach him. His family shared a similar story with church officials.

Mr. Nakoula, it turns out, was not going away for cancer treatment, although the time did overlap with the prison sentence for bank fraud, which the crew knew nothing about. (Mr. Nakoula pleaded guilty this month to violating his supervised release in that case and received a one-year sentence.)

He claims that he only wrote the film — five versions of the script — and served as a "cultural consultant." One of Mr. Nakoula's sons, Abanob Basseley Nakoula, 21, said in an interview that his father had written the script in Arabic and then translated it into English. The son said he helped him with grammar.

But Mr. Nakoula, who described himself to some cast members as the writer and producer, explained to a confidant that his plan was to fool actors into thinking they were making a movie built around an ancient tribal villain named George, dubbing in the name "Muhammad" later whenever anybody said "George."

As early as 2008, he had cobbled together a 20-page treatment for a film he wanted to call "The First Terrorist."

In Mr. Nakoula's responses to questions from The Times, conveyed through his lawyer, Steve Seiden, he had no second thoughts about the way he had handled the cast. "They had signed contracts before they went in front of any camera, and these contracts in no way prevented changes to the script or movie," he said.

11/29/2012 11:14 AM

ER881

Case 2:12-cv-08315-MWF-VBK Document 37   Filed 11/30/12   Page 150 of 218   Page ID #:659

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 150 of 218

Abanob Nakoula said: "The actors were misled. My dad thought the film would create a stir, and as a precaution for their safety, there are no acting or production credits at the end of the trailer or the full-length movie."

**A Slippery Identity**

The amateurish project might have disappeared quietly, the way many forgettable messes do in Hollywood's underbelly. Yet three years after completing his script treatment, Mr. Nakoula was on a makeshift movie set inside the suburban Los Angeles headquarters of a nonprofit organization called Media for Christ, whose founder has been critical of Islam. There Mr. Nakoula was surrounded by actors wearing false beards, and there was a goat slipping on a tile floor. Alongside him was his director for hire: Alan Roberts, known for soft-core pornography movies like "The Happy Hooker Goes Hollywood."

Mr. Nakoula noted that the head of Media for Christ, Joseph Nassralla Abdelmasih, was "a friend for five years." Mr. Abdelmasih attended the 2010 protests against the Islamic center near ground zero. Other contacts in the world of anti-Islam activism would also play pivotal roles. Helping to publicize the film were Morris Sadek and Elaia Basily — activist Copts living in Northern Virginia — and Terry Jones, the Florida preacher whose own Koran burnings had stirred violence abroad.

That Mr. Nakoula is a hard man to pin down is no accident. He told the cast and crew that his name was Sam Bassil, which he sometimes spelled differently. Federal prosecutors convicted him in 2010 under the name Nakoula Basseley Nakoula, but he recently admitted to the court that he had changed his name in 2002 to Mark Basseley Youssef.

What he did not mention at the time, however, was that in 2009, according to court records, he changed his name yet again, this time to Ebrahem Fawzy Youssef. (His lawyer said Mr. Nakoula was unaware until recently that the latest change had been finalized.)

Facts presented by Mr. Nakoula as rock solid tend to weaken upon inspection. For instance, he told federal probation officials that he first came to Los Angeles in 1984 for the Olympics as part of the Egyptian soccer team. But a Web site listing official players on that team does not include Mr. Nakoula. Nor was there evidence that he was on the squad's staff.

He claimed during production that the budget for the film was $5 million, raised mainly from Jewish donors. Actually, it cost no more than $80,000, apparently raised through his second ex-wife's Egyptian family and donations from other Copts, according to a person who discussed the financing with him.

Even though the shoot lasted only 15 days, there was enough footage for a feature-length

ER882

movie, which exists, running roughly one hour and 40 minutes. Mr. Basily, the Virginia activist who has donated to Media for Christ, said he watched the entire film on DVD early this year and found it historically accurate.

All that has been seen on the Web is the 14-minute YouTube trailer, which by the time it hit the Internet in July was titled "Innocence of Muslims."

Mr. Nakoula was able to finish the project even though people who ran into him over the years found him puzzling. When he rented offices in suburban Los Angeles, other tenants noticed that he came around only at night for the most part and stored stacks of Marlboro cartons there, among other things. When he took a stall at a flea market to sell drug paraphernalia and tobacco merchandise, other stall holders noted that his wares never seemed to move and that he spent most of his time on the phone, shouting in Arabic.

And Coptic Church officials said they considered Mr. Nakoula an unlikely candidate for the kind of religious zeal behind "Innocence of Muslims" because he had attended services so infrequently. But Mr. Nakoula said fervor and witnessing persecution are what drove him to create the film.

Mr. Nakoula agreed last month to be interviewed by The Times at the Metropolitan Detention Center here, where he has been held since his September arrest. But the warden refused to allow the interview.

In his written responses to questions, Mr. Nakoula reeled off "atrocities" by Muslims that went back many years and formed his views, focusing on shootings, a bombing and the torture of his fellow Copts. After the Fort Hood massacre, in which an Army psychiatrist with ties to Muslim extremism has been charged, "I became even more upset and enraged," he said.

Abanob Nakoula said: "My dad is not an evil man. He has had a hard life. He did something — the movie, something he felt strongly about — that was not frowned upon by the Constitution. He would always say, 'Don't fight Muslims; fight their ideology.' "

**From Prison to Studio**

Nakoula Basseley Nakoula grew up in Egypt but came to the United States and wed Ingrid N. Rodriguez in 1986 in Nevada, according to state marriage records. They divorced in 1990, the records show. Soon afterward, while living in California, he married an Egyptian woman, Olivia Ibrahim, with whom he has three children. Although the couple divorced, the family members all lived together on a cul-de-sac in Cerritos until going into hiding after the video spread.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 151 of 218

ER883

Mr. Nakoula declared bankruptcy in 2000. By then he was a felon: a police sting caught him trading crates of a methamphetamine ingredient for $45,000 in cash. He was sentenced to one year in prison but did community service instead. A little over a decade later, Mr. Nakoula, while at work on his movie, was arrested for bank fraud. He was behind bars for almost 21 months before getting out in the summer of last year.

"He said it might have been a blessing to go to prison because he had time to work on the script," his son said.

Mr. Nakoula's supervised release barred him from using aliases. But he resumed work on his movie under the name Sam Baccil, said Jimmy Israel, who assisted with preproduction. Mr. Israel, who still thought Mr. Nakoula had been away battling cancer, placed casting notices on Backstage.com. One advertised 11 roles that included "George: male, 20-40, a strong leader, romantic, tyrant, a killer with no remorse, accent." Mr. Israel said Mr. Nakoula told him that "Muhammad would be named George to mislead the actors."

Mr. Nakoula found his director through a circuitous route. During the time of his bank fraud scheme, he rented five offices in a building owned by a man named Shlomo Bina, who, as it happened, had once aspired to a movie career, too, crossing paths with Mr. Roberts, the director. Chatting one day, Mr. Bina pointed him toward Mr. Roberts, whose real name is Robert Alan Brownell, records show. Attempts to reach Mr. Roberts through lawyers were unsuccessful.

A few Coptic immigrants in the United States have built media outlets with the help of programming that is anything but favorable toward Islam. One of them is Mr. Abdelmasih of Media for Christ. Not only did he provide Mr. Nakoula with 10 days of free studio space, but he also helped get the promotion going for the YouTube trailer by contacting Mr. Sadek in Virginia.

Mr. Sadek wrote in an e-mail that "my friend," Mr. Abdelmasih, "told me that Mr. Nakoula had created a movie about the Copts' persecution in Egypt." Mr. Sadek then publicized the YouTube trailer on his Web site and to his contacts. Mr. Basily, the activist, also spread word about the trailer using social media. Mr. Sadek also put Mr. Nakoula in touch with another important promotional partner: Mr. Jones, the Florida pastor.

Mr. Abdelmasih said Mr. Nakoula called one day to ask to use his facility. "He said to me the movie was about persecution of Christians by the government, combined with radical Muslims," Mr. Abdelmasih recalled in an interview.

**'Not Tech-Savvy'**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 152 of 218

ER884

From Me...eo 2n 1 2ec M0...m 54 MA...F... BNY Document 37    Filed 11/30/12... Page 89 of 9... Page ID # 982...

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 153 of 218

Media for Christ provided no cameras or any other production help, Mr. Abdelmasih said. He also insisted that Media for Christ's "work is not against Muslims," and he said he was "shocked" by the final product. But his studio has been used to produce "Wake Up America," a program hosted by Steve Klein, an insurance salesman in Hemet, Calif., and a staunch anti-Islam activist. Mr. Klein served as a consultant for Mr. Nakoula after they first met at Media for Christ.

When Dan Sutter, cast as George's grandfather, arrived at Media for Christ's offices in early August last year, Mr. Nakoula was there, greeting people as Sam. Mel Gibson's "Passion of the Christ" played on a television in a break room.

Eight months or so after shooting ended, Mr. Nakoula contacted a few of the actors to return to Media for Christ for looping, a standard part of moviemaking in which inaudible dialogue is rerecorded. Lily Dionne, an extra with no lines who was called to dub for another actress, said that a fellow actor had also been asked back and that Mr. Nakoula told him to say "Muhammad" into a microphone. He did.

On July 2, the trailer was posted on YouTube by someone using the name Sam Bacile. Mr. Nakoula's son said he was the one who did it.

"My dad is not tech-savvy at all, and does not know how to work social media," Abanob Nakoula said. "So he asked me to take the initiative to spread the word, and I did my best."

He explained that using the name Sam Bacile, he created a Facebook account before production started and then the YouTube account.

Abanob Nakoula added, "My dad wanted to show the trailer on TV as a commercial, and I told him that was not going to happen because it costs a lot of money and the networks would not show a 14-minute trailer, especially if they knew the content."

*Ana Facio-Krajcer and Noah Gilbert contributed reporting from Los Angeles, and Mai Ayyad from Cairo. Jack Begg contributed research.*

ER885

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 154 of 218

# DECLARATION

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 155 of 218

<u>DECLARATION OF GAYLORD FLYNN</u>

1.   I am an actor who appeared in the film originally titled *Desert Warrior* and posted to YouTube with the title *Innocence of Muslims*. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.   I have reviewed the two documents attached hereto as Exhibit A. These documents do not look familiar to me. I do not believe that I signed documents like this in connection with the film "Desert Warrior." I also notice that on the "personal release" document, the picture is mis-titled "Desert Warriors," instead of Desert Warrior, which was the working name of the film. If I had signed documents like this, I would remember it.

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

   Executed on this 26th day of November, 2012, at La Quinta, California.

Gaylord Flynn

DECLARATION OF GAYLORD FLYNN
CV 12 8315 (VBKx)

ER887

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 156 of 218

# DECLARATION

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 157 of 218

## DECLARATION OF CINDY LEE GARCIA

I, Cindy Lee Garcia, declare:

1.    I am over eighteen years of age and the Plaintiff in this action.  I make this declaration based on my own personal knowledge, and if called as a witness, would testify competently as follows:

2.    I am an actor who appeared in the film originally titled *Desert Warrior* and posted to YouTube with under title *Innocence of Muslims*.  I am the Plaintiff in this action.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

3.    I have reviewed the declaration of Mark Basseley Youssef and the attachments.  The handwriting on those pages is not mine.  I did sign *a* document, which involved my getting IMDB credit for the film "Desert Warrior."  During the filming of "Desert Warrior," I was presented with a single sheet of paper, which *I* insisted upon because my main motivation in participating in this film as a new actress, was to obtain IMDB credits.  That single piece of paper also referred to payment to me.

4.    Mr. Alger's declaration, where he talks about what Mr. Youssef (although I knew him as "Sam Bacile"), is totally inaccurate.  He says that Mr. Youssef would say that I worked for two hours on a single day.  This is false.  In fact, I worked two full days on the set of "Desert Warrior."  Mr. Alger claims that Mr. Youssef would say that I was paid $75.00.  This is also false.  I was paid $75.00 the first day, either $125 or $150 for the second day.  Later, I was paid an additional $150 for some voice work.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is truthful and accurate.

Executed on this 30th day of November, 2012, at Bakersfield, California.

