No. 12-57302

IN THE

# United States Court of Appeals for the Ninth Circuit

CINDY LEE GARCIA,

Plaintiff-Appellant,

v.

GOOGLE INC. AND YOUTUBE, LLC,

Defendants-Appellees,

On Appeal from the United States District Court
for the Central District of California, CV-12-8315-MWF (VBKx)
District Judge Michael W. Fitzgerald

**GOOGLE INC. AND YOUTUBE, LLC'S BRIEF IN RESPONSE TO CINDY LEE GARCIA'S EMERGENCY MOTION FOR CONTEMPT**

TIMOTHY L. ALGER
SUNITA BALI
PERKINS COIE LLP
1305 Porter Drive
Palo Alto, California 94306
(650) 838-4334
TAlger@perkinscoie.com
Sbali@perkinscoie.com

March 29, 2014

NEAL KUMAR KATYAL
DOMINIC F. PERELLA
SEAN MAROTTA
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

*Counsel for Defendants-Appellees*
*Google Inc. and YouTube, LLC*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................3

I.  GOOGLE AND YOUTUBE HAVE WORKED DILIGENTLY
    TO COMPLY WITH THE COURT'S INJUNCTION .................................3

II. GARCIA'S CLAIMS OF NON-COMPLIANCE ARE
    MERITLESS ................................................................................6

    A.  The Few Videos Mentioned In Garcia's Attachments Do
        Not Amount To Non-Compliance.........................................7

    B.  Garcia's Other Complaints Are Baseless...............................9

    C.  The Court's Injunction Is Not Sufficiently Specific To Be
        Enforced By Contempt On These Facts...............................10

III. GARCIA'S PROPOSED SANCTIONS ARE UNAVAILABLE ...............10

CONCLUSION ..............................................................................12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**CASES:**

*Balla* v. *Idaho State Bd. of Corrs.*,
  869 F.2d 461 (9th Cir. 1989) .............................................................................10

*Bryant* v. *Media Right Prods., Inc.*,
  603 F.3d 135 (2d Cir. 2010) ..............................................................................11

*Derek Andrew, Inc.* v. *Poof Apparel Corp.*,
  528 F.3d 696 (9th Cir. 2008) .............................................................................11

*Falstaff Brewing Corp.* v. *Miller Brewing Co.*,
  702 F.2d 770 (9th Cir. 1983) ...............................................................................8

*FTC* v. *Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999) ..............................................................................6

*Gates* v. *Shinn*,
  98 F.3d 463 (9th Cir. 1996) ...............................................................................10

*General Signal Corp.* v. *Donallco, Inc.*,
  787 F.2d 1376 (9th Cir. 1986) ..............................................................................8

*Independent Towers of Washington* v. *Washington*,
  350 F.3d 925 (9th Cir. 2003) ...............................................................................7

*In re Crystal Palace Gambling Hall, Inc.*,
  817 F.2d 1361 (9th Cir. 1987) ...........................................................................10

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir.1993) ...................................................................................8

*Institute of Cetacean Research* v. *Sea Shepherd Conservation Soc'y*,
  No. 12-35266 (9th Cir. Feb. 21, 2013) ........................................................11, 12

*Polar Bear Prods., Inc.* v. *Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) .............................................................................10

## TABLE OF AUTHORITIES—Continued

Page

**STATUTES:**

17 U.S.C. § 412 ................................................................................................11

17 U.S.C. § 512(g)(1) .......................................................................................9

iii

Iɴ Tʜᴇ
# United States Court of Appeals
# for the Ninth Circuit

————————

No. 12-57302

————————

Cɪɴᴅʏ Lᴇᴇ Gᴀʀᴄɪᴀ,

Plaintiff-Appellant,

v.

Gᴏᴏɢʟᴇ Iɴᴄ. ᴀɴᴅ YᴏᴜTᴜʙᴇ, LLC,

Defendants-Appellees.

————————

On Appeal from the United States District Court
for the Central District of California, CV-12-8315-MWF (VBKx)
District Judge Michael W. Fitzgerald

————————

**GOOGLE INC. AND YOUTUBE, LLC'S BRIEF IN RESPONSE TO CINDY
LEE GARCIA'S EMERGENCY MOTION FOR CONTEMPT**

————————

## INTRODUCTION

Garcia's contempt motion paints a picture of a recalcitrant Google thumbing

its nose at this Court's orders. She asserts that Google has "disable[d] only a few

copies of *Innocence of Muslims*" and has "allow[ed] reuploads of the video." Mot.

¶¶ 7-8. And she says Google has "foist[ed] its duties to police its own platform"

onto her. *Id.* ¶¶ 5-7.

