# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CINDY LEE GARCIA,<br>          *Plaintiff*,<br>v.<br>GOOGLE INC. and YOUTUBE, LLC,<br>          *Defendants*. | Case No. 12-57302 |

## DECLARATION OF DEBRA TUCKER

I, Debra Tucker, hereby state as follows:

    1.    I am over the age of 18, and I am competent to testify on the matters set forth herein.

    2.    I make this declaration in support of Google and YouTube's opposition to Appellant Cindy Lee Garcia's motion for contempt. This declaration is based on my personal knowledge and my review of records kept in the normal course of YouTube's business.

<u>Introduction</u>

    3.    I am the Manager of Copyright Operations for YouTube, LLC. I have been employed in that capacity for more than two-and-a-half years. As Manager of Copyright Operations, I am responsible for acting as the registered DMCA agent for YouTube, managing the processing of all incoming copyright-related

complaints and inquiries, and overseeing copyright-related projects, such as creation of help content and tools.

4. As part of my duties, I have been assigned to oversee compliance with the Ninth Circuit's February 19, 2014, and February 28, 2014 orders (the "Orders").

5. Because of the scope of these Orders, we had to create new processes to comply, as described in more detail below.

6. The creation and implementation of these processes, and the additional compliance efforts detailed below, have involved substantial effort on my part and that of the company's compliance team. The team working on YouTube's compliance with the Orders has included more than 20 people, from various areas across the company, working on everything from manual searches for "Innocence of Muslims" to development and updating of the new compliance processes. These individuals have collectively dedicated hundreds of hours to the task of complying with the Orders.

7. Those efforts have paid off. YouTube has blocked access to approximately 1,400 copies of "Innocence of Muslims." And to my knowledge there are no copies of "Innocence of Muslims" available on YouTube now, nor were there when Ms. Garcia filed her motion.

YouTube's Compliance Efforts

8. YouTube has taken many different steps to comply with the Court's Orders.

9. First, YouTube implemented a process to scan the hundreds of millions of "legacy" videos already on YouTube prior to the Court's Orders in search of copies of the film. Whenever YouTube found such copies, it blocked them.

10. Because YouTube has so many videos, and because scanning videos requires so much computing power and time, YouTube uses an algorithm to prioritize scanning videos with a higher number of views over videos with very few views.

11. YouTube has supplemented that automated search process with manual searches by multiple employees. These employees have typed the film's name into YouTube's search bar and looked through the results to identify any copies of the video that had not yet been caught by the automated process.

12. The video identified in Paragraph 4 of Ms. Garcia's motion had been identified by YouTube's automated system for removal at 6:59 a.m. on the same day Ms. Garcia notified Google of it—*before* she brought it to Google's attention. It was reviewed by YouTube and removed at approximately 11:32 a.m. that same day, hours before Ms. Garcia filed her motion. I understand that the video

3

identified in Paragraph 4 had not been previously included in any takedown demands by Ms. Garcia.

13. That video had not previously been caught by our automated systems because it had a low number of views (approximately 35 lifetime views), so the system discussed above automatically queued it for scanning after the many millions of videos in the YouTube database with higher numbers of viewings.

14. The video identified in Paragraph 4 of Ms. Garcia's motion had not been caught in manual searches. This is not surprising given that there are tens of thousands of search results one still gets in a manual search for the film. Those tens of thousands of results include news reports, commentaries, spoofs, and all sorts of other "hits" which are not actual copies of the film. That is one reason why YouTube implemented an automated process to search for real copies.

15. Second, in addition to searching legacy videos, YouTube has had to create an entirely new system—patched together from a combination of automated tools and manual review—to ensure that any new uploads of "Innocence of Muslims" to YouTube are found and blocked.

16. YouTube receives tremendous amounts of data from users. Every minute of every day, more than 100 hours of video are uploaded to YouTube.

17. To screen all of this data, YouTube first created a digital fingerprint of a reference copy of "Innocence of Muslims." YouTube uses its automated

4

matching capabilities to compare that digital fingerprint to the digital fingerprint created for new user-uploaded videos posted to YouTube. If an uploaded video's fingerprint matches "Innocence of Muslims," the video is identified for further review by the compliance team.

18. Twice each day, the compliance team reviews any matched videos and determines whether the uploaded video is a copy of "Innocence of Muslims." If so, the team blocks the video globally.

19. This manual review of the videos captured via automated screening is required because YouTube's existing Content ID system cannot be used to comply with the Orders. Content ID is fully automated, and removal through the Content ID system automatically triggers a chain of events that could lead to outcomes that would be inconsistent with the Court's Orders.

20. Specifically, the Content ID system, which is offered freely to copyright holders worldwide, provides a mechanism for those users who have uploaded content to dispute a match of their video. When an uploader disputes a match and provides a valid reason why the claim of copyright ownership is mistaken, the system immediately (and automatically) reinstates the video to the site.

21. This dispute process is necessary to protect fair uses, to prevent mistaken identification by the system, and to prevent removals where there is an existing license to the content.

22. This dispute mechanism is fundamental to the design of Content ID. An automated system that provides unchecked power to people who claim to own copyrights, resulting in the removal of content that should be allowed to remain, has the potential to be abused to censor speech worldwide.

23. Because of this, the standard Content ID system could not be used to comply with the Court's Orders.

24. Recognizing that problem, YouTube was forced to quickly develop a new process using its matching technology to identify uploads of "Innocence of Muslims" and route those matches to a manual review queue, as described above.

25. That process has never been used before and was developed under extreme time pressure. It has required a significant amount of work and testing to ensure that it operated as expected. It continues to require a significant amount of manual effort to operate.

Content Blocked By YouTube

26. Through a combination of the steps set forth above, YouTube has blocked access to approximately 1,400 copies of "Innocence of Muslims." No one can access the blocked content through any YouTube site.

27. To my knowledge there are no copies of "Innocence of Muslims" available on YouTube now. Likewise, to my knowledge, there were no copies of the film available on YouTube at the time Ms. Garcia filed her motion. The one copy she identifies in the motion had already been blocked at the time she filed. It was identified for removal independently of her contact with Google's outside counsel.

28. I have reviewed the Digital Millennium Copyright Act notices that Ms. Garcia attached to her complaint and submitted to the court in support of her motion for preliminary injunction. Every instance of "Innocence of Muslims" identified in those notices has been blocked, and had been blocked before Ms. Garcia filed her motion.

29. I have also reviewed e-mails from Ms. Garcia's counsel to counsel for Google and YouTube that were attached to the declarations that accompanied her motion. Every instance of "Innocence of Muslims" identified in those e-mails has been blocked, and had been blocked before Ms. Garcia filed her motion.

30. Ms. Garcia states in her contempt motion that YouTube should be deleting all copies of "Innocence of Muslims" from its server, rather than blocking them worldwide. If YouTube deleted the copies, within our existing systems that step would be irreversible. YouTube would have no way of restoring those copies, or their associated URLs, in the event it eventually prevails in this litigation.

31. Ms. Garcia also states in her contempt motion that YouTube is generating revenues from any copies of "Innocence of Muslims" posted on the site. That is not correct. In fact, on or about September 12, 2012, YouTube began taking measures to prevent ads from running on known "Innocence of Muslims" videos.

I make this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746, and I state that the facts set forth herein are true and correct.


                                                              /s/ Debra Tucker
                                                              Debra Tucker

Dated: March 28, 2014