No. 12-57302

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

CINDY LEE GARCIA, Plaintiff-Appellant

v.

GOOGLE, INC., YOUTUBE LLC, et al., Defendants-Appellees, and NAKOULA

BASSELEY NAKOULA, a.k.a. Sam Bacile, et al., Defendants.

---

On Appeal from the United States District Court
for the Central District of California
D.C. No. 2:12-cv-08315-MWF-VBK

---

# APPELLANT GARCIA'S RESPONSE TO PETITION FOR REHEARING
# EN BANC

---

M. Cris Armenta (SBN 177403)
The Armenta Law Firm APC
11900 W. Olympic Blvd. Ste. 730
Los Angeles, CA 90064
Tel: (310) 826-2826
cris@crisarmenta.com

Jason Armstrong
The Law Office of Jason Armstrong
611 West Main St.
Bozeman, MT 59715
Tel: (406) 587-2085
armstronglaw@mac.com

Credence Sol (SBN 219784)
La Garenne
86200 Chauvigny
France
Tel: 06 74 90 22 08
credence.sol@orange.fr

## CIRCUIT RULE 27-3 CERTIFICATION

Pursuant to Ninth Circuit Rule 27-3, counsel for Appellant Cindy Garcia state:

1.  The telephone numbers, email addresses, and office addresses of the attorneys for the parties are:

| | |
|---|---|
| M. Cris Armenta<br>THE ARMENTA LAW FIRM, APC<br>11900 W. Olympic Blvd, Suite 730<br>Los Angeles, CA 90064<br>Tel: (310) 826-2826 x108<br>cris@crisarmenta.com | Neal Kumar Katyal<br>Christopher Handman<br>Dominic F. Perella<br>Sean Marotta<br>HOGAN LOVELLS US LLP<br>555 Thirteenth St., N. W.<br>Washington, D.C. 20004<br>Tel: (202) 637-5600<br>neal.katyal@hoganlovells.com |
| Credence E. Sol<br>La Garenne<br>86200 Chauvigny,<br>France<br>Tel: 06 74 90 22 08<br>credence.sol@orange.fr | Timothy L. Alger<br>Sunita Bali<br>PERKINS COIE LLP<br>1305 Porter Dr.<br>Palo Alto, CA 94306<br>Tel: (650) 838-4334<br>talger@perkinscoie.com<br>sbali@perkinscoie.com |
| Jason Armstrong<br>The Law Office of Jason Armstrong<br>611 West Main St.<br>Bozeman, MT 59715<br>Tel: (406) 587-2085<br>armstronglaw@mac.com | |
| *Counsel for Plaintiff/Appellant Cindy* | *Counsel for Defendants/Appellees* |

| Lee Garcia | Google, Inc. and YouTube, LLC |

2.      Appellant/Plaintiff Cindy Lee Garcia hereby files this response to Defendants/Appellees Google, Inc., and YouTube LLC's (hereinafter, "Google") Petition for Rehearing En Banc.

# TABLE OF CONTENTS

CIRCUIT RULE 27-3 CERTIFICATE ........................................................ i

TABLE OF CONTENTS.................................................................... iii

TABLE OF AUTHORITIES ............................................................... iv

I.    INTRODUCTION .................................................................. 1

     A.   The Panel's Decision Appropriately Held That Garcia Is Likely
        to Prevail, and *En Banc* Review Should Be Declined ................. 1

II.   ARGUMENT..................................................................... 2

     A.   The Panel Correctly Concluded That Garcia Is Likely to Prevail
        On Her Copyright Claim.............................................. 2

         1.   The panel applied the correct standard of review ................. 2

         2.   Actors have copyright interests in their performances ......... 4

         3.   Garcia did not license her performance for use in
             *Innocence*    *of Muslims* ................................. 6

         4.   Garcia does not claim joint authorship in the entirety of
             either *Desert Warrior* or *Innocence of Muslims* ................. 9

         5.   Garcia's performance was not a work-for hire ................... 10

     B.   The Panel Appropriately Balanced the Harms ........................... 11

     C.   This Court Has the Final Word on Copyrightability ................... 12

         1.   The Copyright Office letter is not properly before this Court 12

         2.   The Copyright Office's letter deserves no deference and is
             unpersuasive. ...................................................... 13

         3.   Garcia's copyright application is sufficient to allow her
             infringement case to proceed .................................. 17

III.  CONCLUSION.................................................................. 18

## TABLE OF AUTHORITIES

**U.S. Constitution**

U.S. CONST., Art I, Sec. 8, cl. 8 .......................................................... 6

