NO. 12-57302

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CINDY LEE GARCIA,

PLAINTIFF-APPELLANT,

V.

GOOGLE, INC., YOUTUBE LLC, et al.,

DEFENDANTS-APPELLEES,

AND

NAKOULA BASSELEY NAKOULA, an individual, a.k.a. Sam Bacile, et al.,

DEFENDANTS.

On Appeal from the United States District Court
for the Central District of California
D.C. No. 2:12-cv-08315-MWF-VBK

The Honorable Michael W. Fitzgerald, District Court Judge

***BRIEF OF AMICI CURIAE* ELECTRONIC FRONTIER FOUNDATION,
AMERICAN CIVIL LIBERTIES UNION, PUBLIC KNOWLEDGE,
CENTER FOR DEMOCRACY AND TECHNOLOGY, NEW MEDIA
RIGHTS, AMERICAN LIBRARY ASSOCIATION, ASSOCIATION OF
COLLEGE AND RESEARCH LIBRARIES, AND ASSOCIATION OF
RESEARCH LIBRARIES IN SUPPORT OF DEFENDANTS-APPELLEES**

Corynne McSherry
Nathan D. Cardozo
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Email:  corynne@eff.org
Telephone:  (415) 436-9333

*Counsel for Amici Curiae*

Lee Rowland
Brian Hauss
AMERICAN CIVIL LIBERTIES
UNION
125 Broad St, 18th Floor
New York, NY 10004
Email: lrowland@aclu.org
Telephone: (212) 549-2500

*On the Brief:*

Michael Weinberg
PUBLIC KNOWLEDGE
1818 N Street NW, Suite 410
Washington, DC 20036
(202) 861-0020
*Counsel for Public Knowledge*

Art Neill
Teri Karobonik
NEW MEDIA RIGHTS
4685 Convoy St. Suite 210
San Diego, CA 92111
(619) 665-9297
teri@newmediarights.org

*Counsel for New Media Rights*

David Sohn
CENTER FOR DEMOCRACY &
TECHNOLOGY
1634 I Street NW, 11th Floor
Washington, DC 20008
(202) 637-9800
dsohn@cdt.org

*Counsel for Center for Democracy
and Technology*

Jonathan Band
JONATHAN BAND PLLC
21 Dupont Circle, NW
Washington, D.C. 20036
(202) 296-5675
jband@policybandwidth.com

*Counsel for American Library Association,
Association of College and Research Libraries,
and Association of Research Libraries*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Amici Curiae Electronic Frontier Foundation, American Civil Liberties Union, Public Knowledge, New Media Rights, Center for Democracy and Technology, American Library Association, Association of College and Research Libraries, and Association of Research Libraries (collectively, "Amici") state that none of them has a parent corporation and that no publicly held corporation owns 10% or more of the stock of any of them.

## TABLE OF CONTENTS

STATEMENTS OF INTEREST ............................................................... 1

INTRODUCTION ............................................................................ 3

   I.   *INNOCENCE OF MUSLIMS* IS CENTRAL TO A GLOBAL
        DEBATE. ................................................................................. 3

   II.  THE PANEL MAJORITY'S PRELIMINARY INJUNCTION
        ANALYSIS CONTRADICTS SUPREME AND CIRCUIT COURT
        PRECEDENT. ........................................................................ 5

        A.  Plaintiff's copyright claim is novel and has dangerous
            implications. ...................................................................... 6

        B.  The panel improperly considered non-copyright harms to the
            Plaintiff. ........................................................................... 7

        C.  The panel discounted the public interest. ............................ 8

   III. THE GAG ORDER WAS UNCONSTITUTIONAL. ............................ 10

   IV. THIS PROCEEDING PRESENTS QUESTIONS OF
        EXTRAORDINARY IMPORTANCE. ...................................... 11

        A.  The decision intrudes on the traditional contours of copyright.......... 11

        B.  The decision will have dangerous consequences for online
            expression ......................................................................... 12

V.  CONCLUSION ........................................................................ 13

# TABLE OF AUTHORITIES

## Federal Cases

*Acierno v. New Castle County,*
    40 F.3d 645 (3d Cir. 1994) ............................................................... 5

*Ashcroft v. ACLU,*
    542 U.S. 656 (2004) ......................................................................... 9

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) ........................................................................... 9

