NO. 12-57302

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CINDY LEE GARCIA,

PLAINTIFF-APPELLANT,

v.

GOOGLE INC. AND YOUTUBE, LLC,

DEFENDANTS-APPELLEES.

On Appeal from the United States District Court
for the Central District of California
Case No. CV-12-8315-MWF (VBKx)
Honorable Michael W. Fitzgerald, District Court Judge

**BRIEF OF AMICI CURIAE PROFESSORS OF INTELLECTUAL
PROPERTY LAW IN SUPPORT OF GOOGLE, INC. AND
YOUTUBE, LLC's PETITION FOR REHEARING EN BANC**

CHRISTOPHER NEWMAN
ASSISTANT PROFESSOR
GEORGE MASON UNIVERSITY
SCHOOL OF LAW
3301 Fairfax Drive
Arlington, VA 22201
(703) 993-8131
cnewman2@gmu.edu

JULIE A. AHRENS
STANFORD LAW SCHOOL
CENTER FOR INTERNET AND SOCIETY
559 Nathan Abbott Way
Stanford, CA 94305
(650) 723-2511
jahrens@law.stanford.edu

April 14, 2014

CHRISTOPHER JON SPRIGMAN
PROFESSOR, NEW YORK UNIVERSITY
SCHOOL OF LAW
CO-DIRECTOR, ENGELBERG CENTER
ON INNOVATION LAW AND POLICY
40 Washington Square South
New York, NY 10012
(212) 992-8162
Christopher.Sprigman@nyu.edu

*Counsel for Amici Curiae
Professors of Intellectual Property
Law*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned states

that none of the amici are a corporation that issues stock or has a parent

corporation that issues stock.

Dated: April 14, 2014          By: /s/ Julie A. Ahrens

                                 Counsel for Amici Curiae

## STATEMENT OF COMPLIANCE WITH RULE 29(C)(5)

This brief is submitted pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure with the leave of the Court. No party's counsel authored the brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person other than the amici curiae or their counsel, contributed money that was intended to fund preparing or submitting the brief.

Dated: April 14, 2014                                     By: /s/ Julie A. Ahrens

                                                              Counsel for Amici Curiae

# TABLE OF CONTENTS

Corporate Disclosure Statement ........................................................ i

INTERESTS OF AMICI................................................................... 1

ARGUMENT ............................................................................ 2

# TABLE OF AUTHORITIES

## Cases

*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000)............................................4, 5

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ......................2

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) .................... 6, 7, 8

*Lindsay v. R.M.S. Titanic*, 52 U.S.P.Q.2d 1609 (S.D.N.Y. 1999).............................4

*Thomson v. Larson*, 147 F.3d 195 (2nd Cir.1998)......................................................4

## Constitutional Provisions

U.S. Const., art. I, §8.................................................................................................2

## Statutes

17 U.S.C. §101 ................................................................................. 4, 6, 10

17 U.S.C. §102 ...................................................................................2, 7

17 U.S.C. §106 .....................................................................................4

17 U.S.C. §201 .....................................................................................4

17 U.S.C. §203 ..................................................................................3, 10

17 U.S.C. §204 ....................................................................................10

**Other Authorities**

Jonathan Barnett, *Hollywood Deals: Soft Contracts for Hard Markets* (2014), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2118918 ........9

DeNeen L. Brown and Hamil R. Harris, *A Struggle for Rights: 'Eyes on the Prize' Mired in Money Battle*, Washington Post, Jan. 17, 2005, *available at* http://www.washingtonpost.com/wp-dyn/articles/A14801-2005Jan16.html ................................................................................3

Copyright Office Registration Form SR, *available at* http://www.copyright.gov/forms/formsr.pdf ....................................................... 6

Britton Payne, *Copyright Your Life: The Implications of Works Made for Hire and Termination of Transfer in Non-Scripted Entertainment*, 15 U. BALT. INTELL. PROP. L.J. 171 (2007) ..................................................10

**INTERESTS OF AMICI**

Amici are law professors who teach and write about copyright law. Amici are concerned that the Court's opinion in this case misinterprets a foundational element of the copyright law: the baseline requirements for copyrightability. Further, Amici anticipate that this Court's decision, unless corrected, will create significant practical difficulties for firms and individuals producing the creative works that copyright is intended to incentivize. A complete list of Amici is attached as Exhibit A.

