NO. 12-57302

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CINDY LEE GARCIA,

PLAINTIFF-APPELLANT.

v.

GOOGLE INC. AND YOUTUBE, LLC,

DEFENDANTS-APPELLEES.

---

On Appeal from the United States District Court
for the Central District of California
Case No. CV-12-8315-MWF (VBKx)
Honorable Michael W. Fitzgerald, District Court Judge

---

**BRIEF OF AMICI CURIAE INTERNET LAW PROFESSORS IN
SUPPORT OF GOOGLE, INC. AND YOUTUBE, LLC'S
PETITION FOR REHEARING EN BANC**

---

VENKAT BALASUBRAMANI
FOCAL PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
Tel: 206.529.4827
Email: venkat@focallaw.com

ERIC GOLDMAN
PROFESSOR, SANTA CLARA
UNIVERSITY SCHOOL OF LAW
DIRECTOR, HIGH TECH LAW
INSTITUTE
500 El Camino Real
Santa Clara, CA 95053
Tel: (408) 554-4369
Email: egoldman@gmail.com
*Counsel for Amici, Internet Law
Professors*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned states that none of the amici are a corporation.

Dated: April 14, 2014

By: <u>s/ Venkat Balasubramani</u>
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

IDENTITY AND INTERESTS OF THE AMICI ..................................... 1

STATEMENT OF COMPLIANCE WITH RULE 29(C)(5) ..................... 3

SUMMARY OF ARGUMENT .................................................... 4

ARGUMENT ................................................................. 4

   I.  Section 230 Advances Important Social Goals ............................. 4

  II.  Garcia's Copyright Claim is Designed to Bypass Section 230's Immunity ................................................................. 7

III.  Plaintiffs are Routinely Creating New Ways to Use Copyright Law to Undermine the Section 230 Immunity ............. 9

     A.  Prospective Copyright Assignments of Consumer Reviews ................................................................. 10

     B.  Post-Publication Copyright Acquisition to Remove Truthful Depictions ................................................. 11

     C.  Default Judgment Transfer of Copyright ............................. 13

 IV.  The Court's Ruling Will Enable More Copyright Workarounds to an Important Immunity ....................................... 13

CONCLUSION ................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ............................................................... 7

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ............................................................. 14

*Blockowicz v. Williams*,
630 F.3d 563 (7th Cir. 2010) ................................................................. 8

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ................................................... 5, 14, 15

*Fair Housing Council of San Fernando Valley v. Roommates.com*,
*LLC*, 521 F.3d 1157 (9th Cir. 2008) ...................................................... 6

*Garcia v. Nakoula*,
BC492358 (Cal. Super. Ct. filed Sept. 19, 2012) .................................. 7

*Katz v. Chevaldina*,
900 F. Supp. 2d 1314 (S.D. Fla. 2012) ................................................ 12

*Lee v. Makhnevich*,
2013 U.S. Dist. LEXIS 43760 (S.D.N.Y. Mar. 27, 2013) ...................... 10

*Perfect 10, Inc. v. ccBill LLC*,
488 F.3d 1102 (9th Cir. 2007) ............................................................... 8

*Scott v. WorldStarHipHop, Inc.*,
102 U.S.P.Q.2d 1725 (S.D.N.Y. 2012) ........................................... 11, 12

*Small Justice LLC, et al. v. Xcentric Ventures LLC*,
2014 U.S. Dist. LEXIS 38602 (D. Mass. Mar. 24, 2014) ...................... 13

## STATUTES

17 U.S.C. § 201(e) ................................................................................ 13
47 U.S.C. § 230 ........................................................................... passim

## OTHER AUTHORITIES

Top Sites in United States, Alexa.com,
*at* http://www.alexa.com/topsites/countries/US .................................... 5

Kristin Bergman, *After On-Air Mishaps, Embarrassed Newscasters Turn to Copyright Law*, DIGITAL MEDIA LAW PROJECT (Aug. 13, 2013), *at* http://www.dmlp.org/blog/2013/after-air-mishaps-embarrassed-newscasters-turn-copyright-law ........................................................... 10

