UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

No. 12-57302

———————————

CINDY LEE GARCIA,

Plaintiff-Appellant,

v.

GOOGLE, INC., a Delaware
Corporation; YOUTUBE,LLC,
a California limited liability company

Defendants-Appellees,

and

NAKOULA BASSELY NAKOULA, an individual,
A/K/A/ SAM BACILE, *et al.*

Defendants.

———————————

On Appeal from an Interlocutory Order of the United States District Court
for the Central District of California

———————————

**EN BANC BRIEF OF PUBLIC CITIZEN AS AMICUS CURIAE
IN SUPPORT OF NEITHER PARTY**

Paul Alan Levy
Scott Michelman

Public Citizen Litigation Group
1600 20th Street, NW
Washington, D.C. 20009
(202) 588-1000
November 25, 2014          plevy@citizen.org

# TABLE OF CONTENTS

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Certification Under Rules 26.1 and 29(c)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . v

Interest of Amicus Curiae. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background and Proceedings to Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      Considerations, Other Than the Merits of the Underlying Copyright
        Claim, Bearing on the Propriety of a Preliminary Injunction Should Be
        Included in the En Banc Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     Garcia Might Have Attained the Outcome She Seeks by Pursuing
        Established State-Law Claims Against the Individual Defendants. . . . . . . 11

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## CASES

*Apple Computer v. Formula International*,
    725 F.2d 521 (9th Cir. 1984)............................................ 6

*Auburn Police Union v. Carpenter*,
    8 F.3d 886 (1st Cir. 1993)............................................... 7

*Balboa Island Village Inn v. Lemen*,
    156 P.3d 339 (Cal. 2007)............................................... 14

*Bank Julius Baer v. Wikileaks*,
    535 F. Supp. 2d 980 (N.D. Cal. 2008). ............................ 2

*Bantam Books v. Sullivan*,
    372 U.S. 58 (1963). .................................................... 8

*Barnes v. Yahoo, Inc.*,
    570 F.3d 1096 (9th Cir. 2009).......................................... 2

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003)......................................... 2

*Blockowicz v. Williams*,
    630 F.3d 563 (7th Cir. 2010)......................................... 15

*Carroll v. Comm'rs of Princess Anne*,
    393 U.S. 175 (1968). .................................................. 7

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006). .................................................. 6

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003). .................................................. 8

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

*Flexible Lifeline System v. Precision Lift*,
    654 F.3d 989 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Giordano v. Romeo*,
    76 So.3d 1100 (Fla. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Greenberg v. De Salvo*,
    229 So.2d 83,  (La. 1969),. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hurley v. Irish American Gay, Lesbian, and Bisexual Group of Boston*,
    515 U.S. 557 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jones v. Dirty World Entertainment Recordings*,
    755 F.3d 398 (6th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Miller v. Federal Express Corp.*,
    6 N.E.3d 1006 (Ind. App. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Overstreet v. Carpenters Local 1506*,
    409 F.3d 1199 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Practice Management Information Corp. v. American Medical Association*,
    121 F.3d 516 (9th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Procter & Gamble Co. v. Bankers Trust Co.*,
    78 F.3d  219 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Reno v. American Civil Liberties Union,*
    521 U.S. 844 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rosemont Enterprises v. Random House,*
    366 F.2d 303 (2d Cir.1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Suntrust Bank v. Houghton Mifflin Co.,*
    268 F.3d 1257 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tory v. Cochran,*
    544 U.S. 734 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tucker v. Pacific Bell Mobile Services,*
    145 Cal. Rptr.3d 340 (Cal. App. 2012). . . . . . . . . . . . . . . . . . . . . . . 14

*Ty v. Publications International,*
    292 F.3d 512 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Washington Post Co.,*
    446 F.2d 1327 (D.C. Cir. 1971),
    *aff'd,* 403 U.S. 713 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Universal Communication Systems v. Lycos, Inc.,*
    478 F.3d 413 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Video Pipeline v. Buena Vista Home Entertainment,*
    342 F.3d 191 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Willing v. Mazzocone,*
    393 A.2d 1155 (Pa. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Zeran v. America Online,*
    129 F.3d 327 (4th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## CONSTITUTION AND STATUTES

