No. 12-57302

IN THE

# United States Court of Appeals for the Ninth Circuit

CINDY LEE GARCIA,

*Plaintiff-Appellant,*

*v.*

GOOGLE, INC. AND YOUTUBE, INC.,

*Defendants-Appellees.*

*and*

NAKOULA BASSELEY NAKOULA, A/K/A SAM BACILE; MARK BASSELEY YOUSSEF;
ABANOB BASSELEY NAKOULA; MATTHEW NEKOLA; AHMED HAMDY; AMAL NADA;
DANIEL K. CARESMAN; KRITBAG DIFRAT; SOBHI BUSHRA; ROBERT BACILY;
NICOLA BACILY; THOMAS J. TANAS; ERWIN SALAMEH; YOUSSEFF M. BASSELEY;
MALID AHLAWI,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

## BRIEF OF VOLUNTEER LAWYERS FOR THE ARTS, INC.
## AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Christopher S. Reeder
  *Counsel of Record*
2049 Century Park East, Suite 3400
Los Angeles, California 90067
(310) 552-0130

David Leichtman
Michael A. Kolcun
601 Lexington Avenue, Suite 3400
New York, New York 10022
(212) 980-7400

VOLUNTEER LAWYERS FOR THE ARTS, INC.

Kathryn Wagner
Stacy Lefkowitz
Kristine Hsu
1 East 53rd Street, 6th Floor
New York, New York 10022
(212) 319-2787

*Counsel for Amicus Curiae*
*Volunteer Lawyers for the Arts, Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae*, Volunteer Lawyers for the Arts, states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ...........................................i

TABLE OF AUTHORITIES......................................................iii

INTEREST OF *AMICUS CURIAE* ..........................................1

ARGUMENT ...................................................................3

    A.    The Settled Expectations Under The Copyright Act ..............5

        1.    The Work At Issue Is a Motion Picture ........................6

        2.    Even If Plaintiff Were An Author of Her Performance, And Such Work were Recognized And Protectable, She Was Not Entitled To An Injunction ........................................................9

        3.    Plaintiff's Other Remedies...........................................14

CONCLUSION ..................................................................15

CERTIFICATE OF COMPLIANCE..........................................17

CERTIFICATE OF SERVICE................................................18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*16 Casa Duse, LLC v. Merkin*,
  12-cv-3492, 2013 U.S. Dist. LEXIS 143958 (S.D.N.Y. Sept.
  30, 2013) ....................................................................................... 8

*Aalmuhammed v. Lee*,
  202 F.3d 1227 (9th Cir. 2000) ...................................................... 10

*Ashton-Tate Corp. v. Ross*,
  916 F.2d 516 (9th Cir. 1990) ........................................................ 10

*Effects Associates v. Cohen*,
  908 F.2d 555 (9th Cir. 1990) ........................................................ 11

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) ........................................................................ 9

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
  531 F.3d 962 (9th Cir. 2008) .......................................................... 7

*Thomson v. Larson*,
  147 F.3d 195 (2d Cir. 1998) .......................................................... 10

**Statutes**

15 U.S.C. § 1125(a) ............................................................................ 14

17 U.S.C. § 101 ........................................................... 7, 8, 9, 10, 12

17 U.S.C. § 102 .................................................................................... 6

17 U.S.C. § 102(a) ................................................................................ 7

17 U.S.C. § 201(a) ........................................................................... 9, 10

17 U.S.C. § 201(b) .............................................................................. 10

iii

17 U.S.C. § 201(c) ........................................................................ 13

17 U.S.C. § 201(d) ....................................................................... 10

17 U.S.C. § 205 ............................................................................ 12

## Other Authorities

37 C.F.R. § 202.3(b)(11) ................................................................ 9

*Compendium II of Copyright Office Practices* § 806.13(b)(4) ................... 8

## Rules

Federal Rules of Appellate Procedure 29(a) ............................................ 3

Federal Rules of Appellate Procedure 29(c)(5) ........................................ 1

## INTEREST OF *AMICUS CURIAE* [1]

Volunteer Lawyers for the Arts, Inc. ("VLA") was established in 1969 with a mission to provide low-income arts-related legal aid, education, and advocacy to artists and arts and cultural organizations ("ACOs"). VLA is dedicated to voicing the unique interests of its individual artists and ACOs and to protect their rights when at risk. To achieve this mission, VLA provides its members with *pro bono* legal representation, legal counseling, and innovative educational programs. Over the last 45 years, VLA has played and continues to play a significant role in the arts community, serving more than 300,000 low-income artists and nonprofit organizations across the United States.