Cindy Lee Garcia
Cindy Lee Garcia

DECLARATION OF CINDY LEE GARCIA
CV 12 8315 (VBKx)

1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 158 of 218

1

**PROOF OF SERVICE**

2   **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**
      I am employed in the County of Los Angeles, State of California. I am over

3

4   the age of eighteen years and not a party to the within action. My business address

5   is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

6          On November 30, 2012 I served the following document(s) described as:

7   **PLAINTIFF'S OBJECTION TO AND REQUEST TO STRIKE
    DECLARATIONS OF TIM ALGER AND MARK BASSELEY YOUSSEF;
    DECLARATIONS OF M. CRIS ARMENTA, GAYLORD FLYNN, CINDY
    LEE GARCIA AND JIM BLANCO**

8

9   on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes
10  addressed as follows:

11                    **Timothy L. Alger**
                     **Perkins Coie LLP**
12                   **3150 Porter Drive**
                    **Palo Alto, CA 94304-1212**
13                  **(by mail and courtesy email)**

14                  **Nakoula B. Nakoula aka**
                    **Mark Basseley Youssef**
15                **Metropolitan Detention Center**
                    **Inmate #56329-112**
16                  **180 N. Los Angeles St.**
                    **Los Angeles, CA 90012**
17                      **(by mail only)**

18

19     **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing
       correspondence for mailing with the United States Postal Service. Under that practice, it
20     would be deposited with the United States Postal Service that same day in the ordinary
       course of business. Such envelope(s) were placed for collection and mailing with postage
21     thereon fully prepaid at Los Angeles, California, on that same day following ordinary
       business practices. (C.C.P. § 1013 (a) and 1013a(3))
22
              Executed on November 30, 2012 in Los Angeles, California.
23

24

25                                              Heather Rowland

26

27

28
                                       1
                              **PROOF OF SERVICE**

                                                              ER890

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 159 of 218

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-08315-MWF (VBKx)**                Date:  **November 30, 2012**

Title:     Cindy Lee Garcia -*v*- Nakoula Basseley Nakoula, et al.

---

PRESENT:  HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT
          JUDGE

|                          |                          |
|--------------------------|--------------------------|
| Rita Sanchez             | None Present             |
| Courtroom Deputy         | Court Reporter           |

ATTORNEYS PRESENT FOR PLAINTIFF:       ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS (IN CHAMBERS):  ORDER DENYING REQUEST TO
                            CROSS-EXAMINE [35]

On November 29, 2012, Plaintiff Cindy Lee Garcia filed a Notice of Request Under Central District Local Rule 7-8 to Cross-Examine Declarants Submitted by Defendants Google Inc. and YouTube LLC (the "Request").  (Docket No. 35). The hearing on Garcia's motion for a preliminary injunction currently is scheduled for Monday, December 3, 2012. (*See* Docket No. 32).  Garcia requests that at the hearing she be permitted to cross-examine two declarants, whose declarations were submitted on November 28, 2012. (*See* Docket Nos. 33, 34).

Putting aside the timing and procedural issues raised by the filing of these two declarations and the Request, Local Rule 7-8 states that "[n]o declaration of a declarant with respect to whom such a request has been granted shall be considered unless such declarant is personally present and available at the hearing for such cross-examination as the Court may permit." *Id.*

The Court will not consider these two declarations in deciding Garcia's motion for a preliminary injunction.

The Request (Docket No. 35) is DENIED.

IT IS SO ORDERED.

---

**CIVIL MINUTES—GENERAL**                                              1

ER891

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 160 of 218

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-08315-MWF (VBKx)**                    Date: **November 30, 2012**

Title:      Cindy Lee Garcia -*v*- Nakoula Basseley Nakoula, et al.

PRESENT: HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT
         JUDGE

| Rita Sanchez | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:          ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                                             None Present

PROCEEDINGS (IN CHAMBERS):  ORDER DENYING PLAINTIFF
                            GARCIA'S MOTION FOR
                            PRELIMINARY INJUNCTION [12]

On October 17, 2012, Plaintiff Cindy Lee Garcia filed an Ex Parte
Application for a Temporary Restraining Order and an Order to Show Cause Re
Preliminary Injunction, and Order of Impoundment (the "Application"). (Docket
No. 12). On October 18, 2012, Garcia's request for a temporary restraining order
was denied, and the Application was construed as a motion for a preliminary
injunction. (*See* Docket No. 15). This matter is now before the Court on Garcia's
motion for preliminary injunction (the "Motion"). (*See id.*) Defendants Google
Inc. and YouTube, LLC have filed an Opposition, and Garcia has filed a Reply.
(Docket Nos. 22, 27).

The Court has read and considered the papers filed on this Motion and
deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ.
P. 78(b); Local Rule 7-15. Accordingly, the hearing set for **December 3, 2012**, is
removed from the Court's calendar.

"'A plaintiff seeking a preliminary injunction must establish that he is likely
to succeed on the merits, that he is likely to suffer irreparable harm in the absence
of preliminary relief, that the balance of equities tips in his favor, and that an
injunction is in the public interest.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma*

ER892

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-08315-MWF (VBKx)**                    Date:  **November 30, 2012**

Title:     Cindy Lee Garcia -*v*- Nakoula Basseley Nakoula, et al.

*GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).

Furthermore, this injunction would require affirmative conduct by Defendants, *i.e.* Defendants' immediate action in regard to the Film. Therefore, Garcia's Motion "is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor" her as the moving party. *See Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (requiring defendant to provide drug to patients).

Garcia alleges that Defendants have infringed her purported copyright in a trailer for a film (the "Film"). (*See generally* Compl. (Docket No. 1)). The Film was posted for public viewing on YouTube on July 2, 2012 – five months ago. Given this five-month delay, Garcia has not demonstrated that the requested preliminary relief would prevent any alleged harm. *Seto v. Thielen*, Civil No. 10-00351 SOM-BMK, 2010 WL 2612603, at *2 (D. Haw. June 28, 2010) ("Given Plaintiffs' allegation that the septic system is currently leaking raw sewage into Kaneohe Bay, the requested injunction would not necessarily prevent irreparable harm to Plaintiffs, as the leaking of the raw sewage would continue with or without [the defendant's] presence at the park.").

Nor has Garcia established a likelihood of success on the merits. Even assuming both that Garcia's individual performance in the Film is copyrightable and that she has not released this copyright interest, the nature of this copyright interest is not clear. Nor is it clear that Defendants would be liable for infringement.

As was the case in *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000), the Film "is a copyrightable work, and it is undisputed that the movie was intended by everyone involved with it to be a unitary whole." *Id.* at 1231. Additionally, a copyright in a work "vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a).

---

**CIVIL MINUTES—GENERAL**                                                    2

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 162 of 218

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-08315-MWF (VBKx)**                    Date:  **November 30, 2012**

Title:      Cindy Lee Garcia -*v*- Nakoula Basseley Nakoula, et al.

---

Garcia does not argue that she is the sole author of the Film, nor does she argue that the Film was a joint work of which she was a co-author. According to the United States Supreme Court, the "author" is the "person to whom the work owes its origin and who superintended the whole work." *Aalmuhammed*, 202 F.3d at 1233 (citing *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61, 4 S. Ct. 279, 28 L. Ed. 349 (1884)). By Garcia's own allegations and argument, she does not meet this standard with respect to the Film. Furthermore, Garcia concedes that she does not have joint authorship over the Film or joint ownership of the copyright in the Film. (*See* Reply at 12 n.11).

Therefore, Garcia appears to argue only that she owns the copyright in her performance within the Film. Even if this copyright interest were cognizable and proven, by operation of law Garcia necessarily (if impliedly) would have granted the Film's author a license to distribute her performance as a contribution incorporated into the indivisible whole of the Film. *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990) ("[The plaintiff] created a work at defendant's request and handed it over, intending that defendant copy and distribute it. . . . Accordingly, we conclude that [the plaintiff] impliedly granted nonexclusive licenses to [the defendant] and his production company to incorporate the special effects footage into [the film]" and then "to distribute the film"). Garcia has introduced no evidence to the contrary.

Accordingly, Garcia's Motion (Docket No. 12) is DENIED.

Given the discussion above, the Court need not reach the issues of the balance of equities and the public interest.

IT IS SO ORDERED.

---

ER894

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 163 of 218

1  M. Cris Armenta (SBN 177403)
   THE ARMENTA LAW FIRM APC
2  11900 W. Olympic Boulevard, Suite 730
   Los Angeles, CA 90064
3  Tel: (310) 826-2826 x 108
   Facsimile: (310) 826-5456
4  Email: cris@crisarmenta.com

5  Credence E. Sol (SBN 219784)
   La Garenne
6  86300 Chauvigny
   France
7  Tel: 06 74 90 22 08
   Email: credence.sol@sol-law.com
8
   Attorneys for Plaintiff
9  Cindy Lee Garcia

10            UNITED STATES DISTRICT COURT

11        FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  CINDY LEE GARCIA, an              Case No. CV12-8315-MWF(VBKx)
    individual,
13                                    **DECLARATION OF JAMES A.**
                                      **BLANCO IN SUPPORT OF**
14                 Plaintiff,         **OBJECTION AND REQUEST TO**
                                      **STRIKE DECLARATIONS OF**
15  vs.                              **TIM ALGER AND MARK**
                                      **BASSELEY YOUSSEF**
16  NAKOULA BASSELEY
    NAKOULA, an individual also
17  known as SAM BACILE, MARK
    BASSELEY YOUSSEF,
18  ABANOB BASSELEY
    NAKOULA, MATTHEW
19  NEKOLA, AHMED HAMDY,
    AMAL NADA, DANIEL K.
20  CARESMAN, KRITBAG
    DIFRAT, SOBHI BUSHRA,
21  ROBERT BACILY, NICOLA
    BACILY, THOMAS J. TANAS,
22  ERWIN SALAMEH, YOUSSEFF
    M. BASSELEY, and/or MALID
23  AHLAWI; GOOGLE, INC., a
    Delaware Corporation;
24  YOUTUBE, LLC, a California
    limited liability company, and
25  DOES 1 through 10, inclusive.

26                 Defendants.

27

28
                                      1
                     DECLARATION OF JAMES A. BLANCO IN SUPPORT OF OBJECTION AND REQUEST
                              TO STRIKE DECLARATIONS OF ALGER AND YOUSSEF
                                       CV 12 8315 (VBKx)

ER895

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 164 of 218

## DECLARATION OF JAMES A. BLANCO

1    I, James A. Blanco declare as follows:

2    1.    I am James A. Blanco, all of the facts set forth in this declaration are of my

3    own personal knowledge and if called as a witness I could and would competently

4    testify as to the following:

5    **EXAMINER'S PROFESSIONAL BACKGROUND AND WORK HISTORY**:

6    2.    I am a Forensic Document Examiner and I maintain a full time practice in

7    Forensic Document Examinations. My business addresses are 55 New Montgomery

8    Street, Suite 712 San Francisco California 94105 and 655 North Central Avenue 17th

9    Floor, Glendale California 91203 and 1629 K Street N.W. Suite 300 Washington,

10   DC 20006.  I have been in the field of Forensic Document Examinations for over

11   twenty five years. My training, experience and qualifications as a Forensic Document

12   Examiner are set forth in my three page curriculum vitae which is attached and

13   incorporated hereto as <u>EXHIBIT 1</u>. My training included review of such notable

14   cases as the Zodiac Killer and the Howard Hughes Will.

15   3.    I formally subscribe to the Collaborative Testing Services tests which are

16   controlled tests with known results. These are the same tests given to forensic

17   document experts in government laboratories that are accredited by ASCLAD

18   (American Society of Crime Laboratory Directors). I continue to pass these ongoing

19   tests maintaining a <u>zero personal examiner error rate</u>.  In my government positions I

20

DECLARATION OF JAMES A. BLANCO - 1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 165 of 218

1    also accurately passed all of the "CTS" tests.

2    4.    I was formerly commissioned with the Federal Bureau of Alcohol, Tobacco

3    and Firearms working as a full time Forensic Document Examiner employee in their

4    Western Regional Forensic Science Crime laboratory. In this position I worked cases

5    for the numerous field offices ("Posts of Duty") in the United States and in the U.S.