We will not mince words: These allegations are false. To Google's

knowledge, there are no copies of "Innocence of Muslims" available on YouTube,

nor were there when Garcia filed her motion. And Google has worked diligently to

1

comply with the Court's injunction. It has blocked every copy of the video that it has found through automated and manual searches. And it worked under tremendous time pressure to develop a new method—one that combines automated screening technology and manual review—to identify and block new uploads. YouTube was forced to take that unprecedented, technically complicated step because removal through its existing automated system would trigger a chain of events inconsistent with the Court's orders.

This work is substantial and ongoing, requiring significant commitment by the companies. At least 20 Google and YouTube employees have worked to ensure compliance, and they have collectively dedicated hundreds of hours to the task.

Given these efforts, Garcia unsurprisingly fails to document the supposed "flagrant[]" defiance that she alleges. Mot. ¶ 7. The one copy of the film she cites in her motion (*id.* ¶ 4) was identified by YouTube *before* Garcia brought it to Google's attention and blocked before she filed her motion. And the few copies she identifies in the attached emails have long since been blocked.

Google has complied with this Court's orders. And even if there were any truth to Garcia's allegations—and there is not—her request for massive monetary sanctions is meritless. Garcia's motion should be denied.

2

**ARGUMENT**

 **I.    GOOGLE AND YOUTUBE HAVE WORKED DILIGENTLY TO COMPLY WITH THE COURT'S INJUNCTION.**

Under this Court's injunction, Google and YouTube must "take down all copies of 'Innocence of Muslims' from YouTube.com and from any other platforms under Google's control." Feb. 28 Order at 2. They are also required to "take all reasonable steps to prevent further uploads of 'Innocence of Muslims' to those platforms." *Id.* Google and YouTube have worked diligently to comply.

1.    YouTube has taken painstaking steps to find and block copies of "Innocence of Muslims" uploaded prior to the Court's orders. Tucker Decl. ¶¶ 8-25. YouTube has used (and is using) an automated search program to comb through every one of the hundreds of millions of videos on the site and find copies of the film. *Id.* ¶¶ 9-10. YouTube employees also have performed manual searches to ensure that all copies are located and blocked. *Id.* ¶ 11.

The automated search process requires tremendous computing power, time, and expense; scanning digitally through every video on YouTube is far from instantaneous. *Id.* ¶ 10. YouTube's search algorithm gives highest priority to videos with a significant number of views. *Id.* That means that some videos with minimal views that were uploaded before the Court's injunction, and not found through manual searches, may be in the scanning queue before they can be identified. *Id.* ¶¶ 10, 13.

That appears to be the case with the lone copy Garcia identifies in her motion. Mot. ¶ 4. That copy had approximately 35 total views, and YouTube's automated system queued it for review behind videos with more views. Tucker Decl. ¶ 13. The system identified the video on the same day Garcia located it—indeed, before she brought it to Google's attention. *Id.* ¶ 12. And YouTube blocked it before Garcia filed her motion. *Id.*

2.      YouTube also has worked diligently—and incurred substantial burdens—to guard against new uploads of "Innocence of Muslims." Every *minute* of every day, over 100 hours of video are uploaded to YouTube. *Id.* ¶ 16. To find and block new uploads amid that ocean of data, YouTube has created a "reference file" of "Innocence of Muslims," akin to a digital fingerprint. *Id.* ¶ 17. That digital fingerprint is compared to each new video uploaded to YouTube. If the uploaded video matches "Innocence of Muslims," it is identified for manual review. *Id.* The YouTube compliance team reviews any videos identified for review twice each day and blocks access accordingly. *Id.* ¶ 18.

Garcia suggests that making "Innocence of Muslims" disappear is a "pedestrian, technical exercise" that can be accomplished instantaneously. Mot. ¶ 6. But that suggestion reflects a deep lack of technical understanding and vastly underestimates the burdens involved in complying with a sweeping take-down, stay-down order on dynamic platforms. In fact, YouTube had to create the

4

patched-together automated-and-manual review system described above because YouTube's existing Content ID system is not suitable to comply with the Court's injunction. Tucker Decl. ¶ 19. The Content ID system was designed for removal of content that might infringe a copyright, but it includes a fully-automated process for the person who uploaded the content to dispute the removal and cause its reinstatement. As soon as the uploader provides a valid reason why the copyright claim is mistaken, the video is immediately reinstated without human involvement. *Id.* ¶¶ 20-23. The standard Content ID system therefore cannot be used to comply with the injunction.

Recognizing as much, YouTube developed its new process under extreme time pressure. *Id.* ¶ 24. That process required a great deal of work and testing to ensure it operated as expected. *Id.* ¶ 25. And it continues to require substantial manual effort to operate. *Id.*

These efforts have succeeded. YouTube's compliance team has blocked access worldwide to approximately 1,400 copies of "Innocence of Muslims"— including every YouTube URL identified in Garcia's Digital Millennium Copyright Act notices. *Id.* ¶¶ 20, 28. Moreover, on the few occasions when Garcia notified Google and YouTube's counsel of a video containing her performance that had not already been removed, YouTube has promptly blocked it. *Id.* ¶ 29.