**Federal Statutes**                                               **Pages**

17 U.S.C. § 101 ...................................................................... 10,11

17 U.S.C. § 102(a) .................................................................... 4

17 U.S.C. § 201(b) ................................................................... 10

17 U.S.C. § 410 (b). ................................................................. 16

17 U.S.C. § 411 (a) .................................................................. 17

17 U.S.C. § 512 ........................................................................ 6

17 U.S.C. § 701(e)……………………………………………………16

**Cases**                                                          **Pages**

*Aalmuhammed v. Lee,*
202 F.3d 1227 (9th Cir. 2000) ...................................................... 4,10

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.,*
F.3d ___, 2014 WL 1013129, *9, n.52 (9th Cir. Mar. 18, 2014) ....... 14

*Arista Records, Inc. v. Flea World, Inc.,*
356 F. Supp. 2d 411, 422 (D.N.J. 2005) .......................................... 11

*Aronson v. Dog Eat Dog Films, Inc.,*
738 F. Supp.2d 1104, 1116 (W.D. Wash 2010) ................................ 5

*Batjac Prods v. GoodTimes Home Video Corp.,*
160 F.3d 1223, 1230 (9th Cir. 1998) ............................................... 13

*Bean v. John Wiley & Sons, Inc.,*
No. CV 11–08028–PCT–FJM, 2012 WL 1078662,
at *2 (D.Ariz. Mar. 30, 2012) ........................................................ 8

*Brown v. Ames*,
201 F.3d 654, 659 (5th Cir. 2000).......................................................... 4

*Brown v. Twentieth Century Fox Film Corp.*,
799 F. Supp. 166 (D.D.C. 1992) .............................................................. 7

*Community for Creative Non-Violence v. Reid*,
490 U.S. 730, 751-52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)...... 10

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*,
606 F.3d 612, 621 (9th Cir. 2010).......................................................... 17

*Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*,
600 F.2d 1184, 1188 (5th Cir. 1979)............................................... 11,12

*Defenders of Wildlife v. Salazar*,
812 F.Supp.2d 1205 (D. Mont. 2009) .................................................. 14

*Effects Associates, Inc. v. Cohen, et al.*,
908 F.2d 555 (9th Cir. 1990)................................................................... 7

*Eldred v. Ashcroft*,
537 U.S. at 221, 123 S.Ct. 769 (2003) ................................................. 11

*Ferry-Morse Seed Co. v. Food Corn, Inc.*,
729 F.2d 589, 590 (8th Cir.1984).......................................................... 3

*Fleet v. CBS, Inc.*,
50 Cal. App. 4th 1911, 1919-1920 (1996) ............................................ 4

*Gilliam v. American Broadcasting Cos.*,
538 F.2d 14, 19-21 (2d Cir. 1976) ......................................................... 8

*Greenfield v. Twin Graphics, Inc*,
268 F. Supp.2d 358 (D.N.J. 2003). ........................................................ 8

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
739 F.3d 446, 448-449 (9th Cir. 2014) ............................................... 14

*Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc.*,
75 F. Supp. 2d 1290, 1295 (D. Utah 1999)........................................ 12

*John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*,
322 F.3d 26, 40 (1st Cir 2003)................................................................ 9

*Johnson v. Jones*,
149 F.3d 494, 502 (6th Cir. 1998)........................................................... 9

*Jules Jordan Video, Inc. v. 14492 Canada, Inc.*,
617 F.3d 1146 (9th Cir. 2010).............................................................. 4,5

*Laws v. Sony Music Entertainment, Inc.*,
448 F.3d 1134 (9th Cir. 2006)................................................................. 4

*Lennon v. Premise Media Corp.*,
556 F.Supp.2d 310 (S.D.N.Y, 2008).................................................... 3

*MacLean Assoc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.*,
952 F.2d 769, 779 (3d Cir. 1991)....................................................... 8

*Mehrig v. KFC Wester, Inc.*,
516 U.S. 479, 484 (1996).................................................................. 3

*Muller v. Walt Disney Prods.*,
871 F. Supp. 678 (S.D.N.Y. 1994)..................................................... 7

*Nelson–Salabes, Inc. v. Morningside Dev., LLC*,
284 F.3d 505, 514-16 (4th Cir. 2002) ............................................... 9

*New York Times Co. v. United States*,
403 U.S. 703, 731 n.1 (1970)............................................................ 11

*No Doubt v. Activision, Inc.*,
702 F.Supp.2d 1139, 1143-44 (C.D. Cal. 2010) ............................... 4