*Cacchillo v. Insmed, Inc.,*
    638 F.3d 401 (2d Cir. 2011) ............................................................. 5

*eBay Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006) ............................................................... 6, 7, 10

*Eldred v. Ashcroft,*
    537 U.S. 186 (2003) ....................................................................... 11

*Elrod v. Burns,*
    427 U.S. 347 (1976) ......................................................................... 9

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,*
    654 F.3d 989 (9th Cir. 2011) ...................................................... 8, 10

*Hagestad v. Tragesser,*
    49 F.3d 1430 (9th Cir. 1995) ......................................................... 10

*Landmark Commc'ns, Inc. v. Virginia,*
    435 U.S. 829 (1978) ....................................................................... 10

*Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
    571 F.3d 873 (9th Cir. 2009) ........................................................... 5

*New Era Publ'ns Int'l, ApS v. Henry Holt & Co.,*
    695 F. Supp. 1493 (S.D.N.Y. 1988) ................................................ 8

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ......................................................... 8

*Reno v. ACLU,*
    521 U.S. 844 (1997) ......................................................................... 9

*Roda Drilling Co. v. Siegal*,
    552 F.3d 1203 (10th Cir. 2009)............................................................... 5

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ..................................................................... 8

*Stanley v. Univ. of Southern Cal.*,
    13 F.3d 1313 (9th Cir. 1994)............................................................. 5, 9

*United States v. Playboy Entm't Grp., Inc.,*
    529 U.S. 803 (2000) ............................................................................. 10

*Wienberger v. Romero–Barcelo*,
    456 U.S. 305 (1982) ............................................................................... 8

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................. 6

## Federal Statutes

17 U.S.C. § 411(a) ...................................................................................... 11

17 U.S.C. § 512(f)....................................................................................... 12

iv

## STATEMENTS OF INTEREST

The Electronic Frontier Foundation is a member-supported, non-profit public interest organization dedicated to protecting digital civil liberties and free expression.

The American Civil Liberties Union is a nationwide, non-profit, non-partisan organization with more than 500,000 members dedicated to the principles embodied in the Constitution.

Public Knowledge is a not-for-profit public-interest advocacy and research organization that seeks to ensure that the public has access to knowledge and the ability to freely communicate and innovate in the digital age.

New Media Rights is an independently funded non-profit program of California Western School of Law supporting independent creators and Internet users though direct legal services, education, and advocacy on media and Internet law.

The Center for Democracy & Technology is a non-profit public-interest organization promoting human rights and technological innovation on the Internet, including balanced policies that protect creators without inhibiting innovators.

The American Library Association, the Association of College and Research Libraries, and the Association of Research Libraries collectively represent over

100,000 libraries in the United States, employing over 350,000 librarians and other personnel.

This brief is filed pursuant to this Court's Order, Docket No. 61.

## INTRODUCTION

The Court should grant Google's petition for rehearing en banc.

Based on a copyright claim rejected by the Copyright Office, which even the panel majority described as "fairly debatable," this Court required a service provider to censor the historical record. Worse, it attached a gag order to that decision.

This decision contradicts clear Supreme and Circuit Court precedent and is of extraordinary importance to the present and future of online expression.

Creators, their audiences, and the service providers who help them find each other all rely on a careful balance between copyright and free speech, informed by a robust public interest. This opinion undermines that balance. It must be reconsidered.

## ARGUMENT

## I. *INNOCENCE OF MUSLIMS* IS CENTRAL TO A GLOBAL DEBATE.

To understand the stakes of this litigation, it is important to understand the nature of the speech at issue. Uploaded to YouTube in July 2012, "Innocence of Muslims" went largely unnoticed until September, when its director uploaded an excerpt dubbed into Arabic.[1] Florida pastor Terry Jones promoted the video as part

---

[1] http://thelede.blogs.nytimes.com/2012/09/11/obscure-film-mocking-muslim-prophet-sparks-anti-u-s-protests-in-egypt-and-libya

3

of "International Judge Muhammad Day," scheduled for September 11, 2012.[2]
Within days, over ten million people had viewed the video.[3]

Reactions were intense. In London, 10,000 people gathered outside
Google's headquarters to demand the video's removal.[4] In Cairo, home city of the
film's creator, protestors besieged the U.S. embassy.[5] The film was even blamed
for a violent attack on an American diplomatic compound in Benghazi, Libya.
ER64.