# ARGUMENT

Under Article I, Section 8 of the U.S. Constitution, Congress is given the power to grant copyrights only to "authors," and only for their "writings." U.S. Const., art. I, §8. Each of these constitutional prerequisites is crucial to the coherence of copyright as a system. The writing requirement ensures that copyright is granted only in fully actualized works with boundaries that distinguish them both from other works and from noncopyrightable ideas. The authorship requirement ensures both that each protected work will have a clearly identified initial owner who can authorize its use, and that this owner will be the person responsible for creating the "writing"— the fixed form that renders the work distinct and eligible for protection. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (the "author" of a work is the person "who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."). These constitutional requirements are implemented in Congress's directive that copyright shall subsist only in "works of authorship" that are both "original" and "fixed in any tangible medium of expression[.]" 17 U.S.C. §102(a).

The panel opinion in this case makes new law with corrosive implications for these foundational principles of copyright law. It does so in the context of a ubiquitous problem: When multiple parties contribute incremental creative

2

elements to be merged into a larger work, how many "authors" and "works of authorship" result? If—as the panel opinion appears to hold—the default rule regards every bit of original expression contributed to a larger work as a separately-owned "work of authorship," the default result will be to fragment the final work into an indeterminate number of subworks whose boundaries are not precisely delineated, not least because they are not embodied in independent "writings."[1] Further, unless work-for-hire agreements are executed with unerring foresight, each contributor will have exclusive ownership of her contribution and will therefore be entitled to prohibit use or require redaction of the overall work. This will leave many works vulnerable to holdup or censorship in the short run, and unusable in the long run due to the cost of identifying potential claimants and their successors, any of whom might terminate licenses. *See* 17 U.S.C. §203. Where preexisting and *separately fixed* works are later combined into a compilation, such fragmented ownership is the correct if occasionally unfortunate result.[2] But where creative elements are neither conceived as separate works nor

_____

[1] How, for example, is the expression claimed by Ms. Garcia to be disaggregated from that contributed by the other actors, the director, the editor, or the cinematographer? The film merges all these contributions into a single seamless "writing," no part of which embodies Ms. Garcia's performance in isolation but only as combined with the creative contributions of the others.

[2] *See, e.g.,* DeNeen L. Brown and Hamil R. Harris, *A Struggle for Rights: 'Eyes on the Prize' Mired in Money Battle*, Washington Post, Jan. 17, 2005, *available at* http://www.washingtonpost.com/wp-dyn/articles/A14801-2005Jan16.html

ever fixed in any "writing" independent of the larger work, there is nothing to be gained—and much to be lost—from a legal rule that generates pervasive fragmentation.

To forestall this danger, Congress provided that any time a work is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole," the resulting work is a "joint work," and the several authors are co-owners, each of whom has the ability to authorize use of the joint work in its entirety. 17 U.S.C. §§101, 106, 201(a). In past, this Court (like others) has restricted the scope of coauthorship, holding that even where an artist intends that her contribution be merged, she does not thereby become a joint author of the unitary whole unless the person exercising control of the overall "writing" intends to share that status with her. *See, e.g., Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000) (citing *Thomson v. Larson*, 147 F.3d 195 (2nd Cir.1998)). These cases have interpreted the term "author" to mean a person who exercises ultimate control over the form and content of the expression fixed in the "writing." *See, e.g., Aalmuhammad* at 1233-34; *Lindsay v. R.M.S. Titanic*, 52 U.S.P.Q.2d 1609, 1614 (S.D.N.Y. 1999)(author of film was director who "retained what appeared to be exclusive authority over what was included in the footage"). Crucially, this Court also held that

---

(discussing how rebroadcast of civil rights documentary was impeded by need to reclear expired rights to footage, photos and music used in film).

4

determinations of coauthorship must be based on objective manifestations of intent, lest after-the-fact declarations of hidden intent serve as an instrument of fraud. *Id.* at 1234.