Graeme McMillan, *Doctors Now Using Breach of Copyright to Quash Bad Online Reviews*, TIME TECHLAND BLOG (Apr. 14, 2011), *at* http://techland.time.com/2011/04/14/how-do-doctors-avoid-bad-online-reviews-legally/ ................................................................. 10, 11

Rebecca Tushnet, *How Many Wrongs Make a Copyright?*, 98 MINN. L. REV. __ (2014), *at* http://scholarship.law.georgetown.edu/facpub/1323 ..................... 14

## TREATISES

IAN C. BALLON, E-COMMERCE & INTERNET LAW TREATISE WITH FORMS (2d ed. 2013), § 37.05[8] ............................................................................. 8

## IDENTITY AND INTERESTS OF THE AMICI

This brief is submitted pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure with the leave of the Court, pursuant to the Court's Order dated March 13, 2014, granting leave for "any amicus wishing to file a brief bearing on the petition."

Amici are Internet law professors and scholars who regularly teach and write about online immunities and safe harbors for user-generated content websites. Amici write to express their concerns about the deleterious effects of the panel ruling on Congress' policies set forth in 47 U.S.C. § 230. Unless the Court corrects the panel decision, the Amici are concerned that the ruling will seriously harm a law that plays a crucial role in the Internet's success.

This brief of amici curiae is submitted on behalf of the following persons, all of whom are Internet Law teachers or scholars (affiliations are for identification only):

- Professor David S. Ardia, University of North Carolina School of Law

- Professor Irene Calboli, Marquette University Law School

- Professor Brian L. Frye, University of Kentucky College of Law

- Margot Kaminski, Executive Director, Information Society Project

at Yale Law School

- Professor Marshall Leaffer, Indiana University, Maurer School of Law

- Professor David S. Levine, Elon University School of Law

- Professor Brian Love, Santa Clara University School of Law

- Professor Phil Malone, Stanford Law School

- Professor Ira Steven Nathenson, St. Thomas University School of Law (Florida)

- Professor Connie Davis Nichols, Baylor School of Law

- Professor David W. Opderbeck, Seton Hall University Law School

- Professor Matthew Sag, Loyola University Chicago School of Law

- Professor Michael D. Scott, Southwestern Law School

## STATEMENT OF COMPLIANCE WITH RULE 29(c)(5)

No party's counsel authored the brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person or entity contributed money that was intended to fund preparing or submitting the brief.

Dated: April 14, 2014

By: <u>s/ Venkat Balasubramani</u>
*Counsel for Amici Curiae*

## SUMMARY OF ARGUMENT

This case nominally is about copyright law, but the case has significant implications for 47 U.S.C. § 230 ("Section 230"), an important federal law that wasn't referenced in the panel ruling. Section 230 categorically eliminates website liability for many types of third-party content, and it usually requires an aggrieved plaintiff to proceed against the speaker rather than against any intermediary. Due to the robust nature of the immunity, Section 230 provides the legal foundation for many of the most popular websites that enable users to communicate with each other or the world at large. Though the panel ruling didn't directly interpret Section 230's immunity, the panel's broad interpretation of copyright law nevertheless harms the immunity by helping plaintiffs bypass it. The de facto narrowing of Section 230 immunity, in turn, poses significant risks for websites of all sizes and types. The Court should rehear the case en banc so that it can fully consider the case's implications for Section 230.

## ARGUMENT

I.  **Section 230 Advances Important Social Goals**

Section 230 mandates that "[n]o provider or user of an interactive

computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). As this Court has explained:

> Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party. As a result, Internet publishers are treated differently from corresponding publishers in print, television and radio.

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). Congress enacted Section 230 more than 15 years ago in part to "promote the continued development of the Internet and other interactive computer services and other interactive media." 47 U.S.C. § 230(b)(1).