United States Constitution

    First Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8

Communications Decency Act,
    47 U.S.C. § 230. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Digital Millennium Copyright Act, Title II
    Section 512. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SPEECH Act,
    28 U.S.C.§ 4101, *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    28 U.S.C. § 4102(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    28 U.S.C. § 4102(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## MISCELLANEOUS

Galperin, *YouTube Blocks Access to Controversial Video in Egypt and Libya*
    Electronic Frontier Foundation (Sept. 12, 2012),
    https://www.eff.org/deeplinks/2012/09/youtube-blocks-access-
    controversial-video-egypt-and-libya. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Google, *Submit a Court Order to Google,*
    https://support.google.com/legal/contact/lr_courtorder? product=
    blogger. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Google, *Removing Content From Google*,
    https://support.google.com/legal/troubleshooter/1114905?rd=1/troubl
    e shooter/1114905?rd=1#ts=1115645,3331068,1115795. . . . . . . . . . . . . 16

Hutcherson, *How To Remove Ripoff Reports From Google – Not Just
    Bury Them* (Feb. 24, 2011),
    http://searchengineland.com/how-to-remove-ripoff-reports-from
    -google-not-just-bury-them-65173. . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Levy, *Voluntary Blocking of "Offensive Material" by Facebook and Google*
 (Sept. 14, 2012), http://pubcit.typepad.com/ clpblog/2012/09/voluntary-
 blocking -of-offensive -material-by-facebook-and-google.html. . . . . . . . . 17

Sutter, *YouTube restricts video access over Libyan violence*,
 CNN (Sept. 13, 2012),
 http://www.cnn.com/2012/09/12/tech/web/ youtube-violence-libya
 /index.html . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## CERTIFICATION UNDER RULES 26.1 AND 29(c)(5)

Public Citizen is a non-profit corporation. No other corporation owns it, and it does not own any other companies. This brief was written by undersigned counsel, with the assistance of his colleagues at Public Citizen. No party and no other person apart from Public Citizen staff has participated in writing or editing this brief, or has paid anything toward the production or filing of the brief.

_/s/ Paul Alan Levy_

Public Citizen submits this brief, with the written consent of appellee and appellant alike, addressing issues raised by the en banc reconsideration of the Court's February 26 decision requiring Google to remove immediately a film entitled *Innocence of Muslims* from its platforms worldwide and to prevent further uploads. Public Citizen takes no position on the novel copyright claims before the Court but addresses several other considerations that should inform the Court's decision about whether to affirm the trial court's denial of Garcia's motion for a preliminary injunction.

**Interest of Amicus Curiae**

Public Citizen is a Washington, DC-based public interest organization that has 350,000 supporters nationwide, approximately 75,000 of them in the Ninth Circuit. Since its founding in 1971, Public Citizen has urged citizens to speak out about a variety of large institutions, including corporations, government agencies, and unions, and it has sought in many ways to protect the rights of consumers, citizens and employees to voice their views. The Internet provides a tremendous opportunity for ordinary citizens to express their views and to have them heard; by the same token, it enables consumers to obtain information to protect their economic and political interests. The legal rules that protect the hosts of third-party speech from being sued over allegedly wrongful speech are critical to the system of online free speech. Without these rules, the cost and risk of litigation—and of making choices about what