One of the largest groups of artists seeking VLA assistance is low-income, aspiring independent filmmakers. Their documentaries and films cover a variety of compelling subjects, including, for example, the biographies of other artists, the plight of immigrants, and the impact of

---

[1] Pursuant to Rule 29(c)(5) of the Federal Rules of Appellate Procedure, Volunteer Lawyers for the Arts, Inc. hereby certifies that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund the preparation or submittal of this brief; and no person – other than *amicus curiae*, its members, or its counsel – contributed money that was intended to fund the preparation or submittal of this brief.

1

mental illness on families and society at large. VLA's filmmakers generally spend over a year creating and producing their films. The filmmaking process is a long one, consisting of developing a script, casting talent (including directors, performers, set designers, etc.), shooting the film, and editing the film. Each stage of the process can take several months, and most filmmakers dedicate all their attention, resources, and time into creating their films.

VLA submits this *amicus* brief to lend the unique voice of these low-income filmmakers who are directly affected by the Panel's now-vacated decision. The Panel decision effectively upends the settled copyright regime regarding motion pictures by creating a copyright interest in a single performance that has never before been held to exist. Such an interest, if upheld, would serve as a barrier to entry for filmmakers who would need to expend significant non-extant resources to be able to: (1) to ensure all such newly recognized "rights" are cleared when creating and exploiting their works; and (2) to make true and correct representations and warranties to commercial distributors that want to distribute or produce their works. Such a regime would prove extremely challenging, if not debilitating, to low-income filmmakers,

who already struggle to obtain requisite clearances and to make the appropriate representations and warranties.

Pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, all parties consent to VLA's filing of this *amicus* brief. Thus, VLA respectfully asks this Court to accept and consider VLA's *amicus* brief, submitted in support of Defendants-Appellees.

## **ARGUMENT**

A decision along the lines of the one by the previous three-judge Panel, as amended, would severely constrict the ability of independent filmmakers and producers to distribute and exploit their works. It would also create uncertainty for what are otherwise long-established and clear industry and legal guidelines on how the Copyright Act operates to protect the rights holders in motion pictures, and who those rights holders are.

This is a classic case of hard facts making bad law. There is an existing, hugely successful environment in which films have flourished for decades. Affording (retrospectively and retroactively) a protectable right in a cinematic performance to a performer who appeared in a film for seconds alters decades of understandings under the Copyright Act.

3

While Plaintiff may have remedies under other legal regimes, with respect to the Copyright Act, the Panel's now-vacated decision goes too far.

Should the reasoning of the Panel be followed, individual filmmakers and start-up producers would be faced with extremely high production burdens that they have not heretofore been asked to carry. Many of VLA's new filmmakers simply do not have the resources or the know-how to draft and administer appearance releases for their performers.

Unlike major Hollywood studios, the filmmakers that VLA advises do not have the benefit of employing in-house legal counsel to oversee the management of film production contracts. Rather, they have historically been able to rely on the protections provided by the Copyright Act. To alter those protections would be detrimental to individual filmmakers.

If filmmakers are subject to copyright claims of individual motion picture performers, and those performers can obtain a remedy that prevents the distribution and release of films, low-income filmmakers will be unable to exploit their works or succeed in the film business.

Thus, the Panel's now-vacated decision jeopardizes filmmakers' ability to release their important works to the public, making it significantly more difficult for new filmmakers to successfully exploit their works. And the "retrospective" nature of the remedy contemplated by the Panel is even greater. It is one thing to announce that motion picture performers are, going forward, a new class of "authors" whose rights must be assigned to permit the distribution of films; it is quite another to announce that motion picture performers (regardless of the scope of their performances) have blocking rights to films that are already completed, and can seek injunctive relief so as to block the further distribution of already completed films.

## A. **The Settled Expectations Under The Copyright Act**

Before the divided Panel's decision, the law was clear and consistent that Plaintiff would not have a copyright interest in the motion picture at issue. Indeed, even the making of such claims is relatively rare. *See* Maj. Op. at *7 (Dkt. 127-1). Plain application of the Copyright Act reveals that Plaintiff has no copyright claim in this specific case because she is not the author of a "work" and certainly cannot be an author of the motion picture at issue here.