6    Protectorates and Territories of the Special Agents of ATF which also occasionally

7    involved joint investigation cases involving DEA and FBI questioned documents

8    cases. I left this position on good terms for a full time Forensic Document Examiner

9    employee position with the California Department of Justice where I examined cases

10   for hundreds of government and law enforcement agencies throughout the State of

11   California.  I left this position on good terms to enter private practice as a Forensic

12   Document Examiner and have been in full time private practice now for fifteen years.

13   5.    In addition to civil casework, I also maintain the exclusive contract with the

14   California Secretary of State's Office for Forensic Document services wherein I

15   service their Forensic Document casework regarding voting fraud cases, and I also

16   work cases for numerous other government agencies both inside and outside of

17   California including the Montana Division of Criminal Investigation, the Federal

18   Defenders offices in Anchorage, Florida, Puerto Rico, and other agencies.

19   6.    I have rendered expert opinions regarding questioned documents on over

20
     DECLARATION OF JAMES A. BLANCO - 2

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 166 of 218

1  7,000 occasions. I have qualified and testified as an expert witness concerning

2  questioned documents in excess of two hundred times in both Federal and Superior

3  Courts in numerous States and also abroad in Mexico, Singapore and the High Court

4  of South Africa. I have never been prevented from testifying in any venue. Attached

5  hereto as <u>EXHIBIT 2</u> is a list of my testimony over the past four years.

6  7.    My services are charged at $250.00 per hour with the exception of court or

7  deposition appearances/testimony which are charged at $300.00 per hour.

8  8.    I received from the law offices of Cris Armenta the following documents for

9  examination which are described as follows:

10  **DESIGNATION OF DOCUMENTS BEARING QUESTIONED WRITINGS:**

11  EXHIBIT 3  Personal Release dated 8/9/11 (Doc. 33 Page ID#:871)

12  **A copy of this questioned document is attached hereto as EXHIBIT 3**

13  EXHIBIT 4  Two-page Cast Deal Memo dated 8/9/11 (Doc. 33 Page ID#872 & 873)

14  **A copy of this questioned document is attached hereto as EXHIBIT 4.**

15  **DESIGNATION OF KNOWN SPECIMEN DOCUMENTS:**

16  EXHIBIT 5  Numerous documents bearing signatures and, or handwritings

17  attributed to Cindy Garcia are attached collectively hereto as **EXHIBIT 5.**

18  **ASSIGNMENTS:**

19  9.    I was asked to examine and compare the "Cindy Garcia" signatures and other

20

DECLARATION OF JAMES A. BLANCO - 3

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 167 of 218

1   handwritings on the EXHIBIT 3 and EXHIBIT 4 documents to the EXHIBIT 5

2   handwritings to determine whether or not Cindy Garcia was the author of the

3   handwritings on EXHIBIT 3 and, or on EXHIBIT 4.  I was advised that the

4   "Matthew mtta" handwritings were not a matter of investigation so my analysis did

5   not include these handwritings on EXHIBIT 3 or on EXHIBIT 4.

6   **EXAMINATIONS CONDUCTED:**

7   10.    The questioned and known handwritings were examined in detail.

8   Comparisons were made of line quality, letter forms and of letter proportions to

9   determine similarities and/or differences between the questioned and known

10  handwritings.  Copies of these documents were made and notes were taken during

11  the examination processes. ASTM Standard E-2290 was used as a guide in the

12  examination processes. This guide is titled, "Standard Guide for Examination of

13  Handwritten Items" and was developed by one of the scientific working group

14  committees of the American Society for Testing and Materials (ASTM) which has

15  established standard protocols for most of the forensic sciences including pathology,

16  fingerprints, DNA, firearms and tool marks, just to cite a few examples.

17  **ANALYSIS:**

18  11.    About twenty-five pages containing known specimen writings of Cindy Garcia

19  were presented for examination. This provided for a meaningful specimen group

20

DECLARATION OF JAMES A. BLANCO - 4

ER899

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 168 of 218

1   which sufficiently revealed the writing variations of Cindy Garcia, the writer of the

2   EXHIBIT 5 materials.  Detailed handwriting comparisons revealed numerous

3   persistent difference in handwriting features in the comparison of the handwritings

4   on EXHIBIT 3 and EXHIBIT 4 to the known handwritings of Cindy Garcia, the

5   author of the EXHIBIT 5 handwriting samples.  For example,

6      -The signatures by Cindy Garcia are more cursive and stylized in nature than

7          the questioned signatures on EXHIBIT 3 and on EXHIBIT 4.

8      -The letters "r" of the questioned writings are more hand printed than cursive

9          in nature.  Further, the "r"s of the known writings are more

10         elongated and vertical than the "r"s on the questioned documents.

11     -The letters "C" are different in form.

12     -The axis of the "d" in "Cindy" is oriented differently in the comparisons

13         between the questioned and known writings.

14     -The letters "a" by Cindy Garcia are more stylized than those observed on

15         EXHIBIT 3 and EXHIBIT 4.

16     -The "rc" connections of the questioned "Garcia" names are different in their

17         connection strokes.

18     Numerous additional differences were noted in the comparisons between the

19  questioned and known writings by Cindy Garcia.

20

DECLARATION OF JAMES A. BLANCO - 5

ER900

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 169 of 218

1    **RESULTS OF EXAMINATIONS—OPINIONS:**

2    12.    Given all of the observed handwriting differences, it was determined that the

3    handwriting features observed on the questioned documents did not represent the

4    natural, normal, nor genuine handwriting characteristics of Cindy Garcia as

5    demonstrated by her EXHIBIT 5 handwriting samples.  Consequently, Cindy Garcia

6    *is eliminated* as the writer of the handwritings on EXHIBIT 3 and on EXHIBIT 4.

7    An *"elimination"* is a term of art in Forensic Document Examination opinion

8    rendering and represents the highest degree of confidence expressed by document

9    examiners in handwriting  comparisons. That is, the examiner has no reservations

10   whatever, and the examiner is certain, based on evidence contained in the

11   handwriting, that the writer of the known material did not write the materials in

12   question (**ASTM—***American Society for Testing and Materials* Designation: E

13   1658 – 08 Standard Terminology for Expressing Conclusions of Forensic Document

14   Examiners).

15          I declare under penalty of perjury under the laws of the State of California that

16   the foregoing is true and correct to the best of my knowledge.

17   Executed this ___30th___ day of November 2012, at San Francisco, California.

18

19   JAMES A. BLANCO

20

DECLARATION OF JAMES A. BLANCO - 6

# EXHIBIT 1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 170 of 218

# EXHIBIT 1

# EXHIBIT 1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 171 of 218



**BLANCO & Associates Inc.**
*Forensic Document Examiners*

| San Francisco Office | Washington D.C. Office | Los Angeles Office |
|---|---|---|
| 55 New Montgomery Street, Suite 712 | 1629 K Street N.W. Suite 300 | 655 N. Central Ave 17th FL |
| San Francisco, CA 94105 | Washington, DC 20006 | Glendale, CA 91203 |
| Phone (415) 618-0068 | Phone (202) 821-1822 | Phone (818) 545-1155 |

## CURRICULUM VITAE of JAMES A. BLANCO

**AFFILIATIONS:**

Member: American Society for Testing and Materials (ASTM)

Participant: Subscribe to Proficiency Testing by the Collaborative Testing Services Inc.
**Formally tested twice a year** (controlled tests with <u>known</u> results) by the
Collaborative Testing Services, Inc.—**Test results reveal a**
**ZERO PERSONAL EXAMINER ERROR RATE**

Participant: in $ST^2AR$ Network—Skill-Task Training Assessment & Research

**PROFESSIONAL ACHIEVEMENTS:**

- Testified as an expert in over **200** trials.
- Provided over **7000** expert opinions.

**PROFESSIONAL HISTORY:**

| | |
|---|---|
| 6/88<br>to<br>Present | **Blanco & Associates, Inc.**<br>Title – <u>Forensic Document Examiner</u> / <u>Examiner of Questioned Documents</u><br>Duties - Examination and comparison of handwriting and mechanical impressions for the purpose of suspect identification or elimination. Expert witness testimony. Presentations of Forensic Document Examinations pertaining to civil and criminal litigation. |
| **Since 1998** | Exclusive Forensic Document Expert used by the California Secretary of State's office for their voting fraud cases. |
| 11/94<br>to<br>9/96 | **California Department of Justice**<br>Bureau of Forensic Services<br>4949 Broadway - Sacramento, CA 95820<br>Laboratory Accreditation - This Laboratory is accredited by the American Society of Crime Laboratory Directors (ASCLAD)<br>Title - <u>Examiner of Questioned Documents</u><br>Duties - Examination and comparison of handwriting and mechanical impressions for the purpose of suspect identification or elimination. Expert witness testimony. Participated in the proficiency testing program and peer review required by the ASCLAD Accreditation Board. |

ER903

**PROFESSIONAL HISTORY (Continued):**

| | |
|---|---|
| 1/92 to 9/94 | **U.S. Treasury Department** |
| | Federal Bureau of Alcohol, Tobacco and Firearms |
| | Western Regional Forensic Science Laboratory |
| | 355 North Wiget Lane,  Walnut Creek, California 94598 |
| | Title - <u>Document Examiner</u> |
| | Duties- Examination and comparison of handwriting and mechanical impressions for the purpose of suspect identification or elimination in criminal investigations in the Western States.  Testified as prosecution expert witness in Oklahoma, Texas, New Mexico, Arizona, Alaska and California.  Participated in the proficiency testing program and peer review of the American Society of Crime Laboratory Directors. |
| 1/89 to 1/92 | **Sacramento County Sheriff** - Detectives Division |
| | 711 G. Street  Room 308 - Sacramento, California 95814 |
| | Title - <u>Questioned Document Examiner</u> (on County contract) |
| | Duties- Examined case work for the various Bureaus of the Sacramento County Sheriff's department including report writing and expert witness court testimony. Also responded to requests by local Judges and Deputy District Attorneys to perform examinations, report on findings and testify. |
| 6/85 to 1/89 | **Completed two years of apprenticeship training** in forensic documents under T.H. Pascoe who worked for the California Department of Justice in their Questioned Document Section for 30 years. |

**TECHNICAL TRAINING COURSES:**

<u>ST$^2$AR Network—Skill-Task Training Assessment & Research,</u>
Canon Photocopier, Facsimile and New Technology Workshop
Canon USA training center in Atlanta Georgia April 28-29, 2008

<u>Forensics Photoshop course,</u>
EEI Communications, San Francisco CA  December 15-16, 2006

<u>Printing Process Examinations, Infrared Examinations,</u>
American Board of Forensic Document Examiners Workshop,  Las Vegas, November 7-10 2005

<u>Altered Identification Documents,</u> sponsored by the California State Department of Justice Criminalistics Institute March 1995

<u>Fundamentals of Document Examinations For Laboratory Personnel,</u>
FBI Academy, Quantico, Virginia- July 12-23 1993

<u>Symposium on Fluorescence Techniques in Questioned Documents,</u> sponsored by the California State Department of Justice Criminalistics Institute Feb. 1992

<u>Paper Knowledge Workshop,</u> by Mead Paper Corp., Denver, Colorado Oct. 1992

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 173 of 218

(Page three of three Blanco C.V – Form JBCV-0112.3)

## ACCOMPLISHMENTS:

**Qualified as an Expert in Federal, Superior and Court Martial Courts**

**Publications:**

**Journal:**   Identifying Documents Printed by Dot Matrix Computer Printers.  Forensic
Science International, Elsevier Scientific Publishers Ireland Ltd.

**Published Books:**

*   Business Fraud- Know It and Prevent It,  Humanomics Publishing, 2001

*   Identity Theft Prevention,  (self published, 2001)

**Speaker- Presentations given to:**

* Association of Certified Fraud Specialists- Sacramento, CA July 12th, 2011
   Eight hour block of training re: Forensic Document Evidence and investigations

* Association of Certified Fraud Specialists- National Fraud Conference, Dallas, May 2011
   Forged Documents In An Electronic World

* Association of Forensic Document Examiners Annual Conference, Phoenix AZ, October 2010

* National Association of Document Examiners Annual Conference, Portland, OR, May 2010

* Association of Certified Fraud Specialists- National Fraud Conference, San Diego, Oct. 2009
   Forged Documents In An Electronic World

* The Southwestern Association of Forensic Document Examiners:
   Identifying Documents Printed by Dot-Matrix Computer Printers
      Tucson, Arizona - April, 1989.
   Distinguishing Features of Color Laser Copiers
      Long Beach, CA - October, 1990.
   A Case Study in Forensic Ethics Las Vegas, Nevada - April, 1991.
   Counterfeited Documents  Phoenix, Arizona - October, 1991.
   Photocopied Tracings  San Diego, CA - April, 1992

* The American Society of Questioned Document Examiners:
   Identifying Documents Printed by Dot-Matrix Computer Printers,  Orlando, Florida- August, 1991
   New Trends in Xerographic Technology  Milwaukee, Wisconsin August, 1992

**Numerous additional Lectures and Presentations** given to State and Federal Law Enforcement,
      Legal, Banking and Business organizations.