3.　　Garcia says Google and YouTube "have taken the position * * * that Ms. Garcia * * * bears the burden of advising Google of each and every individual URL" before Google will take it down. Mot. ¶ 5. The Court will search Garcia's email attachments in vain for proof of that assertion, because Garcia made it up. Google has never placed the burden on Garcia, but instead has told her—accurately—that "Google is taking this seriously and is working quite hard to comply with the Ninth Circuit's order." Docket No. 67 at 24 (email from T. Alger to C. Armenta). Google also offered to explain to Garcia's counsel precisely what Google was doing to comply. *Id.* Garcia's counsel did not take Google up on that offer. Instead, after dropping the issue of YouTube's compliance for over two weeks, Garcia's counsel suddenly announced she would file a contempt motion within 30 minutes. Alger Decl. ¶ 6. In response, Google's counsel urged Garcia's counsel to identify any copies that had been the subject of notifications and that remained on YouTube so that they could be addressed. *Id.* Garcia's counsel declined to identify any, but filed her motion anyway. *Id.*

## II.　　GARCIA'S CLAIMS OF NON-COMPLIANCE ARE MERITLESS.

As the moving party, Garcia " 'has the burden of showing by clear and convincing evidence that [Google and YouTube] violated a specific and definite order of the court.' " *FTC* v. *Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). Garcia's motion falls well short of that mark.

6

**A.    The Few Videos Mentioned In Garcia's Attachments Do Not Amount To Non-Compliance.**

Garcia's motion fails, first and foremost, because the conduct she cites does not amount to non-compliance.  She does not document a single instance of Google and YouTube knowingly allowing a copy of "Innocence of Muslims" to remain on their platforms.  Nor can she even point to a single copy that was on YouTube when she filed her motion.  Instead, she relies on exactly one video that was identified for removal *before* Garcia brought it to YouTube's attention and removed before she filed.  Tucker Decl. ¶ 12.  *Compare Vertex Distrib., Inc.* v. *Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir. 1982) (no contempt where defendants found and removed prohibited listings "prior to [movant]'s application for an order holding defendants in contempt").  Her declarations, meanwhile, suggest only that over the course of several weeks her counsel managed to find a few copies of "Innocence of Muslims" on YouTube.[1]  But even then, Garcia offers no evidence that those few videos were available due to any lack of diligence by YouTube.  And in fact, YouTube removed each one long before she filed.

---

[1]  Notably, these URLs are scattered through her declarations; her motion neither mentions nor provides context for them.  That is another reason to deny the motion.  " 'Judges are not like pigs, hunting for truffles buried in the briefs.' " *Independent Towers of Washington* v. *Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

Garcia's allegations could amount to non-compliance only if the standard for compliance were instantaneous perfection. It is not, and it cannot be. YouTube does not possess the completely automated system to instantly guard against new uploads that Garcia desires, Tucker Decl. ¶¶ 19-23, and "impossibility is a complete defense to a charge of contempt." *Falstaff Brewing Corp.* v. *Miller Brewing Co.*, 702 F.2d 770, 782 n.7 (9th Cir. 1983). Moreover, YouTube's process for identifying copies that pre-dated the Court's orders, *see supra* at 3-4, complies with the injunction because YouTube made "every reasonable effort" to comply. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Indeed, YouTube's comprehensive mix of automated scanning and manual searches has been not just reasonable but aggressive. To be sure, it can take time to identify within YouTube's vast database the few copies that rank low on the automated system's queue due to minimal viewings. *See supra* at 3. But again, instant, perfect compliance is not possible, and "substantial compliance with a court order is a defense to an action for civil contempt." *General Signal Corp.* v. *Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986). Moreover, "technical and inadvertent violations of [an] order will not support a finding of civil contempt." *Id.*

### B.     Garcia's Other Complaints Are Baseless.

Garcia complains about YouTube's choice to block copies of "Innocence of Muslims," rather than delete them altogether.  Mot. ¶ 8.  But the Court's injunction does not require YouTube to "delete" copies.  Instead, it directs YouTube to "take down" the copies.  Feb. 28 Order at 2.  And the phrase "tak[e] down" refers to a platform's "*disabling of access to*, or removal of" allegedly infringing content.  17 U.S.C. § 512(g)(1) (emphasis added).  YouTube has done just that.  It has disabled worldwide access to "Innocence of Muslims"; no one can see the blocked copies.  Tucker Decl. ¶ 26.  Requiring deletion would turn the preliminary injunction into a *de facto* permanent injunction by leaving YouTube unable to restore the videos if it ultimately prevails.  *Id.* ¶ 30.  The Court's orders sensibly do not go so far.