*Nova Stylings, Inc. v. Ladd*,
795 F.2d 1179, 1182 (9th Cir. 1983)..................................................16

*Oddo v. Ries*,
743 F. 2d 630 (9th Cir 1984)............................................................. 7

*Ortiz v. Napolitano*,
667 F.Supp.2d 1108, 1120 (D. Az. 2009) ......................................... 14

*Perfect 10 v. Google, Inc.*,
416 F. Supp.2d 828 (C.D. Cal. 2006) ............................................... 3,4

*Price v. Stevedoring Services of America, Inc.*,
697 F.3d 820, 830-831 (9th Cir. 2012) ............................................. 14

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154, 166 (2010)................................................................... 17

*Reinsdorf v. Skechers,
U.S.A.*, 2011 U.S. Dist. LEXIS 28293, at *9
(C.D. Cal. Mar. 9, 2011) ................................................................... 8

*Rivers v. Méndez & Compañía*,
F. Supp.2d __, 2013 WL 6528815 (D. P.R. Dec. 12, 2013) ............. 9

*Rooney v. Columbia Pictures, Inc.*,
538 F. Supp. 211 (S.D.N.Y. 1982)..................................................... 7

*Seifer v. PHE, Inc.*,
196 F.Supp.2d 622, 626-27 (S.D. Ohio 2002) ................................. 5

*Siegel v. Time Warner, Inc.*,

496 F. Supp. 2d 1111, 1148 (C.D. Cal. 2007) ................................... 10

*Skidmore v. Swift & Co.*,
323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) ..................... 14

*Stanford v. Caesars Entertainment, Inc.*,
430 F.Supp.2d 749, 757 (W.D. Tenn. 2006) .................................... 5

*United Commercial Ins. Servs., Inc. v. Paymaster Corp.*,
962 F.[2]d 853, 857 (9th Cir. 1992) .................................................. 8

**Other Authorities**                                                        **Pages**

37 C.F.R. 202.5 ............................................................. 16,17

FED. R. EVID. 902(2), (4) .................................................. 13

FED. R. EVID. 201(e) ...................................................... 13

Copyright Office Compendium II § 460 ........................................... 15

Copyright Office Compendium II § 462 ........................................... 15

Copyright Office Compendium II § 606.04 ........................................ 16

Copyright Office Compendium II § 101 ........................................... 15

Copyright Office Compendium II § 495.02 ........................ 16, 17

## I.   INTRODUCTION

### A.   The Panel's Decision Appropriately Held That Garcia Is Likely to Prevail, and *En Banc* Review Should Be Declined.

This briefing round represents Google's fifth opportunity *in this Court alone* to defend its indefensible conduct. Garcia urges the Court to continue to stand behind the panel's well-reasoned opinion for several reasons. First, the panel applied the proper standard of review, determining that actors in Garcia's situation have a copyright interest in their performance. Second, Garcia never assigned, licensed, or transferred the right to her performance in *Desert Warriors* for use in *Innocence of Muslims*. Consequently, she remains the "author" of that performance with the right to control its exhibition. Third, Garcia does not claim joint authorship in the entirety of either *Desert Warrior* or *Innocence of Muslims*, just the portion that contains her performance. Fourth, because Garcia was not Youssef's employee, her performance was not a work for hire. Fifth, given the extraordinary danger to Garcia and her family together with the merits of her copyright claim, the panel's takedown order appropriately balanced the harms and did not impinge on anybody's First Amendment rights. Sixth, Garcia requests that the Court disregard the views expressed in a Copyright Office letter submitted by Google, because that letter is not properly before this Court, it is not

entitled to deference, and its reasoning is flawed. Finally, Google's claim that Garcia's case is barred because her copyright registration is not yet complete is unmeritorious under both the Copyright Act and Supreme Court precedent.

## II.   ARGUMENT

### A.   <u>The Panel Correctly Concluded That Garcia Is Likely to Prevail On Her Copyright Claim.</u>

#### 1.   <u>The panel applied the correct standard of review</u>.

The majority correctly concluded that the district court erred when it denied Garcia's application for a preliminary injunction, because it:

> doesn't decide whether Garcia has a copyright interest in her performance, whether her performance is a "work," whether Garcia is the "author" of her performance or whether her performance is a work for hire. Nor does it address the balance of the equities or the public interest implicated by [an] injunction[.]