In the United States, the publication of and reaction to "Innocence of
Muslims" prompted further debate about free speech. The White House took the
extraordinary measure of asking Google to "review" the video.[6] Google blocked
access to the video from Egypt and Libya, "in response to the delicacy of the
situation."[7] President Obama, speaking at the United Nations, delivered an
impassioned defense of Google's constitutional right to publish the video:

> [I]n a diverse society, efforts to restrict speech can quickly become a
> tool to silence critics and oppress minorities. . . . [G]iven the power of

---

[2] http://www.nytimes.com/2012/09/12/world/middleeast/anger-over-film-fuels-anti-american-attacks-in-libya-and-egypt.html

[3] http://www.forbes.com/sites/jjcolao/2012/09/14/innocence-of-muslims-now-with-10-million-views-worldwide/

[4] http://www.telegraph.co.uk/news/9607763/Muslims-protest-age-of-mockery-as-thousands-descend-on-Google-HQ.html

[5] http://www.reuters.com/article/2012/09/14/us-film-protests-idUSBRE88D0O320120914

[6] http://www.nytimes.com/2012/09/15/world/middleeast/google-wont-rethink-anti-islam-videos-status.html

[7] *Id.*

faith in our lives, and the passion that religious differences can inflame, the strongest weapon against hateful speech is not repression; it is more speech.[8]

Whatever may be said about the merits of "Innocence of Muslims," it has unquestionably become part of the historical record.

## II. THE PANEL MAJORITY'S PRELIMINARY INJUNCTION ANALYSIS CONTRADICTS SUPREME AND CIRCUIT COURT PRECEDENT.

In this Circuit and others, mandatory preliminary injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation marks omitted); *see also Stanley v. Univ. of Southern Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) ("When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party.") (internal quotation marks omitted)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011); *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994); *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1208–09 (10th Cir. 2009).

There is good reason for this caution. Where, as here, an injunction alters rather than preserves the status quo, the risk of harm to the parties and the public interest is at its height: the public may be deprived of valuable services, and an

---

[8] http://www.whitehouse.gov/the-press-office/2012/09/25/remarks-president-un-general-assembly

innovative business may be forced to close its doors forever, even though its business could ultimately prove lawful. Moreover, while the First Amendment does not protect infringement, it does protect non-infringing speech—meaning a loose injunction standard in copyright cases includes the grave risk of prior restraint should the speech later be deemed protected.

This mandatory injunction does not meet the required standard. First, the law and facts do not *clearly* favor Garcia's novel copyright claim; indeed, the panel itself referred to Garcia's claims as "fairly debatable." Op. at 10. Second, the panel improperly relied on harms unrelated to copyright. Third, the panel discounted the harm to the public interest caused by the compelled removal of a video at the center of a global debate.

More broadly, the majority decision failed to meet the basic requirement for any injunction: careful consideration of all four injunctive relief factors. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24–31 (2008).

## A. Plaintiff's copyright claim is novel and has dangerous implications.

Several other amici will address flaws in the majority's copyrightability analysis, as has Google. We will not repeat that analysis here, except to stress that the law does not "clearly favor" Ms. Garcia; far from it. Indeed, if she were correct, any number of creative contributors, from makeup artists to random

6

individuals whose brief "performances" happen to be captured on video or audio, could claim to be authors entitled to royalties and control over the distribution of a work. As a result, virtually any new work would require an elaborate web of permissions. Such an outcome would push copyright well beyond its traditional contours and discourage new creativity, contravening copyright's core purpose.

The panel troublingly held that because "Innocence of Muslims" "differ[ed] so radically from anything Garcia could have imagined," that the director exceeded Garcia's implied license. Op. at 14. Recognizing the potentially disastrous consequences of its holding—that "actors could leverage their individual contributions into de facto authorial control," *Id.*—the panel insisted this situation would be "exceedingly rare." *Id.* at 15. But another such claim arose just *this week*; celebrities claim they were similarly duped into participating in a controversial documentary.[9]

Given its implications, the majority's copyrightability analysis itself merits rehearing en banc. Regardless, the merits do not "clearly favor" Garcia and therefore do not meet the mandatory preliminary injunction standard.

### B. The panel improperly considered non-copyright harms to the Plaintiff.

An assessment of harm is essential to any injunction analysis, and cannot be presumed, including in copyright cases. *See eBay Inc.*, 547 U.S. at 391; *Flexible*

---

[9] http://time.com/54684/star-trek-kate-mulgrew-the-principle-film/

*Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) (per curiam).