The above logic implies a corollary rule: When an artist makes contributions manifestly intended to be merged into a larger work, and the only fixation of those contributions occurs in a "writing" under the creative control of another, who fixes them solely with an eye to the needs of the larger work, the contributing artist does not thereby acquire the status of "author." *See* Copyright Office letter of December 18, 2012 ("[A]n actor's or actress' performance in the making of a motion picture is an integrated part of the resulting work, the motion picture as a whole.") (appended to APPELLEES' BRIEF IN RESPONSE TO SUGGESTION OF REHEARING EN BANC at 100, 103). She may, if she manifestly shared creative control over the "writing" in which the unitary whole is fixed, qualify as a coauthor of the overarching work. *See id.* ("Copyrightable authorship in a motion picture may include production, direction, camerawork, editing and script."). But failing that, she does not acquire any separate copyright in the expression that was merged into the whole. While those contributions may be valuable, and she may well have contract or quantum meruit claims to be compensated for them, *see Aalmuhammad* at 1236-37, she did not play an authorial role with regard to any "writing" and therefore cannot claim copyright in any

distinct "work of authorship."[3]  This corollary is an implicit but crucial premise of the many cases in which courts have rejected plaintiffs' claims to sole or joint authorship.  Absent this premise, the disappointed party in each such case would nevertheless have been able to assert greater blocking power over the contested work via ownership of some piece of expression incorporated into it.[4]

The panel opinion announces a very different default rule.  Specifically, it appears to hold as a matter of law[5] that any time an actor contributes a performance to be captured by another as part of a film, so long as that performance meets the minimal creativity standard of *Feist* and the fixation requirement is satisfied,[6] the

---

[3] The issue is not whether "a copyright interest in a creative contribution to a work simply disappears," Slip Op. at 7, but whether any copyright in the "creative contribution" is ever acquired in the first place.  An artist who never exercises authorial control over a writing in which her contribution is fixed never acquires copyright in it.  Contrary to the panel's assertion, Slip Op. at 9 & n.5, musical recording artists do not acquire copyright in their *performances*, but in the *recordings* they make of them.  *See* Copyright Office Registration Form SR, *available at* http://www.copyright.gov/forms/formsr.pdf.  Performance is a recognized means of contributing authorship to a sound recording, not a category of work.

[4] Under the panel's reasoning, Mr. Aalmuhammad would have been entitled to seek an injunction against the film, not just an accounting for a share of profits.

[5] While this is merely a ruling on Garcia's likelihood of success on the merits, the panel describes itself as "reviewing the legal premises underlying the injunction de novo."  Slip. Op. at 5.

[6] The panel expressly declined to rule on whether the actor must "personally fix" the performance herself.  Slip. Op. at 7 & n.4.  The Act requires that fixation be "by or under the authority of the author."  17 U.S.C. §101.  If "under the authority of the author" means simply "with the author's permission," then presumably any person who voluntarily performs for the camera authorizes the resulting fixation.  If, on the other hand, "under the authority of the author" means that the author

performance constitutes a copyrighted "work of authorship" distinct from the film itself. Slip Op. at 8. Further, the panel appears to hold that an actor's after-the-fact disavowal will trump objective manifestations of intent that her performance be "merged" into the film—even though it is undisputed that the actor contributed the performance as a hired performer who exercised no directorial or editorial control over either the act of filming or the film project as a whole. Slip op. at 7 & n.3 (giving dispositive effect to Garcia's after-the-fact disavowal of merger intent). Taken together, these holdings suggest that any time a work incorporating creative contributions of numerous persons is created, each of those persons must be assumed by default to have a separate copyright in any quantum of "protectable expression" that they contribute.

The panel appears to derive this conclusion from the Supreme Court's ruling in *Feist* that a work of authorship will satisfy the "originality" requirement for copyrightability so long as it exhibits minimal creativity. Slip. Op. at 8 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)). The Copyright Act, however, creates copyright in "original *works of authorship*," not original "contributions to works of authorship" or original quanta of "creative expression." 17 U.S.C. §102. It is true that works of

---

exercises authorial control over the fixation even though she does not perform the mechanics herself—the better reading—then Garcia's performance was clearly not so fixed.