This immunity has succeeded in that goal. Just as Congress intended, Section 230 provides the legal foundation for the modern Internet. For example, all of the top dozen sites in the United States, as measured by Alexa, depend on third-party content—and Section 230.[1] *See* Top Sites in United States, Alexa.com, *available at:*

---

[1] The sites are (in order) Google.com, Facebook.com, YouTube.com, Yahoo.com, Amazon.com, Wikipedia.org, LinkedIn.com, eBay.com, Twitter.com, Craigslist.org, Bing.com and Pinterest.com.

http://www.alexa.com/topsites/countries/US. Section 230's immunity facilitates most of the key functions of the Internet: email, hosting of users' content, search, social networking, shopping in marketplaces, and much more.

Congress also specifically intended Section 230 to minimize barriers to entry in the Internet industry. 47 U.S.C. § 230(b)(2). Congress has succeeded with that goal as well. Countless start-ups rely on Section 230 when deciding to enter the market.

Rulings that undermine Section 230's immunity pose serious risks to the important Internet functions we enjoy every day. Indeed, this Court has repeatedly recognized the importance of preserving Section 230's immunity. For example, the Court observed in *Roommates.com*:

> We must keep firmly in mind that this is an immunity statute we are expounding, *a provision enacted to protect websites against the evil of liability for failure to remove offensive content….[C]lose cases, we believe, must be resolved in favor of immunity*, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites…

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc) (Kozinski, C.J.) (emphasis added).

II.  **Garcia's Copyright Claim is Designed to Bypass Section 230's Immunity**

In her original complaint against Nakoula and YouTube, Garcia did not allege a copyright claim. Complaint, *Garcia v. Nakoula*, BC492358 (Cal. Super. Ct. filed Sept. 19, 2012), *available at:* http://digitalcommons.law.scu.edu/cgi/viewcontent.cgi?article=1688&context=historical. Instead, she initially alleged defamation, publicity and privacy rights violations, intentional infliction of emotional distress, and related tort claims. Garcia's initial choice of claims is understandable in light of Nakoula's alleged deception of Garcia; and her decision not to pursue a copyright claim initially was logical given the legal hurdles it faces.

However, none of Garcia's initial claims would provide the relief she sought (and obtained) against YouTube in this case: an order requiring that all copies of the video be taken down. Section 230 unambiguously preempts all of those claims against YouTube when, as here, a third party uploaded the video. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009) ("what matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of

action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another"). Section 230's immunity applies even if Garcia waived all damages claims and only sought an injunction against YouTube. IAN C. BALLON, E-COMMERCE & INTERNET LAW TREATISE WITH FORMS (2d ed. 2013), § 37.05[8]. Even if a court enjoined the video publisher (Nakoula) from further publication of the video, the injunction wouldn't apply to YouTube. *Blockowicz v. Williams*, 630 F.3d 563, 570 (7th Cir. 2010).

Faced with the insurmountable hurdle of Section 230 immunity for her most pertinent claims, Garcia understandably sought to assert a legal claim against YouTube that would bypass Section 230. Section 230 has limited statutory exclusions, but it does exclude intellectual property claims. 47 U.S.C. § 230(e)(1). As a practical matter, the only legal tool Garcia could use that might yield a remedy against YouTube is a federal copyright claim.[2]

---

[2] Section 230 precludes any claims based on state intellectual property laws. *See Perfect 10, Inc. v. ccBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) (Section 230's carveout of "immunity from 'law[s] pertaining to intellectual property'" does not include state intellectual property law). Thus, if Garcia had asserted IP claims against YouTube based on state

In other words, this lawsuit initially sought to vindicate harms putatively protected by defamation and privacy law, but it converted into a copyright battle only because Congress' broad grant of immunity in Section 230 requires courts to reject all non-IP claims against user-generated content websites like YouTube. Thus, the panel ruling accepting the merits of Garcia's copyright claim and requiring YouTube to remove the content in question—a result that Garcia could not achieve through her initial state law claims—has substantial implications for other plaintiffs who similarly want to bypass Congress' immunity for intermediaries.