speech might produce such litigation, and whether that litigation would survive summary judgment—could create a heckler's veto keeping much valuable speech offline. All too often, businesses sue hosts to suppress critical expression instead of actively pursuing the actual critics who have allegedly engaged in tortious speech. Consequently, Public Citizen lawyers often represent not just consumers who criticize businesses and political figures, but also online hosts in defense of their right not to be sued for hosting controversial content, based on both 47 U.S.C. § 230 and the doctrine against prior restraints. Public Citizen has been amicus curiae or an intervenor in cases raising such issues in this Circuit. *E.g.*, *Barnes v. Yahoo, Inc.*, 570 F.3d 1096 (9th Cir. 2009); *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003); *Bank Julius Baer v. Wikileaks*, 535 F. Supp.2d 980, 985 (N.D. Cal. 2008). And Public Citizen's lobbying efforts were instrumental in calling legislators' attention to the need to extend the protections of the so-called libel tourism law, 28 U.S. C.§ 4101, *et seq.*, to preclude the enforcement of foreign defamation judgments against the hosts of allegedly actionable content unless those judgments meet the standards of section 230, as provided by 28 U.S.C. § 4102(c), as well as against speakers whose speech is protected by the First Amendment, as provided by 28 U.S.C. § 4102(a).

**Background and Proceedings to Date**

The record on appeal suggests that plaintiff Cindy Lee Garcia was seriously

abused by the individual defendants.  As alleged in the complaint, and according to the evidence that she submitted in support of her motion for a preliminary injunction, she was hired for a bit role in a movie called *Desert Warriors,* given a short script to read in English, and filmed performing that role.  But a five-second clip of her performance was used in a very different movie, entitled *Innocence of Muslims*, with her actual words overdubbed into Arabic to make it appear that she was making statements that Muslims throughout the world find deeply offensive.  The film was widely shown and sparked both serious outrage and extensive violence, a provocation that its authors apparently intended.  The severity of the international reaction led to a request from the United States Government that Google disable access to the film; although Google refused to do that, it did disable access in some countries.  There was intense news coverage of the reaction, and widespread popular discussion about whether censoring the film would be the right response despite our nation's general commitment to free speech.  Among the consequences of the fraudulent conduct that led to Garcia's inclusion in the film were that Garcia was blamed for her participation, and has received death threats.[1]

---

[1]After the panel reversed the denial of Garcia's motion for a preliminary injunction, and issued its own preliminary injunction against Google, a defendant filed an answer to the complaint which stoutly denies many of Garcia's allegations. DN 75 at 2-3.  However, for the purpose of this appeal the Court is required to consider the case on the factual record developed on the motion for injunctive relief.

Garcia had a variety of potential claims against the individual defendants who created the film and uploaded it to YouTube. However, potential claims for fraud, unfair business practices, or libel had a tactical defect—they could not be brought against Google, the owner of YouTube. Because Google provides an interactive computer service—a platform onto which any user who registers for an account can post videos that the user has created—it is protected by the Communications Decency Act, 47 U.S.C. § 230, against being held liable, and indeed against being sued, over content provided by others. *See Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (en banc); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007). Every federal circuit and state appellate court that has considered Section 230 has adopted this construction of the statute, and as discussed below, this approach to Section 230 provides a vital protection for the ability of consumers and others to communicate ideas that may well be unpopular or offensive to companies and political figures who have ample funds that they can deploy to suppress criticisms. But Section 230 meant that Garcia's potential state-law causes of action would not have achieved the court order that she desired: an order directly compelling Google to remove from YouTube the video showing her participation.

Section 230 does not protect interactive computer service providers against

-4-

being sued for intellectual property claims. Consequently, Garcia also asserted that her performance was independently copyrighted. Invoking this theory, she served notices on Google under the Digital Millennium Copyright Act ("DMCA"), which provides interactive computer services providers with a safe harbor against liability for copyright infringement, so long as they comply with various conditions including the removal of infringing matter when they receive "takedown" notices meeting the formal requirements of § 512(c) of the DMCA. When Google refused to remove *Innocence of Muslims* because it rejected Garcia's claim of copyright in her performance, Garcia sued Google and the filmmakers for infringement, and sued the individual defendants alleging libel, fraud, and other torts.