5

## 1. <u>The Work At Issue Is a Motion Picture</u>

While the majority of the prior Panel criticized the district court for not addressing whether a performance in a motion picture is a copyrightable "work" itself, so too did the divided Panel disregard this fundamental prerequisite in its own analysis. *See* Maj. Op. at *6, n.2 (Dkt. 127-1). Under the plain terms of the Copyright Act, there is simply no basis for finding that a seconds-long individual performance within a film is a copyrightable "work" or that such performance could make the performer a joint author of the motion picture as a whole.

The Panel erred by finding that a motion picture performer is the "author" of a copyrightable work by recognizing a whole new category of works – regardless of the size of their performances.[2] Even worse, the Panel did so retrospectively, in a way that diminishes the marketability of already created motion pictures by affording a huge new category of hypothetical "authors" with blocking rights by granting an injunction.

Section 102 of the Copyright Act enumerates the types of works that are protectable by copyright. "Copyright protection subsists. . . in

---

[2] VLA does not take a position as to whether a motion picture performer could ever have a copyright interest in the motion picture as a whole, a broader issue not before the Court, and which need not be decided here.

original works of authorship fixed in any tangible medium of expression. . ." 17 U.S.C. § 102(a). Subsection 6 provides that a motion picture is a type of original work of authorship. The Copyright Act defines "motion pictures" as "audiovisual works consisting of a series of related images which, when shown in succession, impart an impression of motion, together with accompanying sounds, if any." 17 U.S.C. § 101 (definition of "motion picture"). Indeed, "[a] motion picture is a work to which many contribute; however, those contributions ultimately merge to create a unitary whole." *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 975 (9th Cir. 2008).

Thus, the law affords copyright protection to the totality of the contributions to a motion picture as a complete work and not a single performance taken out of the context of the whole, absent, potentially, some unusual circumstance not presented in this case. Neither Section 102(a) nor any other statutory subsection suggests that every actor in a film, regardless of the scope of the performance, is the "author" of a copyrightable "work."

Even if a motion picture performer theoretically may be an "author" of his or her performance in the broadest artistic sense of the

7

word "author," that does not make it so for purposes of copyright protection.[3] By agreeing to be filmed, a motion picture performer authorizes the filmmaker to fix the work, who then, absent an agreement, becomes the author of the work for the purposes of copyright protection.[4] *See 16 Casa Duse, LLC v. Merkin*, 12-cv-3492, 2013 U.S. Dist. LEXIS 143958, at *30-31 (S.D.N.Y. Sept. 30, 2013), *on appeal*, Civ. No. 13-3865 (2d Cir.), *argued*, Sept. 3, 2014.  Thus, the only "work" at issue in the case should have been the motion picture in its entirety, over which Plaintiff can claim no protectable interest.

---

[3] While the Copyright Office recognizes that separate works of authorship may be fixed in a motion picture, the divided Panel's reliance on pantomimes is not what is intended under the Copyright Act by use of the word "pantomime," which has a specialized meaning and is not intended to cover all fleeting acting performances.  In any event, Plaintiff did not properly register any such "pantomime" with the Copyright Office before filing suit.  *See Compendium II of Copyright Office Practices* § 806.13(b)(4).

[4] For a work to be protected, the work must be "fixed."  A work is "fixed" when, "by or under the authority of the author," it is "sufficiently permanent or stable" to permit it to be reproduced "for a period of more than transitory duration."  17 U.S.C. § 101 (definition of "fixed").  Indeed, a copyrightable work is not even considered "created" until it is fixed.  *Id*. (definition of "created").

8

**2. Even If Plaintiff Were An Author of Her Performance, And Such Work were Recognized And Protectable, She Was Not Entitled To An Injunction**

Hypothetically, if Plaintiff were indeed an author (without agreeing that she is), and if she were permitted under copyright law to sue without registration (*but see Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)), then what type of author is she, and what types of remedies is she entitled to? The answer lies in Article 2 and Section 101 of the Copyright Act. Reviewing those parts of the Copyright Act in proper context, even if performers in film roles could ever be held to be authors of copyrightable works in their performances, Plaintiff's performance is very far from the line.