**Advisor to POST** (California Commission on Peace Officer Standards and Training): As a subject
matter expert in Forensic Documents, I was the only Document Examiner invited to San Diego to
serve on the curriculum committee of the California Commission on POST, to design a
Fraud/Questioned Document Course.

## EDUCATION:
Bachelor of Arts,   1975, California State University, Sacramento, CA
Master of Divinity, 1978, Western Theological Seminary, Portland, OR

# EXHIBIT 2

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 174 of 218

# EXHIBIT 2

# EXHIBIT 2



# BLANCO & Associates Inc.
*Forensic Document Examiners*

| San Francisco Office | Washington D.C. Office | Los Angeles Office |
|---|---|---|
| 55 New Montgomery Street, Suite 712 | 1629 K Street N.W. Suite 300 | 655 N. Central Ave 17ᵗʰ FL |
| San Francisco, CA 94105 | Washington, DC 20006 | Glendale, CA 91203 |
| Phone (415) 618-0068 | Phone (202) 821-1822 | Phone (818) 545-1155 |

## TESTIMONY APPEARANCES

02/10/09 Los Angeles Superior Court, Hill Street
      Hon. Maren E. Nelson, Dept 60
      Marva v. Williams
      Attorney George Seidi

02/23/09 Las Vegas, Nevada
      Hon. Valerie Adair
      Dept. 21
      Re: Cameo Model & Talent Agency, LLC v. The Agency, LV, et al.
      Attorney Gus W. Flangas, Esq.

04/03/09 Los Angeles Superior Court, Hill Street
      Hon. Charles F. Palmer
      Dept 33
      Re:
      Attorney Rodney Bell

05/06/09 Los Angeles Superior Court, Hill Street
      Hon. O'Donnel
      Dept. 37
      Re: Sarvary vs. Voges
      Attorney Richard S. Van Dyke

05/22/09 Yolo County Superior Court, Woodland, CA
      Hon. Timothy Fall
      Dept. 2
      Re: Dev matter
      Attorney Michael Rothchild

06/25/09 Calaveras County Superior Court, San Andreas, CA
      Hon. Martin
      Dept. 6
      Re: Adams v. Berghouse, et al.
      Case #CV34998
      Attorney Reg J. Lormon

07/07/09 US District Court Central District California
      Hon. Fairbank
      Dept. 9
      Re: Amy Alcini, et al. v. Northwestern Mutual Life Insurance Co., et al. (Kay Cole, deceased)
      Case # CV-08-02889-VBF (AJWx)
      Attorney Rafael Bernardino, Jr.

07/13/09 Unites States Immigration Court, San Francisco
      Hon. Robert Yeargin
      Courtroom 6
      Re: Amarjit Singh
      Attorney Arwen Swink, Esq.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 176 of 218

08/28/09 CA Superior Court, Glendale (LA area)
      Hon. Matz
      Dept. E
      Re: Toni Stutson v. Susane Savage
      Michael G. Steiniger, Esq.

09/24/09 Deposition, Irvine CA
      Re: Century 21 Landmark Properties; Alan Fasnacht, Lynn Fasnacht
      Deposed by
      Defended by     Charles Shelton, Esq.

09/29/09 Deposition, San Diego CA
      Re: Somo v. Chevron
      Deposed by     John H. Reaves, Esq.
                         2488 Historic Decatur Rd, Ste 200
                         San Diego, CA 92106
      Defended by     Julie Trotter, Esq.

10/08/09 Sacramento Superior Court, CA
      Jury Trial
      Hon. Judge David Brown
      Dept. 17
      Re: People v. Embra
      For the Defense, Maura De La Rosa

11/12/09 Superior Court of California, County of Santa Clara
      Deposition (in Los Altos, CA)
      Re: Marriage Of Ebrahimi
      Judge Berra
      Deposed by Abbas Hadjian, Esq.
      Defended by Rod Firoozye, Esq. (for Plaintiff Armin Ebrahimi)

11/19/09 Los Angeles Superior Court, CA (Hill Street)
      Bench Trial
      Dept 9, Judge Goetz
      Re: Garrison
      Stephen Moeller

12/14/09 Santa Monica, CA
      Deposition
      Re: Garrison
      Defended by Stephen Moeller

12/17/09 Superior Court of California, County of Santa Clara
      San Mateo, CA
      Judge Berra (San Mateo)
      Re: Marriage Of Ebrahimi
      Rod Firoozye for Armin Ebrahimi

12/18/09 Deposition testimony in San Francisco re: 3EB Case

01/14/10 Los Angeles Superior Court, CA (111 Hill Street)
      Bench Trial
      Dept 9, Judge Goetz
      Re: Garrison
      Stephen Moeller

02/16/10 Oceanside, CA
      Deposition
      Re: City of Oceanside v. Judd

2

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 177 of 218

03/05/10 Los Angeles Superior Court, CA (111 Hill Street)
   Bench Trial
   Dept 9, Judge Goetz
   Re: Garrison
   Stephen Moeller

03/09/10  San Jose, CA
   Deposition
   Re: Stanley Doty, Trustee of JDP Trust v. Cava Valley Roofing, et al.
   Shawn E. Cowles, Esq.

04/09/10 Irvine, CA
   Deposition
   Re: Martinez v. Williams
   Warren Miller

04/12/10 San Francisco, CA
   Jury Trial
   Hon. Tomar Mason, Courtroom 606
   Re: Julius Castle
   Jay T. Jambeck, The Schinner Law Group

05/11/10 Emeryville, CA
   Deposition
   Re: Shirley Hwang v. Winston Lum
   Nancy Davis, Esq. of Holme Roberts & Owen LLP

05/12/10 Santa Monica, CA
   Re: Nunnari v. Cecchi Gori Pictures
   Erica E. Hayward, Esq.

05/21/10 San Francisco, CA
   Deposition
   Re: Beijing Tong Ren Tang (USA), Corp. vs. TRT USA Corp et al
   Jing James Li, Ph.D. of Greenberg Taurig LLP

05/24/10 San Francisco, CA
   Deposition
   Bradley J. Jameson, Esq.
   Re: Sean C. McKean, Shawn P. McIlvenna  v.  Stephen E. Lawrence, Sophie Gasparatos

08/06/10 Santa Ana, CA
   Federal Courthouse
   Hon. Albert
   Re: Petition of William E. Preston
   Larry Halperine, Esq.

08/13/10 San Francisco, CA
   Deposition
   Re: Miller vs. California Pacific Medical Center
   Foley & Larner LLP
   Eileen R. Ridley, Esq. / (Kristy Marino)

08/16/10 San Jose, CA
   Federal Courthouse
   Dept 6
   Hon Ronald M. Whyte
   Re: Beijing Tong Ren Tang (USA), Corp. vs. TRT USA Corp et al
   Jing James Li, Ph.D. of Greenberg Taurig LLP

3

08/27/10 Los Angeles Superior Court, CA (111 Hill Street)
    Dept 39, 4th floor
    Hon. Michal C. Solner
    Re: Coliseo Housing Partnership v. POZ Village Development, Inc.
    J. Grant Kennedy, Esq.

09/21/10 Nevada County Superior Court (Nevada City, CA)
    Dept. 6
    Re: The Estate of Don Cunningham, Nevada County Superior Court Probate Case No. P14621
    Hon. Thomas M. Anderson
    R. Ellis Harper, Esq.

11/15/10  Down town Los Angeles, CA
    Arbitration
    Re: Ron Sahni
    Attorney Robert L. Kinkle

11/17/10 Riverside, CA
    Deposition Re: Gillis estate matter
    Attorney Rex Edwards

11/26/10 Bremmerton, WA
    Arbitration
    Re: Boston Pacific Matter
    Michael White, Esq. Patton Boggs LLP

12/02/10 Roseville, CA
    Deposition
    Re: Marquez et al. vs. Van Dyke, et al; Thielke et al. vs. Van Dyke, et al.
    Kevin Hull, Esq. Freidberg & Parker, LLP

12/21/10 Nevada County Superior Court (Nevada City, CA)
    Hon. Thomas M. Anderson
    Dept. 6
    Re: Niman v. Niman, Nevada County Superior Court Case No. P14839
    R. Ellis Harper, Esq.

01/05/11 San Francisco, CA
    Deposition
    Re: Alameda County Probate Case No. RP08420940
    Thomas Latham, Esq. & Brian F. Connors, Esq.

01/19/11 Los Angeles, CA (Korea Town)
    Arbitration
    Hon. Alan Penkower
    Re: Stanley v. State Farm
    Rob Pohls, Esq. of Pohls & Associates

02/01/11 Alameda Superior Court (Oakland)
    Hon. Marshall Whitley, Dept. 18
    Re:    Estate of Winston Nielsen Deceased, The Regents Of The University Of California, Petitioner, v.
        Kristin L. Johnson and Clifford R. Lancaster, Respondents
    Case No. RP 08-403581
    Charlie Wolff, Esq.  Evans, Latham & Campisi
    San Francisco, CA

4

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 179 of 218

02/09/11 Alameda Superior Court (Oakland)
    Hon. Marshall Whitley, Dept. 18
    [Rebuttal testimony]
    Re:    Estate of Winston Nielsen Deceased, The Regents Of The University Of California, Petitioner, v.
           Kristin L. Johnson and Clifford R. Lancaster, Respondents
    Case No. RP 08-403581
    Charlie Wolff, Esq.  Evans, Latham & Campisi
    San Francisco, CA

03/22/11 Deposition in Alameda, CA
    Estate of Taruk Joseph Ben-Ali
    Defending: Vernon Goins, Esq. of Goins & Associates

04/19/11 Riverside Superior Court (Palm Springs)
    Dept. PS2
    Re: People of the State of California vs. Daniel Lee Smith RIF 144557
    Melanie N. Roe, Esq. of Kennedy & Roe (for the Defendant)

05/09/11 Fresno, California
    Deposition
    Re: Estate of Lillian Salwasser, deceased
    Fresno County Sup. Ct. Case No. 07CEPR00104
    Defending, Lee Cobb, Esq.

05/13/11 Federal Court Sacramento
    Hon David E. Russell Dept. 28
    Re: Kupka v. Dead Oaks Estates Inc.
    For the Respondent, George Hollister Esq.

05/31/11 San Jose, California
    Deposition
    Re: Straus v. Pavese et al
    Andrew Lauderdale, Esq.
    Santa Clara Superior Court

06/08/11 Sacramento, California
    Deposition
    Re: Wiens vs. Huff
    For the Plaintiff, Randall L. Wiens

07/14/11 Roseville, Placer County, CA
    Hon. O'Flauerty, Dept. 43
    Re: Jayraj Nair v. Dindu P. Nair
    Karen L. Mathes, Esq.

07/26/11 Santa Barbara, Superior Court
    Hon. Brian Hill
    Re: Peter Lance
    For the Defendant, Daryll Genis, Esq.

08/02/11 Watsonville, Superior Court
    Hon. Heather D. Morse
    Dept. C
    Re: Norton Dissolution
    For Scott Norton, Patricia Liberty, Esq.

08/11/11 San Francisco, Superior Court
    Hon. McCarthy
    Department 624
    Re: People v. Rory Talley
    For the defense, Jacque Wilson, Esq.

5

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 180 of 218

08/26/11 San Francisco, Superior Court
        Hon. Marla J. Miller
        Dept. 604
        Re: Miller v. CPMC
        For the defendant, Mike Naranjo of Foley & Lardner LLP

08/30/11 San Francisco, Superior Court
        Hon. Marla J. Miller
        Dept. 604
        Re: Miller v. CPMC
        For the defendant, Mike Naranjo of Foley & Lardner LLP

10/03/11 Santa Barbara, Superior Court
        Hon. Brian Hill
        Re: Peter Lance
        For the Defendant, Daryll Genis, Esq.