Finally, Garcia complains that Google has not removed from its search engine links to third-party websites containing copies of the film.  Mot. ¶ 8.  But the Court's injunction requires Google and YouTube to remove only "*copies of*" the video, not links to third-party sites that may lead to it. Feb. 28 Order at 2 (emphasis added).  And it requires Google to remove such copies only from "platforms under Google's control," not third-party websites.  *Id.*

Garcia's fundamental complaint appears to be that "Innocence of Muslims" is still on the Internet.  But Google and YouTube do not operate the Internet. They have taken all reasonable steps to comply with the Court's order.

9

## C. The Court's Injunction Is Not Sufficiently Specific To Be Enforced By Contempt On These Facts.

Even if Google and YouTube have fallen short in some way—and they have not—the terms of this Court's injunction cannot support contempt given Google and YouTube's good-faith compliance efforts. "[T]o support a contempt motion, the order alleged to have been disobeyed must be sufficiently specific." *Balla* v. *Idaho State Bd. of Corrs.*, 869 F.2d 461, 465 (9th Cir. 1989). Here the Court ordered Google and YouTube to take "all reasonable steps" to prevent new uploads, and they have done so. If nothing else, "[r]easonable minds can * * * differ as to whether" Google and YouTube's extensive efforts have been "reasonable." *Gates* v. *Shinn*, 98 F.3d 463, 472 (9th Cir. 1996). And because reasonable minds can differ, the injunction is "insufficient to uphold [a] contempt order." *Id.*

## III. GARCIA'S PROPOSED SANCTIONS ARE UNAVAILABLE.

Even if a contempt finding were possible here, there would be no legal basis for Garcia's proposed sanctions.

*First,* monetary sanctions for civil contempt cannot be measured by the Copyright Act's statutory-damages remedy. Civil-contempt penalties are limited to a party's "actual loss," *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1367 (9th Cir. 1987), and statutory damages do not measure actual loss, *see Polar Bear Prods., Inc.* v. *Timex Corp.*, 384 F.3d 700, 707 (9th Cir. 2004). Garcia has offered no evidence of actual loss here.

10

*Second*, Garcia suggests she should be entitled to "$30,000 to $150,000 per URL that was initially indicated" in the *852* URLs she identified *in 2012, before this Court's orders even issued*. Mot. ¶ 7. But all copies of the film located at those URLs have long since been blocked. Garcia never even suggests otherwise; nor does she suggest there was any delay in blocking them.[2]

*Third*, even if statutory damages could be appropriate in the civil-contempt context, Garcia would not be entitled to them. Under 17 U.S.C. § 412, Garcia can recover statutory damages only if she registered her copyright before infringement occurred. *Derek Andrew, Inc.* v. *Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008). Here she did not. The Copyright Office pointedly refused her registration.

*Finally*, even if Garcia could obtain statutory damages, she would be limited to a single award. Statutory damages are awarded per *work* infringed, not per *copy* of the work distributed. *See Bryant* v. *Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010). Garcia's contention that statutory damages lie for each posting of "Innocence of Muslims" is flat wrong.[3]

---

[2] Garcia says YouTube "continues to use the infringing content to generate * * * revenues[.]" Mot. ¶ 8. Not so. YouTube took measures to avoid running ads against known copies of "Innocence of Muslims" in *September 2012*. Tucker Decl. ¶ 31. Garcia's allegation that YouTube wants to keep the video up to make money is spurious.

[3] If the Court concludes it cannot deny Garcia's motion on the papers, it should have the Appellate Commissioner conduct an evidentiary hearing. *See Institute of*

11

## CONCLUSION

Garcia's motion should be denied.

Respectfully submitted,

/s/ Neal Kumar Katyal

TIMOTHY L. ALGER
SUNITA BALI
PERKINS COIE LLP
1305 Porter Drive
Palo Alto, California 94306
(650) 838-4334
TAlger@perkinscoie.com
Sbali@perkinscoie.com

NEAL KUMAR KATYAL
DOMINIC F. PERELLA
SEAN MAROTTA
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

*Counsel for Defendants-Appellees*
*Google Inc. and YouTube, LLC*

March 29, 2014

---

*Cetacean Research* v. *Sea Shepherd Conservation Soc'y*, No. 12-35266 (9th Cir. Feb. 21, 2013).

12

## CERTIFICATE OF COMPLIANCE

I certify that the attached brief is proportionately spaced, has a typeface of

14 points or more, and contains 2,484 words.

/s/ Neal Kumar Katyal
Neal Kumar Katyal

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 29, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Neal Kumar Katyal
Neal Kumar Katyal