(Op. at 6.) The panel held, "We need not and do not decide whether *every actor* has a copyright in his performance within a movie. It suffices for now to hold that, while the matter is fairly debatable, *Garcia is likely to prevail*."[1] (Op. at 10.) Moreover, the panel found that Garcia "is likely to succeed on her copyright claim, that she faces irreparable harm absent an injunction and that the balance of equities and the public

---

[1]   Google relies on the phrase "fairly debatable" to conclude that Garcia has no copyright claim. What the majority actually identified as "fairly debatable" is whether "*every actor* has a copyright in his performance within a movie." (Emphasis added.) That issue is not before the Court.

interest favor her position. The district court abused its discretion finding

otherwise." *Id.* The opinion points out the following critical facts:

> Garcia filed eight takedown notices under the [DMCA.
> W]hen Google resisted, she supplied substantive
> explanations as to why the film should be taken down,
> Google still refused to act[.]

(Op. at 5.) "One of the goals in an injunction case such as this is a return

to the status that existed before the violative action occurred." *Ferry-*

*Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 590 (8th Cir. 1984).

The harm to Garcia arising out of the infringement is undisputed. After

hateful and violence-inducing words were put in her mouth and broadcast

worldwide, she received threats of rape and death unless the trailer came

down, became the target of an Egyptian *fatwa*, and was forced to flee her

home and church.

Google incorrectly claims that the panel's order is a mandatory

injunction. However, the Court did not order Google to seek out every

offending copy of the video everywhere. Rather, it simply prohibited

Google from *distributing* infringing material. *See Mehrig v. KFC*

*Western, Inc.*, 516 U.S. 479, 484 (1996) (prohibitory injunction

"restrain[s]" further illegal conduct); *Lennon v. Premise Media Corp.*,

556 F.Supp.2d 310, S.D.N.Y. 2008 (same); *Perfect 10 v. Google, Inc.*,

416 F.Supp.2d 828 (C.D. Cal. 2006) (injunction was prohibitory because

it only required Google to cease infringing activities; any active steps

required to comply were merely the means of discontinuing infringing activities), *rev'd on other grounds* 653 F.3d 976 (9th Cir. 2011). Accordingly, the injunction is prohibitory and is not subject to heightened scrutiny.

2.  Actors have copyright interests in their performances.

Garcia's performance is a "dramatic work" "fixed in [a] tangible medium of expression" and therefore, copyrightable. 17 U.S.C. § 102(a); *see Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1919-1920 (1996) (once actor's performance is fixed in film, it is "within the subject matter of copyright law"). Numerous courts, including this one, agree.[2] *See, e.g., Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010) (actor's lawsuit against distributor that had sold DVDs featuring his performances implicated copyright claims); *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134 (9th Cir. 2006) (finding *Fleet* persuasive in case involving misappropriation of musical performance); *Brown v. Ames*, 201 F.3d 654, 659 (5th Cir. 2000) (actors in *Fleet* gave "copyrightable" performances); *No Doubt v. Activision, Inc.*, 702

---

[2]   The dissent reasoned that because a film is a "work," an acting performance is not. (Op. 23.) The dissent relied on *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000), which held that a film consultant was not a joint author. But in *Aalmhumammed*, the consultant did *not* perform: he made recommendations. His contribution was not fixed in a tangible medium. The dissent also concluded that Garcia is undeserving of protection because she "had no creative control[.]" (Op. at 25.) However, she delivered more than a rote line reading: she made a creative contribution. (Opp. to *En Banc* Hearing on Order at 22, citing ER 25.)

F.Supp.2d 1139, 1143-44 (C.D. Cal. 2010) (same); *Aronson v. Dog Eat Dog Films, Inc.*, 738 F.Supp.2d 1104, 1116 (W.D. Wash. 2010) (misappropriation claim arising out of use of video that featured plaintiff's "image, voice and lyrics" implicated copyright); *Stanford v. Caesars Entertainment, Inc.*, 430 F.Supp.2d 749, 757 (W.D. Tenn. 2006) (dispute over use of film performance implicates copyright); *Seifer v. PHE, Inc.*, 196 F.Supp.2d 622, 626-27 (S.D. Ohio 2002) (actor's right to prevent "the distribution of a copyrighted work (portions of the film itself)" is "protected under § 106").

Notably, both *Laws*, 448 F.3d at 1137, and *Jules Jordan Video*, 617 F.3d at 1155, confirm that a performer only loses rights in her performance when she transfers them through: (1) employee status; (2) a *written* copyright assignment; or (3) a *written* work-for-hire agreement. Otherwise, filmmakers would not engage in the universal practice of requiring actors to sign releases. (Brief of Charles Harder, filed March 13, 2014.)