The panel did not adequately perform that assessment, because it failed to connect Garcia's claimed harms to *copyright* interests. *See Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (plaintiff's interest in a copyright case "is, principally, a property interest in the copyrighted material"). This is because the justification for the copyright regime is "to stimulate creation by protecting its rewards." *Id.* at 81 n.9 (quoting *New Era Publ'ns Int'l, ApS v. Henry Holt & Co.*, 695 F. Supp. 1493, 1526 (S.D.N.Y. 1988)).

While no one can blame Garcia for seeking to protect her safety, copyright law is simply not designed to address threats.

### C.    The panel discounted the public interest.

Because the panel presumed that the public interest was met after a finding of Garcia's likelihood of success, it failed to "expressly consider" whether countervailing public interests outweighed the copyright interests at stake. *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1166 (9th Cir. 2007).

Had the panel properly considered the public interest as a distinct factor, *see Wienberger v. Romero–Barcelo,* 456 U.S. 305, 312–13 (1982), the balance of hardships would have shifted against Garcia. Beyond the immediate impact on the parties, this case involves the public's right to access and view a video at the center

of a roiling political debate. This injunction means that the public can continue to discuss this video—but we cannot see what it is we're discussing.

The public's right to "receive information and ideas, regardless of their social worth, is fundamental to our free society." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (internal citations omitted). These First Amendment protections apply fully to Internet speech. *Reno v. ACLU,* 521 U.S. 844, 870–71 (1997). And "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"—here, to the public. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Where a plaintiff seeks a preliminary injunction to remove speech from the public eye, the scales are tipped even more sharply in favor of judicial restraint. *Ashcroft v. ACLU*, 542 U.S. 656, 670–71 (2004). Where a party seeks to enjoin speech, that injunction constitutes a prior restraint if the court later finds that the public had a right to access it. And "[a]ny system of prior restraints . . . bear[s] a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

Here, the panel ignored these concerns on the theory that "the First Amendment doesn't protect copyright infringement." Op. at 18. But that misses the point. The First Amendment *does* protect lawful speech, which is why it does not permit preliminary injunctions against speech unless the likelihood of ultimate

9

success is very high *and* the public interest favors injunctive relief. As the Supreme Court has observed, where liability lies on the line between unlawful and protected speech, an "[e]rror in marking that line exacts an extraordinary cost." *United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 817 (2000).

The majority's circular analysis collapsed the entire injunction inquiry into an assessment of success on the merits, an approach the Supreme Court has expressly rejected. *See eBay Inc.*, 547 U.S. at 394; *Flexible Lifeline Sys.*, 654 F.3d at 990. It gave too much weight to a dubious copyright claim, manufactured a copyright harm where none exists, and drastically discounted the countervailing public interest in an unedited historical record. En banc review is warranted to keep this Court's doctrine in line with black letter law on copyright, free speech, and injunctive relief.

## III.  THE GAG ORDER WAS UNCONSTITUTIONAL.

If the injunction pushed First Amendment values past the breaking point, the gag order snapped them in half. Because "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," *Landmark Commc'ns, Inc. v. Virginia,* 435 U.S. 829, 839 (1978), the "strong presumption in favor of access" to court records can be overcome only where a court "base[s] its decision on a compelling reason and articulate[s] the factual basis for its ruling." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

The panel's perfunctory order contained no analysis—only a blunt gag order forbidding dissemination of a decision on a matter of extreme public concern. This order not only prevented the public and press from discovering this Court's unprecedented copyright holding, but it also prevented the Copyright Office from exercising its right to join and challenge the panel majority's orders before they were implemented. *See* 17 U.S.C. § 411(a).

## IV. THIS PROCEEDING PRESENTS QUESTIONS OF EXTRAORDINARY IMPORTANCE.

Even if the panel decision were not out of step with the weight of legal authority, it would still be worthy of rehearing.

### A. The decision intrudes on the traditional contours of copyright.

The majority dismissed Google's speech concerns by observing that the First Amendment does not protect infringement. Op. at 36, citing *Eldred v. Ashcroft*, 537 U.S. 186 (2003). In fact, the Supreme Court's approach was more nuanced. The Court observed that First Amendment concerns are often adequately addressed by "copyright's built-in free speech safeguards" and, therefore, additional First Amendment scrutiny is unnecessary where the "traditional contours of copyright protection" are left untouched. *Id*. at 222.