7

authorship may be infringed by the copying of some subset of the "protectable expression" comprised within them, and that part of what it means to be "protectable" is to exhibit the minimal creativity required by *Feist*. But it does not follow—nor has it been squarely held before now—that if any bit of expressive material contributed to a larger work satisfies the *Feist* standard, it therefore constitutes an independent "work of authorship" in its own right, even though that material was never given form – and was never intended to be given form – in a "writing" that existed independently of the larger work. *Feist* cannot be read to prescribe this result. The phone book at issue in *Feist*, though it failed to qualify as "original," was clearly conceived as an independent work and fixed for that purpose in an independent "writing" that defined its scope. Its status as a "work" was simply not in question. Conversely, it is possible for an artist to contribute increments of expression that clearly *are* original, but that nevertheless are *not* conceived or fixed as independent works defined by their own distinct "writings."

While the panel sought to highlight various limits on the scope of its holding, we are concerned that the legal principles it embraces as a matter of law sweep quite broadly. The opinion focuses on the copyrightability of a professional actor's dramatic interpretation of a script. Yet given the minimal nature of the originality requirement, the implication is that virtually any

8

sequence of actions consensually captured on film or video will constitute by default a copyrighted performance owned separately from the copyright in the film. Nor is the logic limited to those who appear on camera. Cinematographers, camera operators, lighting designers, make-up artists, costumers, sound engineers, editors—all of these participants in the motion picture industry presumably have litigable copyright claims under the reasoning of this opinion.

The panel also appears to have believed that its recognition of Garcia's separate "copyright interest" would have little effect because (1) filmmakers usually employ express license agreements or work for hire agreements; and (2) barring egregious fraud like that alleged in this case, even a filmmaker who failed to get an express license from the performer would usually have an implied one. We fear these assumed limitations will prove illusory. Even sophisticated Hollywood studios, while they may contract over IP rights with star actors, generally do not with non-leads like Ms. Garcia—much less with makeup artists, set designers, and the variety of other contributors who may assert litigable copyright claims under this opinion.[7] And the law made here

---

[7] *See, e.g.,* Jonathan Barnett, *Hollywood Deals: Soft Contracts for Hard Markets*, 13-14 (2014), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2118918 (describing use of "certificates of engagement" with "star actors"). Many of these contracts are never signed, *id.* at 14, and thus ineffective to assign rights or create a work-for-hire. *See*

won't apply only to Hollywood studios; it will apply to everyone who captures others on film, from professionals to amateurs who don't even "do lunch," let alone "do contracts."

Nor can implied licenses keep the consequences of this holding in check. First of all, since they are (by definition) not written down, the contours of any particular implied license can be limned only through litigation. The consequence of allowing anyone to find their way onscreen without a signed work-for-hire agreement will be the possibility of a non-frivolous copyright claim. And even where a license is implied, it is still subject to statutory termination rights. 17 U.S.C. §203. The threat of fragmentation is therefore not resolved, but merely postponed until the termination window opens 35 years after the license grant.[8] At best, this ruling will serve as a breeding ground for the orphan works of the future.

---

17 U.S.C. §§101, 204(a). *See also* Britton Payne, *Copyright Your Life: The Implications of Works Made for Hire and Termination of Transfer in Non-Scripted Entertainment*, 15 U. BALT. INTELL. PROP. L.J. 171, 172 (2007) ("Because of the nature of some kinds of reality television and other new media … the contracts granting copyright to producers often do not explicitly identify a performer as contributing work made for hire.").

[8] 17 U.S.C § 203(b)(1) addresses this issue for authorized derivative works, but will not solve the problem created here. Because Garcia's performance has no fixation apart from the film, it was not a "preexisting work," nor can the film be said to have "recast, transformed, or adapted" it. 17 U.S.C. §101 (defining "derivative work").

By all appearances, Ms. Garcia was deceived and harmed. We are concerned, however, that copyright law will be harmed if used in this manner to provide her a remedy.[9] We urge the Court to reconsider the panel opinion en banc.