## III.  Plaintiffs are Routinely Creating New Ways to Use Copyright Law to Undermine the Section 230 Immunity

Garcia is not the only plaintiff who has spotted the copyright "hole" in Section 230's otherwise-unassailable immunity. In recent years, numerous other litigants have tried different copyright-based workarounds, all seeking to force intermediaries to remove content otherwise protected by the Section 230 immunity. Examples of litigation involving attempts by plaintiffs to use copyright as a

law, such as state copyright or publicity rights, Section 230 would clearly preempt those claims.

9

workaround to Section 230 include the following scenarios:[3]

    *A. Prospective Copyright Assignments of Consumer Reviews:* If a patient posts a negative review of a doctor to a review website like Yelp, Section 230 limits the review website's legal obligation to remove the post. To get around this hurdle, some doctors made their patients sign contracts prospectively assigning the copyrights to the patients' future online reviews of the doctor. *See Lee v. Makhnevich*, 11 Civ. 8665 (PAC), 2013 U.S. Dist. LEXIS 43760 (S.D.N.Y. Mar. 27, 2013) (rejecting defendants' motion to dismiss in a case where dentist-defendants made patients sign a confidentiality agreement, "as a precondition of treatment," that purported to assign to defendants a copyright over "any comments created or made by patients about defendants"); *see also* Graeme McMillan, *Doctors Now Using Breach of Copyright to Quash Bad Online Reviews*, TIME TECHLAND BLOG (Apr. 14, 2011) ("patients

---

[3] These are just a sample of litigated cases where plaintiffs have tried to use copyright to remove content from intermediaries. Even journalistic entities and politicians—groups who would presumably think twice about trying to suppress commentary—have engaged in this practice. *See*, *e.g.*, Kristin Bergman, *After On-Air Mishaps, Embarrassed Newscasters Turn to Copyright Law*, DIGITAL MEDIA LAW PROJECT (Aug. 13, 2013), *available at:* http://www.dmlp.org/blog/2013/after-air-mishaps-embarrassed-newscasters-turn-copyright-law.

sign away their review copyright to their doctors in the middle of all the other paperwork they have to fill in, allowing doctors to then go to review sites and demand the bad reviews be taken down because they're in breach of copyright"), *available at:*

http://techland.time.com/2011/04/14/how-do-doctors-avoid-bad-online-reviews-legally/. Armed with these prospective but legally-questionable copyright assignments, doctors can choose which patient reviews they want taken down and use the threat of copyright infringement litigation to selectively scrub those reviews from the Internet.

B. *Post-Publication Copyright Acquisition to Remove Truthful Depictions:* People who don't like how they are depicted in a truthful photo or video published online can seek to acquire the copyright (post-publication) to that photo or video. Once they acquire the copyright, they can then use their copyright ownership status to force user-generated content websites to remove the truthful content, even though any other legal claim against the website would fail due to Section 230.

For example, in *Scott v. WorldStarHipHop, Inc.*, 10 Civ. 9538 (PKC) (RLE), 102 U.S.P.Q.2d 1725, 2012 U.S. Dist. LEXIS 64202, *2 (S.D.N.Y. 2012), a student took a video of a male student punching a

woman in his class and then posted the video online. The male acquired the copyright to the video and then used that copyright interest to attempt to get the video off the Internet. Similarly, in *Katz v. Chevaldina*, 900 F. Supp. 2d 1314, 1315 (S.D. Fla. 2012), a blogger displayed a photograph of the plaintiff's face in connection with blog posts critical of the plaintiff. The plaintiff acquired ownership of the photograph and then sued the blogger for copyright infringement.

In both cases, the plaintiffs' goal was to suppress truthful depictions of them. In both cases, Section 230 would have provided an airtight immunity for intermediaries against the plaintiffs' efforts to erase these accurate depictions. And in both cases, by acquiring the copyright to the depiction, the plaintiffs could work around Section 230's immunity to undercut Congress' intent in Section 230.