Garcia sought a temporary restraining order on an ex parte basis, which the district court denied in light of the fact that the film had been in general distribution for three months at the time relief was sought. The trial court then denied a preliminary injunction both for lack of likely success on the copyright claim and for lack of a showing that removal from YouTube alone would prevent any of the harms she alleged. The preliminary injunction against Google was denied two years ago, and the docket in the district court reflects no motion for injunctive relief or for summary judgment directed against the individual defendants.

Garcia appealed the denial of the preliminary injunction, and a divided panel

-5-

of this Court held that she was likely to succeed on her copyright claims. The panel majority ordered Google to remove the movie from YouTube, later clarifying its order to specify that the movie could be reposted so long as Garcia's performance was deleted. Google sought en banc review both of the panel's preliminary injunction ruling, and of the panel's refusal to stay its injunction pending the completion of en banc review. En banc review of the stay has been denied, but the request for en banc review of the preliminary injunction has been granted.

**Argument**

**I.    Considerations, Other Than the Merits of the Underlying Copyright Claim, Bearing on the Propriety of a Preliminary Injunction Should Be Included in the En Banc Review.**

Until recently, this Court and many others assumed that, once a court has found that a copyright holder is likely to succeed on the merits of showing copyright infringement, irreparable injury could be presumed and thus issuance of a preliminary injunction would follow. *Apple Computer v. Formula Int'l*, 725 F.2d 521, 525 (9th Cir. 1984). That assumption was upended when the Supreme Court decided that the mere presence of an injunctive remedy in the patent statute did not excuse courts from considering the four traditional factors before deciding whether injunctive relief was proper. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). This Court, and others, have recognized that the *eBay* rule applies equally to injunctions in copyright

cases. *Flexible Lifeline Sys. v. Precision Lift*, 654 F.3d 989, 990 (9th Cir. 2011); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 980-81 (9th Cir. 2011). Consequently, the balance of irreparable injuries from granting or withholding injunctive relief must be considered according to the equities of each case.

In assessing that equitable balance, one of the fundamental rules that applies to the issuance of preliminary relief is that a judge's order that forbids speech because of its content, based only on a preliminary determination of the rights at issue, is a prior restraint. *Tory v. Cochran*, 544 U.S. 734, 738 (2005); *Overstreet v. Carpenters Local 1506*, 409 F.3d 1199, 1218 (9th Cir. 2005). Prior restraints demand the most compelling justification. *Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993). *See also Carroll v. Comm'rs of Princess Anne*, 393 U.S. 175 (1968). To justify a prior restraint, "publication must threaten an interest more fundamental than the First Amendment itself." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). And although the "speech" in the movie is its creators', Google has a free speech interest in defending its decisions about what speech to allow on its system, just as booksellers are protected against government limits on what books they carry, *Bantam Books v. Sullivan*, 372 U.S. 58 (1963), and organizers of a parade have a First Amendment right to decide what viewpoints may participate in the parade. *Hurley v. Irish American Gay, Lesbian, and Bisexual Group of Boston*,

-7-

515 U.S. 557 (1995).

The Supreme Court has held that such copyright doctrines as fair use and the idea/expression dichotomy reflect First Amendment interests and hence can eliminate the need to consider the First Amendment separately in assessing the merits of copyright claims and defenses to those claims. *Eldred v. Ashcroft*, 537 U.S. 186, 219-221 (2003). But the Court has also recognized that copyright claims are not "categorically immune from challenges under the First Amendment." *Id.* at 221. First Amendment considerations are appropriately considered when a preliminary injunction is issued based on a claim of copyright infringement. *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001). *See also Ty v. Publications Int'l*, 292 F.3d 512, 523 (7th Cir. 2002) (First Amendment issue would be presented if fair use did not bar injunction against handbook about beanie babies).