Plaintiff is at best only a minor contributor to the motion picture, and even the Panel seems to agree that she can have no copyright interest in the motion picture as a whole. Only one person or entity can have such an interest and register it with the Copyright Office, absent the work being a joint work or some agreement splitting such rights. *See* 17 U.S.C. § 201(a); 37 C.F.R. § 202.3(b)(11) ("As a general rule only

9

one copyright registration can be made for the same version of a particular work.").[5]

Section 201(a) explains that title vests initially in the author or authors of a "work." Plaintiff is not – and does not purport to be – the author of the motion picture itself.[6] But that is the "work" that the Panel enjoined from exploitation.

_____

[5] The Panel correctly concluded this was not a "joint work" under the Copyright Act. *See* 17 U.S.C. § 101 (definition of "joint work"); *id*. § 201(a) ("authors of a joint work are co-owners of copyright in the work."). To qualify as a joint work, the Copyright Act specifically requires a work to be "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. In this Circuit, a joint work "requires each author to make an independently copyrightable contribution" to the work. *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990). As noted, Plaintiff cannot demonstrate any independently copyrightable contribution she made to the motion picture. Additionally, her contribution cannot be deemed a joint work because she cannot demonstrate that she and Defendant shared the requisite intent that they be co-authors of the motion picture. *See, e.g.*, *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000); *Thomson v. Larson*, 147 F.3d 195, 200-01 (2d Cir. 1998). In fact, Plaintiff expressly disclaimed such intent, and even the majority of the prior Panel expressly found "no basis for finding a joint intent on this record." Maj. Op. at *7 (Dkt. 127-1).

[6] Sections 201(b) and (d) explain further that certain categories of works can be owned by someone other than the human "author" – by operation of law in the case of a "work made for hire," and by transfer of ownership in a written conveyance. In this particular case, since VLA

*Footnote continued on next page . . .*

10

Finding no written agreement here, the Panel thus turned to the concept of an "implied license." While such a license is not expressly provided for in the Copyright Act, there are a small number of decisions which recognize that a non-exclusive license can be impliedly granted in certain circumstances. However, the Panel's holding that Plaintiff had granted the filmmaker an implied license, but that the scope of the license was exceeded, assumes that Plaintiff was the author of the work licensed (which is wrong), and in any event does not correlate to the remedy it granted.[7]

First, there was no indication that, prior to its exploitation of the film, the Google/YouTube Respondents had any notice of an exceeded license. Absent recordation of such a license and its terms (which would

_____ *. . . footnote continued from prior page*

has not had access to the documentation at issue, it does not take any position as to whether there was any transfer under these sections, if Plaintiff was an "author" at all. *See* Maj. Op. at *13, n. 5 (Dkt. 127-1).

[7] To the extent that the Panel was relying on the type of implied non-exclusive license referenced in *Effects Associates v. Cohen*, 908 F.2d 555 (9th Cir. 1990), it should be noted that the decision in that case did not address the proper remedy when an implied license is exceeded. Indeed, in that decision, where the inverse of the facts at issue here were involved, this Court found that the implied license was not an equitable doctrine at all. *Id.* at 559 n.7. Thus, as essentially a breach of contract claim at law, injunctive relief should normally not be available.

be absurd to require of all filmmakers), the Google/YouTube Respondents likely have a "good faith purchase for value" type of defense as provided under the various provisions of 17 U.S.C. § 205. Accordingly, while an implied license may, in some circumstances be sued to prevent a contributor from pulling their contributions out of a work that has been merged into a unitary whole, the doctrine's reach cannot, and should not, be extended to provide for a motion picture to be blocked.

A further analogy also demonstrates the remedy granted here was wrong. While motion pictures have not been traditionally thought to constitute "collective works," and VLA does not advocate for such a finding, the Panel's determination that Plaintiff's seconds-long motion picture performance was independently copyrightable can be analogized to a contribution within the definition of a collective work. A "collective work" is "a work ... in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101 (definition of "collective work").

Again, VLA does not believe that Plaintiff's "bit player" contribution here rose to the level of an independently copyrightable

work, but even if it did, the problem for Plaintiff is that Congress

recognized in such a situation, there would be no right to an injunction

blocking exploitation of the collective work by its contributors. Section

201(c) provides:

> In the absence of an express transfer of the
> copyright or of any rights under it, *the owner of*
> *copyright in the collective work is presumed to*
> *have acquired only the privilege of reproducing*
> *and distributing the contribution as part of that*
> *particular collective work, any revision of that*
> *collective work*, and any later collective work in
> the same series.