10/27/11 Oakland, Superior Court
        Hon.
        Dept. 6
        Re: People v. Rafael Duarte
        For the Defendant, William Cole

11/04/11 Sacramento, Deposition
        Re: Dovichi v. James V. de la Vergne...Bendahans/McCartney
        Deposing Law Firm: DLA Piper LLP (US)
        Deposing Attorney, Steven S. Kimball
        For the Plaintiff, Freidberg and Parker Law Firm
        Defending my deposition, Bret Spitzer

11/09/11 Oakland, Superior Court
        Homocide Trial
        Hon.
        Dept. 6
        Re: People v. Rafael Duarte
        For the Defendant, William Cole

03/05/12 San Mateo, Superior Court
        Civil, Imani trial
        Hon. Scott
        Dept. 25
        For Bita Imani, Mike Adams, Esq.

03/07/12 Burbank Superior Court
        Hon. William D. Stewart
        Dept. A
        Re: Hovsep
        Alex Gilanians, Esq.

07/25/12 New York, Deposition
        Paul Ceglia v. Facebook
        Offices of Gibson Dunn
        Defending for Ceglia, Dean Boland

09/06/12 Torrence, Deposition
        Goldstone vs. Murphy
        Deposed by Nick Campbell, Esq.
        Defending for Murphy, JoAnna Esty, Esq.

ER912

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 181 of 218

10/04/12  Los Angeles main courthouse 111 Hill Street
Hon. Gregory Alarcon.
Department 36
Re: Kenny Teragawa vs. Borg Produce Sales, Inc. et al
Dan Fears Esq. Pain & Fears LLP

7

ER913

# EXHIBIT 3

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 182 of 218

# EXHIBIT 3

# EXHIBIT 3

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 183 of 218

## PERSONAL RELEASE

Production Company _Desert Warriors_                r  matthew mtta.

Address _1040 Hamilton rd._
_Duarte Ca. 91010_        Date _8/9/11_

Ladies and Gentlemen:

I, the undersigned, hereby grant permission to _Sam Bessi (matthew mtta)_
("Producer") to photograph me and to record my voice, performances, poses, acts, plays and appearances, and use
my picture, photograph, silhouette and other reproductions of my physical likeness and sound as part of the _____
_Ann Roman_                    tentatively entitled _____
_____ (the "Picture") and the unlimited distribution, advertising,
promotion, exhibition and exploitation of the Picture by any method or device now known or hereafter devised in which
the same may be used, and/or incorporated and/or exhibited and/or exploited.

I agree that I will not assert or maintain against you, your successors, assigns and licensees, any claim, action, suit or
demand of any kind or nature whatsoever, including but not limited to, those grounded upon invasion of privacy, rights
of publicity or other civil rights, or for any other reason in connection with your authorized use of my physical likeness
and sound in the Picture as herein provided. I hereby release you, your successors, assigns and licensees, and each
of them, from and against any and all claims, liabilities, demands, actions, causes of action(s), costs and expenses
whatsoever, at law or in equity, known or unknown, anticipated or unanticipated, which I ever had, now have, or may,
or shall hereafter have by reason, matter, cause or thing arising out of your use as herein provided.

I affirm that neither I, nor anyone acting for me, gave or agreed to give anything of value to any of your employees or
a   representative of any television network, motion picture studio or production entity for arranging my appearance
on the Picture.

The undersigned understands that they will not be compensated for their appearance in the recording.

I have read the foregoing and fully understand the meaning and effect thereof and, intending to be legally bound, I
have signed this release.

Dated _8/9/11_                    _Cindy Garcia_
                                  Signature

                                  If a minor, Guardian's Signature

                                  Please Print Name

AGREED AND ACCEPTED TO              Address

By                                  REDACTED
                                  Phone Number

Release #1

# EXHIBIT 4

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 184 of 218

# EXHIBIT 4

# EXHIBIT 4

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 185 of 218

## Cast Deal Memo

This memo outlines terms of the agreement between _MM._ ~~Quick~~ ~~Production~~ LLC. and _Cindy Garcia_ (hereinafter "Producer") related to the production of ~~Disgraceda~~ (hereinafter "Motion Picture.")

**1. *Services*:**

_Cindy Garcia_ agrees to perform the services outlined in Appendix A.

**2. *Compensation*:**

Subject to the rest of the terms of this agreement, and upon satisfactory completion of the services outlined in Appendix A, Producer agrees to compensate _Cindy Garcia_ at the rate and time designated in Appendix B.

**3. *Employment Status*:** [Independent Contractor]

[Independent Contractor:  The parties agree that _CG_ is an independent contractor, who is not required to work exclusively for Producer now or in the future, and who, as a professional, is expected to complete the assignment without supervision or training.  No fringe benefits or overtime compensation will be provided and the contractor is solely responsible for all income, self-employment and other taxes due upon this income received in conjunction with the services rendered under this agreement. ~~The contractor is not entitled to collect unemployment compensation under this agreement.~~]

**4. *Assignment of Rights***

[ _CG_ assigns to producer all rights necessary for the development, production and exploitation of the Motion Picture, whether denominated copyrights, performance rights, or publicity rights, including the right to reasonable use of his/her name and likeness in conjunction with the development, production and exploitation of the Motion Picture, and waives any right to sue Producer over such use.]

[ _CC_ warrants to Producer that all

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 186 of 218

writing submitted for the Motion Picture is his own original
work.  The parties agree the script and all revisions of the
script of the film are "works made for hire" as defined under
article 101 of Title 17 of the U.S. Code.  If for any reason
the script should be determined to not be a "work made for
hire," _____ C G _____ assigns all rights he may have
to the work under U.S. and International copyright law to
Producer.

5. *Credits*:

Producer agrees to provide the following credits:
    Sam   Bessi   (matthew matthew)

                                    8|9|11
                                    Date

Social Security Number

REDACTED

Address

_____
Producer                          Date

Appendix A:

[Describe the services to be performed in plain English
including dates and times required to be available and any
equipment to be provided.]

[Examples:  actor playing (role); dates; times (or "as
needed"); related responsibilities. Writer; responsibilities
including revisions/turn around times between dates; Stunts/
effects...]

Appendix B:
Describe Compensation Rate

# EXHIBIT 5

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 187 of 218

# EXHIBIT 5

# EXHIBIT 5

ER919

Sep 24 12 01:44p                                                    P.2
09/24/2012 MON 10:06  FAX                                           @002/002

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 188 of 218

| Form **W-9**<br>(Rev. December 2011)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | Give Form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

Name (as shown on your income tax return)
**SSFCSCSDSDJDF**

Business name/disregarded entity name, if different from above
*Cindy Garcia*

Check appropriate box for federal tax classification:
☑ Individual/sole proprietor  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

☐ Exempt payee

☐ Other (see instructions) ▶

Address (number, street, and apt. or suite no.)  ~~██████████████~~         Requester's name and address (optional)

City, state, and ZIP code  ~~██████████████~~

List account number(s) here (optional)

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Social security number
~~████████████~~

Note. If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

Sign Here | Signature of U.S. person ▶  *Cindy Garcia*    Date ▶ 9-24-12

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Purpose of Form**

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

Note. If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

Special rules for partnerships. Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X                                    Form **W-9** (Rev. 12-2011)

ER920

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 189 of 218

12136878032

08:13:04 a.m.   09-19-2012   17 /40

TOTAL P.01

1

2

3   **VERIFICATION**

4   I, Cindy Lee Garcia, a Plaintiff in this proceeding, have read the documents:

5   **COMPLAINT FOR:**

6   Declaratory Relief
    Invasion of Privacy
7   False Light Invasion of Privacy
    Right of Publicity;
8   Fraud;
    Unfair Business Practices
9   Slander;
    Intentional Infliction of Emotional Distress

10  [Demand For Jury Trial]

11  [Ex Parte Application for a Temporary Restraining Order and a Preliminary
    Injunction Requested]

12  The information contained therein are true of my own knowledge, except as to those

13  matters that are alleged on information and belief, and, as to those matters, I believe it to be true. I

14  declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of

15  September, 2012 in Los Angeles, California.

16                          _Cindy Lee Garcia_

17                          Cindy Lee Garcia

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF CINDY LEE GARCIA VERIFICATION

ER921

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 190 of 218



**AMERICAN SURETY COMPANY**
P.O. Box 68932
Indianapolis, Indiana 46268
1-317-875-8700

## RECEIPT AND STATEMENT OF CHARGES

Receipt No. 1005133

Received of

Date 11-1-12

_James Woods_
Name

BqC

Address

Bail Bond Premium $ 4275

Expenses (Itemize in detail, such as Guard Fees, Recording Fees, Notary Fees, Long Distance Calls, Telegrams, Travel and other actual, unusual expenses, where permitted by law.) $ _____

$ _____

_NGXT_ $ _____

_12-1-12_ $ _____

$ _____

$ _____

_# 1068_       **TOTAL CHARGES** $ _____
                 **Received on**
                 **Account** $ 125

Was Collateral taken? (YES) (NO)      **Balance** $ 4150

If Yes, Collateral Receipt No. _____

NAME AND ADDRESS OF BAIL BOND AGENCY

_____

By _____

### MEMORANDUM OF BAIL BOND FURNISHED

Defendant _____

Bond No. _____ Bond Amt. $ _____

SSN _____ DOB _____

Charge _____

Date Filed _____ Date Released _____
                                                        A.M.
Date to Appear _____ Time _____ P.M.

Case No. _____

Court _____ City _____

Received Copy of above receipt and Memo

Indemnitors Signature X _Cindy Garci_

ASC-CA-2      WHITE - ORIGINAL COPY      Thank You
              CANARY - COMPANY'S COPY
              PINK - AGENT'S COPY

ER923

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 191 of 218

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 192 of 218



Hello My name is Cindy Lee Davis Garcia,

I am very interested in a part in this film, I am with instantcast and explore talent

my emil is flame4him1@sbcglobal.net

phone 661-833-8055

hope to hear from you

Sincerely Cindy Lee

5001 stormy ct.  bakersfield, CA 93309    T: 661 8338055    F: Home Fax Phone    W: Home URL.

ER924

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 193 of 218

| TIME CHARGED | PURCHASE ORDER |
|---|---|
| JOB LOCATION | ORDERED BY |
| SAME | |

Quantity   Item #        Item Description

1    Q3881G-I    IPAINT SPRAYER, AIRLESS, ELEC    Minimum :    462.00 Ea
Rate/Ea            62.00 Day        360.00 Week        690.0ol 4Wk
X

THE ABOVE STATED RENTAL PRICE IS FOR A SINGLE
SHIFT OPERATION, 8 HOURS PER DAY, 40 HRS PER WEEK
OR 160 HRS PER 4 WEEK, ADD'L CHARGES WILL BE MADE
IF HOURS USED EXCEED THESE LIMITS

SAFETY PRECAUTIONS

A.  NEVER PUT FINGER NEAR SPRAY TIP OR AIM GUN TOWARD ANY PART OF BODY
B.  IF LEAK SHOULD OCCUR IN LINE OR AT ANY FITTING, IMMEDIATELY SHUT
    OFF UNIT. DO NOT ATTEMPT TO STOP LEAKAGE WITH HAND OR PART OF BODY
C.  IF THESE INSTRUCTIONS ARE NOT FOLLOWED, IT IS POSSIBLE THAT THE
    HIGH PRESSURE MIGHT BREAK THE SKIN & INJECT A SMALL QUANTITY OF
    MATERIAL.  IF THIS HAPPENS, GET IMMEDIATE MEDICAL ATTENTION AND
    HAVE THE DOCTOR INSPECT FOR & REMOVE FOREIGN MATERIAL.
D.  NEVER ATTEMPT TO CHANGE THE SPRAY NOZZLE WITHOUT FIRST SHUTTING
    OFF UNIT & RELIEVING THE PRESSURE.  IF GUN IS EQUIPPED WITH A
    "TWIST TIP", BE CAREFUL NOT TO GET FINGER NEAR TIP WHEN TURNING
    TO CLEAR A BLOCKAGE.
E.  BE SURE ELECTRICAL SUPPLY IS GROUNDED.
F.  KEEP THE UNIT AT LEAST 25 FEET FROM SPRAYING AREA IN A WELL
    VENTILATED LOCATION.
G.  DO NOT SPRAY VOLATILE MATERIALS WITH FLASH POINTS LESS THAN
    140 DEGREES F (60C). DO NOT SPRAY ANY MATERIAL IN THE VICINITY OF
    OPEN FLAME, PILOT LIGHTS, OR OTHER SOURCES OF IGNITION.