Google argues that if this Court were to follow the law and protect Garcia's rights, motion pictures would be composed of an unworkable mosaic of rights, a situation that would come as unwelcome "news" to Hollywood. (*En Banc* Application (hereinafter, "Google Brief") at 14.) The powerful actors' union SAG-AFTRA disagrees:

[A]n audiovisual producer cannot rely on copyright law as a

shield against those whose performances are used without
their consent[.]

(Harder Brief, Ex. 1.) Indeed, [3] a motion picture *is* a combined mosaic of

rights and creative performances of performers and creators.[4] It is

official government policy that actors retain a copyright interest in their

performances absent an effective assignment. *See* USPTO Office, WIPO

Audiovisual Dramatic Performance Treaty Background and Summary

("Under U.S. law, actors and musicians are considered to be 'authors' of

their performances, providing them with copyright rights.").

> 3. <u>Garcia did not license her performance for use in</u>
> <u>*Innocence of Muslims*</u>.

Frequently, an actor expressly licenses, assigns or transfers her

rights to a director or studio, and those transfers are enforceable. *See,*

---

[3]     Google's "sky-is-falling" plea fails for additional reasons. First, it
ignores that the work-for-hire doctrine requires only a signed writing.
Second, filmmakers can access standard releases from numerous
locations on the Internet in less time than it takes to upload a YouTube
video. Third, even if no written contract exists, in most cases an implied
license is implied. The only real precedent that this case sets is that a
filmmaker cannot deceive actors and use their performances for
unforeseeable, unrelated purposes. In the absence of fraud, a license is
implied.

[4]     Google, which is in the business of exhibiting videos on the
Internet, disagrees with the copyright laws. However, our Constitution
protects creators. U.S. CONST., Art. 1, Sec. 8, cl. 8. Moreover, Congress
has provided Google with "safe harbor" immunity, requiring only that
Google respond promptly to copyright notices. *See* 17 U.S.C. § 512
(DMCA safe harbor provision). Here, Google fails to meet the statute's
safe-harbor requisites. It refused to take down the infringing material
when put on notice, and it received a financial benefit directly attributable
to the infringing activity, which it has the right and ability to control.

*e.g., Brown v. Twentieth Century Fox Film Corp.*, 799 F.Supp. 166
(D.D.C. 1992); *Rooney v. Columbia Pictures, Inc.*, 538 F.Supp. 211
(S.D.N.Y. 1982); *Muller v. Walt Disney Prods.*, 871 F.Supp. 678
(S.D.N.Y. 1994). It is undisputed that Garcia did not expressly release
her rights.[5] (ER 194) Google therefore argues that Garcia *impliedly*
licensed her performance. That argument is unmeritorious: releases *must*
be in writing, and the burden is *not* on the performer to prove that she did
not release her rights.

    *Effects Associates, Inc. v. Cohen, et al.*, 908 F.2d 555 (9th Cir.
1990), is instructive. There, the plaintiff created special effects for use in
a specific film. It did not execute a written release. After the producer
failed to pay, the plaintiff sued for copyright infringement. This Court
held that "[a]bsent an express transfer of ownership, a contributor who is
not an employee retains ownership of his copyright." *Id.* at 558 (citation
omitted). The court additionally observed that the Copyright Act "makes
no special allowances for the movie industry[.]" *Id.* at 558. *See also
Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984) (publication of distorted
manuscript exceeded scope of release). Other courts agree that even if a
rights holder *has* licensed a work, a copyright infringement action is

---

[5]     Just days before a scheduled hearing in the district court, Google
submitted documents that it claimed constituted releases signed by
Garcia. (ER 791-804.) A handwriting expert concluded that they were
forged. (ER 895-901.) Google then abandoned the claim.

appropriate where the defendant's use of that work exceeds the scope of the release.[6] *See, e.g., MacLean Assoc. v. Wm. M. Mercer–Meidinger–Hansen, Inc.*, 952 F.2d 769, 779 (3d Cir. 1991); *Gilliam v. American Broadcasting Cos.*, 538 F.2d 14, 19-21 (2d Cir. 1976); *Bean v. John Wiley & Sons, Inc.*, No. CV 11–08028–PCT–FJM, 2012 WL 1078662, at *2 (D. Ariz. Mar. 30, 2012); *Reinsdorf v. Skechers, U.S.A.*, 2011 U.S. Dist. LEXIS 28293, at *9 (C.D. Cal. Mar. 9, 2011); *Greenfield v. Twin Graphics, Inc*, 268 F.Supp.2d 358 (D.N.J. 2003).