Here, however, the majority did not leave those contours untouched. By expanding copyrightable "expression" to include Ms. Garcia's performance, the

majority altered the traditional boundaries of copyright protection. The majority should not have dismissed so quickly the implications of its ruling for free speech.

### B. The decision will have dangerous consequences for online expression.

Left undisturbed, the majority opinion is likely to harm online expression.

*First,* the majority's recognition of a *copyright* interest is likely to spark abuse of the DMCA notice-and-takedown process. The DMCA provides strong incentives for service providers to comply with facially valid notices of infringement. If a service provider receives a takedown notice alleging infringement, its default approach will be to remove the material unless and until it receives a counter-notice *and* the sender declines to sue.

The notice and takedown system can already be abused to silence lawful speech. One crucial safeguard against abuse has been that the sender of a notice is required to attest that she is a copyright owner and has a good faith belief that the material infringes her copyright. 17 U.S.C. § 512(f). Now, anyone who believes she made some slight creative contribution to a film will be emboldened to send a takedown notice, and point to the panel opinion to support a claim of good faith.

*Second*, the order requires Google both to take offline videos containing Ms. Garcia's five-second performance *and* to ensure that no one uploads any others. As a practical matter, such a broad injunction chills not only Google's speech, but that of its users. It puts Google in the role of copyright cop, affirmatively

monitoring user speech for signs of alleged infringement. Based on a "debatable" claim of infringement, a service provider has been given a broad continuing obligation to snoop on its users. Such an order sets a dangerous precedent for other services.

Finally, while the majority opinion is likely to have dangerous consequences for the traditional filmmaking community, the impact is likely to be more severe for the growing number of amateur filmmakers who take advantage of new and inexpensive tools to create independent works. It will doubtless never occur to them that a five-second performance might give someone a copyright interest in their work—until that person shows up to demand a cut, or worse, a takedown.

## V. CONCLUSION

For the foregoing reasons, Amici urge the Court to grant Google's Petition.

Dated: April 11, 2014

By:   /s/ Corynne McSherry
Corynne McSherry
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:  (415) 436-9333
corynne@eff.org

*Counsel for Electronic Frontier
Foundation*

*On the brief:*

Lee Rowland
Brian Hauss
AMERICAN CIVIL LIBERTIES
UNION
125 Broad St, 18th Floor
New York, NY 10004
lrowland@aclu.org
(212) 549-2500

*Counsel for American Civil Liberties
Union*

Michael Weinberg
PUBLIC KNOWLEDGE
1818 N Street NW, Suite 410
Washington, DC 20036
(202) 861-0020

*Counsel for Public Knowledge*

Art Neill
Teri Karobonik
NEW MEDIA RIGHTS
4685 Convoy St. Suite 210
San Diego, CA 92111
(619) 665-9297
teri@newmediarights.org

*Counsel for New Media Rights*

14

David Sohn
CENTER FOR DEMOCRACY &
TECHNOLOGY
1634 I Street NW, 11th Floor
Washington, DC 20008
(202) 637-9800
dsohn@cdt.org

*Counsel for Center for Democracy
and Technology*

Jonathan Band
JONATHAN BAND PLLC
21 Dupont Circle, NW
Washington, D.C. 20036
(202) 296-5675
jband@policybandwidth.com

*Counsel for American Library
Association, Association of College
and Research Libraries, and
Association of Research Libraries*

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS
PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify as follows:

1.    This Brief of Amici Curiae Electronic Frontier Foundation, American Civil Liberties Union, Public Knowledge, New Media Rights, Center for Democracy and Technology, American Library Association, Association of College and Research Libraries, and Association of Research Libraries In Support of Defendants-Appellees complies with the type-volume limitation of this Court's Order, Docket No. 61, because this brief contains 2,486 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011, the word processing system used to prepare the brief, in 14 point font in Times New Roman font.

Dated: April 11, 2014                           By:   /s/ Corynne McSherry__

                                                Corynne McSherry

                                                *Counsel for Amici Curiae*
                                                *Electronic Frontier Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 11, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 11, 2014          By: /s/ Corynne McSherry

Corynne McSherry

*Counsel for Amici Curiae*
*Electronic Frontier Foundation*