April 14, 2014

Respectfully Submitted,

_____/s/_____

CHRISTOPHER JON SPRIGMAN
PROFESSOR, NEW YORK UNIVERSITY
SCHOOL OF LAW
CO-DIRECTOR, ENGELBERG CENTER ON
INNOVATION LAW AND POLICY
40 Washington Square South
New York, NY 10012
(212) 992-8162
Christopher.Sprigman@nyu.edu

CHRISTOPHER NEWMAN
ASSISTANT PROFESSOR
GEORGE MASON UNIVERSITY SCHOOL OF
LAW
3301 Fairfax Drive
Arlington, VA 22201
(703) 993-8131
cnewman2@gmu.edu

JULIE A. AHRENS
STANFORD LAW SCHOOL
CENTER FOR INTERNET AND SOCIETY
559 Nathan Abbott Way
Stanford, CA 94305
(650) 723-2511
jahrens@law.stanford.edu

*Counsel for Amici Curiae*
*Professors of Intellectual Property Law*

---

[9] Other avenues of relief are possible. Ms. Garcia could sue the filmmaker for fraud and obtain assignment of the copyright as a remedy.

11

## EXHIBIT A

This brief is filed on behalf of the following professors (institutional affiliations are listed for identification purposes only):

Jasmine Abdel-khalik
Associate Professor
University of Missouri - Kansas City School of Law

John R. Allison
The Spence Centennial Professor of Business, and
Professor of Intellectual Property
McCombs School of Business
University of Texas at Austin

Abraham Bell
Professor
University of San Diego School of Law

Annemarie Bridy
Alan G. Shepard Professor of Law
University of Idaho College of Law

Sarah Burstein
Associate Professor of Law
The University of Oklahoma College of Law

Margaret Chon
Donald & Lynda Horowitz Professor for the Pursuit of Justice
Seattle University School of Law

James Grimmelman
Professor of Law
University of Maryland Francis King Carey School of Law

Amy Landers
Distinguished Professor of Law
University of the Pacific McGeorge School of Law

Mark A. Lemley
William H. Neukom Professor
Stanford Law School

Yvette Joy Liebesman
Assistant Professor of Law
Saint Louis University School of Law

Lydia Pallas Loren
Robert E. Jones Professor of Advocacy and Ethics
Lewis & Clark Law School

Stephen McJohn
Professor of Law
Suffolk University Law School

Mark P. McKenna
Associate Dean for Faculty Development
Professor of Law
Notre Dame Presidential Fellow
Notre Dame Law School

Joseph Scott Miller
Professor of Law
University of Georgia

Tyler T. Ochoa
Professor of Law
High Tech Law Institute
Santa Clara University School of Law

Guy A. Rub
Assistant Professor of Law
The Ohio State University, Michael E. Moritz College of Law

Pamela Samuelson
Richard M. Sherman Distinguished Professor of Law
Berkeley Law School

Jason M. Schultz
Associate Professor of Clinical Law
Director, Technology Law & Policy Clinic
Co-Director, Engelberg Center on Innovation Law and Policy
NYU School of Law

Jessica Silbey
Professor of Law
Suffolk University Law School

David E. Sorkin
Associate Professor
The John Marshall Law School, Chicago

Rebecca Tushnet
Professor of Law
Georgetown University Law Center

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief complies with the typeface requirements of Rule 32(a)(5) and (6), because it is written in 14-pt Times New Roman font, and with the type-volume limitations of this Court's March 13, 2014 order because it contains 2,500 words, excluding the portions excluded under Rule 32(a)(7)(B)(iii). This count is based on the word-count feature of Microsoft Word.

Dated: April 14, 2014                    By: /s/ Julie A. Ahrens
                                              Counsel for Amici Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2014, I electronically filed the foregoing BRIEF OF AMICI CURIAE PROFESSORS OF INTELLECTUAL PROPERTY LAW IN SUPPORT OF GOOGLE, INC. AND YOUTUBE, LLC's PETITION FOR REHEARING EN BANC, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 14, 2014                     By: /s/ Julie A. Ahrens
                                          Counsel for Amici Curiae