The panel majority's opinion can be read to negate the need for plaintiffs like *Scott* and *Katz* to acquire the depiction's copyright post-publication. Arguably, the ruling creates the possibility that both Scott and Katz *already owned* sufficient copyright interests in the depictions to exercise takedown power over the content in question. If so, it is clear that future plaintiffs in this position will embrace that copyright

interest to scrub the truthful depiction of them from the Internet.

*C. Default Judgment Transfer of Copyright:* In a variation of these themes, a business owner unhappy with an online review sued the review author, procured a default judgment, had the court order the transfer of the copyright to the review as a remedy, and is now suing the review website for copyright infringement. *Small Justice LLC, et al. v. Xcentric Ventures LLC*, 13-cv-11701, 2014 U.S. Dist. LEXIS 38602 (D. Mass. Mar. 24, 2014) (denying defendant's motion to dismiss copyright claim based on copyright in consumer review acquired via default judgment in state court). The state court's copyright transfer almost certainly violates 17 U.S.C. § 201(e), but because the court ordered the transfer in a default proceeding, no one contested it at the time. As a result, the court armed the plaintiff with a powerful copyright tool to attack a review that was otherwise immunized by Section 230.

## IV. The Court's Ruling Will Enable More Copyright Workarounds to an Important Immunity

As the above examples illustrate, plaintiffs are aggressively looking for ways to use copyright law to suppress the publication of content (whether false or truthful) about them that they don't like—an

outcome copyright law wasn't designed to achieve. *See* Rebecca Tushnet, *How Many Wrongs Make a Copyright?*, 98 MINN. L. REV. __ (2014), *available at:* http://scholarship.law.georgetown.edu/facpub/1323. As evidenced by the controversy around the panel ruling and the Copyright Office's rejection of Garcia's copyright registration, the panel majority took an expansive view of the scope of copyright ownership. To the extent the majority's view expanded copyright law, it effects a corresponding decrease in the scope of Section 230 immunity. At minimum, by giving a stamp of approval on the use of copyright to take down content that would otherwise fall within Section 230's immunity, the panel ruling will exacerbate the trend of plaintiffs using copyright as a workaround to Section 230.

As the ability of plaintiffs to claim copyright ownership expands, it increasingly upsets the immunity's framework intended by Congress. This Court has said that via Section 230, Congress "sought to prevent lawsuits from shutting down websites and other services on the Internet." *Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003); and the Court has also noted that "§ 230(c) provides broad immunity for publishing content provided primarily by third parties." *Carafano v.*

*Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). The injunction entered by the panel majority encourages copyright claims as a proxy for state law tort claims against user-generated content websites, and in turn it undermines these important objectives.

## CONCLUSION

On its face, Garcia's case is not about the "right to forget" historical truths, attempts to squelch political criticism, or attempts to scrub unflattering but protected commentary from review sites. Nevertheless, the legal arguments raised by Garcia in this case are virtually identical to the arguments made by plaintiffs who want to suppress the publication of truthful information about them in other contexts. Plaintiffs are already trying to turn copyright into a general-purpose tool to scrub truthful content, thwarting Congress' intent in enacting Section 230's immunity. By providing additional copyright leverage to plaintiffs who want to erase the truth, the Court's ruling tacitly expands the IP exception to Section 230's immunity while narrowing the scope of that immunity. The Court should rehear the case en banc so that it can more fully consider the ruling's deleterious effects on Section 230's immunity.

Dated: April 14, 2014       Respectfully submitted,

By:  <u>s/ Eric Goldman</u>
     <u>s/ Venkat Balasubramani</u>
     *Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

1.     This Brief of Amici Curiae Internet Law Professors in Support of Google, Inc. and YouTube, LLC's Petition for Rehearing En Banc complies with the type-volume limitations of this Court's Order, Docket No. 61, because it contains <u>2318 words</u>, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point (Century Schoolbook) font.

Dated: April 14, 2014

By:  <u>s/ Venkat Balasubramani</u>
     *Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2014, I electronically filed the foregoing brief of amici curiae with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 14, 2014

By: s/ Venkat Balasubramani
*Counsel for Amici Curiae*