Considering the First Amendment and the doctrine of prior restraint is particularly appropriate in light of the interests that Garcia invoked in support of a preliminary injunction. Garcia's opposition to Google's motion for a stay pending appeal made clear that she seeks injunctive relief, not to protect the value of her creative work and its copyrighted fixation, but to suppress the film because, as manipulated by the individual defendants, she and others find the content deeply offensive—understandably so—and she was personally endangered as a result. This

-8-

is not copyright injury, but rather libel injury or fraud injury. In deciding whether to embrace the panel's significant copyright rulings, the Court should also weigh whether such damage is properly considered in deciding whether to sustain injunctive relief against copyright infringement. *Cf. Universal Communication Systems v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) (rejecting effort to evade host's Section 230 immunity by couching a defamation claim in terms of a trademark theory).

A related doctrine holds that prior restraints against speech cannot be justified when that same speech is already in wide-spread circulation, and hence the court's injunction cannot provide effective relief. *United States v. Washington Post Co.*, 446 F.2d 1327, 1329 (D.C. Cir. 1971), *aff'd*, 403 U.S. 713 (1971). As Judge Smith's dissenting panel opinion noted, by the time the panel ruled on Garcia's motion for a preliminary injunction, the movie at issue had been "widely discussed and disseminated" throughout the world, 743 F.3d at 1276, so that an injunction against Google alone could not have a significant impact protecting Garcia against the threats she feared.

In addition, in holding that Garcia has a potentially valid copyright claim, the panel did not address the doctrine of "copyright misuse." This Court has long recognized that copyright misuse can be a defense to an infringement action, if only by barring the equitable relief of an injunction. *Practice Management Info. Corp.*

-9-

*v. American Med. Ass'n*, 121 F.3d 516, 520-521 (9th Cir.1997). And the use of a copyright claim to suppress unwanted expression—a "'copyright holder's attempt to disrupt a copyright's goal to increase the store of creative expression for the public good'"—can constitute copyright misuse. *Video Pipeline v. Buena Vista Home Entertainment*, 342 F.3d 191, 205-206 (3d Cir. 2003), quoting *Rosemont Enters. v. Random House*, 366 F.2d 303 (2d Cir.1966). Public Citizen takes no position on how the doctrine of copyright misuse affects the preliminary injunction in this case, but considering that Garcia does not appear to be asserting copyright claims to protect the commercial value of her expression, the issue ought at least be considered.

The parties, and other amici, will address the merits of Garcia's underlying copyright claim; Public Citizen does not address that issue here. However, the doctrine of copyright misuse undercuts Garcia's argument on irreparable injury, in that the threats to her safety, although certainly powerful as an equitable consideration, do not bear on the equity of a **copyright** injunction because the argument seeks to suppress publication of the film because of its content. In deciding whether to affirm or reverse the denial of a preliminary injunction, the Court should consider how these issues affect the balance of equities applicable to the propriety of a preliminary injunction.

-10-

**II.     Garcia Might Have Attained the Outcome She Seeks by Pursuing Established State-Law Claims Against the Individual Defendants.**

The Supreme Court has recognized the Internet's potential to be a democratizing force in our society, by providing "a vast platform from which to address and hear from a world-wide audience of millions of readers, viewers, researchers and buyers.  Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox.  Through the use of web pages, . . . the same individual can become a pamphleteer." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 853, 870 (1997).  Section 230 performs a vital function in the system of free expression online by insisting that, instead of suing services that host potentially offensive or harmful online content, the victims of tortious speech must bring their claims against the speakers who create the wrongful content.  In its en banc decision in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008), this Court recognized the broad scope of this protection against suits seeking to hold the operators of interactive online facilities liable for information posted by others, so long as they do not directly contribute to the unlawfulness of actionable hosted content.  Governing precedent in every federal circuit and state appellate court that has addressed the question embraces this analysis.  *Jones v. Dirty World Entm't*

-11-

*Recordings*, 755 F.3d 398, 406-407 (6th Cir. 2014) (citing federal-court cases); *Miller v. Federal Express Corp.,* 6 N.E.3d 1006, 1016-1018 (Ind. App. 2014) (citing federal- and state-court cases).