17 U.S.C. § 201(c) (emphasis added). Thus, whatever else the

filmmaker obtained from the persons engaged to act in the film, both

common sense and Section 201(c) make plain that the filmmaker

presumptively obtained at least the right to include the performances in

the film as a whole. If Plaintiff had any authorial rights at all, they

were subsumed in the collective work and its revisions, made by the

filmmaker and exploited by the filmmaker, within its rights to

distribute the collective work (here, the film), and its revisions.

Whether or not Plaintiff may not have been enamored with the

revision that made its way onto the Internet is of no moment – an

injunction, at least under the Copyright Act, was not a permissible remedy. While the majority of the prior Panel may have been concerned with threats of physical harm in its reasoning, it stretched the Copyright Act too far. *See* Maj. Op. at *17-18 (Dkt. 129-1).

### 3. **Plaintiff's Other Remedies**

VLA's sole interest is in seeing the Panel's erroneous view of copyright law reversed. VLA takes seriously the apparent threats on the well-being of Plaintiff, but copyright law cannot be judicially rewritten to avoid those threats. Other remedies may be available. If Plaintiff's participation was induced by fraud (either before or after the fact), or violates some right of privacy or publicity, or Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), or if it somehow unjustly enriched the filmmaker or Defendants, there may be causes of action and equitable remedies to make Plaintiff whole. But, such remedies would not sound in copyright law. With respect, the Court should remand for Plaintiff to assert legal claims that more appropriately address her concerns, rather than stretch copyright law beyond the breaking point to create a non-extant remedy.

14

## CONCLUSION

The Panel's reasoning, if followed, would seriously undermine the certainty of decades of copyright law, and wreak havoc on the thousands of filmmakers that rely on such stability and their advisors' sound counseling. The practical and legal pitfalls of other aspects of this case have been well-briefed by the parties and other *amici*. Artists and their advisors, like VLA, rely on the law to recognize and protect creative efforts in a straightforward, consistent, and predictable fashion. The Panel's reasoning would harm the very persons the copyright laws were enacted to protect.

Moreover, to create an entirely new kind of authorship subject to copyright registration and remedies – the supposed rights of all motion picture performers in their performances, regardless of the length or complexity of those performances – would interfere massively with settled expectations as regards who are the various "authors" whose rights must be assigned to producers to as to permit those producers to arrange for film distribution and exploitation. Any suggestion that the hundreds of actors in "Ben Hur" or "Gone with the Wind" or other films, are the authors of "works" which (absent a copyright transfer) are

15

infringed by film distribution or performance is wholly unsupported by text, or by the history of the film industry and its practices.

VLA respectfully submits that it is imperative for uniform and consistent interpretations of copyright law to persist, in order to foster and advise organizations and artists in jurisdictions throughout the country. Accordingly, *amicus curiae*, Volunteer Lawyers for the Arts, Inc., joins Defendants-Appellees and respectfully urges this Court to affirm the district court's judgment.

Respectfully submitted,

ROBINS, KAPLAN,
MILLER & CIRESI L.L.P.

VOLUNTEER LAWYERS FOR
THE ARTS, INC.

Christopher S. Reeder
   *Counsel of Record*
2049 Century Park East
Suite 3400
Los Angeles, California 90067
(310) 552-0130

Kathryn Wagner
Stacy Lefkowitz
Kristine Hsu
1 East 53rd Street, 6th Floor
New York, New York 10022
(212) 319-2787

David Leichtman
Michael A. Kolcun
601 Lexington Avenue
Suite 3400
New York, New York 10022
(212) 980-7400

16

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned hereby certifies that this *amicus* brief: (1) complies with the page-limit of Circuit Rule 29-2(c)(3) as it is 16 pages in length, excluding the portions exempted under Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure; and (2) complies with the typeface and typestyle requirements of Rules 32(a)(5) and (a)(6) of the Federal Rules of Appellate Procedure because it is prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

DATED: November 25, 2014         *s/Christopher S. Reeder*
                                 Christopher S. Reeder
                                 *Counsel for Amicus Curiae*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 25, 2014.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system, with the exception of Plaintiff's counsel, Credence Sol, whose CM/ECF filing status is suspended, and who will be served on this date via email on Plaintiff's counsel, M. Cris Armenta, with Plaintiff's consent.

DATED: November 25, 2014       *s/ Christopher S. Reeder*
                                        Christopher S. Reeder
                                        *Counsel for Amicus Curiae*