TERMS: CASH. ESTABLISHED OPEN ACCOUNTS ARE DUE AND PAYABLE NET 30TH. PAST DUE ACCOUNTS BEAR LATE PAYMENT PENALTIES AT 1½% PER MONTH.
I HEREBY ACKNOWLEDGE RECEIPT OF THE ABOVE DESCRIBED EQUIPMENT SUBJECT TO THE RENTAL
                    THIS IS YOUR CONTRACT, READ BEFORE SIGNING

SIGNATURE _____
PLEASE PRINT
YOUR NAME _____ CO. _____

ER925

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 194 of 218



TOTAL    $ 4,005.25

,All these clothes & shoes that we are sending to Malawi Africa are a love donation to be handed out
to the widows & orphans as the word of God commands us.

Thank you for all your help both to the African Government and Churches that help in distribution.

Sincerely Pastor Cindy Garcia

Flames Of Fire Outreach Bakersfield, Ca. 93304

Pasta Cindy Garcia

Pastor Garcela Garcia  c.c.



Please CAll me
BriAn ASAP
661- 817-3347
Need drop off
Information

9/12/11

Flame Of Fire Outreach Bakersfield, Ca. 93394  r-661-817-3347 oR r-661-833-8055

Shipping Clothes to Africa

ER926



# Title Company

I have read the Preliminary Report dated January 6, 2010 covering the property described in your above numbered escrow. I know of no other matters pertaining to the condition of title other than stated in this report. Further we approve the legal description as being the property which is the subject of this escrow.

I hereby acknowledge receipt of a copy of said Preliminary Report.

Flame of Fire Outreach Church, a Non-Profit Organization

By: _____
Cindy L. Garcia, Authorized Agent

Preliminary Report Approval – Seller (preapps)

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 195 of 218

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 196 of 218



10-10-12
Date

0/10/12
Date

Cincy Co
Applicant

Agent

ER928

Garcia Declaration.doc
https://mail-attachment.googleusercontent.com/attachment/u/0/?ui=...

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 197 of 218

Christian ordained minister. I have received numerous death threats, all of which
have been reported to the appropriate authorities. Because of security concerns, the
authorities advised me not to release the details of which law enforcement agencies
have received those reports. The death threats include, but certainly are not limited
to, the following:

"I am ready to die for MUHAMMAD (PBUH) and I would Like to Kill all
Those Who contributed in the Shape of Acting or Financially or any other
Kind of Support in Shameless Movie."

"And If You Wanna to save your life and we consider your innocent then
Just Kill Sam and Terry Jones."

"Dear the end is near."

"It's all a big joke. She will be Killed by some one who loves and cares our
Prophet Muhammad peace be upon him"

"She will know what she did now she is saying sorry about that"

Copies of these threats are attached hereto as Exhibit B.

18. I have filed an application to register my acting performance in *Desert Warrior* work
with the United States Copyright Office. Attached as Exhibit C is a true and correct
copy of my copyright application.

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

Executed on this 12th day of October, 2012, at Bakersfield, California.

Cindy Lee Garcia

DECLARATION OF CINDY LEE GARIA
CV 12 8315 (VBKx)

ER929

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 198 of 218



**SAFE**
SECURITY

Flame of Fire Outreach

**RE: CANCELLATION NOTICE**                                                      November 9, 2012



Dear Flame of Fire Outreach,

You recently indicated that you wish to cancel your alarm monitoring contract with SAFE Security®. For your protection against fraud and to ensure proper security of your property, please complete the information below as cancellation notification, and return this document to SAFE.

SAFE requires written notification of alarm monitoring account cancellation, which must be <u>received  days before the end of your current contract term</u> . Please refer to your monitoring agreement for details. Your monitoring account with SAFE will be cancelled once this form is returned and a final payment in the amount of $150.92 has been received. This payment covers the remaining balance of your contract.

For your convenience, SAFE now accepts both checks and credit card payments by phone and via our web site at www.safesecurity.com. If you have already remitted a payment for this final amount, thank you and please disregard this letter.

If you are paying by check, be sure to include your account number on your check. If you wish to pay by credit card (VISA, MasterCard, Discover or American Express); you may also make your payment on our website at www.safesecurity.com. Click on SAFEPay.

Please be aware that if you are currently receiving a discount on your homeowner's insurance policy based on monitoring service, you may have an obligation to disclose to your insurance carrier your discontinuance of monitoring service. Failure to make such a disclosure could affect your rights under the policy.

Cancellation Reason:  *We moved from the building on Fire St. to Another Building due to Personal reasons. And left the building with Pastor Julio.*

Signature:  *Cindy L Garcia*                              Date:  *11-12-12*

You may fax this notification to SAFE at (925) 871-4093 or mail it to:
Customer Care, SAFE Security, PO Box 5164, San Ramon CA 94583

We at SAFE Security are sorry to see you go, and we have greatly appreciated your business. We hope that you will think of us in the future when you require security equipment and alarm monitoring services. If you need further assistance, please contact SAFE Customer Care at (800) 669-7779.

Sincerely,
SAFE Security

ER930

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 199 of 218

Sent off

Karen —
661-324-7000
LES.

**Notes**

5  Parenthood  Episode 219  Taking The Leap
Role  Max's Teacher      age 30-45
well meaning  Involved teacher, also hopeful
that max will continue at football, Guest Star
Second Shoot  3/11/11     Sent/ Cami Patton Casting
                          4640 Lankershim Blvd
                          Nort Hollywood 9/60 2

Questions  Sam Asked
                 me        March 2/2012

Sam. Bassil

need to convert from Hard drive to
HD CAm.  Find Someone!

2 hr  movie.     also  Color Correction

SANTA ANA CA

Cindy Lee GARCIA

ER931

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 200 of 218

*19th*

*200 deposit* *(530.00)*

*Prorater rent* *(Friday)*

*own deposit back 1800.00* *Cashier check*

*Plus our money back from Donna Mary act early.*

*B++*

*Jami'*

On the 15th day of _October, 2012_, owner received $ _1,000_ from the undersigned, hereinafter called "Applicant", who offers to rent from Owner the premises described as

1. Rent in advance of $ _900.00_ per month, payable on the _1st_ day of each month, tenancy to begin on the _18th_ day of _October 2012_ but subject to any present resident vacating or the availability of the premises.

2. A security deposit of $ _1,200.00_

Owner shall return the full amount received an Applicant immediately if:

(a) The premises are not available on the agreed date; or

(b) Applicant executes the rental agreement and pays owner the first month's rent and security deposit.

If, after notification of acceptance, Applicant fails to comply (by entering into the agreed rental agreement and paying the first month's rent and security deposit), by the _18th_ day of _October 2012_, Owner may deduct form the amount received $ _30.00_ per day for each day the premises are vacant, from the date applicant's tenancy was to begin, to date tenancy commences or reletting, not to exceed (30) days.

Owner, within seven days after the premises are relet, shall return to Applicant, to the Applicant's address shown below, any balance remaining, with an itemization of Owner's damages.

If any legal action or proceeding be brought by either party to enforce any part of this agreement, the prevailing party shall recover, in addition to all other relief, reasonable attorney's fees and costs.

Date 10/15/12   Time _____

_____
Owner/Agent

Applicant _____

Applicant _____

Address _____

Phone _____

ER932

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 201 of 218

Gmail - Desert Warrior - flame4him1@gma...          Gmail - Desert Warrior - flame4him1@gma...          https://mail.google.com/mail/?shva=1

**Gmail**

Gmail

Casting
Director
Allen
Roberts

Mail
Contacts
Tasks

Compose mail

Inbox (1)
Buzz
Starred
Important
Sent Mail
Drafts (22)
Personal
photos
photos from africa pas
Travel
6 more ▾

Chat

cindy garcia

Call phone
Felix Mbeue
Kingdom Impact Worship
Manage Ment
Stargazing Entertainment
Alan Roberts
editor
etsy1
lowbowpictures
Merritt Films
Raj Thiruselvan

Invite a friend
Give Gmail to:

Send Invite   50 left

Jeff
Robinson
A.D.
480-518-5197

Search Mail   Search the Web

Want to Be a Desert Star? -          - Auditions & Open Calls Now Open,

← Archive  Spam  Delete   Move to ▾  Labels ▾  More ▾

**Desert Warrior**   |x  Inbox | x

cindy garcia
cindy garcia

cindy garcia to Alan

Alan, thank you for getting back with me I appreciate it. I also would love the chance for
It was very nice to meet you, you were very professional and comfortable interact with.
- Show quoted text -

Steve Qden
Burg.
912-946-2263

2 attachments — Download all attachments   View all images



**cindy fulll face.jpg**
76K  View  Download



**CINDY BLACK DRESS.jpg**
106K  View  Download

Reply   Forward
Send   Save Now   Discard

**To:** Alan Roberts <desertwarrior2011@yahoo.com>

Alan Roberts
desert warrior 2011 @
yahoo.com

Add Cc | Add Bcc | Edit Subject   Attach a file | Include original attachments

B  I  U  𝒯  ...

On Fri, Jul 29, 2011 at 3:35 PM, cindy garcia <flame4him1@gmail.com> wrote:
Alan, thank you for getting back with me I appreciate it. I also would love the chance
It was very nice to meet you, you were very professional and comfortable interact w

On Fri, Jul 29, 2011 at 12:29 PM, Alan Roberts <desertwarrior2011@yahoo.com> w
No female warriors. Sorry. But we will consider you for other roles

-- On Thu, 7/28/11, cindy garcia <flame4him1@gmail.com> wr

Auditioned
Call

1 of 1                                                                                          8/8/11 8:43 PM

**ER933**

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 202 of 218

**Hourly Fees and Contingent Nature of Fee Recovery**

This Engagement Agreement is a contingency agreement governed by Section 6147(a) of
the California Business and Professions Code. Under this Agreement, Counsel will recover
payment for Attorney's Fees if any, only if Client obtains monetary recovery. For the purpose
of calculating the Contingency Fees (as defined herein), Attorneys' Fees shall also include all
attorneys' fees, and paralegal fees.

Client's Action will be handled by M. Cris Armenta at an hourly rate of $450 per hour.
Counsel may increase that rate upon thirty (30) days written notice and the absence of any
objection shall be deemed Client's acquiescence to a rate increase. Counsel may also retain
other counsel or paralegals to work on Client's Action as appropriate in Counsel's discretion.
Counsel will prepare and mail to Client each month an invoice reflecting charges at Counsel's
full hourly billing rates for all timekeepers who worked on the Action that month. From any
monetary recovery, Counsel shall first subtract and pay to Counsel any unreimbursed Out-of-
Pocket Costs and Reimbursable Costs. From the remainder, Counsel shall be paid **one-third** as
payment for Attorneys' Fees ("Contingency Fees") from any pre-trial settlement, and after heavy
trial preparation begins (deemed to be forty-five days before the set trial date) **forty-percent**.
Any award of Attorneys' Fees and costs ordered by the Court shall be separately paid to
Counsel. Client understands that the contingency fees are not set out by law and are instead an
item negotiable between Client and Counsel, and that the Client may negotiate a lower rate of
recovery for attorneys' fees for Counsel.

Despite the contingency nature of this Agreement, Counsel shall have the right to
withdraw from representation of Client if Client fails to do any of the following: pay Counsel's
statements for payment of Out-of-Pocket Costs in full upon presentation, follow Counsel's
advice, cooperate with Counsel, or fail to communicate with Counsel.