Google ignores the law on this subject by claiming, "courts cannot give effect to a licensor's 'unexpressed intent.'" (Google Brief at 15 (citing *United Commercial Ins. Servs., Inc. v. Paymaster Corp.*, 962 F.[2]d 853, 857 (9th Cir. 1992).). However, the case on which Google relies, *United Commercial*, is inapplicable. That case (which does not involve copyright issues) relates to the court's refusal to imply into a settlement agreement a term that was never expressed by the parties. Here, there is no written agreement and, at any rate, this case does not present a situation that involves an agreement with some reasonably foreseeable, yet unexpressed term.

In the copyright context, it is black-letter law that "[t]he touchstone

---

[6] Amicus Curiae Public Citizen claims that the panel's opinion enables a "heckler's veto." Not true. The opinion prohibits copyright infringement, not free speech. The order does not censor free expression; rather, it prevents Google from distributing a copyrighted performance that was obtained by fraud and exceeded the scope of any implied license.

for finding an implied copyright license is intent … [i.e.,] whether the totality of the parties' conduct indicates an intent to grant such permission." *Rivers v. Méndez & Compañia* __ F.Supp.2d __, 2013 WL 6528815 (D. P.R. Dec. 12, 2013) (artist's awareness that work might be used did not compel conclusion that it could be used indefinitely); *see also John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 40 (1st Cir. 2003); *Nelson–Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514-16 (4th Cir. 2002); *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). This Circuit agrees with that universal view. *See, e.g., Effects Assoc.*, 908 F.2d at 557 (producers have right to contract with various contributors to make a final product).

Here, whereas Garcia performed for the purpose of appearing in *Desert Warrior*, Youssef's intention was to distort and misappropriate her performance for use in *Innocence of Muslims*. Garcia could not have imagined that her performance would be used in this manner. Accordingly, the totality of the circumstances indicates that there was no meeting of the minds between Garcia and Youssef and therefore, no implied license.

   4.   Garcia does not claim joint authorship in the entirety
        of either *Desert Warrior* or *Innocence of Muslims*.

Google objects to what it claims is a judicial grant of joint authorship to Garcia. (Google Brief at 17.) Google is wrong—Garcia

has never claimed that she is a "joint author." *See Siegel v. Time Warner, Inc.,* 496 F.Supp.2d 1111, 1148 (C.D. Cal. 2007) ("Where the author never intended for his material to be part of a joint work, he retains the right to that material."). It is undisputed that Garcia and Youssef never intended to jointly own either *Desert Warrior* or *Innocence of Muslims.* Accordingly, Google's "joint authorship" argument is a red herring.[7]

### 5. Garcia's performance was not a work-for-hire.

Garcia and Youssef did not have a "conventional employment relationship." *See* 17 U.S.C. §§ 101, 201(b); *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 751-52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (setting forth factors to determine whether party is an "employee" for purposes of copyright ownership, including skill required, duration of relationship, and right to assign additional work). Garcia worked for Youssef for three days for a job that required specialized acting skills. Youssef had no right to assign additional projects, he did not add her to any payroll system, filmmaking was not his regular business, he did not give Garcia employee benefits, and Garcia was not treated an employee for tax purposes. Accordingly, the *Reid*

---

[7] *Aalmuhammed,* 202 F.2d at 1233-1234, is not on point. First, the issue in *Aalmuhammed* related to the burden of proof with respect to the intent to create a jointly authored work. Second, *Aalmuhammed* suggests that where there is no written joint authorship agreement a contributory infringer such as Google cannot establish a joint authorship defense, because it cannot prove the parties' intentions.

factors demonstrate that Garcia was not an employee. In the absence of a release, then, her performance was not a work for hire. 17 U.S.C. § 101 (defining "work for hire").

### B. The Panel Appropriately Balanced the Harms.

As the Court is aware, Garcia and her family have received thousands of threats as the result of the infringing content's exhibition by Google. The panel properly balanced Google's business interests in copyright infringement against the irreparable harm that is befalling and will continue to befall Garcia if she fails to remove the content.