This statutory protection plays a vital role in the system of free expression online, because it means that the great equalizing force of the Internet cannot be crippled through litigation that seeks to hold the host liable. In adopting section 230, Congress made the very sensible judgment that service providers are generally stakeholders with no particular interest in the resolution of disputes between speakers and those who claim the speech was wrongful, and are the least well situated to decide whether challenges to online speech are warranted. Many online hosts provide a forum for the views and the creative expression of millions or even tens of millions of speakers. If a host could be held liable for any content that was later determined to be actionable, and even if that liability attached only once the host was placed on notice of the claim of wrongdoing, hosts for speech would have to train their staff to evaluate the claims of anyone who claimed that actionable speech had been posted by another, and would run the risk of being held liable if the reviewing staff guessed wrong about who would ultimately prevail in the litigation. Such hosts would run the risk of having to finance the costly defense of such litigation if the reviewing staff guessed incorrectly about whether the claim of wrongdoing could withstand a motion

-12-

to dismiss or motion for summary judgment.

Moreover, because many hosting services, as in the case of YouTube where *Innocence of Muslims* was hosted, do not charge consumers for posting content, and because in most cases the host is in no position to evaluate the chances of being held liable (or getting litigation dismissed at an early stage) without receiving evidence from both sides to a dispute or even holding a mini-hearing, the economically rational response to a legal regime that imposed liability for hosting actionable content would be for the host simply to remove the challenged material and avoid risk of being held liable or being forced to defend litigation. The result of such a legal regime would be to create a heckler's veto, whereby simply making a challenge could be enough to get online content removed. And consumers, who are much less likely to be able to afford to finance litigation not to speak of being able to afford the means of publishing their views about businesses without access to online hosts, are most likely to have their views suppressed by such a legal regime.

Even if Garcia's copyright claim is rejected as a basis for issuance of a preliminary injunction against Google, the record reflects that Garcia likely has tenable claims against the individual defendants—that is to say, in Section 230 terms, against the information content providers. Although some states hold that equity will not enjoin a libel, *Greenberg v. De Salvo*, 229 So.2d 83, 86 (La. 1969), or bar such

injunctions as prior restraints, *Willing v. Mazzocone*, 393 A.2d 1155 (Pa. 1978),

California law allows the issuance of a permanent injunction against the repetition of

specific statements found to be defamatory, *Balboa Island Village Inn v. Lemen*, 156

P.3d 339, 344-348 (Cal. 2007); moreover, injunctive relief is a common remedy for

fraud and unfair business practices under California law. *Tucker v. Pacific Bell

Mobile Services*, 145 Cal. Rptr.3d 340, 364 (Cal. Ct. App. 2012). Individual

YouTube users retain control of their postings, and have the ability to remove them

in order to comply with injunctions. Had Garcia sought permanent injunctive relief

against the individual defendants instead of seeking a preliminary injunction against

Google, and if her factual claims proved accurate, she might well have secured an

injunction against those defendants by now.

Garcia might have worried about whether the individual defendants might flout

such an injunction. But because Section 230 has properly been held to protect the

providers of interactive computer services against both liability and suit, and because

injunctive relief is a form of remedy that follows from the determination of liability,

courts have properly forbidden even the issuance of purely injunctive relief against

the hosts of interactive computer services. *Giordano v. Romeo*, 76 So.3d 1100, 1102

(Fla. Ct. App. 2011), *see also Blockowicz v. Williams*, 630 F.3d 563, 565 (7th Cir.

2010). Many interactive hosts worry that, as in the *Giordano* litigation, an injunction

-14-

against the challenged content might well be the result of collusion between the plaintiff who promises the individual speaker not to pursue damages claims if the speaker will only consent to injunctive relief.