**Lien on Recovery**

In the event of litigation, Client hereby grants to Counsel to the extent of Counsel's
attorneys' fees and unreimbursed costs (whether Out-of-Pocket or Reimbursable Costs), a lien on
any recovery achieved for Client by Counsel. Any and all checks or drafts in payment of any
settlement or judgment shall be made payable jointly to Client and Counsel unless otherwise
agreed by Client and Counsel, and will be deposited into Counsel's client trust account. Client
further agrees that Counsel may deduct its share of such recovery, by advising the Client in
writing of its intent to do so and providing the Client at least 5 days to respond to Counsel's
accounting, with the balance being distributed to Client.

**No Guarantees**

Client acknowledges that Counsel has not made and will make no guarantee regarding
the ultimate cost (in fees and expenses) or the outcome of any subject matter of the
representation, and all expressions regarding such matters are preliminary assessments or
opinions only.

**Forum For Disputes**

Any dispute arising out of or related to this agreement will be decided under California
law. California will be the exclusive jurisdiction for resolution of all disputes.

2

ER934

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 203 of 218

## ENGAGEMENT AGREEMENT

Cindy Lee Lewis (hereinafter, "Client") retains The Armenta Law Firm (hereinafter "Counsel") on the following terms and conditions to represent Client in connection with the removal of the YouTube Video film known as "Innocence of Muslims" and advice and possible litigation against the responsible parties ("the Action").

### General Authorization

Client authorizes Counsel to undertake, on Client's behalf, any actions Counsel deems necessary or appropriate to advance Client's interests in connection with the Action. This authorization includes the right to institute such actions, and to retain investigators, experts, consultants, and other attorneys or law firms as Counsel deems necessary to assist in the Action.

### Monthly Billing Statements

Counsel's services will be billed to Client on a monthly basis. The statements generally will be prepared during the second week of the month following the month during which the services have been performed. The monthly billing statement will include time detail to show the time spent by Counsel or other timekeepers and a listing of Out-of-Pocket Costs and Reimbursable Costs (as defined below). Client agrees to pay the Out-of-Pocket Costs upon receipt of the monthly billing statement.

### Out-of-Pocket Costs and Reimbursable Costs

Client shall be responsible for all costs incurred which are reasonably necessary for the preparation and presentation of Client's representation. The Out-of-Pocket Costs include those items for which Counsel makes advances on behalf of Client. These typically include filing and messenger fees, investigator fees, external reproduction costs, delivery charges, postage, and all experts' and consultants' fees. The Reimbursable Costs include those costs that are internal to Counsel's office, such as internal reproduction costs, facsimiles, telephone charges or the like.

Counsel shall have the authority (but not the obligation) to make advances for such Out-of-Pocket Costs and Reimbursable Costs on Client's behalf, but Client shall remain ultimately responsible for payment or repayment of such costs. Notwithstanding the foregoing, Counsel shall receive the Client's verbal consent prior to any single Out-of-Pocket Cost or Reimbursable Cost in excess of $500.00 and shall receive the Client's written consent for any single Out-of-Pocket Cost in excess of $1000.00. An email from the Client shall suffice as "writing" under this provision.

In this case, Counsel has agreed to find the initial cost only of filing the case if one is to be filed, service costs for the summons and complaint and the filing costs for seeking a temporary restraining order or motion for preliminary injunction. Counsel has explained that after these procedures, Client and Counsel will have better information to assess whether the Court believes Client is "likely to prevail on the merits." At that juncture, both agree that Client and Counsel will meet, and either the costs will be shifted to the Client, or the Client will agree to dismiss the action without prejudice if the action does not seem likely to result in prevailing.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 204 of 218

### Arbitration of Disputes

It is understood and agreed that any claim arising out of the rendition or lack of rendition of services under this Agreement (including claims of legal malpractice) will be determined by submission to final and binding arbitration. This includes any claim that any legal services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered. At the sole option of the Client this arbitration agreement may also include any dispute over legal fees as provided in Sections 6200-6206 of the California Business and Professions Code.

All parties to this Engagement Agreement, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury and instead are accepting the use of arbitration. Client may wish to seek outside advice or counsel concerning this procedure.

The arbitration proceedings will be administered by the Santa Monica Office of JAMS/Endispute.

NOTICE: BY SIGNING THIS AGREEMENT YOU ARE AGREEING TO HAVE ANY ISSUE OF LEGAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL.

_CG_ (Ms. ~~Lewis~~' initials)
Garcia

### Entire Agreement

This Engagement Agreement contains the entire agreement between Counsel and Client. Client acknowledges that there are no other agreements (either oral or written) between Client and Counsel other than as set forth in this Engagement Agreement. No modification or waiver of any term of this Engagement Agreement shall be valid unless agreed to in a writing signed by both Client and Counsel.

### Consultation With Independent Counsel

Client has been advised that this is a legally binding Engagement Agreement, and that Client has the right to (and Counsel recommends that Client does) consult an independent attorney to review and advise Client as to all of the terms of this Engagement Agreement, including but not limited to the scope of this Agreement, the fee and cost provisions of this Engagement Agreement and the advisability of Client executing this Engagement Agreement.

The undersigned, having carefully read and understands all of the above terms and conditions, hereby agrees to them.

Dated: September 14, 2012          _Cindy Lee Garcia_
                                   Cindy Lee ~~Lewis~~ Garcia

3

ER936

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 205 of 218

# FAX Transmission

Number of pages including cover sheet _13_

Attention: _Chris Armenta_

Company: _Law firm_

Phone: _310-826-2826_

Fax: _310-826-5456_

Date: _7-18-12_

From: _Cindy Garcia_

Company: _____

Phone: _661-817-3347_

Comments: _These are some of the threds, also
Posting Call for everyone Just Use me.
Also my original Script_

**OfficeMax**
**IMPRESS**

# PRINT CENTER

ER937

Innocence of Muslims Actress Speaks "says film is nightmare" - Yo...   http://www.youtube.com/watch?NR=1&feature=endscreen&v=cw

Browse | Movies | Upload          Cindy Garcia



## Innocence of Muslims Actress Speaks "says film is nightmare"

talkinerazytv   3d breribn   165 videos

Some good






JAGUAR XF

**Single Muslim**
by singlemuslimld
270,811 views   Ad

**Multiple Protests in Arab World over**
by MuslimResmNews
6,466 views

**Actress from anti Islamic film**
by ROAD3MERCY
19,762 views

**Actress in Anti-Islam Film Wants Name**
by AssociatedPress
66,238 views

Like   Add to   Share          15,932

Published on Sep 13, 2012 by talkinerazytv          21 likes, 41 dislikes

An actress who starred in an anti-Muslim film that stirred extremists to protest across the Middle East claims she was tricked by the filmmaker, who she says lied to the cast about his own name and the true intentions of the movie.

Show more




**MUSLIM RESPONSE TO: Anti-Islamic Movie**
by TakumExplained
126,848 views

**2012 09 13.Anti Islam actress speaks out"i**
by befis1111
1,002 views

All Comments (94)          see all

 Respond to this video...

Wow, u assholes who threaten that poor woman is exactly what is wrong with ur religion. Brainwashed idots!!! There r plenty peaceful Muslims around the world but few mutherfuckers like u is all it takes to give ur ad name. If u believe in ur own Quran u r the ones who going to Hell, I also have u get screwed in the ass with a long black dildo!
meg20110  3 days ago

Her name is Cindy Lee Garcia
urkmzz'o  2 days ago

*This has been flagged as spam*  show
TheCerberusIsDamu  2 days ago

All this over such a idiot movie. Are you kidding me muslim world. I swear these people would look to anything just to start protest r or going to war, I am surprised they havent launched their Jihad yet
theuropean  3 days ago

I bet the handsome guy who played Mohammed will become famous nonetheless
mentrznma  3 days ago

CLUSTERFUCK 2012!
AndreaUpgrade1  3 days ago

People, brothers and sisters, stop! She's innocent! She didn't even know what the movie was about! She even apologized to the Muslims for this mistake! I'm a Muslim myself, and I hate the bastards who created this film, and this lady here said she didn't know they were gonna record a other voice over her voice and change the story!
Monzaer Hameed  3 days ago

Steve is a guy. Fuck you Steve You are part of a Christia











**Feds Question Nakoula Basseley Nakoula (AKA**
by CutlOffMlerlam
26,400 views

**[Full Movie Leaked] Innocence of Muslims**
by LeakFullGames
59,279 views

**RE : Sam Bacile's The Muhammad Movie**
by thenationaldeth
353,641 views

**"Innocence of Muslims" Producer**
by 6valier
7,311 views

**Hillary Clinton calls anti-Muslim film,**
by HeadNews
139,026 views

**Actress from the "innocence of**
by CutlOffMlerlam
2,010 views

**Sam Bacile's "The Innocence of Muslims**
by CutlOffMlerlam
2,053 views

**Actress in "The Innocence of Muslims"**
by CutlOffMlerlam
398 views

PAGE 03          OFFICEMAX          16613972661     11:29   09/18/2012

ER938

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 207 of 218



Innocence of Muslims Actress Speaks "says film is nightmare" - Yo...   http://www.youtube.com/watch?NR=1&feature=endscreen&v=cw...

Innocence of Muslims Actress Speaks "says film is nightmare"

15,932

good

←threat

Ugly Conduct

threat

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 208 of 218

Innocence of Muslims Actress Speaks "says film is nightmare" - Yo.        http://www.youtube.com/watch?NR=1&feature=endscreen&v=cw...

Browse | Movies | Upload                    Corly Garcla

## Innocence of Muslims Actress Speaks "says film is nightmare"




















15,932

Like     Add to     Share

All Comments (94)



+threat

+threat

ER940

Christian ordained minister, I have received numerous death threats, all of which have been reported to the appropriate authorities. Because of security concerns, the authorities advised me not to release the details of which law enforcement agencies have received those reports. The death threats include, but certainly are not limited to, the following:

"I am ready to die for MUHAMMAD (PBUH) and I would Like to Kill all Those Who contributed in the Shape of Acting or Financially or any other Kind of Support in Shameless Movie."

"And If You Wanna to save your life and we consider your innocent then Just Kill Sam and Terry Jones."

"Dear the end is near."

"It's all a big joke. She will be Killed by some one who loves and cares our Prophet Muhammad peace be upon him"

"She will know what she did now she is saying sorry about that"

Copies of these threats are attached hereto as Exhibit B.

18. I have filed an application to register my acting performance in *Desert Warrior* work with the United States Copyright Office. Attached as Exhibit C is a true and correct copy of my copyright application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of October, 2012, at Bakersfield, California.

Cindy Lee Garcia                    10-14-72

Cindy Lee Garcia

DECLARATION OF CINDY LEE GARIA
CV 12 8315 (VBKx)

ER941

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 210 of 218

Copyright Office fees are subject to change.
For current fees, check the Copyright Office website at www.copyright.gov, write the Copyright Office, or call (202) 707-9000.

**Form PA**
For a Work of Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA                              PAU

EFFECTIVE DATE OF REGISTRATION

Month            Day            Year

PRIVACY ACT NOTICE: Sections 408-410 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1** TITLE OF THIS WORK ▼
"Desert Warrior"

PREVIOUS OR ALTERNATIVE TITLES ▼
"Innocence of Muslims"

NATURE OF THIS WORK ▼ See instructions
Audio-visual work, pertaining to Cindy Lee Garcia's dramatic performance in "Desert Warrior" and put on film

**2** NAME OF AUTHOR ▼
**a** Cindy Lee Garcia

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼
1957                    NA

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
{ Citizen of U.S.A.
OR Domiciled in

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes  ☑ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous? ☐ Yes  ☑ No

NOTE
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Dramatic performance in film entitled "Desert Warrior" affixed to film

**b** NAME OF AUTHOR ▼
Cindy Lee Garcia

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
{ Citizen of U.S.A.
OR Domiciled in

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes  ☐ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous? ☐ Yes  ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Dramatic performance fixed in tangible medium of expression (i.e. film)

**c** NAME OF AUTHOR ▼
Cindy Lee Garcia

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼
1957

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
{ Citizen of U.S.A.
OR Domiciled in

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes  ☐ No    If the answer to either of these questions is "Yes," see detailed instructions.
Pseudonymous? ☐ Yes  ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3** **a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
2011 ◄ Year

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month July   Day   Year 2012
only partially published, U.S.A   ◄ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Cindy Lee Garcia c/o The Armenta Law Firm, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

APPLICATION RECEIVED
ONE DEPOSIT RECEIVED
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
[Ms. Garcia did not sign any work for hire agreement nor a release of relinquishment of her rights when she acted in "Desert Warrior."