Google claims that the injunction denigrates the public's interest in freedom of speech. However, the annals of American law are replete with cases affirming injunctions against copyright infringement. *See, e.g., New York Times Co.*, 403 U.S. at 731 n.1 (White, J. and Stewart, J., concurring) (injunctive relief is appropriate to prevent newspapers from violating copyright); *see also Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp. 2d 411, 422 (D.N.J. 2005) (refusing to allow argument that enforcing copyright had a "chilling effect" on its First Amendment rights). Injunctive relief against copyright infringement does not infringe the right to free expression. *See, e.g., Eldred v. Ashcroft*, 537 U.S. at 221, 123 S.Ct. 769 (2003) ("The First Amendment ... bears less heavily when speakers assert the right to make other people's speeches."); *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184,

1188 (5th Cir. 1979) ("The First Amendment is not a license to trammel on legally recognized rights in intellectual property."); *Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc.*, 75 F.Supp.2d 1290, 1295 (D. Utah 1999) (same).

### C.   This Court Has the Final Word on Copyrightability.

1. The Copyright Office letter is not properly before this Court.

Google relies on a letter from the Copyright Office that expresses a negative opinion on the copyrightability of Garcia's performance. Notably, Garcia did not receive this letter until March 12—the day that Google's brief was filed—and had no prior knowledge of its existence. Somehow, Google was given this letter *before* Garcia—even though it was addressed to Garcia's counsel.[8] Accordingly, Garcia requests that the Court disregard the letter due to its questionable provenance.

Garcia additionally objects to the letter because it is not appropriately in the record. Copyright Office documents must be certified by a "statement under the seal of the Copyright Office attesting that the document is a true and correct copy of the record in question."

---

[8]     It is odd that the Copyright Office waited *51 weeks* to respond to Garcia's correspondence with that office, and then issued its letter immediately prior to the parties' deadline to file briefs related to this Court's vote on rehearing the issue of the takedown order. Moreover, it is unclear why Google was provided with the letter *before* Garcia's counsel was even informed of its existence.

See FED. R. EVID. 902(2), (4).  The letter contains no such statement.[9]

Moreover, the Copyright Office's procedure is to release records only

when: (1) the copyright claimant consents; (2) a formal request is made

with an original signature; or (3) there is a court order authorizing release.

See U.S. Copyright Office, "Obtaining Access to and Copies of

Copyright Office Records and Deposits," *available at*

http://www.copyright.gov/circs/circ06.pdf (accessed March 24, 2014);

*see also* Request for Judicial Notice, Ex. A.  There is no evidence that

these requirements were met.

> 2. <u>The Copyright Office's letter deserves no deference and is unpersuasive.</u>

Even if the letter was properly in the record, this Court should still

decline to adopt its reasoning. Google claims that the letter is entitled to

"judicial deference if reasonable."  Google Brief at 13 (citing *Batjac

Prods v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1230 (9th Cir.

1998)). Google is wrong. First, *Batjac* is inapposite.  In *Batjac*, 160 F.3d

at 1231, this Court noted that the Copyright Office's policy was based on

its Compendium and its "contemporaneously used registration forms."

---

[9]     Garcia did not previously file an objection to Google's request for judicial notice of the letter because the Federal Rules permit a party to object to such a request unless it previously has been advised of the court's intent to take notice.  Even afterwards the objecting party has the right to be heard. FED. R. EVID. 201(e).  In the interest of judicial efficiency, Garcia objects to the request within this brief, as indicated above.

*Id.* Here, in contrast, the Office cites only its own "longstanding practices"—practices about which it provides *no* information—and its interpretation of the legislative history of the Copyright Act. Letter at 2.

Further, this court should not defer to the letter because it is inconsistent with the Copyright Office's previous interpretation of the Copyright Act. Generally speaking, *Chevron* deference—i.e., deference to an agency's reasonable interpretation of a statute—is inappropriate where an agency interpretation is inconsistent with its prior interpretations.[10] *See Price v. Stevedoring Services of America, Inc.*, 697 F.3d 820, 830-831 (9th Cir. 2012); *see also Ortiz v. Napolitano*, 667 F.Supp.2d 1108, 1120 (D. Az. 2009); *Defenders of Wildlife v. Salazar*, 812 F.Supp.2d 1205 (D. Mont. 2009).