In any event, Google, like most major online hosts, behaves responsibly when a court of appropriate jurisdiction issues an injunction against the individuals who have posted content using their access to Google's services. Levy, *Courts address a section 230 question that seems hard at first blush– what happens after a defamation plaintiff wins against the poster?*, http://pubcit.typepad.com/clpblog/ 2010/12/courts-address-a-section-230-question-that-seems-hard-at-first- blush-what -happens-after-a-defamation.html (last visited November 25, 2014). Indeed, Congress enacted Section 230 because the major providers of the interactive computer services in the last decade of the 20th Century, such as America Online, urged that they could be trusted to make responsible judgments in assessing the propriety of online content transmitted through their services, and that the growth of Internet services would be better promoted by protecting them against liability for user content. *Zeran v. America Online*, 129 F.2d 327, 330-331 (4th Cir. 1997).

Section 230 leaves it to a host's good judgment how to respond in those circumstances, and in Public Citizen's experience, like most hosts, Google typically responds to judgments against content providers by exercising its section 230

-15-

discretion to remove the challenged content. Google has an online form, *Submit a Court Order to Google,* https://support.google.com/legal/contact/lr_courtorder?product=blogger (last visited Nov. 25, 2014), that enables a party that has obtained a court order against a user who posted online content to submit the order to Google for removal of the material. *Removing Content From Google*, https://support.google .com/legal/troubleshooter/1114905?rd=1/troubleshooter/1114905rd=#ts= 115645,3331068,1115795 (last visited Nov. 25, 2014). Indeed, Google will even take enjoined content hosted elsewhere out of its search index, thus disabling general public access to the material. *See* Hutcherson, *How To Remove Ripoff Reports From Google – Not Just Bury Them*, http://searchengineland.com/how-to-remove-ripoff-reports-from -google-not-just-bury-them-65173 (last visited Nov. 25, 2014).

Indeed, although Google declined to remove the *Innocence of Muslims* from its YouTube service entirely when the United States asked it to consider doing so, Excerpt of Record page 73, ¶ 3, it did restrict access in two of the countries where the local population was expressing its outrage through serious outbreaks of violence. Sutter, *YouYouTube restricts video access over Libyan violence*, CNN, Sept. 13, 2012, http://www.cnn.com/2012/09/12/tech/web/youtube-violence-libya/index.html (last visited Nov. 24, 2014). Such discretionary blocking is a "reflection of the social compact that Congress sought to foster when adopting section 230." Levy, *Voluntary*

-16-

*Blocking of "Offensive Material" by Facebook and Google* (Sept. 14, 2012),

http://pubcit.typepad.com/clpblog/2012/09/voluntary-blocking-of-offensive-material

-by-facebook-and-google.html (last visited Nov. 24, 2014).[2]

In sum, if Garcia had pursued her state-law claims against the individual

defendants, and obtained appropriate relief against them, including injunctive relief,

she might well have achieved her objective of removal of the movie, either by action

of the enjoined individual defendants or, failing that, by voluntary action of Google.

Consequently, a copyright claim is not the only avenue for achieving the relief which,

assuming the truth of her allegations, Garcia understandably seeks.

**Conclusion**

The Court should consider these additional issues in deciding whether to affirm

the trial court's denial of Garcia's motion for a preliminary injunction.

Respectfully submitted,

/s/ Paul Alan Levy
Paul Alan Levy
Scott Michelman

---

[2]Some of the other amici supporting Google in this case complained about
Google's having censored the movie trailer. Galperin, *YouTube Blocks Access to
Controversial Video in Egypt and Libya* (Sept. 12, 2012),
https://www.eff.org/deeplinks/2012/09/youtube-blocks-access-controversial-video
-egypt-and-libya (last visited Nov. 24, 2014).

Public Citizen Litigation Group
1600 20th Street, NW
Washington, D.C. 20009
(202) 588-1000
plevy@citizen.org

Attorney for Public Citizen

## CERTIFICATION

I certify that Word Perfect counted 4092 words in the body of this brief.


_____/s/ Paul Alan Levy_____

## CERTIFICATE OF SERVICE

I hereby certify that I am filing this brief using the Court's ECF system, which will effect service on all counsel.


    /s/ Paul Alan Levy
Paul Alan Levy