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.  • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

ER942

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 211 of 218

TOTAL P.03

| EXAMINED BY | | FORM PA |
| CHECKED BY | | |
| | CORRESPONDENCE ☐ Yes | FOR COPYRIGHT OFFICE USE ONLY |

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**5** PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is No, do not check box A, B, or C.
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**6** DERIVATIVE WORK OR COMPILATION  Complete both space 6a and 6a for a derivative work; complete only 6b for a compilation
a  Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

b  Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼
Garcia gave a dramatic performance for "Desert Warrior" fixed in film in 2011. Since then, the producer of the film altered her performance, dubbing in words she did not say, and changing the film's intent and name to "Innocence of Muslims."

**7** 
a  DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼          Account Number ▼

b  CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼
M. Cris Armenta, The Armenta Law Firm APC, 11900 W. Olympic Boulevard, Suite 730, Los Angeles, CA 90064

Area code and daytime telephone number  ( 310 ) 826-2826          Fax number  ( 310 ) 826-5456
Email cris@crisarmenta.com

**8** CERTIFICATION*  I, the undersigned, hereby certify that I am the
Check only one ▶
☒ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
          Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Cindy Lee Garcia          Date  September 25, 2012

Handwritten signature (X) ▼
X  _Cindy Lee Garcia_

**9** Certificate will be mailed in window envelope to this address:
Name ▼
Number/Street/Apt ▼
City/State/Zip ▼

• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office-PA
101 Independence Avenue SE
Washington, DC 20559-6222

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 212 of 218

HELPING

THE FATHERLESS

4 Jesus

*Our Mission is Malawi, Africa*



Pastor Cindy Garcia (center) with Missionary Team

---

BECOME A SPONSOR

Your name:

Your photo:

Your Pastor:

Your Missionary Crew:

Your E-mail, phone, or both

Your commitment amount if you so choose

*How can we preach except we be sent.*

- Become a sponsor
- Become a "father" to the fatherless
- Become a mentor
- Feed the hungry
- Clothe the naked
- Provide Shelter
- Show the goodness of God

*Together We Can Make A Difference*

---

MATTHEW 25:31-40 (NLT)

31 "But when the Son of Man comes in his glory, and all the angels with him, then he will sit upon his glorious throne. 32 All the nations will be gathered in his presence, and he will separate the people as a shepherd separates the sheep from the goats. 33 He will place the sheep at his right hand and the goats at his left.

34 "Then the King will say to those on his right, 'Come, you who are blessed by my Father, inherit the Kingdom prepared for you from the creation of the world. 35 For I was hungry, and you fed me. I was thirsty, and you gave me a drink. I was a stranger, and you invited me into your home. 36 I was naked, and you gave me clothing. I was sick, and you cared for me. I was in prison, and you visited me.'

37 "Then these righteous ones will reply, 'Lord, when did we ever see you hungry and feed you? Or thirsty and give you something to drink? 38 Or a stranger and show you hospitality? Or naked and give you clothing? 39 When did we ever see you sick or in prison and visit you?'

40 "And the King will say, 'I tell you the truth, when you did it to one of the least of these my brothers and sisters, you were doing it to me!'"



ER944

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 213 of 218

**PROOF OF SERVICE**

1

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**
2
    I am employed in the County of Los Angeles, State of California. I am over
3
the age of eighteen years and not a party to the within action. My business address
4
is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.
5
    On November 30, 2012 I served the following document(s) described as:
6
**DECLARATION OF JAMES A. BLANCO IN SUPPORT OF OBJECTION**
**AND REQUEST TO STRIKE DECLARATIONS OF TIM ALGER AND**
7
**MARK BASSELEY YOUSSEF**
8
on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes
9
addressed as follows:

10                          **Timothy L. Alger**
                            **Perkins Coie LLP**
11                          **3150 Porter Drive**
                            **Palo Alto, CA 94304-1212**
12                          **(by mail and courtesy email)**

13
                            **Nakoula B. Nakoula aka**
14                          **Mark Basseley Youssef**
                            **Metropolitan Detention Center**
15                          **Inmate #56329-112**
                            **180 N. Los Angeles St.**
16                          **Los Angeles, CA 90012**
                            **(by mail only)**
17

18      *BY MAIL:* I am "readily familiar" with the firm's practice of collection and processing
        correspondence for mailing with the United States Postal Service. Under that practice, it
19      would be deposited with the United States Postal Service that same day in the ordinary
        course of business. Such envelope(s) were placed for collection and mailing with postage
20      thereon fully prepaid at Los Angeles, California, on that same day following ordinary
21      business practices. (C.C.P. § 1013 (a) and 1013a(3))

22              Executed on November 30, 2012 in Los Angeles, California.

23
24                                                              Heather Rowland
25
26
27
28

1
**PROOF OF SERVICE**

ER945

Name  M. Cris Armenta, The Armenta Law Firm. SBN#177403
Address  11900 Olympic Blvd. Suite 730
City, State, Zip  Los Angeles, CA 90064
Phone  310-826-2826 x108
Fax  310-826-5456
E-Mail  cris@crisarmenta.com

☐ FPD    ☐ Appointed    ☐ CJA    ☐ Pro Per    ☒ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Cindy Lee Garcia

PLAINTIFF(S),

v.

Nakoula Basseley Nakoula, et al.

DEFENDANT(S).

CASE NUMBER:

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that _____ Cindy Lee Garcia _____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
Order Denying Plaintiff Garcia's Motion for
Preliminary Injunction
☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on ____November 30, 2012____. Entered on the docket in this action on November 30, 2012 _____.

A copy of said judgment or order is attached hereto.

December 21, 2012
Date

Signature
☐ Appellant/ProSe    ☒ Counsel for Appellant    ☐ Deputy Clerk

**Note:**  The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

A-2 (01/07)                    NOTICE OF APPEAL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 12-08315-MWF (VBKx)**          Date:  **November 30, 2012**

Title:    Cindy Lee Garcia -*v*- Nakoula Basseley Nakoula, et al.

PRESENT: HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT
         JUDGE

         Rita Sanchez                    None Present
         Courtroom Deputy                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANTS:

         None Present                    None Present

PROCEEDINGS (IN CHAMBERS):  ORDER DENYING PLAINTIFF
                            GARCIA'S MOTION FOR
                            PRELIMINARY INJUNCTION [12]

       On October 17, 2012, Plaintiff Cindy Lee Garcia filed an Ex Parte
Application for a Temporary Restraining Order and an Order to Show Cause Re
Preliminary Injunction, and Order of Impoundment (the "Application"). (Docket
No. 12). On October 18, 2012, Garcia's request for a temporary restraining order
was denied, and the Application was construed as a motion for a preliminary
injunction. (*See* Docket No. 15). This matter is now before the Court on Garcia's
motion for preliminary injunction (the "Motion"). (*See id.*) Defendants Google
Inc. and YouTube, LLC have filed an Opposition, and Garcia has filed a Reply.
(Docket Nos. 22, 27).

       The Court has read and considered the papers filed on this Motion and
deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ.
P. 78(b); Local Rule 7-15. Accordingly, the hearing set for **December 3, 2012**, is
removed from the Court's calendar.

       "'A plaintiff seeking a preliminary injunction must establish that he is likely
to succeed on the merits, that he is likely to suffer irreparable harm in the absence
of preliminary relief, that the balance of equities tips in his favor, and that an
injunction is in the public interest.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma*

---

**CIVIL MINUTES—GENERAL**                                    1

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 215 of 218

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-08315-MWF (VBKx)**          Date: **November 30, 2012**

Title:     Cindy Lee Garcia -*v*- Nakoula Basseley Nakoula, et al.

---

*GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).

Furthermore, this injunction would require affirmative conduct by Defendants, *i.e.* Defendants' immediate action in regard to the Film. Therefore, Garcia's Motion "is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor" her as the moving party. *See Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (requiring defendant to provide drug to patients).

Garcia alleges that Defendants have infringed her purported copyright in a trailer for a film (the "Film"). (*See generally* Compl. (Docket No. 1)). The Film was posted for public viewing on YouTube on July 2, 2012 – five months ago. Given this five-month delay, Garcia has not demonstrated that the requested preliminary relief would prevent any alleged harm. *Seto v. Thielen*, Civil No. 10-00351 SOM-BMK, 2010 WL 2612603, at *2 (D. Haw. June 28, 2010) ("Given Plaintiffs' allegation that the septic system is currently leaking raw sewage into Kaneohe Bay, the requested injunction would not necessarily prevent irreparable harm to Plaintiffs, as the leaking of the raw sewage would continue with or without [the defendant's] presence at the park.").

Nor has Garcia established a likelihood of success on the merits. Even assuming both that Garcia's individual performance in the Film is copyrightable and that she has not released this copyright interest, the nature of this copyright interest is not clear. Nor is it clear that Defendants would be liable for infringement.

As was the case in *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000), the Film "is a copyrightable work, and it is undisputed that the movie was intended by everyone involved with it to be a unitary whole." *Id.* at 1231. Additionally, a copyright in a work "vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a).

---

**CIVIL MINUTES—GENERAL**                                    2

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 217 of 218

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-08315-MWF (VBKx)**          Date: **November 30, 2012**

Title:     Cindy Lee Garcia -v- Nakoula Basseley Nakoula, et al.

---

Garcia does not argue that she is the sole author of the Film, nor does she argue that the Film was a joint work of which she was a co-author. According to the United States Supreme Court, the "author" is the "person to whom the work owes its origin and who superintended the whole work." *Aalmuhammed*, 202 F.3d at 1233 (citing *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61, 4 S. Ct. 279, 28 L. Ed. 349 (1884)). By Garcia's own allegations and argument, she does not meet this standard with respect to the Film. Furthermore, Garcia concedes that she does not have joint authorship over the Film or joint ownership of the copyright in the Film. (*See* Reply at 12 n.11).

Therefore, Garcia appears to argue only that she owns the copyright in her performance within the Film. Even if this copyright interest were cognizable and proven, by operation of law Garcia necessarily (if impliedly) would have granted the Film's author a license to distribute her performance as a contribution incorporated into the indivisible whole of the Film. *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990) ("[The plaintiff] created a work at defendant's request and handed it over, intending that defendant copy and distribute it. . . . Accordingly, we conclude that [the plaintiff] impliedly granted nonexclusive licenses to [the defendant] and his production company to incorporate the special effects footage into [the film]" and then "to distribute the film"). Garcia has introduced no evidence to the contrary.

Accordingly, Garcia's Motion (Docket No. 12) is DENIED.

Given the discussion above, the Court need not reach the issues of the balance of equities and the public interest.

IT IS SO ORDERED.

---

ER949

Case: 12-57302, 03/21/2013, ID: 8559948, DktEntry: 21-4, Page 218 of 218

**PROOF OF SERVICE**

1

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

2
    I am employed in the County of Los Angeles, State of California.  I am over

3
the age of eighteen years and not a party to the within action.  My business address

4
is 11900 Olympic Boulevard, Suite 730, Los Angeles, California 90064.

5
    On December 21, 2012 I served the following document(s) described as:

6
**NOTICE OF APPEAL**

7

8
on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes
addressed as follows:

9
           **Timothy L. Alger**
           **Perkins Coie LLP**

10
           **3150 Porter Drive**
           **Palo Alto, CA 94304-1212**

11

12
           **Nakoula B. Nakoula aka**
           **Mark Basseley Youssef**

13
         **Metropolitan Detention Center**
           **Inmate #56329-112**

14
           **180 N. Los Angeles St.**

15
           **Los Angeles, CA 90012**
           **(Courtesy copy)**

16

17
***BY MAIL:***  I am "readily familiar" with the firm's practice of collection and processing
correspondence for mailing with the United States Postal Service.  Under that practice, it

18
would be deposited with the United States Postal Service that same day in the ordinary
course of business.  Such envelope(s) were placed for collection and mailing with postage

19
thereon fully prepaid at Los Angeles, California, on that same day following ordinary
business practices.  (C.C.P. § 1013 (a) and 1013a(3))

20
    Executed on December 21, 2012 in Los Angeles, California.

21

22

23
                    Heather Rowland

24

25

26

27

28

1
**PROOF OF SERVICE**

ER950