Previously, the Copyright Office interpreted the Copyright Act much differently than it does now. As recently as 2010, the Office explicitly stated that performances consisting of "the art of imitating or

---

[10] It is somewhat unclear whether the deference issue should be determined under *Chevron* or *Skidmore*. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (deference to agency depends on, *inter alia*, "its consistency with earlier and later pronouncements"); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, ___ F.3d ___, 2014 WL 1013129, *9, n.52 (9th Cir. Mar. 18, 2014) (questioning level of deference to Copyright Office's statutory interpretation). Garcia's position is that the letter is not entitled to any deference. *See Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 739 F.3d 446, 448-449 (9th Cir. 2014 (*Chevron* deference inapplicable to Copyright Office opinion letters)). However, in the interest of caution, Garcia argues that the letter does not deserve deference even under *Chevron*.

acting out situations, characters, or other events" are copyrightable as pantomime. Factsheet on Dramatic Works, *available at* http://www.copyright.gov/fls/fl119.html (dated November 2010, accessed March 24, 2014); *see also* Compendium II § 460, 462 (defining copyrightable pantomime). With respect to the issue of motion pictures, nowhere does the Compendium state that actors who are not employees and who have not transferred the rights in their work are not entitled to copyright protection. Compendium II, § 101. Indeed, the Compendium *only* states that a film's producer is the "author" for purposes of copyright in situations where the participants are employees or have entered into work-for-hire agreements. *See* Compendium II Index, *passim*. If the Office's "longstanding practices" truly forbade an actor who *never assigned the rights in her performance* from asserting copyright, the Office would have mentioned those practices before now.

Even if the Copyright Office letter were entitled to some deference to the extent that its reasoning is persuasive, its flawed reasoning here does not qualify for that deference. According to the Office, Congress was concerned that playwrights, novelists, and musicians whose works were adapted for the screen would improperly claim copyright in derivative films. *See* Letter at 2. This concern does not apply to Garcia. Tellingly, the letter goes on to acknowledge, "***It is true that a motion picture would normally be a joint rather than a collective work with***

15

*respect to those authors who actually work on the film[.]"* Letter at 2. That is exactly the case here: Garcia *is* an "author[] who actually work[ed] on the film," although she has not claimed joint authorship. *See* § II.A.1, 2, *supra*. Nowhere does the legislative history cited by the Office indicate that such actors do not deserve protection.

Further, the Copyright Letter attempts to distinguish *Effects*, but fails. The Copyright Act makes no distinction between an actor's creative performance in a film and special effects that are added in post-production. *Effects* focused on the scope of the license at issue in that case and whether that license was exceeded, just as the panel did in this case. Even the Compendium correctly identifies that a human performer producing sounds and action is an author. Compendium II § 495.02 ("Only a human performer can contribute performance authorship . . . [i]ncluded are sound spoken by an actor . . .").

Finally, the Court should disregard the letter because under the Copyright Office's rules, it is not a final decision. Garcia is entitled to two more agency appeals, along with judicial review. *See* 17 USC 701(e); *Nova Stylings, Inc. v. Ladd*, 795 F.2d 1179, 1182 (9th Cir. 1983); 37 C.F.R. 202.5; Compendium II § 606.04. Accordingly, Garcia objects to the request for judicial notice under Federal Rule of Evidence 201(e).

16

3. <u>Garcia's copyright application is sufficient to allow her infringement case to proceed.</u>

In its brief, Google seriously misstates the law by claiming that Garcia cannot proceed because her copyright registration is not complete. *See* Google Brief at 13 (citing 17 U.S.C. § 411(a)). However, the Supreme Court has decided this issue in favor of copyright plaintiffs. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) ("Section 411(a) … imposes a type of precondition to suit that supports nonjurisdictional treatment[.]"). Moreover, *the very statute cited by Google* states that a plaintiff may pursue an infringement claim when her registration application has been (here, preliminarily) refused. 17 U.S.C. § 411(a). This Circuit has concluded that there is "no compelling justification for delaying litigation until after the Register has acted on an application." *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 621 (9th Cir. 2010). Moreover, contrary to Google's claims (*see* Google Brief at 13), Garcia is not under any obligation to provide the Copyright Office with her complaint. Under the regulations pertaining to Section 411(a), the notice requirement does not arise until *after* Garcia has exhausted her administrative appeals and received notice of a final agency action. *See* 37 C.F.R. 202.5; Compendium II § 606.04 (allowing 120 days to respond to initial refusal to register).

## III.  CONCLUSION

Based on the foregoing, Appellant respectfully requests that the

Court DECLINE to rehear this case *en banc*.

Respectfully Submitted,

April 3, 2014                                     /S/ Credence Sol

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the requirements of Ninth Circuit Rule 32. The brief has been prepared in proportionally spaced typeface using Times New Roman 14-point type. According to the word processing system used to prepare the brief, the word count of this brief is 4200 words, not counting those items excludable under Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

Dated: April 3, 2014                    Respectfully submitted,

                                        /s/ Credence Sol

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 3, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


/s/ Heather Rowland

Heather Rowland